# EXHIBIT B

Bender2906

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
MORTON A. BENDER ET AL.,      :
                             :
           Plaintiffs,       :
      vs.                    :          Docket No. CA 06-92
                             :
CAROLYN D. JORDAN, ET AL     :          Washington, D.C.
                             :      Thursday, February 9, 2006
                             :             2:35 p.m.
           Defendant.        :
---------------------------- :
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:           Dale A. Cooter, Esquire
                              Donna S. Mangold, Esquire
                              COOTER, MANGOLD
                              TOMPERT, & KARAS, L.L.P.
                              5301 Wisconsin Avenue, NW
                              Suite 500
                              Washington, DC  20015
                              (202) 537-0700

For the Defendants:           PETER E. STRAND, Esquire
(via telephone)               CHRISTIE S. HUDSON, Esquire
                              Shook Hardy & Bacon, L.L.P.
                              600 14th Street, NW
                              Suite 800
                              Washington, DC  20005
                              (202) 783-8400


                              HAIG V. KALBIAN, Esquire
                              Kalbian Hagerty LLP
                              The Brawner Building
                              888 17th Street, NW
                              Suite 1000
                              Washington, DC  20005
                              (202) 223-5600




Appearances continued:


Court Reporter:               CRYSTAL M. PILGRIM, RPR
                              United States District Court
                              District of Columbia
                              333 Constitution Avenue, NW
                              Room 4806-A
                              Washington, DC  20001
                              Page 1

Bender2906
(202) 589-1166

Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

1          THE DEPUTY CLERK:  Civil action 0692, Morton A.

2    Bender et al versus Carolyn D. Jordan.  Dale Cooter and Donna

3    Mangold for the Plaintiffs.  Peter Strand and Haig Kalbian for

4    the defense.

5          THE COURT:  Good afternoon.

6          MR. COOTER:  Good afternoon.

7          MR. STRAND:  Good afternoon.

8          THE COURT:  We don't have an answer yet from the

9    defendants.  Do the defendants anticipate filing an answer or

10   something else?

11         MR. STRAND:  Yes, Your Honor.  We moved an agreed

Bender2906

12  order.

13          THE COURT:  Yes, for an extension.

14          MR. STRAND:  In the last couple of days seeking until

15  the 15th and we will answer.

16          THE COURT:  You will file an answer?

17          MR. STRAND:  Yes, ma'am.

18          THE COURT:  So then I understand the question now is

19  one of discovery, is that right sir?

20          MR. COOTER:  One to the overall schedules.  Pursuant

21  to the Court's local rules, the way we read the rules, we

22  couldn't do anything with discovery until we got a lawyer in

23  the case and had a discovery conference.  We got a lawyer in

24  the case and had a discovery conference and there's a

25  difference of opinion as to how this case should go forward

4

1  pursuant to discovery.  Therefore, we couldn't reach any

2  resolution on that issue.

3          THE COURT:  Is this an initial scheduling conference,

4  is that what we should call this?

5          MR. COOTER:  Yes.

6          THE COURT:  All right, I thought it was a discovery

7  dispute, but I'll call it an initial scheduling conference,

8  that's fine.

9          MR. COOTER:  We couldn't submit an order, we couldn't

10  agree on anything.  So the dispute centers essentially around

11  the issue of discovery.  There are monetary claims in the case

12  against the individual directors and there's a motion for

13  preliminary injunction against the bank.  The bank is nominal

14  here.  Received no relief from the bank other than to preclude

15  them from indemnifying the directors and advancing the

16  litigation expense.

17      So I don't want to mischaracterize what happened,

Page 3

Bender2906

18  Mr. Strand can speak for himself.  Essentially it was

19  Mr. Strand's view that we should schedule the preliminary

20  injunction proceedings on a track that would have pushed it out

21  into March or thereabouts.  In his view discovery was

22  unnecessary.

23      In my view discovery is very necessary because if you

24  consider the likelihood of success on the merits with respect

25  to the injunction, it looks a lot like the discovery that would

5

1   look like for the case itself.  You know we're focusing on

2   effectual events that happened over a few week period of time.

3   There's significant numbers of depositions to be taken.  I

4   don't recall right now from how much I know from what I know

5   was in the complaint.  But there were some people who are

6   obviously the control shareholders that we say were not suppose

7   to be control shareholders.  Mr. Thompson, his colleagues.

8   Mr. Delany, Mr. Doley in New York and his colleagues.

9       We've got to do the inspector of elections to look at the

10  ballots and to ask him some questions.  And you also have a,

11  you've got the directors themselves in the bank and there's

12  some further depositions that involve some people and I'm just

13  thinking off the top of my head, they call themselves the

14  committee, as I recall it the committee to save Independence

15  Bank, something like that.

16          THE COURT:  That's the one from last spring?

17          MR. COOTER:  Yes ma'am.  What happened though is that

18  that committee and the letter that they sent out was out there

19  floating around at or about the time of the vote itself, the

20  OTS elected not to pursue that issue.  I frankly think, I've

21  spoken with them.  I think it was a question from there

22  standpoint of investigative resource.  I said we'll find out

23  what happened in due course.  So you've got a significant

Page 4

Bender2906

24  number of depositions to be taken.

25      The second issue has to do with the annual meeting.

6

1  The Court will recall, I hope, that --

2      THE COURT:  I recall a lot of it, but I'm sure that

3  you'll bring me up to date.

4      MR. COOTER:  This part you'll remember.  I'm not

5  talking about sous today, I've sworn myself off that.

6      THE COURT:  You've sworn yourself off what, sous?

7      MR. COOTER:  I won't talk about sous anymore.

8      THE COURT:  Good, I won't either.  We'll make a deal.

9      MR. COOTER:  You got a deal. The bank's account here

10  is December the 31st.  They're suppose to have an annual

11  meeting no later than the 31st the bylaw plus the reg.  As the

12  Court is aware that has never caused the bank much

13  consternation before.  It never makes the deadline.

14      THE COURT:  Well, it hasn't in the time that

15  Mr. Bender has been interested.  Why don't we put it that way.

16      MR. COOTER:  That's right.  I'm not too sure if it

17  ever did.

18      THE COURT:  I don't know about that.

19      MR. COOTER:  In the last few years it has not.  My

20  suspicion is that this year given the fact that we have what we

21  say is a tainted prior meeting, the bank will get efficient

22  this year. And the bank will want to have annual it's annual

23  meeting sometime in April.  That has practical significance in

24  the following way.

25      Each year certain of the directors are up for reelection.

7

1  At the meeting now in challenge, the directors that were up for

2  reelection essentially were what we call the management

3  directors.

4      THE COURT:  Oh, believe me I read, I can save you

Page 5

Bender2906

5  sometime because I read the proposed order granting preliminary

6  injunction findings of fact.  I thought I would start at the

7  end if you will, forgive me gentleman it was just to get a

8  sense of what the issue was this time around.  So I understand

9  what you're talking about.

