## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Morton A. Bender, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | **C.a. No. 1:06cv00092** |
| **Carolyn D. Jordan, et al.,** | ) | **(RMC)** |
| | ) | |
| **Defendants** | ) | |

### PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT DIRECTORS AND THOMAS BATTIES' MOTION TO DISMISS COUNTS I - IV OF THE COMPLAINT

Plaintiffs Morton A. Bender and Grace M. Bender (the "Benders"), by and through their undersigned counsel, hereby submit this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss filed on behalf of Defendants Carolyn Jordan et al. ("the Director Defendants") and Defendant Thomas Batties, and state in support thereof:

### INTRODUCTION

The one point on which the Benders and Defendants agree is that they share a long history. Indeed, throughout his seven-year tenure as a shareholder of Independence Federal Savings Bank ("IFSB" or "the Bank"), Plaintiff Morton Bender has struggled mightily to promote the financial health of the institution while protecting his own substantial investment in the Bank. This has proved no easy task. As this Court is acutely aware, these parties have been here before on issues relating to stock ownership and management of IFSB. IFSB has also been before this court for its role in the 2003 scandal involving the District of Columbia teacher's union. When Morton Bender sought

to redirect the Bank's disastrous course, his efforts were met with hostile and aggressive

tactics designed to scare the other shareholders into voting for the Management

Nominees to the Board. The Defendants' tactics included delays of the annual meeting

both prior to the eventual October 2005 meeting (Complaint, ¶¶ 12-17), and on the day of

the meeting . (Complaint, ¶ 32).  They made agreements to purchase additional shares of

stock without making the appropriate 13D filings (Complaint, ¶¶ 40-48), and

disseminated misleading Proxy Materials to the shareholders in violation of Section 14(a)

of the Exchange Act, and 12 C.F.R. § 569 . (Complaint, ¶¶ 50-65).  Plaintiff Bender has

been  labeled a bully (Complaint, ¶ 60), a racist (Complaint, ¶ 23), and a scofflaw (*id*.)

Plaintiffs have brought this lawsuit to remedy these wrongs, and to prevent future

ones, *i.e.,* to permit a fully informed shareholder vote for the IFSB Board.  Accordingly,

Plaintiffs' goals here are straightforward:  they seek the intervention of this Court to

force the Bank and the Director Defendants to comply with applicable federal securities

laws, to void the actions taken by the Defendants in violation of those laws, and enjoin

any further such conduct, and to be held accountable in damages for their failures to

Plaintiffs as shareholders with 21% ownership of IFSB stock.   In their Motion to

Dismiss, the Director Defendants and Defendant Batties purport to challenge the legal

underpinnings of Counts I through IV of the six claims brought by the Benders.[1]  As set

forth below however, their motion must be denied.

## ARGUMENT

### I.    The Standard of Review

---

[1]   Defendant IFSB challenges the allegations of Count VI in another motion to dismiss,
to which Plaintiffs respond separately.  Defendants apparently accept that Count V
(Defamation and Aiding and Abetting Defamation by Defendant Batties) states a valid
cause of action.

Defendants have asked this Court to dismiss Counts I – IV pursuant to Fed.R.Civ.P. 12(b)(6).  Dismissal is not proper, however, unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  *Cowin v. Bresler* , 741 F.2d 410, 413 n. 3 (D.C. Cir. 1984) (citing *Shear v. National Rifle Ass'n of   America* , 606 F.2d 1251, 1253  (D.C. Cir. 1979)); *see also* *Alexis v. District of Columbia* , 44 F. Supp.2d  331, 336-37 (D.D.C. 1999).   The threshold issue is not whether the plaintiffs will ultimately prevail on their Complaint, but whether or not they are entitled to present evidence to support their claims. *See Kowal v. MCI Communications Corp* ., 16 F.3d 1271,1276 (D.C.Cir.1994).

## II.    Plaintiffs' Claims Under Section 13(d) (Count I) Should Not be Dismissed

Section 13(d) of the Exchange Act provides that "when two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issue, the group formed thereby shall be deemed to have acquired beneficial ownership . . .of all equity securities of that issuer beneficially owned by an such person."  Within ten days of acquiring more than five percent of the issuer's securities, the group must file a Schedule 13D statement with the company's primary regulator and with any exchange where the security is traded. 15 U.S.C. Sec.78m(d)(1); *SEC v. Bilzerian* , 29 F.3d 689,692 n.3 (D.C. Cir. 1994).   A primary purpose of Section 13(d) is to alert and inform the company, its shareholders, and the investing public generally regarding accumulations in stock that might indicate a potential shift in corporate control or a potential change in the company's direction, and to compel full disclosure of information critical to shareholders in making informed investment decisions. *General Aircraft v. Lampert* , 556 F.2d 90, 94-95 (1st. Cir. 1977).  It is

undisputed that, despite their acquisition of shares of IFSB stock that exceeded the five percent rule, the Defendant Directors and Defendant Batties did not file a Schedule 13D. Accordingly, Plaintiffs seek relief from this Court by way of injunction to require the Defendants to comply with their legal obligations under Section 13(d), and to void the results of the tainted election that followed.

