**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Morton Bender, et al.,                   :
                                          :
      Plaintiffs,                        :
                                          :   C.A. No. 1:06cv00092
v.                                        :   ( Rosemary M. Collyer)
                                          :
Carolyn Jordan, et al.,                   :
                                          :
      Defendants.                        :
                                          :

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COUNT VI**

Plaintiffs Morton Bender ("Bender") and Grace Bender, by and through their undersigned counsel, hereby submit this Memorandum in Opposition to the Motion to Dismiss filed on behalf of Defendant Independence Federal Savings Bank ("IFSB"),[1] and state as follows:

**INTRODUCTION**

Defendant IFSB is a federally chartered savings association, chartered under the Home Owners' Loan Act, 12 U.S.C. Sec. 1461 *et seq.*, with it principal place of business in the District of Columbia. IFSB is subject to examination and supervision by the Office of Thrift Supervision ("OTS"). Its stock is publicly traded on the Nasdaq Stock Market and is registered under Section 12(g) of the Securities Exchange Act of 1934, 15 U.S.C. sec. 78a et seq (the "Exchange Act"). Plaintiffs Morton and Grace Bender

---

[1] Although Count VI is brought only against Defendant IFSB, the individual director Defendants (Jordan, Wilmot, Cobb, Fitzgerald, and Youngentob), and Defendant Batties, have joined in IFSB's Motion to Dismiss Count VI because they have "concrete personal interests in the resolution of Count VI." IFSB's supporting Memorandum at n.2.

currently own approximately 21 percent of the outstanding stock of IFSB. Plaintiffs have been shareholders of the bank since March 1999. In the spring of 2003, Plaintiff Morton Bender successfully promoted two candidates to IFSB's Board of Directors.

As described in this Court's Memorandum Opinion of January 15, 2004 (in *Bender v. Parks*, C.A. No. 03-2485) IFSB's recent history has been troubled. (Mem. Op. at 2-3). Plaintiffs, as minority shareholders of IFSB, have taken various actions to right its course, all of which have met with opposition, if not outright hostility, from the Board of Directors. In the Spring of 2004, Plaintiffs endeavored to purchase additional shares of IFSB stock and to proffer two additional candidates for the Board of Directors. In response, IFSB's annual shareholders' meeting was delayed so that the Defendant Directors could control the voting, preventing the election of the Bender nominees. (Complaint, ¶¶24-39). The Defendant Directors made agreements to purchase additional shares of stock without filing with the Securities and Exchange Commission the required Schedule under Section 13(d) of the Securities Exchange Act of 1934. (Complaint, ¶¶40-49). To that end, they issued proxy solicitation materials that were false and misleading or omitted material information, in violation of Section 14(a) of the Exchange Act. (Complaint, ¶¶50-65). When he complained, Plaintiff Bender was labeled a bully (Complaint, ¶ 60), a racist (Complaint, ¶ 23), and a scofflaw (*id.*).

Plaintiffs have brought this lawsuit to remedy these wrongs, and to prevent future ones, *i.e.*, to permit a fully informed shareholder vote for the Bank's board of directors. In Count VI of their Complaint, Plaintiffs specifically seek a declaratory judgment under 12 C.F.R. Section 545.121 to preclude IFSB from indemnifying or making advance payments to the Defendant Directors and Defendant Batties for the expenses of this

action. As shareholders with a 21 % ownership interest in the Bank, Plaintiffs have a serious and legitimate concern about how the expenditures of such funds will affect the Banks' already precarious financial condition.

In its Motion to Dismiss, Defendant IFSB, joined by the other Defendant Directors and Defendant Batties, purports to challenge Count VI on three grounds: the failure to state a claim upon which relief can be granted under Rule 12(b)(6); standing; and lack of subject matter jurisdiction under Rule 12(b)(1) (ripeness). As discussed below, all three theories fail.

