IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORTON A. BENDER, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:06cv00092 |
| ) | |
| CAROLYN D. JORDAN, et al. ) | |
| ) | |
| Defendant. ) | |

**BRIEF IN REPLY TO PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT VI**

COMES NOW nominal defendant Independence Federal Savings Bank ("the Bank") and respectfully submits this Brief in Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss Count VI, and states as follows:[1]

As a preliminary matter, plaintiff must defend a motion to dismiss, brought under Rule 12(b)(1), by proving by a preponderance of the evidence that the court has jurisdiction to hear its claims. *See Am. Fed'n of Gov't Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139, 142 (D.C.Cir.2003). Plaintiffs have failed to do so here. Instead of raising a preponderance of the evidence that this Court has jurisdiction, Plaintiffs merely throw out conclusory arguments that the issues are ripe and that Plaintiffs have a private cause of action. This falls far short of the standard for defeating a Rule 12(b)(1) motion. Accordingly, the motion should be granted.

I. **PLAINTIFFS' ARGUMENT THAT INDEMNIFICATION IS NOT WARRANTED IS FLAWED**

According to their brief, "Plaintiffs seek, at this stage of the litigation, only a declaration from this Court that Defendants may not proceed with any indemnification process

---

[1] Defendants Jordan, Wilmot, Cobb, Fitzgerald, Youngentob, and Batties join in this Reply Brief.

unless the requirements of the regulations set forth in 12 C.F.R. section 545.121(c) are met."[2] Opposition at 5.  The Bank agrees with Plaintiffs that it may not proceed with indemnification, at this stage of the litigation.  As discussed fully in Defendant's Motion to Dismiss Count VI, indemnification, under the regulation and case law interpreting it, requires a final judgment, 60-days notice to the OTS, and, potentially under certain circumstances, the vote of the disinterested board members.  Until those predicates are established, the Bank is prohibited by regulation from indemnifying the other Defendants.  Significantly, until there is a violation of that regulation or clear evidence that a violation is imminent, there is no justiciable case or controversy regarding indemnification.  Accordingly, the issue is not ripe.  *See Texas v. United States*, 523 U.S. 296, 300 (1998).

Plaintiffs further assert that "given that the misconduct *alleged* violates federal securities laws and constitutes common law defamation and breach of fiduciary duties," Defendant Directors will have an "uphill battle persuading a truly disinterested board of directors that the Bank should pay for the Defendants' wrongdoing."  Opposition at 5 (emphasis added).  That Plaintiffs presuppose that the evidence and law will support their allegations is of no moment here.  The issue of whether indemnification is proper only becomes ripe after a final judgment is rendered and the 60-day notice is given, or when the Bank attempts to circumvent those regulatory obligations.  Plaintiffs here seek a declaration based solely on mere allegations of bad faith, without alleging an imminent threat that the Bank will attempt to circumvent the regulation.[3]  "A claim is not ripe for adjudication if it rests upon contingent future events that

---

[2]   Plaintiffs assert that such a declaration is necessary "to ensure that the OTS has the full regulatory period of review."  While the OTS may appreciate Mr. Bender's efforts at protecting its regulatory authority, such a claim belongs to the OTS or the shareholders of the Bank derivatively, if a violation ever occurs (and none has); such a claim does not belong to Mr. Bender as a self-appointed "private OTS Inspector General."

[3]   Asking this Court to enjoin the Bank from violating the regulation, without compelling evidence that the Bank intends to violate the regulation, is akin to asking this Court to enjoin every issuer of stock from

may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300; *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C.Cir.1996) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  Having to persuade a disinterested Board is a "contingent future event[] that may not occur as anticipated."  Thus, the indemnification issue is not ripe.

II.     **PLAINTIFF'S ARGUMENT THAT LEGAL EXPENSES SHOULD NOT BE ADVANCED IS FLAWED**

Plaintiffs seek to prevent the advancement of expenses to the Defendant Directors and Mr. Batties based primarily on their dissatisfaction with the OTS regulation, 12 C.F.R. section 545.121.  Plaintiffs appear to argue that the application of the regulation as it is currently in effect fails to adequately protect the Bank from directors to whom expenses are advanced and who fail subsequently to petition the Bank for indemnification.  This argument fails for a number of reasons.  First, if Mr. Bender is dissatisfied with 12 C.F.R. section 545.121, then his cause of action is to challenge the validity of the regulation as arbitrary and capricious or as having been promulgated in violation of the Administrative Procedures Act or the OTS's authorizing statute.  Such a suit should be aimed at the OTS or the Treasury Department, not the Bank or its directors.