10          MR. COOTER:  The only reason that the time of the

11  next meeting becomes significant.

12          THE COURT:  I understand that too.

13          MR. COOTER:  This time it's the dissident directors

14  that would be up for reelection.  So we've really got to sort

15  out who is what going into the next one.

16          THE COURT:  Right.  Well, it doesn't give you much

17  time for all of this discovery.

18          MR. COOTER:  It does not.

19          THE COURT:  It's really wonderful you always come

20  with a case that has to be decided very fast.

21          MR. COOTER:  I do?

22          THE COURT:  You do.  You never come with a case that

23  can take its deer time you know take five years, never.

24          MR. COOTER:  I'm not I'll live that long.  I was

25  mindful of, I was trying to recall what we did the last time.

8

1  There was a scheduling order in the case the last time where we

2  didn't have a disagreement with our opponents basically the

3  Fried Frank lawyers and we agreed to go forward on the

4  following schedule.

5          There was a scheduling order that this Court issued on

6  June the 28th, that essentially provided for discovery in a

7  three month window.  There was some motions deadlines set out

8  in the order that required responsive pleadings to the, Court

9  will recall there were injunctions both ways in that case.

10          THE COURT:  Right.

Page 6

Bender2906

11          MR. COOTER:  Within about 30 days.  You limited the

12  depositions to 18 including experts without leave of Court.

13  It's hard for me to say whether this was 18 per side.  I think

14  it's fair to say that it was 18 because Mr. Schropp and I

15  generally agreed to what the universe was.  You limited

16  interrogatories to 25, and responses to interrogatories to 30

17  days.

18          You said that in your order, in your earlier order

19  motions for extension would be usually the Court says look down

20  with disfavor, you just said denied except for showing of good

21  cause.  Essentially what you did you set up a pretty efficient

22  schedule.  It made everybody go to work.

23          As a practical matter, I think before this order was

24  entered Mr. Schropp and I were already on about our business.

25          THE COURT:  I think you were.

                                                              9

1           MR. COOTER:  The reason that I asked for this

2   scheduling conference today is to set a discovery schedule and

3   the motions date are less significant to me, so that I can get

4   the preliminary injunction tried at the very least with

5   discovery prior to any attempt by the bank to have an annual

6   meeting.  Obviously at this point I don't know what that day is

7   other than my suspicions.  And the other thing is that we've

8   sought to enjoin the bank from indemnifying or paying expenses.

9   I also don't have any, Mr. Kalbian is here for the bank.  I

10  don't know what the bank's position is on that.

11          My understanding there would have to be some kind of

12  resolution anyway by the board.  It's my understanding there's

13  been no such resolution to date.  So I really need to hear from

14  the bank and those are the issues it seems to me that bound the

15  schedule.  With that, unless the Court has questions I'll sit

16  down.

                        Page 7

Bender2906

17        THE COURT:  No, I understand what you're trying to

18  do.  Why don't we let -- whose representing the bank these

19  days?

20        MR. KALBIAN:  Your Honor, I am representing the bank.

21  It's really a nominal defendant here.  I just got into the

22  case.  I think I entered my appearance yesterday or two days

23  ago.

24        THE COURT:  Okay, why don't you come forward and do

25  me a great favor and give me your name which I'm sorry that I

                                                              10

1  need to ask, but I do.  I don't have it here in front of me.

2        MR. KALBIAN:  Yes, my name is Haig Kalbian.

3        THE COURT:  Let me ask you, let's start with the

4  schedule issues, because the schedules concerns addressed by

5  the plaintiff have to do with the bank's actions or the board

6  of directors actions.

7        MR. STRAND:  You're, I'm the one prepared to address

8  that today.  I don't want to go out of order if you want to,

9  but I will try to respond to all of that.

10        THE COURT:  You're prepared and Mr. Kalbian may not

11  be.

12        MR. STRAND:  I'm sure he's adequately prepared, but I

13  may be prepared for your specific questions.

14        THE COURT:  Why don't you come forward and see if you

15  can answer my specific questions.

16        MR. STRAND:  Thank you Your Honor.

17        Your Honor I think the issue here today is that the

18  plaintiffs want to have their cake and eat it too.  Let me

19  address that.  They want to prevent the advanced payment of

20  legal expenses, yet they want to undertake very expensive

21  discovery over a period of time and delay any hearing on the

22  preliminary injunction, but there's a huge problem with that

                                Page 8

Bender2906

23  position.

24      In seeking to delay the advanced payment of litigation

25  expenses, plaintiffs essentially seek the benefit of a

11

1  temporary restraining order.  But if the Court looks at the

2  record, plaintiffs have not requested a temporary restraining

3  order, nor has one been entered.

4      THE COURT:  Let me ask you this, your point is very

5  well taken, but let me ask you this.  I'm hypothesizing at the

6  moment that what Mr. Bender doesn't want is for the bank to be

7  able to publish something that blames him for its legal costs.

8      And so let's assume for present purposes that your

9  argument is well taken.  He's not sought a TRO, so he can't get

10  what amounts to a TRO, not having asked for it.  And so he

11  doesn't get one and the bank proceeds to advance money for

12  attorneys fees.  And then we get to some point whether it's for

13  the preliminary injunction or when we get to the end of this

14  matter and the Court finds, and I'm sheerly hypothesizing here,

15  that it was inappropriate, improper for the bank to pay the

16  legal fees.  What happens then?

17      MR. STRAND:  Fortunately Your Honor, the regulation

18  has already anticipated that eventuality and I have, I always

19  hate to just quote things to the Court and trust you to listen

20  to me.  So if I could hand this up to you Your Honor.

21      THE COURT:  You may.  You did come prepared.

22      MR. STRAND:  I try Your Honor.  I won't run you

23  through the whole thing, but let's look at what you

24  specifically asked me about.  If you look at Tab 11 in the back

25  Your Honor.  It is the regulation that pertains to advancement

12

1  of legal expenses.  Do you have that in front of you?

2      THE COURT:  Yes.

Page 9

Bender2906

3          MR. STRAND:  Tab 11.

4          THE COURT:  I do.

5          MR. STRAND:  It's Section 545.121 and in my little

6   outline that's in front. I have the outline of the

7   interpretation of that statute, but let me run that through

8   you.  Run through that for you.

9          It is our position that plaintiffs misread this

10  regulation.  Specifically that they conflate Sections C and E

11  in the relief which they seek.  To answer your question, Your

12  Honor, let's look specifically at Subsection E which is on the

13  second page of Tab 11, do have you that in front of you.

14          THE COURT:  I can, yes.

15          MR. STRAND:  But I'll wait for you to read and shut

16  up until you tell me to.

17          THE COURT:  No, no, you can go ahead.

18          MR. STRAND:  If you go to the second page it's Tab E

19  it says payment of expenses.