Defendants first argue that there is no implied private right of action for damages under Section 13(d) of the Securities Exchange Act. But that issue is of no moment here because Plaintiffs do not seek *damages* under Section 13(d). (Complaint, ¶ ¶ 47-48; Request for Relief subparts (A) & (B)). In fact, the allegations in Count I specify that "Plaintiffs have no adequate remedy at law", *i.e.,* that they are not seeking monetary compensation for Defendants' violations of Section 13(d). (Complaint ¶ 49). [Plaintiffs' counsel also acknowledged this at the status conference in this case (Exhibit B to Defendants Motion to Dismiss, at 27)]. Thus, whether or not Section 13(d) permits an implied private right of action for damages is a non-issue in this case, and this Court need not reach a determination on that question.

Defendants also appear to argue, however, that although it remains an "open issue" whether an issuer of securities, such as IFSB, can maintain a cause of action under Section 13(d) for injunctive relief,[2] Plaintiffs as *individual shareholders*, have no such right of action under section 13(d). Defendants' approach here is completely wrongheaded. The federal securities laws were designed for the *very purpose of protecting the individual purchaser or seller of stock.* *See J.I. Case v. Borak*, 377 U.S.

---

[2]   Of course, Defendants have to maintain that it is an "open issue" whether a corporate issuer of securities can bring a 13(d) action – since it brought that very claim against Plaintiffs in 2004. *See IFSB v. Bender*, 332 F.Supp.2d 203 (2004).

426 (1964) (the possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of securities laws); *Chris-Craft Industries, inc. v. Piper Aircraft*, 480 F. 2d 341, 357 (2d Cir. 1973) *cert denied*, 414 U.S. 910 (1973) (subsequent history omitted) (in enacting the public securities laws Congress was concerned about the plight of the "average public investor").  Indeed, "Section 13(d) was created as 'a broad disclosure provision to give shareholders and the market notice of potential changes in corporate control.'" *Independence Federal Savings Bank v. Bender*, 332 F.Supp.203, 213 (D.D.C. 2004) *(quoting SEC v. First City Financial Corp*, 688 F.Supp. 705, 724 (D..D.C. 1988), *aff'd*, 890 F.2d 1215 (D.C. Cir. 1989)).  As the legislative intent of the statute makes clear, if anyone is entitled to bring a private right of action under section 13(d), it is an individual investor. *See Dan River Inc. v. Unitex Ltd*, 624 F.2d 1216, 1222 (4th Cir. 1980) (individual stockholders are within the particular class intended to be protected by Section 13(d)); *see* also *Grow Chemical Corp.v. Uran*, 316 F.Supp. 891 (S.D.N.Y.1970) (individual stock purchaser suing for damages and injunctive relief under Section 13(d) has stated a claim upon which relief may be granted).

Despite the clear legislative purpose of Section 13(d) , Defendants now assert that there is no private right of action – not even for injunctive relief – for an individual shareholder under Section 13(d). (Defendants' Memorandum at 4). Defendants argue the current case law in this Circuit extends the opportunity to bring such an action under 13(d), if at all, only to an "issuer of securities." (*Id*.)  In essence, Defendants argue that Plaintiffs, as "mere shareholders", do not have standing to bring a claim for injunctive relief under 13(d).  This is simply wrong. The controversy over standing in a 13(d) claim is whether *a corporate issuer of securities* – not an intended beneficiary of the statute –