## ARGUMENT

### I.   PLAINTIFFS HAVE STATED A VALID CLAIM UNDER 12 CFR §545.12

Defendants have asked this Court to dismiss Count VI of the Complaint for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal is not proper, however, unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." _Conley v. Gibson_, 355 U.S. 41, 45-46 (1957); _Cowin v. Bresler_, 741 F.2d 410, 413 n. 3 (D.C. Cir. 1984). Although the Court need not accept as true any of Plaintiffs' legal conclusions, it is required to "liberally construe the complaint 'with all factual allegations deemed to be true and with doubts resolved in favor of the pleader.'" _Cowin_, 741 F2d at 413 n. 3(_quoting_ _Shear v. National Rifle Ass'n of America_, 606 F.2d 1251, 1253 (D.C. Cir. 1979)); _see also_ _Alexis v. District of Columbia_, 44 F. Supp.2d 331, 336-37 (D.D.C. 1999). The threshold issue is not whether the Plaintiffs will ultimately prevail on Count VI, but whether or not they are entitled to present

evidence to support their claim. See <u>Kowal v. MCI Communications Corp</u>., 16 F.3d 1271, 1276 (D.C.Cir.1994).

Title 12 of the Code of Federal Regulations, Section 545.121, governs the terms and conditions under which a federal savings association may indemnify and authorize advance payment of expenses to its officers, directors, and employees. The "advancement of expenses" to officers and directors to defend a lawsuit is a subset of "indemnification" for the purposes of 12 CFR §545.1212. See <u>Fidelity Federal Savings and Loan Ass'n v. Felicetti</u>, 1993 WL 337831, *5 n.3 (E.D. Pa. 1993). In determining whether to advance funds, the Board of Directors has an obligation to act in good faith and in the corporation's best interest. <u>Id</u>. at *5. IFSB's by-laws contain no specific provision for indemnification of its officers and directors or for the authorization of payment in advance of expenses related to litigation.

### A. <u>Indemnification Is Not Warranted</u>

Indemnification, or reimbursement of fees and costs to a bank's officers and directors, is *mandatory* under the federal regulation *only* in one situation: "[f]inal judgment on the merits is in his or her favor . . .." §545.121 (c) (1). In the absence of a favorable final judgment on the merits, indemnification is *permissive*, that is, to be determined after review of certain factors by a "majority of the disinterested directors." <u>Id</u>. at §545.121 (c) (2). At least 60 days' advance notice to the OTS is also required before an indemnification may be made. <u>Id</u>. The notice period affords the OTS the opportunity for meaningful review of a federal savings association's decision to indemnify. <u>Id</u>. at 545.121 (c) (iii).

As to indemnification, Plaintiffs seek, at this stage of the litigation, only a declaration from this Court that Defendants may not proceed with any indemnification process unless the requirements of the regulations set forth in 12 C.F.R. section 545.121 (c) are met. In the absence of a favorable final judgment on the merits for the Defendant Directors and Defendant Batties, indemnification will be allowed only if a majority of disinterested directors conclude that the Defendants were acting in good faith, within the reasonably perceived scope of their employment, and based upon reasonable belief that they were acting in the interests of the bank. §545.121 (c). Defendants must also give the OTS the required 60 days notice of their intent to indemnify. This requirement is significant, because during that time the OTS will determine whether the directors are in fact entitled to such indemnification. *Id.; see also Waldoboro Bank v. American Cas. Co.*, 775 F. Supp 432, 434 (D.Me. 1991) (indemnification of bank officer is neither required nor permitted by law where there was no final judgment and bank did not give 60 days notice to the OTS). Given that the misconduct alleged violates federal securities laws and constitutes common law defamation and breach of fiduciary duty, Defendants would have an uphill battle persuading a truly disinterested board of directors that the Bank should pay for the Defendants' acts of wrongdoing. Plaintiffs maintain that a declaration from the Court is necessary, given the willful and intentional misconduct alleged in this case, and to ensure that the OTS has the full regulatory period of review.

### B. Legal Expenses Should Not Be Advanced

12 C.F.R. Section 545.121(e) also provides for the advance payment of expenses in certain circumstances. It states:

> (e) *Payment of expenses*. If a majority of the directors of a savings association concludes that, in connection with an action any person *may ultimately become entitled to indemnification under this section*, the directors may authorize payment of reasonable costs and expenses, including reasonable attorneys fees, arising from the defense or settlement of such action. Nothing in this paragraph (e) shall prevent the directors of a savings association from imposing such conditions on a payment of expenses as they deem warranted and in the interests of the savings association. *Before making advance payment of expenses* under this paragraph (e), the savings association *shall obtain an agreement that the savings association will be repaid* if the person on whose behalf payment is made is later determined not to be entitled to such indemnification.