Second, as Plaintiffs cite in their brief, the regulation vests the board of directors with discretion to decide whether expenses should be advanced.  *See* OTS Opinion Letter, 1992 WL 12005201 (O.T.S.) (March 6, 1992).  The use of that discretion cannot be challenged by challenging a specific abuse of that discretion, which Plaintiffs have failed to do, or without challenging the regulatory delegation of that discretion to the directors.  Plaintiffs also fail to challenge that delegation.  Both the regulation and the OTS's interpretation of the regulation recognize the board's discretion to approve the advancement of expenses.  Therefore, this Court should not effect a prior restraint of that discretion.

---

violating every securities law, without an indication that each one intends to violate the laws.  Plaintiffs ask too much; Plaintiffs ask for an advisory opinion.

Additionally, Plaintiffs' reliance on the December 2, 1992 OTS Opinion Letter is misplaced. Even the most cursory reading of the letter amply demonstrates that it has no applicability to the current situation. First, the former officer/director was not the plaintiff in the wrongful termination suit as plaintiffs state. In fact, the former officer/director had been sued by a former employee whom he had discharged. Second, the former officer/director had consented to the issuance of a Final Order of Removal-an-Prohibition ("Order") by the OTS with affirmative corrective action provisions for repeated acts of misconduct at the bank. Third, the Order required the former officer/director to make restitution to the bank, including amounts previously paid to the former officer/director by the bank under a retirement agreement. Fourth, the former officer/director had repaid only a portion of the required restitution, thus owed the bank money, and the bank had been forced to sue to recover the remainder. Given these facts, the letter provides that, "In light of the foregoing, I am of the opinion that the Association is under no *obligation* to make an advance for expenses to the former officer/director in this case." (emphasis added) This is hardly a shocking conclusion in the context of the above facts. The letter goes on to state that, "In no circumstances could the board consistent with safety and soundness provide any advance for expenses in this case in the absence of prior repayment of all money owed to the Association by the former officer/director by way of restitution." Simply put, the OTS is saying the bank should not advance money to a former officer/director whom they are suing for failure to pay a debt. Again, that is hardly a shocking conclusion. The letter and its conclusions do not reflect our facts.

Third, Plaintiffs' proposal to delay the ability of the board to advance expenses flies in the face of the policy of the regulation. Indemnification, by regulation or agreement, is intended to encourage capable individuals to serve as corporate directors, secure in the

knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve. *McLean v. International Harvester Co.*, 902 F.2d 372 (5th Cir.1990); *Mooney v. Willys-Overland Motors, Inc.*, 204 F.2d 888 (3d Cir.1953); 13 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 6045.01 (perm. ed. rev. vol. 1990). Forcing the individual Defendants to pay for the defense of conduct that was properly in the scope of their duties would effect a financial squeeze on the Defendants to bow out of the litigation. As Plaintiffs admit in their Brief, and as the Individual Defendants attempted to argue at the first hearing, it is Plaintiffs who will receive the benefit of that financial squeeze. Opposition at 13. Such a result is precisely the reason for the directors being vested with discretion to advance expenses. *See* OTS Opinion Letter, 1989 WL 1114183 (Oct. 6, 1989)

Finally, the regulation makes indemnification mandatory if certain criteria are met and requires that the OTS have 60-days notice to review a decision to indemnify. Therefore, as the court held in *Waldoboro Bank v. American Caus. Co.*, 775 F.Supp. 432, 433-34 (D. Me. 1991), the regulation as written affords the OTS a "meaningful review" of indemnification decisions, eliminating the need for this Court to review the conduct of the Directors twice.