20          THE COURT:  Yes.

21          MR. STRAND:  That tab, that subsection is very clear.

22  "If a majority of the directors of a savings association

23  concludes that in connection with an action any person

24  ultimately may become entitled to an indemnification, the

25  directors may authorize payment."

                                                                13

1          If you'll drop down to the lower part, actually the last

2   full sentence on the right hand side it says before, do you see

3   that Your Honor?

4          THE COURT:  Yes I do.

5          MR. STRAND:  This is the sentence that answers your

6   question.  "Before making advanced payment of expenses under

7   this paragraph", the situation that you hypothesized, "the

8   savings association shall obtain an agreement that the savings

Bender2906

9  association will be repaid, if the person on whose behalf

10  payment is made is later determined not be entitled to such

11  indemnification". That answers your question Your Honor, and I

12  would humbly submit that it destroys the possibility of a

13  temporary restraining order on the issue that Mr. Cooter has

14  been talking about because there is an adequate remedy at law.

15          THE COURT:  Okay, now let me back up again to the

16  substance of this. The parties have been unable to agree on a

17  discovery schedule. Since you started the argument with the

18  issue of attorneys fee, I assume that one of the things that's

19  sticking in everybody's craw most particularly is the request

20  that attorney fees not be paid by the bank to the individual

21  directors who are sued. And I wondered the extent to which

22  that issue interfered with the party's ability to reach

23  agreement on a discovery schedule.

24          MR. STRAND:  It absolutely interferes. Let me tell

25  you why. It's a problem. And if you look at page five of the

                                                              14

1  little outline I put in front of you, but I'll run you through

2  it. Not allowing for the reimbursement of attorneys fees

3  allows for a war of attrition. It allows for expensive

4  discovery which my law firm will be looking for the individual

5  defendants to pay. Ultimately that allows Mr. Bender to gain an

6  unfair economic advantage or leverage over those individual

7  defendants. And in fact, Mr. Bender has already talked to one

8  of the individual defendants and said I'll let you out of the

9  lawsuit if you'll resign from the board. So he is attempting

10  to shift the way the board is configured by bringing this

11  economic leverage against the director defendants.

12          THE COURT:  Wait, wait, wait.

13          MR. STRAND:  Okay.

14          THE COURT:  The facts that are stated now of course

                        Page 11

Bender2906

15  they're the facts that are stated totally from Mr. Bender's

16  point of view.  So don't have heart palpitations.  The facts

17  that are stated from Mr. Bender's point of view in the document

18  that I referenced that I read suggest that there might be more

19  merit to the complaint about failing to follow proper

20  procedures than just a desire on Mr. Bender's part to change

21  the members of the board of directors.  This is not the first

22  time we've been down this road.

23          MR. STRAND:  Correct.

24          THE COURT:  You understand.

25          MR. STRAND:  I understand.

                                                            15

1          THE COURT:  And I understand and the bank has been

2  extraordinarily defensive on this effort by Mr. Bender to

3  nominate persons to serve on the board, the bank's board of

4  directors.

5          All I'm interested in is resolving the complaint

6  allegations.  I don't want to get into the internal fighting

7  that goes on as to whether or not Mr. Bender has a right to

8  have an interest in this bank, whether it's a find old

9  institution that should keep its traditions and be separate and

10  not have anything to do with him.  That has nothing to do with

11  me.

12          MR. STRAND:  I agree.

13          THE COURT:  I don't want that kind of argument.

14  Let's just talk about what's at issue here.  Now what's at

15  issue here is that Mr. Bender has brought a lawsuit against the

16  board members individually, right?

17          MR. STRAND:  That's correct.

18          THE COURT:  And because he's asked that the bank not

19  advance their attorneys fees that's sort of stopped everybody

20  from moving at all.

Page 12

Bender2906

21          MR. STRAND:  That's part of it, yes and that's

22  probably the main part of it, you're right Your Honor.

23          THE COURT:  And I can appreciate that the law firm

24  looking over the history of this litigation can anticipate that

25  it might take a fair amount of your time and other people's

16

1  time to defend this case win, lose, or draw, so therefore you

2  really don't want to do it on a pro bono basis.

3          MR. STRAND:  Correct, Your Honor.

4          THE COURT:  You're in business, I understand that.  I

5  use to be there.  All right now, the question is how

6  comfortable is the law firm with the promise of the individual

7  directors that if need be they'll repay the money that the bank

8  advances?

9          MR. STRAND:  Well, I don't know that the law firm has

10  drawn a conclusion on that, Your Honor.

11          THE COURT:  They seem to have because they don't want

12  the directors to have to pay the law firm in the first place.

13  You see my concern is that --

14          MR. STRAND:  With all due respect, Your Honor, you've

15  told me not to get involved in the personal issues with Mr.

16  Bender and the bank.  What I'm trying to do is address the

17  legal issue here.  The directors are entitled to reimbursement

18  of legal expenses.  There is no current prohibition from that.

19          THE COURT:  I agree.  I don't know of one.

20          MR. STRAND:  There is no way to fashion temporary

21  relief allowing for that prohibition.

22          THE COURT:  I understand that.  I understand your

23  opening point.

24          MR. STRAND:  So it is only out of deference to the

25  Court that the board resolution hasn't already been passed to

17

1  authorize the advancement of legal expenses, because there's no

Page 13

Bender2906

2  pending reason that they can't move forward with that.

3          THE COURT:  I don't know why they would wait for me.

4          MR. STRAND:  Well, Your Honor, that was something in

5  the law firm in my persona, because the question has been shall

6  we go ahead and authorize the resolution?  I said we're going

7  to have this hearing today, so let's not do it yet.  So we're

8  here today.

9      But as far as I know, they could go out this afternoon and

10 have the resolution authorizing the advancement of legal

11 expenses.  There's no prohibition from doing that.

12          THE COURT:  I don't know of one, do you Mr. Cooter?

13          MR. COOTER:  At the risk of sounding like the

14 President, depends on who they is.  Whose the they?  If you

15 look at the reg it has two provisions.  It deals with if a

16 majority of the board were to conclude that there is a likely

17 entitlement to indemnification, they may vote to advance

18 expenses.

19     There's another provision that deals with alternatively if

20 without regard to likelihood of success on the issue of

21 indemnification, the disinterested directors think that things

22 were done in good faith, the disinterested directors can do

23 things.  The problem is that counsel --

24          THE COURT:  Are there any disinterested directors?

25          MR. COOTER:  Well, let me say it to you this way.

                                                          18

1          THE COURT:  I mean you've sued everybody except

2  Mr. Bender's nominees right?

3          MR. COOTER:  That's right.

4          THE COURT:  Okay.

5          MR. COOTER:  Let me just say to you, to turn the

6  question on its head a little bit.  I don't mean to be

7  impertinent.  I know that the defendants are not disinterested.