can nevertheless maintain an action under section 13(d). As the Fourth Circuit framed the issue in *Dan River* , "The district court found, and the defendants press the point on this appeal, that *section 13(d) was enacted for the sole benefit of stockholders* and not to provide "armament" to management in resisting takeovers or accumulations of the stock of corporations." 624 F.2d at 1222. (emphasis added). The *Dan River* court ultimately found that the corporate plaintiff did have standing to seek equitable relief under section 13(d) as have other courts. *Id*. at 1224; *see* *GAF v. Milstein* , 453 F.2d 709, 721-22 (2d Cir. 1971). But nothing in those holdings takes away the right of the individual shareholder to do the same.[3] In advancing their argument, Defendants rely primarily on two unreported district court opinions, *Berman v. Metzger* , 1981 WL 1596 (D.D.C. 1981) (not reported in F.Supp.), and *Woodward & Lothrop v. Baron* , 1984 WL 861, at *1(D.D.C. 1984). Neither of these cases, however, holds that a cause of action under 13(d) *for injunctive relief* brought by an individual shareholder is precluded by the law of this Circuit. In *Berman v. Metzger* , the plaintiff-shareholders brought a class action for damages under Sections 10(b) and 13(d) of the Securities Exchange Act. While rejecting their claim *for damages* under section 13(d), the court expressly noted that other "federal courts have recognized in section 13(d) an implied cause of action for injunctive relief." 1981 WL 1596, at *1; *Dan River, Inc. v. Unitex Ltd* ., 624 F.2d 1216 (4th Cir. 1980); *GAF Corp. v. Milstein* , 453 F.2d 709, 721 (2d Cir. 1971). While the *Berman* court indicates in dicta its displeasure with that line of cases, observing that after the Supreme Court's post-*Borak* rulings, "some courts have refused to allow even injunctive relief directly under

---

[3] In *GAF v. Milstein* , the Second Circuit noted, in its discussion of whether GAF had standing to bring a private right of action under section 13(d), "[c]learly, a shareholder has standing [under section 13(d)]." 453 F.2d at 719 n.21.

section 13(d)," 1981 WL 1596 at *1 (internal citations omitted), that is not the holding of

_Berman_. Because the plaintiffs in _Berman_ sought damages - not injunctive relief - the

court made no ruling on whether injunctive relief would be proper in that circumstance.

_Id_. at *1-3. Rather, it found that the plaintiffs were not entitled to _damages_ under 13(d).

      Likewise, the Defendants' reliance on _Woodward & Lothrop v. Baron_, 1984 WL

861, is also misplaced. It simply does not stand for the proposition, asserted by

Defendants, that "a private right of action for injunctive relief is available [under 13(d)],

if at all, only to an issuer of securities." (Defendants' Memorandum at 4). A careful

reading of the case reveals quite the opposite. In that case, the corporate plaintiff

Woodward & Lothrop, as the issuer of the securities, brought claims against the

defendants under section 10(b), 13(d), and for common law fraud. But, as the court

describes in the opening paragraph of its opinion, the complaint was amended "adding

individual shareholders as plaintiffs," and the defendants had apparently acknowledged

the "technical sufficiency of the shareholders' complaint . . . . " _Id_. at *1. Thus, the

motion to dismiss was brought only against the corporate issuer of securities and, when

the court ultimately dismissed two of its three claims, _the dismissal was only as to the

claims of Woodward & Lothrop_ [4] _– not the individual shareholders. Id._ at *2. Indeed, it

appears that the claims of the individual shareholders under Sections 10(b), 13(d), and for

common law fraud were allowed to proceed.[5] In rejecting Woodward & Lothrop's

---

[4]  Although it is not entirely clear from the language of the opinion, it appears that the
only claim of Woodward & Lothrop – the issuer of securities  - that _is_ allowed to go
forward is the Section 13(d) claim. In fact, it appears that the 13(d) claim was not even
the subject of the motion to dismiss. 1984 WL 861, at *1 (citing favorably _GAF Corp. v.
Milstein_, 453 F.2d 709 (2d Cir. 1971), _cert. denied_, 406 U.S. 910 (1972)).

[5]  It is also unclear which claims the individual shareholder -plaintiffs advanced, because
they were not the subject of the motion to dismiss. However, it appears from the court's

claims under 10(b), Judge Green commented:

> As plaintiffs' own complaint demonstrates, the information required in a 13(d) statement benefits investors in the marketplace [ ]: any injury to Woodward & Lothrop resulting from defendants' alleged failure to comply with Section 13(d) is indirect at best. Furthermore *the very presence of individual shareholders as plaintiffs in this action* undermines the argument that Woodward & Lothrop is uniquely able to assert the rights of its shareholders [under 10(b)].

1984 WL 861, at *1. (internal citations omitted) (emphasis added). Thus, there is no holding in the *Berman* or *Woodward & Lothrop* cases – or in any other case in this Circuit – which states that *only* an issuer of securities may bring a claim for relief under section 13(d). That is simply not the law in this Circuit or anywhere else. Thus, Plaintiffs as individual investors have standing to bring a claim for relief under section 13(d) and have validly stated a claim for injunctive relief pursuant to Section 13(d).