12 C.F.R. sec 545.121 (emphasis added).

In Count VI of their Complaint, Plaintiffs allege that a majority of the directors of IFSB cannot authorize the advancement of fees and costs because they cannot conclude, in good faith, that the Director Defendants would ultimately become entitled to indemnification under this section. (Complaint at ¶ 84–87). Specifically, Plaintiffs allege that the course of malfeasance alleged in Counts I – V was willful and intentional and performed for the specific purpose of injuring Plaintiffs, thus precluding a good faith finding by the Board. (Complaint at ¶ 87).

The difficulty here is plain. Although the concepts of indemnification and advance payment of expenses under subsections (c) and (e), respectively, may be legally distinct, as a practical matter they are interconnected. If the individual Defendants receive advance payments for their attorney's fees and expenses, then they have no need to petition the Board of Directors later for indemnification – thus avoiding review by the OTS of any payment decision. If IFSB does not challenge the payment of those fees, as it well may not, then the burden will fall on Plaintiffs to seek redress first with the OTS,

6

and then in this Court to require the reimbursement of those fees to the Bank.[2] A reasonable solution is to delay the process in these circumstances, and require Defendants to "officially" apply for their expenses at a later stage in the litigation – after this Court has ruled on the Motion for Preliminary Injunction and made a finding as to likelihood of success on the merits. That is exactly the approach recommended by the Office of Thrift Supervision in a December 1992 Opinion Letter on the subject of a "Request for Advance for Expenses," 1992 WL 12005270 (O.T.S.) (a copy of which is filed herewith as Exhibit A).

In its December 2, 1992 Opinion Letter, the OTS responded to a letter from a savings association asking whether it was "under any obligation to make an advance for legal expenses to be incurred" by a former officer and director, who had brought suit for wrongful termination. *Id*. at *1. The OTS opined that in those circumstances, "no such obligation exists." In its analysis, the OTS observed that:

> At the outset, it is imperative for you and the Association's board to recognize that the Indemnification Regulation requires a Federal association to make indemnification, including payment of reasonable expenses and attorneys' fees, *only in cases resulting in favorable final judgments on the merits* . [Sec. 545.121(c)(1)]. Advances for expenses prior to final disposition, on the other hand, are left to the discretion of the board of directors. According to the controlling regulatory language, '[i]f a majority of the directors of a savings association concludes that . . . any person ultimately may become entitled to indemnification, the directors may authorize payment of reasonable cots and expenses, including reasonable attorneys' fees.' [sec. 545.121(e)]. *The cited language grants directors the discretion to withhold advances for expenses prior to final*

---

[2]     The irony is that, despite Plaintiffs' efforts to forestall such payments, there is nothing to stop Defendants from blaming Plaintiffs, as they have in the past, for causing the bank to "excessive legal fees" as a result of litigation with the Benders. (Complaint at ¶59(n)). The Court noted this dilemma at the status conference on February 9, 2006. Tr. at p. 9, lines 4-7.

> *judgment, even if they conclude that a person might ultimately be entitled to indemnification.*

*Id*. at *1-2 and nn. 7-8 (emphasis added).

The OTS then cites the regulation and advises that, if the board chooses to award advance payment of expenses, it may impose such conditions as it deems warranted in the interests of the savings association and *before making an advance payment*, *must* obtain an agreement that the association will be repaid. *Id*. at *2 (emphasis added). The OTS goes on to caution the board as follows:

> It would be an abuse of discretion for directors to provide an advance for expenses unless they first concluded on the basis of full disclosure of all facts by the prospective indemnitee that *the prospective indemnitee is clearly more likely than not to succeed in the underlying matter and ample security exists to assure repayment in the absence of ultimate success in the underlying matter.*

*Id*. at *2 (emphasis added). Thus, OTS counsel concludes that the board is under no obligation to advance expenses to the former officer/director. *Id*. If indeed the individual Defendant directors win a final judgment in this case on the merits, the Board *must* indemnify them for their reasonable expenses, including reasonable attorneys' fees. The Board is not required, however, *to advance* them their expenses, and as the OTS cautions in the December 1992 Opinion letter, it would be an abuse of discretion for the Board to do so without a full disclosure of the facts, a clear likelihood of success on the merits, and "ample security" for repayment of those fees and expenses. These are the assurances the Plaintiffs seek in their request for declaratory judgment in Count VI. Accordingly, Plaintiffs have pleaded a valid cause of action stating grounds for a declaration by this Court disallowing advance payment of expenses until, at a minimum, all of the requirements under 12 C.F.R. sec. 545.121 (e) have been met, the repayment

agreements by the Defendant Directors and Defendant Batties are in place, and this Court has ruled on the preliminary injunction. As an additional consideration, the Plaintiffs remind the Court that IFSB is further subject to the conditions of the OTS's November 4, 2003 letter finding IFSB to be a "problem institution" in "troubled" condition. This letter requires the Board to obtain *prior* review by the OTS of "all director and senior executive officer employment contracts and compensation arrangements" and of all third party contracts. Any amounts advanced to the Defendant Directors or Defendant Batties in payment of legal fees and expenses certainly could be considered either a type of compensation arrangement or a third party contract.