III.   **COUNT VI IS NOT A DIRECT CLAIM BECAUSE PLAINTIFFS ADMIT THEIR INJURY IS THAT OF A COMMON SHAREHOLDER**

Plaintiffs admit on page 3 of their brief that, with regard to the issue of indemnification, as "shareholders with a 21% ownership interest in the Bank, Plaintiffs have a serious and legitimate concern about how expenditures of such funds will affect the Bank's already precarious financial conditions." Opposition at 3. As the Bank argued in its underlying brief, where a plaintiff has a generalized complaint about expenditures from the company coffers, no shareholder suffers a harm "independent of that visited upon the corporation and the

other shareholders." *Cowin v. Bresler*, 741 F.2d 410, 414 (D.D.C. 1984). In such case, each shareholder will be injured in proportion to his ownership, and "each will be made whole if the corporation obtains compensation . . . from the wrongdoer." *Id*. Accordingly, the Benders might face injury in proportion to their equity ownership, but they must bring such a claim derivatively.

With respect to the Plaintiffs' claim that, if allowed to amend, Mr. Bender could serve adequately as a Rule 23.1 shareholder representative, Plaintiffs once again fail to comprehend the standard for such representation.[4] Asserting that all shareholders have a common interest in not being victims of alleged malfeasance, as Plaintiffs do at pages 13 and 14 of their Opposition, serves as no guidance at all. Under such a regime, every shareholder in every derivative lawsuit would be a proper representative because no shareholder would ever support malfeasance if such allegations were true. In this case, Mr. Bender has admitted in the Opposition that he would personally benefit as a litigant if the Directors were forced to pay their own expenses or, implicitly, be squeezed out of their Board seats. *See* Opposition at 13. Clearly, Mr. Bender could not adequately represent the majority of shareholders who voted in the past election to maintain the current Management in power.[5] Therefore, granting Plaintiffs leave to amend to file a derivative claim would be unavailing.

---

[4] Defendant notes that there is no derivative claim currently pled.

[5] This Court has already expressed doubt, however, as to whether Plaintiffs can maintain a derivative action on behalf of the shareholders. *See* January 15, 2004 Memorandum of Opinion, attached to Defendants' Motion to Dismiss as Exhibit "D." ("It is unlikely that Mr. and Mrs. Bender can fairly and adequately represent all shareholders in a derivative suit."). Additionally, Plaintiffs latest 13D filing further illustrates that the Plaintiffs are unlikely to be able to maintain a derivative action on behalf of the bank. *See* Schedule 13D, attached to Defendants' Motion to Dismiss as Exhibit "E." ("Bender seeks to have the ability to take all of the following additional control actions with respect to Independence: proffer and seek the election of his own director nominees in opposition to management nominees...Request the voluntary resignation of certain directors and executive officers of Independence...").

- 7 -

IV. **CONCLUSION**

For all the foregoing reasons, Defendant Independence Federal Savings Bank respectfully submits that its Motion to Dismiss should be granted, and Count VI of Plaintiffs' Complaint should be dismissed with prejudice.

                Respectfully Submitted,

Dated March 22, 2006                KALBIAN HAGERTY LLP

                /s/
Haig V. Kalbian
Brawner Building
888 17th Street, N.W.
Suite 1000
Washington, DC 20006-3967
Phone: 202-223-5600
Fax: 202-223-6625

Attorney for Defendant Independence Federal Savings Bank

SHOOK HARDY & BACON, L.L.P.

                /s/
Peter E. Strand
Hamilton Square
600 14th St. NW
Suite 800
Washington, DC 20005-2004
Phone: 202-783-8400
Fax: 202-783-4211

Attorney for Joining Defendants Jordan, Wilmot, Cobb, Fitzgerald, Youngentob, and Batties

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of March, 2006, a true and complete copy of the forgoing Motion to Dismiss was served via electronic filing to the following:

>Dale A. Cooter, Esq.
>Donna Mangold, Esq.
>Cooter, Mangold, Tompert and Wayson, L.L.P.
>5301 Wisconsin Ave, NW
>Suite 500
>Washington, D.C.  20015
>T: (202)537-0700
>F: (202)364-3664
>*Attorneys for Plaintiffs*

>_____/s/_____
>Haig V. Kalbian