                          Page 14

Bender2906

8   It's impossible.

9           THE COURT:  Well, I agree with that.

10          MR. COOTER:  Which is where I start and end.  Now as

11  a practical matter, the notion -- I will tell you that my

12  understanding is that if the thing came to a vote it would

13  almost certainly be five to four.  The first question is

14  whether or not these interested directors even have the power

15  to vote on their own indemnification, which may be an issue for

16  you at some point.

17          THE COURT:  It's the sort of thing --

18          MR. COOTER:  But let me say --

19          THE COURT:  Wait, wait, stop.  It's the sort of thing

20  where they may need to vote on indemnification for each of them

21  individually, and each of them individually set out the vote on

22  indemnification of the house.  I mean I don't know, I'm not the

23  board.  I don't advise the board.

24          MR. COOTER:  I thought through that scenario which is

25  usually how it's done in the case of board compensation, the

                                                              19

1   compensation of the CEO who happens to be on the board.  He

2   goes outside of the room and the others vote.  If that were to

3   happen, I suspect that the vote be four to four, so there would

4   be a deadlock on the board.  So these are issues that you are

5   going have to sort out at some point.

6           THE COURT:  That issue I think is for the board to

7   figure out in the first place.  I can't, I'm not quite sure of

8   the roles of the two lawyers here as to who's advising the

9   members of the board of directors on that sort of issue;

10  whether it's a quote, bank issue for Mr. Kalbian, or whether

11  it's a members issue.

12          MR. COOTER:  I just tell you that that's where we

13  are.  That's the way I read the reg.  I didn't come in and ask

Page 15

Bender2906

14  you for a TRO.

15          THE COURT:  No.

16          MR. COOTER:  For a specific reason.  First of all the

17  bank hasn't taken a position.  The board hasn't passed a

18  resolution and I don't know where we are on that issue.

19          THE COURT:  It's going to be passed this afternoon.

20          MR. COOTER:  And if it is I guess I'll respond to

21  events.  I'm not suggesting I'm going to necessarily come back

22  at the first moment.  I think that the case needs some

23  discovery under anybody's theory.

24          THE COURT:  I agree.  The thing is the case sounds to

25  me as if there's enough there to argue about.  Whether it's a

                                                            20

1  good case or a bad case all I heard is one side.  You must

2  admit, you haven't even filed an answer yet.  So there's enough

3  there to argue about.

4       If the law firm understandably is not interested in doing

5  this on a pro bono basis and if the board of directors, by

6  whichever counsel advises the board of directors on these

7  issues, votes in whatever fashion they decide they want to vote

8  and they think is appropriate to advance attorneys fees to the

9  members of the board who have been sued, and that passes by a

10  majority vote then that is what will happen until and unless by

11  force of the litigation that has to stop.  In which event the

12  individual members pursuant to this regulation will have to

13  repay the bank.  Now that's the way I assume it would work, is

14  that correct?

15          MR. STRAND:  Your Honor you're absolutely correct.

16          THE COURT:  Okay.

17          MR. STRAND:  But the reason I don't think there needs

18  to be any discovery.

19          THE COURT:  Well, let's get to that.

                              Page 16

Bender2906

20        MR. STRAND:  Let's address that.

21        THE COURT:  Because it seems to me that's much more

22 important.  I understand the importance of getting paid, but

23 let's put that to the side and talk about other things.

24        MR. STRAND:  It was with some reluctance that I even

25 get into that in the first instance, but you can understand the

                                                              21

1 emotional effect that it has on my defendant clients, but let's

2 leave that now.

3        The reason why I don't think that we need discovery is

4 this, it's several fold.  One, we've looked at the statute.

5 We've look at what's there, it can happen.  It doesn't require

6 going all they way to the end of the lawsuit to get expenses

7 advanced.  But more importantly, the plaintiffs here lack

8 standing to seek the relief that we're talking about right

9 here.  The injunction to enjoin the advancement of legal

10 expenses.

11        THE COURT:  Well wait, I really don't want to decide

12 the issue of legal expenses.  You go to the bank, whichever of

13 you, advise the board of directors how you think they should

14 vote and how, what authority you think they have, and whether

15 they should vote on their own and all of the rest of that and

16 then let those chips fall where they may.  If Mr. Bender wants

17 to complain about some more he can do that.

18        Let's talk about the lawsuit.

19        MR. STRAND:  There's two parts of the lawsuit, Your

20 Honor.  There's a pending preliminary injunction.  I understand

21 now the Courts guidance on that and will act accordingly on the

22 unmentionable legal expenses.

23        In terms of discovery, there's discovery in two phases.

24 One on the preliminary injunction issue.

25        THE COURT:  Right.
                        Page 17

Bender2906

1          MR. STRAND:  And two on the lawsuit.

2          THE COURT:  Right.

3          MR. STRAND:  I'm prepared to discuss either.  What I

4    was trying to focus on is the need or lack thereof for

5    discovery on the preliminary injunction issues.

6          THE COURT:  Well, okay the preliminary injunction

7    issue other than fees.

8          MR. STRAND:  Fees.

9          THE COURT:  Let's talk about the guts of the lawsuit

10   which are not the fees.

11         MR. STRAND:  Correct, Your Honor.

12         THE COURT:  The fees are an effort to as I think

13   avoid what Mr. Bender finds to be offensive publication blaming

14   him for the expense of the bank in the last year and so I mean

15   I'm just hypothesizing.

16         MR. STRAND:  I take a different view of it, but I

17   won't share that with you again.  The reason we don't need

18   discovery right now, Your Honor, on the guts of the case are

19   Count One, the count under Section 13 D, there is no private

20   cause of action.  As a matter of law Mr. Bender cannot pursue a

21   claim under Section 13 D.

22         THE COURT:  Okay.

23         MR. STRAND:  Don't need a lot of discovery on that.

24   Section 14 claims, Your Honor, the ability to bring a private

25   cause of action is available under GI case vs. Borack a U.S.

1    Supreme Court case which has been heavily criticized.  We

2    believe there are good and just reasons which we will put in

3    our briefing to dismiss that claim as well.  There may be some

4    possibility.  Count three is a claim, Your Honor, for

5    violations of Roberts Rule of order.  We have not yet completed

Bender2906

6  our legal research on that, but we do not believe there is a

7  cause of action for violation of Roberts Rules of Order.  If

8  there is a cause of action, we believe that the standing for

9  that is with the bank, a nominal, as Mr. Cooter has said today,

10  a nominal party here, but Mr. Bender has not sueded pursuant to

11  23.1 as a nominal plaintiff, so we believe it is appropriate to

12  dismiss Count Three.

13         Counts Four and five are not the subject of injunctive

14  relief, so they're not before us today on the discovery issue

15  on preliminary injunction and Count Six, Your Honor, is that

16  dreaded legal fees issue, which we believe he lacks standing to

17  sue.

18      Our position, Your Honor, is that we will file papers on

19  the date that the Court ascribes, we have suggested

20  February 22nd, which will dispose as a matter of law of the

21  issues before the Court on the preliminary injunction.