## III.    Plaintiffs Have Stated a Valid Cause of Action Under Section 14 (a) of the Exchange Act (Count II)

In Count II, Plaintiffs seek damages and injunctive relief pursuant to Section 14 (a) of the Exchange Act, and the rules and regulations thereunder, which govern the solicitation of proxies. These provisions mandate that no solicitation of a proxy be made that contains any statement that is false or misleading with respect to any material fact, or omits to state any material fact. Further, no solicitation may be made (by means other than proxy materials) that is false or misleading or omits to state any material fact necessary to make the statements not false and misleading. (Complaint, ¶ 51). "To prevail on a Section 14(a) claim, a plaintiff must show that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation . . . was an essential link in the accomplishment of the

---

discussion of the facts that the shareholders joined in all three claims, including the 13(d) claim. But that information is not specifically detailed in the opinion. Id. at *1-2.

transaction.'" *Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group*, 295 F.Supp.2d

75, 81-82 (D.D.C. 2003) citing *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir.

1982) (quoting *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375,385 (1970)). Defendants

apparently concede that Plaintiffs have met the first two elements of their 14(a) claim.

Defendants argue, however, that to meet the third "essential link" element, plaintiffs must

allege "shareholder reliance." (Defendants' Memorandum at 6). This is incorrect.

      In reaching their flawed conclusion that under 14(a) plaintiffs must "plead and

prove" that other shareholders were misled, Defendants unduly limit the Supreme

Court's holding in *Mills*, and misconstrue the D.C. Circuit's holding in *Cowin v. Bresler*,

741 F.2d 410 (D.C. Cir. 1984). (Defendants' Memorandum at 6). *Mills* was a class

action brought by shareholders under section 14(a), complaining that proxy solicitation

materials recommending a merger failed to disclose a conflict of interest. The proxy

contest was won by the alleged wrongdoers, who needed the votes of the minority

shareholders to attain their victory. In determining the causation principle to be applied,

the *Mills* Court found:

> Where there has been a finding of materiality, a shareholder has made a sufficient
> showing of causal relationship between the violation and the injury for which he
> seeks redress if, as here, he proves that the proxy solicitation itself, rather than the
> particular defect in the solicitation materials, was an essential link in the
> accomplishment of the transaction.

396 U.S. at 385. The *Mills* Court thus established "a presumption of reasonable reliance

in order to avoid an overly difficult burden of proof." *Chris-Craft v. Piper,* 480 F. 2d at

374 *(citing Mills*, 396 U.S. at 385). Contrary to the Defendants' contention, nothing in

the *Mills* opinion or elsewhere limits the presumption of reasonable reliance only to

class actions. *Id.* (the principle of constructive reliance "is particularly appropriate" in

class actions where proof of actual reliance by numerous class member would be impracticable).

In _Cowin v. Bresler_, 741 F.2d 410, the D.C. Circuit expressly rejected a reliance requirement in section 14(a) cases. As the _Cowin_ Court explained, nothing in the language of the statute or its regulations requires a finding of reliance:

> Both section 14(a) and Rule 14 a-9 proscribe in clear terms a specific form of misconduct. . . . Unlike section 10(b) and Rule b-5, neither section 14(a) nor Rule 14a-9 prohibits the unlawful conduct in connection with a particular activity; deceptive proxy solicitations are unconditionally proscribed. It cannot be said then that the language of the statute and the regulation constrains us to find reliance a necessary predicate to standing under section 14(a).

741F.2d at 426-27. After proceeding to examine the Supreme Court precedent and the underlying policy considerations of the Exchange Act and in particular Section 14(a), the _Cowin_ Court specifically _declined_ to impose a reliance requirement, concluding that to do so would "serve no legitimate policy... . " _Id_. at 427. The _Cowin_ Court's rejection of the reliance requirement is not restricted in any way. _Id._ at 428.

Defendants argue that the holding in _Cowin_ is limited to an individual plaintiff who brings a claim directly (as opposed to derivatively), and that a "non-relying" plaintiff must show reliance on the misleading proxy materials by other shareholders. (Defendants Memorandum at 6). But this argument finds no support in the D.C. Circuit opinion: Cowin _was_ a "non-relying" plaintiff, and yet the Court did not require a showing of reliance – either by Cowin or by the other shareholders. _Id._ at 426-28. Nothing in the _Cowin_ opinion limits its scope so narrowly. _Id._ at 427. Nor is there such a requirement in any other D.C. Circuit case, that to assert a valid cause of action under Section 14(a), a plaintiff must show that other stockholders relied on a defendant's materially misleading proxy materials.