When they filed their Complaint, Plaintiffs sought in Count VI a declaratory judgment precluding the Board from authorizing the advancement of fees and expenses, thus preserving the status quo. Since that time, however, Plaintiffs have learned, as Defendant IFSB acknowledges in its Motion to Dismiss, that the Board has in fact passed a resolution authorizing advance payment of expenses to the Defendant Directors and Defendant Batties. (Defendants' Memo. at 4 n.4). Although claiming that the issue is not ripe because no defendant has 'officially' requested payment from the Board, the harm that Plaintiffs feared would occur has in fact come to pass. Upon information and belief, the vote was 5 to 4, with all of the Defendant Directors voting in favor.[3] If it is true, as stated in footnote 4, that "[n]o Defendant officially has requested the Board for payment and no payment is due" then presumably IFSB has failed to obtain the

---

[3]   Accordingly, it may be necessary now for Plaintiffs to amend their Complaint to convert Count VI to a claim for injunctive relief. It may be, as well, that Plaintiffs will need to move for an order requiring the Board to reconsider the resolution with the Defendant directors recusing themselves from the vote.

repayment agreements required by 12 CFR Section 545.121 (e) providing that the individual Defendants will repay the fees and expenses advance in the event it is found that they are not entitled to indemnification.

## II.     Plaintiffs Have Standing to Assert a Claim Under 12 CFR sec. 545.121

The issue of standing concerns "whether the interest sought to be protected [by Plaintiffs] is arguably with the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Waldoboro Bank*, 775 F.Supp. at 434 (*quoting Association of Data Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970)). Plaintiffs in this case have alleged violations of the federal securities laws that, at their core, protect the interests of the individual investor. *See J.I. Case v. Borak*, 377 U.S. 426 (1964) (the federal securities laws were designed for the very purpose of protecting the individual purchaser or seller of stock); *Chris-Craft Industries, Inc. v. Piper Aircraft*, 480 F. 2d 341, 357 (2d Cir. 1973), *cert. denied*, 414 U.S. 910 (1973) (subsequent history omitted) (in enacting the public securities laws Congress was concerned about the plight of the "average public investor"). Moreover, Plaintiffs in this case are owners of 21 percent of the outstanding shares of IFSB, and seek to own more. They have invested to date more than five million dollars in IFSB. The *advancement* of expenses could cause serious financial harm since there is no guarantee that those funds will ever be reimbursed. In *Waldeboro*, the district court found that an insurance company, which would be affected financially by the OTS review of a bank's decision on the issue of indemnification, was within the zone of interest and thus had standing to challenge a bank's decision to indemnify. *Id*. at 434. Certainly Plaintiffs' five million dollar investment creates a sufficient financial interest in the welfare of the Bank to place

Plaintiffs within the "zone of interest" contemplated by the regulations governing indemnification and advance payments pursuant to 12 C.F.R. Section 545.121. Plaintiffs are also within the zone of interest in that the Bank in the past has blamed its financial woes on legal fees and expenses incurred in connection with litigation with the Benders. *See supra* n. 2. Plaintiffs have an interest in fending off additional similar allegations.

### III. This Issue is Ripe for Adjudication and Accordingly There is Subject Matter Jurisdiction Pursuant to Rule 12(b)1

Defendant argues at length that the claim set out in Count VI is not ripe for adjudication and that therefore this Court does not have subject matter jurisdiction over this issue. Using the standard that Defendant prescribes, to determine whether an issue is ripe for review a court must consider (1) the fitness of the issue for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). Defendant argues first that no alleged harm to Plaintiffs is imminent or certain because indemnification can be provided only after a final judgment has rendered or a settlement reached. 12 C.F.R. sec. 545.121(b). This argument is undercut, however, by Defendant's own admission that the Board of Directors of IFSB has in fact passed a resolution allowing for the advance payment of expenses to the individual Defendants in connection with this lawsuit. (Defendants' Memo. in Opp. at 4, n.4). As noted above, the problem in that instance is, once fees and expenses are advanced, there would be no need for the individual directors to apply to the Board for indemnification – because the Bank is paying their fees from the outset. Thus, in that circumstance, the Defendant Directors and Defendant Batties would never have their claims for attorneys fees subject to the scrutiny of a panel of "disinterested

directors" or, more importantly, reviewed by the OTS. The burden would fall to shareholders, like Plaintiffs, to attempt to correct that wrong – leading to the second factor, the hardship to the parties.