22         THE COURT:  So therefore when I asked if you were

23  going to file an answer, the answer is no we're going file a

24  motion to dismiss.

25         MR. STRAND:  Well, I filed an answer.

                                                          24

1         THE COURT:  That's why I asked at the beginning are

2  you going to file an answer?  That was exactly why I asked.

3         MR. STRAND:  I'm going to file an answer, Your Honor,

4  it's just practice style.  I file an answer, file my 12 B

5  motion, 12 B reference in there and file my 12 B motion.  We've

6  got to file an answer on the 15th.  I'm not sure I can get all

7  of the briefing done on these legal issues by the 15th, so I

8  was going to answer and then a week later or earlier if I can,

9  but Ms. Hudson behind me bears the brunt of that is going to

10  file that.  I apologize, Your Honor, if I mislead you by my

11  response.

                        Page 19

Bender2906

12          THE COURT:  No, no, you didn't mislead me.  I'm sorry

13 it's the afternoon and I'm just feeling tired and grouchy.  So

14 ignore that.  Just ignore that, I'm usually a nicer person.

15          MR. STRAND:  You're doing fine.

16          THE COURT:  No, I'm feeling tired and grouchy, so

17 just ignore that.

18      What you're saying to me is that you don't believe that

19 Mr. Bender can sue under the violation of Section 13 D of the

20 Exchange Act because there's no private right of action and you

21 have a Supreme Court case or something.

22          MR. STRAND:  No, we have cases to that effect.  I'm

23 not sure that that's a Supreme Court case on 13 D.

24          THE COURT:  Are they D.C. Circuit cases?

25          MR. STRAND:  Your Honor, I was getting ready for this
                                                              25

1 one.  I wasn't getting ready for that argument.  I frankly

2 don't recall.  We will of course cite to those in our briefing

3 papers.

4          THE COURT:  All right.  Then we have violation of

5 Section 14 A of the Exchange Act and 12 CFR 569.

6          MR. STRAND:  That's the one we're working on, Your

7 Honor.

8          THE COURT:  Yes.

9          MR. STRAND:  And then counts, Count Three is the

10 violation of Roberts Rules.  And I don't believe there's a

11 private cause of action there If there is a cause of action, I

12 believe it's one --

13          THE COURT:  Isn't it a violation I mean you call it a

14 violation of Roberts Rules of Order.  Isn't it really a

15 violation of the bank's charter or something or other that says

16 that we're going to run our meetings by virtue of Roberts

17 Rules?

Page 20

Bender2906

18          MR. STRAND:  Broadly phrased I think that's correct,

19   Your Honor. Our position is that the Bank's claim, not

20   Mr. Bender's personal claim and that he lacks standing assert

21   that on his own behalf.  He has to assert it as a derivative

22   plaintiff under Rule 23.1.  And that Your Honor has already

23   found back in January of '04 that Mr. and Mrs. Bender may not

24   be appropriate 23.1 representatives because of the differences

25   between the Benders and other shareholders, and we'll be moving

26

1   on that ground.

2          Plus, Your Honor, I have a fundamental problem and I

3   could not find a D.C. case on it.  But we found a Third Circuit

4   case.  The Consular case which is at tab two of the materials I

5   put before Your Honor.  If you look at internal Page 11 of

6   that.  It talks about a situation in this particular instance a

7   TRO, where a plaintiff came before the Court seeking a TRO, but

8   did not have adequate evidentiary support for that TRO and

9   requested discovery, and the Court took a very dim view of

10   that.  I think the same is true here that if Mr. Bender comes

11   before --

12          THE COURT:  I think that would be true if we were

13   trying to get a TRO.  Mr. Bender is trying to get a preliminary

14   injunction.  I think that those are different and the time

15   frame for a TRO and a preliminary injunction are different.  If

16   you come in and you want a TRO, but you want discovery before

17   you meet the standards, well I mean please file your lawsuit

18   and go do your discovery.  Because the TRO imposes such time

19   limitations on the Court and the parties.

20          MR. STRAND:  I happen to think the same is true with

21   the preliminary injunction, Your Honor, because of the

22   extraordinary nature of that relief.

23          THE COURT:  Yes, but it's not quite a TRO.  You must

Page 21

Bender2906

24  admit.

25              MR. STRAND:  We will be advancing that position also,
                                                                    27
1  Your Honor, and there may be others.

2              THE COURT:  Since I haven't read the case, I'm not

3  meaning to disagree with the Third Circuit for whom of course I

4  have immence respect and admiration and great joy to be able to

5  kneel at their feet and read their decisions.

6              MR. STRAND:  That may have been over the line and

7  cranky, Your Honor.

8              THE COURT:  I'm sorry, seems to me that TROs and PIs

9  are slightly different.  So it's your position or it's going to

10  be your position that as a matter of law none of the counts

11  that are on, which Mr. Bender would base his preliminary

12  injunction are proper counts for that purpose?

13             MR. STRAND:  Correct, yes.

14             THE COURT:  I mean he either doesn't have standing or

15  he hasn't advanced the proper claim or he's not the one or

16  something?

17             MR. STRAND:  Right.  He's pled some of them on

18  information and belief I'm aware of the Cobell says that says

19  that's enough.  I have problems with the evidentiary element of

20  that.  But yes, that's our position.  As a matter of law he

21  doesn't have enough to go forward with.  And he can't meet the

22  four requirements for preliminary injunctive relief.

23             THE COURT:  Part of his desire to have some discovery

24  is to flesh that out, right?  If he has a basis to sue in the

25  first place.
                                                                    28
1              MR. STRAND:  If he has a basis to sue in the first

2  place.  But I'm sure that the Court is well aware that the

3  Courts don't count in fishing expeditions, you don't file your

4  lawsuit and then go out and see what you can find.
                              Page 22

Bender2906

5    THE COURT:  I agree with that.  But it's certainly
6  more than a speaking complaint.  It certainly meets the
7  standard for a complaint.
8    MR. STRAND:  I understand that Your Honor.  I note
9  its pleading, it's well beyond that.  If you look at some of
10  the critical allegations there on information and belief.
11  There's not a lot of fact pled on those critical allegations.
12  I believe that the evidence as least as far as I've been able
13  to uncover in the brief period of time that I've been in the
14  case suggests there's nothing to that, but that awaits another
15  day.
16    THE COURT:  Well, yes, that's getting to the merits
17  of this.  I think that I need somebody who speaks for the bank
18  to tell me whether or not the bank has determined when its
19  annual meeting will be.
20    MR. STRAND:  I happen to know the answer to that
21  question.
22    THE COURT:  Okay.
23    MR. STRAND:  I don't want to speak for the bank, but
24  I just know the answer to the Court's question.
25    THE COURT:  You can answer the question.
                                                    29
1    MR. STRAND:  My understanding, Your Honor, is that
2  tentatively and this is non-public information so I would ask
3  that it be kept non-public please.
4    THE COURT:  And the gentlemen in the back is a Judge,
5  so he's fully respectful.
6    MR. STRAND:  I understand, Your Honor, the date that
7  had been discussed was May 17th.  And my view, Your Honor, in
8  working on the discovery schedule that Mr. Bender, Mr. Cooter
9  had talked about is that we could file our various papers and
10  get a resolution if necessary, have a hearing and get a
                            Page 23

Bender2906

11   resolution of that in early March and still have more than

12   adequate time to do whatever discovery needed to be done

13   between then and May.