The centerpiece of Defendants' argument on the reliance issue is another unreported district court case, _Berg v. First American Bankshares_, 1985 WL 2232 (D.D.C), First, the _Berg_ opinion is an unreported decision that is not binding precedent on this Court.[6]  Second, it appears in _Berg_ that the district court accepted the defendants' erroneous arguments that the _Cowin Court's_ rejection of a reliance requirement meant only that an individual plaintiff need not show his or her own individual reliance.  _Id._ at *6.[7] As to the "non-relying plaintiff" and his or her alleged obligation to show reliance by other shareholders, the _Berg_ court acknowledged the Supreme Court's opinion in _Mills_ and its progeny, holding that a constructive reliance approach may be adopted in certain circumstances. _Id._ (quoting _Mills_, 396 U.S. at 385).  Indeed, the _Berg_ Court acknowledged that the underlying reason for such a presumption was to "avoid the difficult burden of proving actual reliance by other shareholders." _Berg_, at *6 (citing

_____

[6] Judge Johnson's unreported decision, on which Defendants rely, was affirmed on other grounds by the District of Columbia Circuit in _Berg v. First American Banshares, Inc._, 796 F.2d 489 (D.C. Cir. 1986), a published opinion.  The Circuit Court affirmed Judge Johnson's dismissal on the grounds that the plaintiff had failed to raise a genuine dispute as to falsity and materiality.  The Circuit Court expressly declined to reach the propriety of Judge Johnson's resolution of the reliance issue: "[W]e need not reach the Court's alternative determination that Berg's complaint must be dismissed for failure to demonstrate reliance.  The issue of reliance in the federal securities law presents many complicated questions which this circuit has not yet fully addressed." 796 F.2d at 501 n.11.  Similarly, in _Kas v. Financial General Bankshares, Inc._, 796 F.2d 508 (D.C. Cir. 1986), the D.C. Circuit affirmed the District Court's determination that the proxy statement contained no material misstatements or omissions, and therefore it did not need to "reach the District Court's alternative holding that Kas's complaint must be dismissed because reliance could be neither proven nor presumed. We do note, however, that the District Court's discussion of reliance in connection with section 14(a) and Rule 14a-9 may conflict with this court's holding in _Cowin v. Bresler,_ 741 F.2d 410, 427 (D.C.Cir.1984), and the definition of materiality first set forth by the Supreme Court in _Mills v. Electric Auto-Light Co.,_ 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593." _Kas v. Financial General Bankshares, Inc._, 796 F.2d at 519 n.3.

[7]  As noted above, there is nothing in the _Cowin_ decision that limits the holding in that manner.

_Chris-Craft Industries, Inc. v. Piper Aircraft Corp_. 480 F.2d 341 (2d. Cir. 1973), *cert denied*, 415 U.S. 910 (1973) (subsequent history omitted); _Herbst v. ITT Corp_., 495 F.2d 1308, 1316(2d Cir. 1974)). Without analysis, the _Berg_ Court apparently accepted the defendant's premise that because _Mills_, _Chris–Craft_, and _Herbst_ were class action suits, the presumption of reasonable reliance must be limited *only* to class action cases. Berg, at *7. But those cases do not articulate such a limitation, and neither Defendants nor the _Berg_ Court cite to any cases in this Circuit – or elsewhere - to support such a limitation. *Id.* at *7; _see e.g., Chris-Craft_, 480 F.2d at 374 ((constructive reliance principle is "particularly appropriate" in class actions).

In addition, the _Berg_ Court dismissed the 14(a) claim in the context of a motion to dismiss that was brought alternatively as a motion for summary judgment. In dismissing the case, the _Berg_ Court noted that discovery in the case was complete and it was "the eve of trial" – clearly not the case here. _Id_. at *7. Accordingly, because of the case's procedural posture and, more importantly, its misinterpretation (with all due respect) of the _Cowin_ case, the _Berg_ decision should not be followed. Moreover, the very concept of a "non-relying plaintiff," who nevertheless must prove reliance by *other* shareholders, is a fiction that this court should dispose of promptly. The D.C. Circuit in _Cowin_, and other circuits as well, have embraced the more expansive view that reliance is simply not a required element under section 14(a). _Cowin_, 741 F.2d at 427; _Stahl v. Gibraltor_ 967 F.2d 335 (9th Cir. 1992); _Palumbo v. Deposit Bank_, 758 F.2d 113, 116 (3d Cir. 1985) (rejecting reliance requirement in section 14(a) cases)). As the Ninth Circuit reasoned in _Stahl_,

the touchstone of a section 14(a) violation is a material misstatement - something 'that a reasonable shareholder would consider . . . important in deciding how to

vote.' [  ] As materiality is an objective standard, *it should not matter whether any particular shareholder was actually misled* by the challenged misrepresentations.