Although Plaintiffs still are only minority shareholders, they have made a substantial financial investment in IFSB. Although they hope their cause of action will improve the financial condition of IFSB for the benefit of all of its shareholders, Plaintiffs nonetheless have brought this suit directly and must fund this litigation themselves. They are now faced, in addition to bearing their own fees and costs, with the substantial financial burden of having IFSB bear the weight of defending its directors and officer – whose willful and intentional actions outside of their duties as directors and officer have caused Plaintiffs' harm – and the cost could be substantial to an already troubled financial institution. The Board of Directors of Defendant IFSB has now revealed its intent to advance expenses to the individual Defendants once they "officially" apply for advancement – which in all likelihood will be when they receive their first invoice from their attorneys. Thus, the potential harm to Plaintiffs is not abstract, it is imminent. Therefore the issue is ripe for adjudication, this Court has subject matter jurisdiction, and Count VI should not be dismissed.

### IV.    COUNT VI IS A DIRECT CLAIM

In its final argument, IFSB contends that Count VI should be dismissed because it is a derivative claim, not a direct claim, and that even if Plaintiffs had attempted to bring a derivative claim, the Court would likely find that they are not proper representatives for the shareholder class. Because Count VI is not derivative, it should not be dismissed on

this basis. Alternatively, if the Court determines the Count is derivative, the Plaintiffs seek leave to amend Count VI to assert a derivative claim.

This claim can be brought directly by the Plaintiffs, because the Benders will suffer an injury distinct from the injury to the Bank. See *Burman v. Phoenix Worldwide Industries, Inc*., 384 F.Supp.2d 316 (D.D.C. 2005)(citing *Cowin v. Bresler*, 741 F.2d 410, 415 (D.C. Cir. 1984)). Here, the Plaintiffs will suffer the harm because they are the litigants against whom the Defendants are likely to use the argument that litigation is draining the coffers of the Bank. Thus, although there may be some overlapping financial damage in terms of corresponding financial expenditures on legal fees by the Bank and resulting declining stock value suffered by Plaintiffs, there is also harm suffered by the Plaintiffs as litigants that is not suffered by the Bank. As to the second element, it is the Plaintiffs who will receive the benefit of the relief sought.

Even if the Court were to determine that Count VI is derivative, Plaintiffs request that they be given leave to amend Count VI to allege a derivative claim. IFSB contends in footnote 8 of its supporting Memorandum that perhaps Plaintiffs did not bring a derivative action because in prior litigation between the parties the Court found that the Benders would not be adequately representative all shareholders as class representatives. In that earlier litigation, however, the facts underlying the Court's decision in that regard were different and the issue was focused on the Court's conclusion that Bender had expressed a desire to acquire the bank for the least amount possible and that this notion put Bender at odds with what presumably was the desire of the other shareholders to receive the maximum amount possible for their shares in a merger. This conflict is not present in this case. It is unimaginable that other shareholders would have an interest in

13

the Bank advancing legal expenses to individual Defendant directors and to Mr. Batties in a manner that is contrary to the regulatory scheme.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Morton and Grace Bender respectfully request this Court to deny the Defendant IFSB's Motion to Dismiss Count VI of their Complaint.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.

_____/s/_____
Dale A. Cooter, Bar #277454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Plaintiffs*
*Morton A. Bender and Grace M. Bender*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss Count VI was sent electronically on the 15th day of March, 2006, to:

>Haig V. Kalbian, Esq.
>Brawner Building
>888 17th Street NW
>Suite 1000
>Washington DC 20006
>hkalbian@kalbianhagerty.com
>
>Peter Strand, Esq.
>Shook, Hardy & Bacon, L.L.P.
>Hamilton Square
>600 14th Street, N.W.
>Suite 800
>Washington, D.C. 20005-2004
>pstrand@shb.com

/s/
Dale A. Cooter