14        THE COURT:  So you're talking about your filing your

15   essentially your motions to dismiss.  When would you file that?

16        MR. STRAND:  What I had proposed, Your Honor, was to

17   file our answer on the 15th and then the motions to dismiss

18   and/or other response to the preliminary injunction application

19   on February 22nd.  We would try to do better than that.

20        THE COURT:  I should tell you all that I start a 10

21   to 12 week criminal trial on March 6th.  So that hearings in

22   this matter may have to take place at midnight.

23        MR. STRAND:  Are you happy or cranky at midmight,

24   Your Honor?

25        THE COURT:  I'm very cranky at midnight.  You really
                                                            30
1    want to be here at five in the morning if you want happy.

2    Cranky you know at midnight it's too late.

3         MR. STRAND:  I'm good for 5 o'clock in the morning.

4    I know that from my brief association from Mr. Cooter that's

5    his favorite time of the day too.

6         THE COURT:  We'll do it on FTR Gold so that we don't

7    to have court staff here at ungodly hours.  All right,

8    March 22nd is when you would propose to file a motion to

9    dismiss on the basis that you described.

10        MR. STRAND:  February.

11        THE COURT:  I wrote down February, I really promise I

12   did.  When would if we adopted this approach, Mr. Cooter, when

13   would you, you have to answer.  You have to get up, you have to

14   get up and say why this is all wrong.

15        But let me ask you a scheduling question.  If you got that

16   brief on the 22nd when would you be able to respond to it?

Bender2906

17          MR. COOTER:  Well, I haven't -- it's hard for me to
18   do this in after.  I haven't seen the brief.  We get 15 days
19   under the rules which is not a long time and frankly I'm going
20   to be in trial for the first week of March.  So I mean you know
21   effectively what this schedule does, by the time we file a
22   reply or an opposition, he files a reply and the Court has time
23   to hear us, okay we've wasted a month, practical matter.  And
24   the problem I'm having is that while I'm perfectly happy to
25   meet his briefs with our briefs.  I'm hardly shocked to hear

                                                                    31

1   defendants say that we don't have a case, that's not unusual.
2   I'm happy to meet his briefs with our briefs, but why can't we
3   just get the show on the road with respect to discovery.
4   Because of the provisions of the rule, the local rule, and I'm
5   not quarreling with the local rule, we've lost a month now.
6   Now I've heard what I expected to hear the bank anticipates to
7   efficient this year.  May the 17th and we've got a lot of work
8   to do between now and that date.  And there's nothing to
9   suggest that these things can't happen in tandem.  I don't have
10   a problem with his briefing schedule.  We'll be happy to meet
11   it.  What I have a problem with is no discovery.

12          THE COURT:  I'm not sure that they can't happen in
13   tandem as well.  But let's take one thing at a time.  If the
14   motion to dismiss were filed on the 22nd, then the response
15   would be due on about March 8th, which is the middle of the
16   first week of March.

17          MR. COOTER:  If the Court is in trial and you're not
18   going to be able to hear us anyway, I would ask you to give us
19   more time because I'm not going to be here that week.  I'm
20   going to be away trying a case.

21          THE COURT:  We can give you another week, is that far
22   enough?

                           Page 25

Bender2906

23          MS. HUDSON:  That's fine, Your Honor.

24          THE COURT:  The 15th is that enough?

25          MS. HUDSON:  The 15th of?

32

1          THE COURT:  Of March.

2          MS. HUDSON:  I think that will be fine, Your Honor.

3          THE COURT:  Mrs. White, can you look at our schedule

4   on the 17th or the 24th of March.

5          THE DEPUTY CLERK:  March 24th, at 2:15.

6          THE COURT:  March 24th at 2:15.

7          MR. STRAND:  For a hearing on the preliminary

8   injunction application?

9          THE COURT:  No, no, for a hearing on your motion to

10  dismiss.

11          MR. STRAND:  Fine, 2:15 March 24th, motion to

12  dismiss.

13          MR. COOTER:  That's fine with us Your Honor.

14          THE COURT:  The motion to dismiss will be filed no

15  later than March 22nd and the response will be filed no later

16  than March 15th, February 22nd, March 15th and then we'll have

17  a hearing on March 24th at 2:15.

18          And being advised ahead of time, I will hopefully be able

19  to rule pretty immediately on which parts of any of the

20  complaint or the kind of things that Mr. Bender as plaintiff

21  can advance.

22          The next question is whether or not any discovery at all

23  ought to be conducted in the time period between now and

24  March 24th.  The position of the defendant's is that none

25  should be conducted because there's no basis for the lawsuit,

33

1   correct? Did I get that right?

2          MR. STRAND:  That's correct, Your Honor.

Page 26

Bender2906

3          THE COURT:  And the position of Mr. Bender and

4  Mr. Cooter is of course that you need it.

5          Why don't you come forward and argue a little bit about

6  whether or not you have jurisdiction or private right of action

7  under 13 D and a private right of action under Section 14.

8          MR. COOTER:  The counts morph in to one another.  The

9  Court heard all it needed to hear from us on 13 D.  There's no

10  monetary, from the last time I learned more about it than I

11  ever wanted to know.  I'm entitled to no monetary damage.  But

12  to the extent that there are 13 D violations in the context of

13  an ongoing proxy fight, the 13 D violations do give rise to the

14  ability of the Court to undue that which was done.

15          The proxy rules are the same.  They proxy rules are

16  designed to protect the wake of the competitors or competitor.

17  And to the extent that they put up false and misleading proxys,

18  certainly that gives us the ground to come in.  The bank would

19  never come in in a proxy fight because a bank is an institution

20  and wouldn't care.  That fight is ours.

21          We have a breach of fiduciary duty count.  I don't think

22  that there can be any serious question that the directors in

23  this jurisdiction in this context of a breach owe a fiduciary

24  duty to minority shareholders, and as a part of that they would

25  have a duty to comport themselves in accordance with the law

                                                                34

1  generally.  And in accordance with the bylaws which incorporate

2  Roberts Rules of Order.  Not so much a question that you can

3  sue somebody for a violation of Roberts Rules and get monetary

4  damages.  It's a question of as shareholders are entitled to

5  protection of our own bylaws which incorporate Roberts Rule.

6  I'm not here to argue a motion to dismiss today.  I frankly

7  hadn't thought about all of these things because to my way of

8  thinking this being a scheduling conference, the only grounds

Bender2906

9   is that -- and on the fiduciary duty count, I don't even think

10  it's close.