967 F.2d at 337 (internal citations omitted) (emphasis added).

Plaintiffs here did not plead "reliance" because it is not a required element of a section 14(a) claim. Plaintiffs did allege, as required by section 14 (a), that Defendants' misleading proxy solicitations were material, caused Plaintiffs' injury, and were "an essential link in the accomplishment of the transaction," *i.e.*, essential to the shareholders' decisions with respect to voting at the Shareholder Meeting. *Atlantic Coast Airlines*, 295 F.Supp. at 81-82; Complaint, ¶ 64. Plaintiffs need not plead anything more to state a valid cause of action under Section 14(a), and accordingly, Defendants' motion to dismiss Count II must be denied.

## IV. Plaintiffs Have Stated a Valid Cause of Action for Defendants' Violations of IFSB's By-Laws (Count III)

In Count III of their Complaint, Plaintiffs have alleged that the manner in which the election of the IFSB's Management Nominees took place violated IFSB's own by-laws, and well as Robert's Rules of Order, which IFSB had adopted for conducting its shareholder meetings. As a result, shares in a number material to the outcome of the election were counted in favor of the Management Nominees (Complaint, ¶ 67), depriving Plaintiffs and other shareholders of a fair vote for the election of directors. *Id.* at ¶ 69. Plaintiffs seek injunctive relief on this claim, voiding the results of the tainted election. (*Id.*) Apparently Defendants do not dispute that Plaintiffs are entitled to have the board meetings conducted in accordance with IFSB's By-Laws, 12 C.F.R. § 552(a), and internal regulations such as Robert's Rules of Order. Rather, Defendants characterize Count III as a "question involving improper management," a claim that, defendants say,

must be brought derivatively. (Defendants Memorandum at 9).[8]

This argument is fundamentally flawed, however, because a claim for an injury that is unique to an individual shareholder may be brought directly. *See, e.g.,* Cowin, 741 F.2d at 415 (citing *Elster v. American Airlines, Inc.*, 34 Del.Ch.94, 99, 100 A.2d 219,222 (1953). Indeed, the *Cowin* Court discussed the circumstances under which a plaintiff-shareholder may bring a direct action for damages. 741 F.2d at 415-16. Those cases are discussed below in Section V, but need not be analyzed here, since Count III involves only a claim for injunctive relief.

In Count III, Plaintiffs seek injunctive relief, not damages. Granting an injunction is appropriate relief to address inadequate disclosures to shareholders as well as meeting irregularities. *See* e.g., *C.A. Cavendes, Sociedad Financiera v. Florida National Banks of Florida, Inc.*, 556 F. Supp. 254, 259 (M.D. Fla. 1982) (failure to conduct meeting in accordance with bylaws constitutes irreparable injury). *Woodward & Lothrop ,Inc.v. Schnabel*, 593 F.Supp 1385 (D.D.C. 1984) (shareholders entitled to temporary restraining order directing that a scheduled shareholder vote on a proposed merger be enjoined until such time as amended and accurate information regarding the proposed merger could be disseminated).[9]  A claim for injunctive relief in these circumstances

---

[8]   This case is distinguishable from *Cowin* on this issue in that Plaintiffs do not allege in Count III any claim for "corporate mismanagement," although Defendants characterize Count III as such. *Compare* *Cowin*, 741 F.2d at 412 (plaintiff seeking damages for corporate mismanagement) *with* Complaint at ¶¶ 67-69.

[9]   *See also* *ODS Technologies, L.P. v. Marshall*, 832 A.2d 1254, 1263 n.39 (Del. Ch. 2003) ("courts have recognized the need to enjoin a shareholders meeting rather than allow a tainted vote to occur"); *Staples*, 792 A.2d at 937, 960 (Del. Ch. 2001) (where proxy statement did not fully and fairly disclose all material facts relevant to an upcoming shareholder vote, a preliminary injunction was granted to delay the shareholder meeting until the defendants made corrective and supplementary disclosures).

maybe successfully brought by an individual shareholder. *See, e.g. , ODS Technologies, L.P. v. Marshall* , 832 A.2d 1254, 1263 (Del. Ch. 2003)  (individual stockholder entitled to preliminary injunction to enjoin corporation from proceeding with annual meeting until corrective disclosures were made regarding amendments to bylaws).