11      There's also an aiding and abetting Mr. Batiese in

12  defamation which let's assume the directors aided and abetted

13  Mr. Batiese.  There's no question it states that there is such

14  a thing as aiding and abetting and that defamation is a count.

15  Assuming that they did that, there's no question but that the

16  -- first of all that we'd have the standing to bring it.  And

17  that it would be among the equitable powers of the Court to

18  prevent the bank from paying for it.

19          THE COURT:  Do I have jurisdiction over that?

20          MR. COOTER:  Sure, its' pending.

21          THE COURT:  Well, it is now.  If we didn't have, if

22  the Section 13 D and Section 14 counts weren't here.  The rest

23  of it is all common law right?

24          MR. COOTER:  In my first foray into this courtroom.

25          THE COURT:  Yes.

                                                          35

1           MR. COOTER:  We had filed something in the Superior

2   Court.

3           THE COURT:  Yes.  I remember.

4           MR. COOTER:  I said you don't have no jurisdiction.

5   You said yes I do it involves the affairs of a national bank.

6   I said well I don't agree with you, but that's the whole basis

7   on which we've gone forward.  I would look forward to this bank

8   who asserted that position in the first place to say you don't

9   have jurisdiction.

10          THE COURT:  Yes, it's amazing.

11          MR. COOTER:  The answer is yes, you have

12  jurisdiction.  I've come around to your point of view.  The

13  problem --

14          THE COURT:  It's wonderful about being a Judge, you

Page 28

Bender2906

15  know, it just makes you smart.

16      MR. COOTER:  I have every reason to believe that the

17  Court was smart before it was the Court.

18      THE COURT:  Oh, that's very kind of you to say.

19      All right, what you want to do is start up some discovery.

20  And whether the discovery is relevant to the defamation claim

21  or the discovery is relevant to the breach of fiduciary duty

22  claim or the discovery is relevant to the fight between proxies

23  or whatever, you want to start discovery.

24      MR. COOTER:  Absolutely.  So that essentially if he

25  turns out to be right, he's right.  He won't be.

                                                           36

1       But the only basis not to have discovery is to assume

2   today that he's right.  If we have discovery we can do --

3       THE COURT:  You're both turning out -- what he's

4   asking for then is a TRO against the furtherance of the case.

5       MR. COOTER:  That's right.  By the way, I didn't

6   bring a TRO for a very good reason.  I'm not going to bring a

7   TRO until I'm ready to bring a TRO.

8       THE COURT:  I'm absolutely sure you had a good reason

9   Mr. Cooter.  You never act without a good reason.

10      MR. COOTER:  All I want is a discovery schedule.

11  We'll do his briefing.  I expected to do that anyway.  Is a

12  discovery schedule that will essentially -- I don't see that

13  there's much difference for purposes of this case, between the

14  discovery for the case and the discovery for preliminary

15  injunction.

16      THE COURT:  No, it's probably like the last one.

17  Probably like the last go round where what needed to be known

18  for the preliminary injunction was almost not quite, but almost

19  what would need to be known for.

20      MR. COOTER:  If we start now, we sat back and waited

Page 29

Bender2906

21  in deference to the local rule.  If we start now that gives,

22  assume mid February it gives us March and April and into May a

23  little bit to get ready for an injunction hearing prior to the

24  next annual meeting.  I mean that's literally the time we have

25  to work.

37

1       THE COURT:  Well, and the problem I have with coming

2  too close to the next annual meeting is that if there's a proxy

3  fight, as there may well be over board nominees for the next

4  annual meeting, we know only too well that OTS has a tendency

5  to sit back and wait and wait and wait.  And then at the very

6  last second when everybody has already spent all of the money

7  and rented the hall, and issued the ballots and all of it OTS

8  comes in and says oh, wait don't do it today.  That has

9  happened to this bank about four times.  And I really don't

10  want that to happen again.

11       MR. COOTER:  As a practical matter, the bank can

12  agree.  Obviously it's never felt this since of urgency before

13  to simply push off the annual meeting until sometime after

14  May 17th.  If they do terrific.  If they don't we may have to

15  come to you on that issue, that limited issue.

16       THE COURT:  So I suggest that the representatives of

17  the bank open your their ears say, oh, well we can always talk

18  to the bank about that.  And talk to our clients about that and

19  they may choose or not choose to do it and I'm not going to

20  order them one way or the other.

21       But I do want to be able to get this dispute to the point

22  of decision on a very expeditious basis, because this

23  institution needs some resolution of these issues.  All parties

24  need resolution of these issues.  But the institution has sort

25  of been hanging out there, and just as an institution putting,

38

1  all of the people can argue all they want.  But the institution

Bender2906

2  needs a resolution of these issues.  So I am going to order

3  discovery to start.  I think that there's no reason not to and

4  we can decide the legal issues that are raised by the motion to

5  dismiss on or immediately after the hearing in March and that

6  way if the case gets dismissed people haven't actually been too

7  far out.

8          How many depositions did you think you need?

9          MR. COOTER:  Actually I think that this case is a,

10  factually it's more complex than the other one.  But having

11  said that, it's a relatively short amount of time and a

12  relative discreet number universe of witnesses.  Apparently we

13  agreed the last time to 18.  It's hard for me to imagine more

14  than 18.  But I would simply ask that we adopt what we agreed

15  to do the last time, eighteen between both sides.  I don't

16  think there's going to be any more than that.

17          THE COURT:  That was Mr. Schropp's agreement to 18

18  which is probably which is nine each.

19          MR. STRAND:  Your Honor, I must confess that I have

20  not gotten into the case enough to know how many fact witnesses

21  there may be.  I really, I don't know if 18 is way too few, way

22  too many or about right.  I really truly don't know.  If the

23  Court said let's start discovery I want to take 18 next week.

24  Can we get back to the Court with a more factually based

25  recommendation on the number so that we don't have to come back
                                                    39

1  to you in month's time to say we need more.

2          THE COURT:  We can do it either way.

3          MR. COOTER:  You don't have to put any limit at all,

4  leave it to the good judgment of counsel.  The problem with

5  this is we're not going to agree.

6          THE COURT:  This is the problem, but I'm perfectly

7  willing to enter an order and then have you -- let me tell you

Page 31

Bender2906

8  about my scheduling orders.  There are two important things in

9  my scheduling order besides the schedule.  One is a paragraph

10 that directs everybody to conduct themselves in a civil and

11 polite and professional fashion.  I'm sure you don't need this

12 instruction, but some people do.  And I actually police it.  If

13 you're having trouble let me know, and I'll be happy to beep up

14 on somebody because I know how to do that.

15     The second thing is I don't want people filing discovery

16 motions.  It is a total waste of time and your client's money.

17 If you have a discovery dispute, let's do a telephone

18 conference call.  We can talk for 15 minutes and I can help you

19 with it.  If I can't help you in 15 minutes, we can come in

20 person if it's necessary or you can always write it down if

21 that's necessary.