The cases cited by Defendants on this issue - primarily the *Cowin* decision - deal with claims by a shareholder plaintiff for injunctive relief *plus damages  for corporate mismanagement* , and are thus distinguishable on that point alone.  A claim "seeking monetary damages for improper management" belongs to the corporation and not to the minority shareholders. *Cowin*, 741 F.2d at 414.  But that is not the case here.  In Count III, Plaintiffs seek *injunctive relief*  voiding the tainted election and requiring Defendants to conduct a new one in accordance with IFSB's internal procedures. The requested relief will benefit all of the shareholders, even though they are not parties to this litigation, by providing a fully informed vote conducted in accordance with IFSB's own regulations. An injunctive remedy "specifically vindicates the stockholder right at issue – the right to receive a fair disclosure of the material facts necessary to cast a fully informed vote -- in a manner that later monetary damages cannot." *ODS Technologies* , 832 A.2d at 1263. The appropriate remedy here is an injunction, and that is exactly the relief sought by Plaintiffs in Count III.  Although it will indeed benefit the other stockholders, it need not be brought derivatively.

## V.     Plaintiffs Have Stated a Valid Claim for Breach of Fiduciary Duty (Count IV)

### A.  Plaintiffs have stated a Direct Claim for Breach of Fiduciary Duty

Citing to *Burman v. Phoenix Worldwide Industries, Inc    .*, 384 F.Supp.2d 316 (D.D.C. 2005), and *Cowin* ,  Defendants make the following over-broad assertion:

> In order to state a claim for breach of fiduciary duty, a shareholder must do so derivatively. [citing _Burman_ and _Cowin_]. No shareholder suffers a harm "independent of that visited upon the corporation and the other shareholders." _Cowin_, 741 F.2d at 414.

Memorandum at 11. The full cite from _Cowin_ reads as follows: "***Claims of corporate mismanagement must be brought on a derivative basis*** because no shareholder suffers harm independent of that visited upon the corporation and the other shareholders." 741 F.2d at 414. There is no "general rule" (Memorandum at 11) that "to state a claim for breach of fiduciary duty, a shareholder must do so derivatively" (Memorandum at 10).

It is well-established that a claim for fiduciary duty may be brought as an individual claim, if the shareholder suffers injury apart from that suffered by the corporation. _Cowin_, 741 F.2d at 414-15; _Burman_, 384 F.Supp.2d at 338. As the _Burman_ Court explained:

> An action brought by a stockholder is derivative if the gravamen of the complaint is injury to the corporation or to the whole body of its stock or property and not injury to the plaintiffs' individual interest as a stockholder. Conversely, direct action, or as some prefer, an individual action, is a suit by a stockholder to enforce a right of action existing in him. What these definitions attempt to convey is that a stockholder may bring suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders.

384 F.Supp.2d at 337 (quoting _Hodges v. Buzzeo_, 193 F.Supp.2d 1279, 1288 (M.D.Fla. 2202) (internal citation omitted). _See_ also _Cowin_, 741 F.2d at 414-15.

In Count IV, Plaintiffs allege that the Defendant Directors and Defendant Batties owe a fiduciary duty of care and loyalty to Plaintiffs, as minority shareholders of IFSB. (Complaint, ¶ 70-77). Specifically, Count IV alleges that by engaging in the unlawful conduct set out in Counts I – III, Defendants' "sole purpose . . . was to prevent any control of IFSB from passing to Plaintiffs. As such, *the injury suffered by Plaintiffs is an*

*injury not suffered by the corporation or the other shareholders*, and Plaintiffs' entire investment in IFSB has been put at risk." (Complaint, ¶ 76) (emphasis added).

Although Defendants struggle to argue that Count IV does not allege a "special injury," it is clear from the language of *Cowin* that the wrong complained of by Plaintiffs here is of the same type contemplated by the "second category" of cases described in *Cowin* – *i.e.*, those that consist of "wrong[s] inflicted upon [the stockholder] alone . . .or wrong[s] affecting . . . the stockholders and not the corporation... ." 741 F.2d at 415. In delineating this category, the *Cowin* Court described some examples of the kinds of special injury that are actionable individually, such as the wrongful withholding of stock dividends, or the denial of a shareholder's right to exercise voting control over a company. *Id.* at 415 *(citing Condec Corp. v. Lunkenheimer Co.*, 43 Del. Ch. 252, 230 A.2d 769 (1967)).