22     But we can cut through more gordian knots by getting on

23 the telephone together than you can imagine.  So when I say I'm

24 going to issue an order and put 18 in it and you decide you

25 need more, that's not a complicated thing.  You don't have to

                                                        40

1  write down a motion and we get a response and a reply and wait

2  and hope that I see it some day.

3          MR. STRAND:  And Your Honor --

4          THE COURT:  See how easy that is?

5          MR. STRAND:  I didn't mean to be intransigent on

6  that.

7          THE COURT:  No, no you weren't being intransigent.

8          MR. STRAND:  I recognized the Court's earlier

9  admonition about requests for continuances will be denied.

10         MR. COOTER:  Except for good cause.  So if you want

11 to set a number.

12         THE COURT:  Continuances and the extensions of

13 discovery or whatever -- I mean listen, what we need to do is

                        Page 32

Bender2906

14  focus on bringing this dispute to the point at which we might

15  actually help it to resolution.  Whether the Court is the right

16  place for that resolution or whether it has to happen in the

17  shareholders meeting, that's probably in the shareholders

18  meeting, to be perfectly frank, but the legal issues can only

19  be decided by me.  So let's actually focus on getting that done

20  in a timely way.

21          MR. STRAND:  If you want to say 20, it's just a round

22  number or fewer.

23          MR. COOTER:  That's fine.

24          THE COURT:  Twenty is fine.

25          MR. STRAND:  We can all agree if there's really a

41

1  need for more than that which I don't believe should be.

2          THE COURT:  Twenty.

3          MR. COOTER:  I hope the Court will recall Mr. Strand

4  was actually with us in the first go round, in the first case.

5          THE COURT:  Isn't that nice.

6          MR. COOTER:  On behalf of the bank because it was in

7  for the insurance company.  We reacquainted ourselves.  I hold

8  him in high regard.  We will have no problem being civil.

9          MR. STRAND:  We have been civil.  We may quarrel like

10  mad, but we've been civil.

11          THE COURT:  Good.

12          MR. STRAND:  I don't think that will be a problem.

13          THE COURT:  Good.  Twenty depositions, 25

14  interrogatories is that enough?

15          MR. STRAND:  Sure, number of subparts, Your Honor,

16  none or 25 including subparts?

17          THE COURT:  Including subparts.

18          MR. STRAND:  Thank you, Your Honor.

19          THE COURT:  Answers in 21 days?

Page 33

Bender2906

20          MS. HUDSON:  That's good.

21          MR. STRAND:  That should be adequate.

22          THE COURT:  We will have a preliminary injunction

23  hearing set in, I'd like to do it in late April.  If there's

24  any way that we can do that Mrs. White.

25          THE DEPUTY CLERK:  Yes, Your Honor.  April the 28th

42

1  at 2 p.m.

2          MR. COOTER:  I didn't hear that.

3          THE DEPUTY CLERK:  April 28th at 2 p.m.

4          MR. KALBIAN:  Haig Kalbian on behalf of the bank.

5  I've just gotten involved.  I believe I heard it from both

6  attorneys that the bank is a nominal defendant.  There's a good

7  chance that I'm going to be overseas the end of April or

8  beginning of May.  If the Court will excuse me from having to

9  appear.  I don't think the bank has as dog in that fight.  And

10  I certainly don't want to be having the bank being a nominal

11  defendant for my schedule to be a stumbling block.

12          THE COURT:  Is there someone else from your office

13  who could be here to represent the bank's interest just to know

14  what's going on?

15          MR. KALBIAN:  Yes, I could send somebody, yes.

16          THE COURT:  It seems to me that would be the better

17  course.  They may not -- I don't know how prepared they need to

18  be or what questions or whatever, but you will know as we go

19  through discovery whether anything is getting at all close to

20  the bone.

21          MR. KALBIAN:  Again, it's not finalized yet.  But

22  it's a -- I was trying to leave that period of time open, but

23  I'll know in a couple of weeks.

24          THE COURT:  Okay.  Since my schedule is unfortunately

25  and completely jammed to find that April 28th at 2 p.m. is

Page 34

Bender2906
                                                                43

1  available is a godsend, so I think that we should grab that

2  date and time if we can.

3          MR. COOTER:  Your Honor, I hate to say this I'm

4  scheduled to be in a pretrial in Fall River Massachusetts of

5  all places on that day, but if that's the only day I'm going to

6  take this one.

7          THE COURT:  I only have Fridays for the whole period

8  of the spring.  And if we move into May we get closer to the

9  day the bank wants to hold this board meeting and proxy stuff

10  goes out and --

11          MR. COOTER:  I'll have somebody else take care of

12  Massachusetts.  The issue is then the length of the hearing.

13  It's an evidentiary hearing.  I suspect it's a two day, not a

14  one day hearing.  For what it's worth.  I know that the last

15  one took two days, actually it took about a day and a half to

16  get the evidence in.

17          THE COURT:  Right.  The earliest I can start on that

18  day is 10:45.  So I could at least start at 10:45 on the 28th.

19  Then I'm in this other trial.  We could do it on the 21st and

20  28th.

21          THE DEPUTY CLERK:  On the 21st counsel we would start

22  at 10:30.

23          MR. STRAND:  Ten-thirty on the 21st.

24          MR. COOTER:  That's agreed.

25          THE DEPUTY CLERK:  And 10:45 on the 28th.
                                                                44

1          MR. COOTER:  That's agreed.  Thank you.

2          MR. STRAND:  Good.

3          THE COURT:  Okay.  If there's testimony or anything

4  that you can stipulate to arising from the depositions or

5  something, that of course would save time in the presentation

Page 35

Bender2906

6  of evidence.  If you're able to reach any such stipulations and

7  get those things to me before the hearing even begins that

8  would be of great help because I'm going to be working this

9  other case.

10      So we'll have the preliminary injunction hearing to start

11  at 10:30 on the 21st of April and to start 10:45 on the 28th of

12  April, okay.

13          MR. COOTER:  That's fine, thank you, Your Honor.

14          MR. STRAND:  That's agreeable.

15          MR. KALBIAN:  Thank you.

16          THE COURT:  Great, thank you.

17                        -oOo-

18

19

20

21

22

23

24

25

1                      Certificate

2          I certify that the foregoing is a true and correct

3  transcript, to the best of my ability, of the above pages, of

4  the stenographic notes provided to me by the United States

5  District Court, of the proceedings taken on the date and time

6  previously stated in the above matter.

7          I further certify that I am neither counsel for,

8  related to, nor employed by any of the parties to the action in

9  which this hearing was taken, and further that I am not

10  financially nor otherwise interested in the outcome of the

11  action.

Page 36

Bender2906

```
12
13
14
15     _____              _____
16     Crystal M. Pilgrim, RPR                   Date
17
18
19
20
21
22
23
24
25
```