The Delaware Chancery Court opinion in *Condec* is particularly instructive on this point. There, the plaintiff had made a tender offer for what would have been a controlling percentage of defendants' stock. Condec's move to take control was thwarted, however, when the defendant's management contracted to sell its business to another company and issued 75,000 shares of new stock. 230 A.2d at 775. The *Condec* court found that "the primary purpose of the issuance of such shares was to prevent control of [the corporation] from passing to Condec," and allowed Condec to sue, on its own behalf, for cancellation of the additional shares. 230 A.2d at 775.[10] The *Cowin* Court

---

[10]    The plaintiff in *Condec* brought suit only for the cancellation of the stock. 230 A.2d at 777. The *Cowin* decision, however, specifically recognizes that a plaintiff alleging special injury can also bring a direct claim for damages. *See* 741 F.2d at 414-16; *see also Tooley v. Donaldson*, 845 A.2d 1031 (Del. 2004); *Dietrich v. Harrer*, 2004 WL 1739664 (Del. Ch. 2004).

relied on _Condec_, observing that, "the claim was properly remedied on an individual basis because the injury was the shareholder's alone, not shared by the corporation or other equity owners." _Cowin_, 741 F.2d at 416.

Like the plaintiff in _Condec_, Plaintiffs here have specifically alleged that the actions of the Defendant Directors and Defendant Batties in violating the securities and banking laws, as well as IFSB's By-laws and internal procedures, were undertaken purposefully "to prevent control of IFSB from passing to Plaintiffs." (Complaint, ¶ 76). As such, the injury suffered by Plaintiffs is an injury not suffered by the corporation or the other shareholders, and Plaintiffs' entire investment in IFSB has been put at risk. _Id._ Plaintiffs have presented in Count IV a specific and well-pleaded claim of injury for breach of fiduciary duty, which is unique to plaintiffs and not shared by the corporation or the other shareholders.

>    B.    Plaintiffs Have Pled Sufficient Facts In Support of Their <u>Claim for Breach of Fiduciary Duty</u>

Plaintiffs have alleged with that Defendants' wrongful conduct was aimed in particular at Plaintiff Morton Bender to prevent him, _inter alia_, from having the Bender Nominees elected, and as such is actionable by Plaintiffs directly, not derivatively. Contrary to Defendants' bald assertion at page 12, the "special injury" allegation set forth in Paragraph 76 is not an "mere inference" that is "unsupported by the facts." (Defendants' Memorandum at 12). Plaintiffs' claim for breach of fiduciary duty is not limited to the language of Paragraph 76. The factual underpinnings of Plaintiffs' claims are fully set out in the twelve pages of detailed Factual Background in the Complaint, and in the fifteen pages of allegations in the first three Counts, all of which are

incorporated by reference in Count IV through Paragraph 70.  Principal among the factual allegations are those set out in paragraphs 24 – 39 regarding the sales of IFSB stock by Defendants to ensure the defeat of the Bender Nominees.   The allegation of "special injury" – i.e, that the actions of the Defendants harmed Plaintiffs because those actions prevented control of the bank from passing to Plaintiffs, is not a "mere inference."  Even if it were an inference however, it is supported by the facts, not "unsupported" by the facts, and thus, must be construed in Plaintiffs' favor. *See, e.g. , Alexis v.  District of Columbia* , 44 F.Supp. 2d 331, 336-37 (D.D.C. 1999) (the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs have stated a valid claim upon which relief

may be granted in each of Counts I – IV of their Complaint, and accordingly,

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) should be denied.

Respectfully submitted,


COOTER, MANGOLD, TOMPERT
& KARAS, L.L.P.


_____/s/_____
Dale A. Cooter, Bar #277454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Defendants*
 *Morton A. Bender and Grace M. Bende* r

**<u>CERTIFICATE OF SERVICE</u>**

  I HEREBY CERTIFY that a copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Counts I-IV was sent electronically on the 15th day of March, 2006, to:

> Haig V. Kalbian, Esq.
> Brawner Building
> 888 17th Street NW
> Suite 1000
> Washington DC 20006
> hkalbian@kalbianhagerty.com
>
> Peter Strand, Esq.
> Shook, Hardy & Bacon, L.L.P.
> Hamilton Square
> 600 14th Street, N.W.
> Suite 800
> Washington, D.C. 20005-2004
> pstrand@shb.com

            _____/s/_____
            Dale A. Cooter