**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MORTON A. BENDER, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | **C.A. No. 1:06cv00092** |
| **CAROLYN D. JORDAN, et al.,** ) | **(RMC)** |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY**
**TO DEFENDANTS' RESPONSE TO**
**THE BENDERS' APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiffs Morton A. Bender and Grace M. Bender (the "Benders"), by and through their

undersigned counsel, hereby reply to the response of the Defendants Carolyn D. Jordan, David

Wilmot, Michael J. Cobb, William B. Fitzgerald, and Eugene K. Youngentob (collectively, the

"Defendant Directors"), Defendant Thomas L. Batties ("Batties") and Defendant Independence

Federal Savings Bank ("IFSB" or the "Bank"), to the Benders' Application for Preliminary Injunctive

Relief and state as follows:

**INTRODUCTION**

In their Application for Preliminary Injunctive Relief, the Benders seek an order from this Court:

requiring the Defendant Directors and Batties to comply with Section 13(d) of the Exchange Act (15

U.S.C. Section 78(m)(d)) (and its regulations); neutralizing the shares that the Defendant Directors and

Batties acquired in violation of their 13(d) obligations; voiding the election results of the October 21,

2005 meeting; compelling accurate proxy disclosures under Section 14(a) of the Exchange Act;

forbidding any further meetings until the procedural irregularities are resolved compelling adherence to

the Bank's bylaws, 12 C.F.R. §552.6(a) and Robert's Rules of Order in any future meetings; and

preventing Defendant IFSB from indemnifying (or making advance payments to) the Director

Defendant and Defendant Batties for the expenses of this action. In their Response to the Benders'

Application for Preliminary Injunctive Relief,[1] the Defendants set forth an extensive factual section

(consuming twenty-three pages), beginning with a very detailed history dating back to October 2003.

Much of this history is not directly relevant to the instant litigation. Many of the other facts included,

which are pertinent to the instant litigation, are not supported by any citations to the record or by

declaration.[2] Moreover, although the parties have been working diligently and cooperatively to

schedule all the necessary depositions, and have been engaged in substantial document productions,

discovery is not yet complete. Because this case is not in a summary judgment posture, Plaintiffs will

not in this Brief attempt to address each and every factual assertion in the Defendants' Response. The

two days of preliminary injunction hearing scheduled for later this month will provide ample opportunity

for the parties to present their evidence to the Court on the issues that are relevant. In addition, several

of the arguments raised by the Defendants have already been fully briefed by Plaintiffs and argued in

conjunction with the Defendants' Motions to Dismiss. Plaintiffs' responses to those arguments are not

repeated here. Accordingly, this Reply is limited to just a few of the issues raised by Defendants in their

---

[1] In addition to their Response, the Defendants have previously filed Motions to Dismiss the Complaint. The Motions to Dismiss have been fully briefed and argued and the Motions remain under advisement with the Court.

[2] Notably, the Defendants offer no support (by way of record cite or declaration or in any other way) for their factual assertions contending that none of the Defendants have knowledge of or involvement in a particular action or document (see e.g., ¶23 (Committee to Save Independence letter ), ¶46 (the McPhail/Douglas letter), ¶51 (the Doley/Thompson negotiations)).

  
Response.[3]

**ARGUMENT**

I.    **DEFENDANT DIRECTORS AND BATTIES SHOULD BE ORDERED TO
      COMPLY WITH THEIR 13D OBLIGATIONS**

In opposing the Benders' request for preliminary injunctive relief on their allegations that the

Defendant Directors and Batties violated Section 13(d) (15 U.S.C. §78m(d)), the Defendants assert

that the Plaintiffs have no private right of action under 13(d) and that the Defendants had no obligation

to file a Schedule 13D.[4]  Contrary to the arguments advanced by the Defendants, there is a private

cause of action for injunctive relief stemming from a Section 13(d) violation and Plaintiffs will be able to

demonstrate that the Defendants had a Section 13(d) filing obligation.

A.    **The Plaintiffs Have A Private Right of Action Under Section 13(d)**

The Defendants, citing Berman v. Metzger, 1981 WL 1596 (D.D.C. 1981), state that "[t]his

Circuit has recognized that Section 13(d) . . . 'does not purport to create federal rights in favor of

identifiable private parties . . . .'" Defendants' Response To Memorandum Of Points And Authorities in

---

[3] The absence herein of a reply to any of Defendants' legal or factual arguments raised in Defendants' Response should not be interpreted by the Court or by opposing counsel as an abandonment or concession by Plaintiffs regarding such arguments.

[4] As the Benders pointed out in their opening Brief, there was no Schedule 13D filed at all in this case by the Defendants regarding the activities that are at issue in this litigation.  Thus, the issue is whether the Defendants had an obligation to file a Schedule 13D.  The accuracy of a 13D is not at issue because no 13D was filed.  The Defendants state in footnote 4 that as a result, "the alleged wrongful conduct is a technical violation, not a misstatement of fact."  Surely the Defendants do not intend to minimize the harm of their wrongful conduct – which amounts to a material omission – by asking the Court to find that no filing at all cannot be as bad as filing something that is inaccurate.  The Benders submit that a failure to file is as wrongful and damaging as making a filing that contains factual misstatements or omissions.

3

Support of the Benders' Application for Preliminary Injunctive Relief ("Defs. Resp.") at 26

(citing Berman, 1981 WL 1596 at  *2. Berman, however, decided only that a private plaintiff does not

have a private right of action *for damages*  under Section 13(d); it does not speak to a shareholder's

right to injunctive relief.[5]  Plaintiffs do not seek *damages*  under Section 13(d).  (Complaint, ¶¶ 47-48;

Request for Relief subparts (A) & (B)).  Therefore, Berman does not provide support for the

Defendants' argument.  In its later decision in Bayly Corp. v. Marantette, 1982 WL 1337 (D.D.C.

1982), the District of Columbia District Court implicitly recognizes that an individual shareholder may

seek injunctive relief for a Section 13(d) violation, including the wholesale failure to file.  1982 WL

1337 at *15.[6]

Thus, there is little case law in the District of Columbia directly on the issue of a shareholder's

right to bring a private action for injunctive relief.  A path can be found, however, from decisions from

other jurisdictions back to the District of Columbia Circuit.  In GAF Corp. v. Milstein, 453 F.2d 709

(2nd Cir. 1971), the Second Circuit recognized a private cause of action for a shareholder under

Section 13(d): "Clearly, a shareholder has standing."  GAF, 453 F.2d at 719 n.21 (citing Grow

Chemical Corp. v. Uran, 316 F.Supp. 891 (S.D.N.Y. 1970) (shareholder had standing to bring claim

for damages and for injunctive relief for 13D violation).  GAF found the more difficult issue to be

---

[5]  As the Berman opinion notes, in another related action brought by the issuer the District
Court had granted preliminary injunctive relief in favor of the issuer. 1981 WL 1596 at *1.

[6]  The Bayly Court, however, declined to grant injunctive relief.  In part the Court adopted the
"'a plague on both your houses'" approach. 1982 WL 1337 at *16.  The Plaintiffs do not believe that
the instant litigation warrants such an approach.  As this Court has indicated, the allegations here are
serious. IFSB has been declared to be and continues to be a "troubled" and "problem" institution. In
the absence of some active meaningful participation by the Office of Thrift Supervision, the task of
resolving this dispute falls to the Court.

whether an issuer has standing under Section 13(d) to seek injunctive relief (453 F.2d at 720),

ultimately concluding that it does.  453 F.2d at 720.  GAF, in turn, has been cited favorably by the

Fourth Circuit in Dan River, Inc. v. Unitex Ltd.. 624 F.2d 1216, 1227-1228 (4th Cir. 1980).  The Dan

River Court describes GAF as having "long been regarded as the landmark authority on the point."

Dan River, 624 F.2d at 1222-23.   Then, the District of Columbia Circuit, in Cowin v. Bresler, 741

F.2d 410 (D.C. Cir.  1984), cited the Dan River case favorably (with a "cf" signal).  Cowin, 741 F.2d

at 420 n.11.  Cowin was brought by an individual shareholder, not by the issuer corporation.  In its

footnote 11, the Cowin Court addressed the district court's dismissal of the plaintiff's Section 13(a)

claim and stated: "However, absent complete briefing and a lower court opinion on this issue, we

decline to reach the question, leaving to the district court, on remand, to explore the matter further.  *Cf.*

*Dan River, Inc. v. Unitex Ltd.,*    624 F.2d 1216 (4th Cir.1980), *cert. denied,*  449 U.S. 1101, 101

S.Ct. 896, 66 L.Ed.2d 827 (1981) (court finds implied right of action under § 13(d) of the Act)."

The foregoing stream of cases, coupled with the purpose of the Williams Act to protecting

shareholders and the investing public, provides the necessary support for finding that the Benders have

standing for injunctive relief.

B.      **The Evidentiary Record Regarding Concerted Activity Is Not
         Fully Developed**

The Defendants argue that there is no factual support in the record for the Benders' allegations

regarding the issue of whether any of the Defendants had agreements with either Jeffrey Thomson or

Harold Doley.  In support, the Defendants rely on the deposition denials of Defendants Wilmot,

Youngentob and Fitzgerald.  Although the factual record is a bit more developed now than it was when

Defendants filed their Response, discovery is not yet completed.[7]  Dan River, Inc. v. Unitex Ltd., 624

F.2d 1216, 1227-1228 (4th Cir. 1980)(discussing predisposition of courts *against* summary dismissal

of securities claims without discovery).

Although Defendants Wilmot, Youngentob and Fitzgerald have been deposed, the deposition

testimony of these witnesses on which Defendants rely is conclusory, at best.  These Defendants

testified that they did not act as a group with Thompson, and did not act in "concert" with Doley.  For

example, Defendant Jordan testified that she speaks with Mr. Doley weekly, yet could not remember

what they talk about.[8]  Defendant Jordan also testified that after the October 2005 shareholder meeting,

she went out for drinks with Mr. Thompson and his lawyer.  Defendant Batties also denied that he was

involved with the Doley or Thompson deals.  The depositions of the Defendants reveal, however,

inconsistencies in the stories being told.  The "we didn't do it" declarations are completely lacking in

credibility.  Moreover, both Doley and Logan D. Delany, Jr. have testified in their depositions regarding

conversations with Defendant Wilmot in connection with the fact that Wilmot "is thinking about putting

together a group, that would buy, that would be willing to buy [Delany's and Doley's] stock for 18-

dollars [a share]."  Transcript of Logan Delany Deposition ("Delany Tr.") at 36.[9]  The condition of the

---

[7] For example, Jeffrey Thompson's deposition is not scheduled to take place until April 18, 2006.

[8] Undersigned counsel has not yet received a copy of Defendant Jordan's deposition transcript.

[9] Pertinent portions of the Delany Transcript are attached hereto as Exhibit A.  These transcript pages are printed from the court reporter's initial and very rough draft which was prepared immediately after the deposition concluded.  Therefore, there are many typographical and similar type errors in the pages.  The transcript page numbers used herein refer to the page numbers in the left hand margin of the pages, not the numbers in the bottom margin.

purchase, however, was that management would have to maintain control of the bank and that Delany would have to vote his shares in favor of management. Delany Tr. at 36-37, 41-42. Wilmot's offer was to purchase both Delany's stock and Doley's stock. Delany Tr. at 38. Mr. Delany voted in favor of management's slate. Delany Tr. at 100. Harold Doley also testified about Wilmot's offer – made the day of the shareholder's meeting - to purchase Doley's stock. Transcript of Deposition of Harold Doley ("Doley Tr.") at 213.[10] Mr. Doley testified that he went to lunch with Defendants Wilmot and Jordan about the possibility of Doley selling his stock to them. Id. They also discussed that the buyers would make a down payment of $1.00 per share to secure the deal. Doley Tr. at 214. Ultimately, the resolution of this issue will be based on the Court's credibility determinations and its weighing of the evidence, both direct and circumstantial. Wellman v. Dickinson, 682 F.2d 355, 364-365 (2nd Cir. 1982);   Global Intellicom, Inc. v. Thomson Kernaghan & Co., 1999 WL 544708, *14  (S.D.N.Y. 1999) (Court denied motion to dismiss Section 13(d) allegations of "a common objective and concerted conduct, consisting of a series of acquisitions, holding, and disposals, of the defendants in furtherance of that objective" and noted that 13(d) does not require more than this in terms of allegations).

## II.     THE BENDERS' SECTION 14(A) CLAIM IS MERITORIOUS

Plaintiffs have alleged that the Defendants violated Section 14(a) of the Exchange Act, 15 U.S.C. §78n(a), and the rules and regulations promulgated thereunder, as well as 12 C.F.R. § 569, governing the solicitation of proxies. Plaintiffs allege that the formal proxy materials which Defendants

---

[10] Pertinent portions of the transcript of Mr. Doley's deposition are attached hereto as Exhibit B. The Doley transcript, like the Delany transcript, is still in rough format.

distributed on behalf of the IFSB Management prior to the October 26, 2005 shareholders' meeting

violated these statutory and regulatory provisions, as did Batties' participation in the communications

from at least two groups of shareholders, as described in Paragraphs 14 and 23 of the Verified

Complaint  (*i.e.,*  the May 4, 2005 letter by "the Committee to Save Independence Federal Savings

Bank," and the October 21, 2005 letter signed by Catherine McPhail and A. Gilbert Douglas, two

shareholders who supported the Management Nominees).  Verified Compl. at ¶23 (a copy of this

October 21, 2005 letter is attached to the Complaint as Exhibit J).   In response, the Defendants

contend that the proxy materials do not contain materially false or misleading statements or material

omissions.[11]

Defendants assert that the Plaintiffs have failed to put forth evidence demonstrating that the

proxy statements are false or misleading. Defs. Resp. at 31.  By verifying the Complaint, however,

Plaintiff Morton Bender verified the facts therein under the penalties of perjury based on personal

knowledge or information and belief.  The Defendants take particular issue with the Plaintiffs' allegation

that the following statement is false: "if Bender Nominees are elected, Bender will obtain 'controlling

influence' over IFSB 'to the detriment of All Other Shareholders." (Verified Complaint at ¶55(e))

(quoted in Defs' Oppos. at 31).  Relying on language in this Court's opinion in earlier litigation between

the Benders and IFSB, the Defendants conclude that "[c]learly, Plaintiffs' intentions are contrary to the

---

[11] The Defendants lead this section with an argument that the Plaintiffs have failed to state a claim upon which relief can be granted because the Plaintiffs have failed to allege reliance.  This issue is dealt with exhaustively in the briefs of the parties addressed to the Defendants' Motion to Dismiss. As the Plaintiffs explained in their opposition to the Defendants' Motion to Dismiss and at the oral argument on that Motion, reliance is not a required element under Section 14(a).

interest of the other shareholders." Defs. Resp. at 31. In that earlier case, the Court determined that the Benders could not act as plaintiffs for the entire class of shareholders in a derivative suit because, in the context of a merger or take-over, the Benders' desire to acquire more shares at a lower price was inconsistent with the desire of other shareholders to sell their shares at a higher price. The Court's conclusion in this regard did not necessarily mean that in every conceivable situation, the Benders' interests are and will be adverse to those of the other shareholders. It is false and misleading for the Defendants' to take that language and disseminate to all shareholders in advance of a shareholders' meeting a statement that if Benders' nominees are elected, it will be to the detriment of all other shareholders.

The Defendants also contend (at page 32 of their brief) that the Section 14(a) claim cannot be based on the allegation that the Proxy Materials failed to disclose the agreement among the Director Defendants, Defendant Batties and Thompson to act as a group because they dispute that there was any such agreement - with Thompson or with Doley. The Benders submit that if the Court concludes that such agreements did exist, the Defendants' failure to disclose the agreements constitutes a material omission and, therefore, a Section 14(a) violation.

As to the May and October 2005 letters, the Defendants assert at page 32 of their Response that they "were not involved in any way in authoring either letter" and that neither letter was "authored [or] supported by any of the defendants." Mr. Gilbert Douglas, one of the people whose signature is on the October 21, 2005 letter, however, has now testified (on April 11, 2006)[12] that the letter was

---

[12] The transcript of Mr. Douglas' testimony is not yet available.

finalized at the Bank. Mr. Douglas explained that he and Catherine McPhail, drafted the initial version

of the letter, signed the letter, but then changed the letter. They gave the letter to "Chris" at the bank.

They never saw the letter again. Chris, however, made additional changes to the letter, cut out the

signatures of Mr. Douglas and Ms. McPhail from their earlier draft, and then affixed the cut-out

signatures to the final revised draft. Mr. Douglas also testified that the Bank took care of mailing the

letter out to the shareholders. The purported authors of the May 4, 2005 letter by "the Committee to

Save Independence Federal Savings Bank" similarly have disclaimed ownership of the letter. As Exhibit

C to Plaintiffs' Application for Preliminary Injunctive relief shows, the May 4, 2005 letter was

ostensibly supported by Reverend C.L. Long, Bishop Moore, and Reverend Fauntroy. Each of these

men has now been deposed. They have all testified that they did not write the letter. In fact, until just

prior to his deposition, Reverend Long had ever even seen the letter. He also testified that he never

gave anyone permission to put his name on the letter.

Relying on TSC Indus. v. Northway, Inc., 426 U.S. 438 (1976), the Defendants next contend

that even if the Plaintiffs can establish the Proxy Materials contained false and misleading information,

none of it was "materially" misleading because Plaintiffs cannot demonstrate "'a substantial likelihood

that the disclosures of the omitted fact would have been viewed by the reasonable investor as having

significantly altered the "total mix" of the information made available.'" Defs. Resp. at 33 (quoting

TSC, 426 U.S. at 449). [13] The Defendants reach this conclusion on the grounds that "[i]t is no secret"

that the Benders seek control of the Bank and the Defendants are trying to prevent them from doing so.

---

[13] The TSC Court reversed the Circuit Court's ruling that the omissions and statements were material *as a matter of law* concluding that the case was not to be determined on summary judgment.

Defs. Resp. at 33. This statement misses the point. No one disputes that by now the shareholders

know that the Benders and the Defendants are on opposite sides of the control issue. That does not

give the Defendants *carte blanche* to publish whatever they want nor does it diminish the materiality of

the Defendants' statements and omissions. The Proxy Materials were materially misleading because of

the way in which they unfairly tilt the playing field in Defendants' favor in that control struggle.

Defendants also assert that "Plaintiffs have no evidence that any shareholder did, in fact, rely on

anything contained in the proxy materials." Plaintiffs contend, for all the reasons stated in their

opposition to Defendants' Motion to Dismiss, that reliance is not an element of a Section 14(a) claim.

Even if it were, however, there is evidence that shareholders did rely on the Proxy Materials.

      Mr. Delany, an IFSB shareholder since June 2005 explained, regarding the October 26, 2005

shareholders meeting, he had given his proxy to Mr. Robert Isaard with the understanding that his

proxy would be voted in favor of Benders' slate of directors. Delany Tr. at 27-28. Defendant Wilmot

telephoned Mr. Delany the morning of the shareholders meeting seeking to change Mr. Delany's mind.

Delany Tr. at 27-28. Mr. Delany told Defendant Wilmot that he would not change his mind. Delany

Tr. at 28. During the course of the shareholders meeting, Harold Doley placed several calls to Mr.

Delaney to update him as to what was happening at the meeting. Delany Tr. at 34. In one of those

conversations, Mr. Doley told Mr. Delany "that there were a bunch of people from the community

saying if Bender takes over the bank, they were going to withdr[a]w their money." Delany Tr. at 34.

In the same conversation, Mr. Doley told Mr. Delany that he (Doley) was "concerned that if Bender

were to get control that the, that the deposit base would be much reduced and the bank would loose

(sic) some of the franchise and some of the value." Delany Tr. at 35. Mr. Delany also received letters

in the mail stating that Bender "is a bad guy" and that he should not vote for Bender's slate. Delany Tr.

at 125-126. Although initially Delany did not pay too much attention to them (Delany Tr. at 125), he

later considered them in conjunction with Doley's comments that people might withdraw their deposits

if Bender won. Delany Tr. at 126. Both Doley and Delany ultimately changed their minds about

voting for Bender's slate and instead voted for the management slate. Delany Tr. at 99-100. In

addition, Doley told Delany that three Doley entities had decided to switch their votes from Bender's

slate to management's slate for the same reason - the statements about the possibility of the bank losing

deposits and diminishing value if Bender obtained control. Delany Tr. at 102.

III.    **PLAINTIFFS CLAIMS UNDER THE BYLAWS AND ROBERTS' RULES MAY BE BROUGHT DIRECTLY**

At pages 33 of their Response, the Defendants assert that the Plaintiffs' claims asserting

procedural irregularity in the way in which the October 26, 2005 shareholders' meeting was conducted

must be brought derivatively. Contrary to the Defendants' characterization of this particular claim, the

Plaintiffs are not alleging "improper management" with regard to the procedural irregularities.

Defendants only cast the claim as such because improper management type claims may be derivative.

Here, Plaintiffs claim the meeting was conducted in a way that violates the bylaws. Such claims may

be brought individually and may be grounds for injunctive relief. See Melissa Industrial Develompent

Corporation v. North Collin Water Supply Corp., 316 F. Supp.2d 421 (E.D. Texas 2004).

## IV.    SHAREHOLDERS WILL NOT BE DISENFRANCHISED IF INJUNCTIVE RELIEF IS GRANTED

At page 42 of their Response, the Defendants argue that the Defendants and Shareholders will be irreparably harmed if the injunctive relief is granted.   Other than the financial cost to the Bank of holding another election (such financial cost does not constitute "irreparable harm"), only good can come of a new election.  Voiding the election results does not deprive any shareholder of their rights because the shareholders can exercise their voting rights in the new election.  The harm described in the Response that would allegedly be visited upon the Defendant Directors is, again, financial – it is not "irreparable" harm.

## V.    PUBLIC POLICY WOULD BE ADVANCED IF THE INJUNCTION IS GRANTED

The Defendants  argue that the public policy would be advanced only by not "permitting one shareholder to change the election results."  This certainly overstates what the Plaintiffs seek by this litigation.  They have not asked the Court to declare that their candidate is elected in the place of management's candidate.  All that the Plaintiffs seek is a fair election.  Each and every shareholder benefits from an election conducted pursuant to the Bank's bylaws after full and fair and accurate disclosures.  It is the Defendants' actions that disenfranchised the shareholders by depriving the shareholders of a right to participate in a validly conducted election untainted by the Defendants' conduct complained of herein.

**CONCLUSION**

Plaintiffs respectfully request that this Court enter the Preliminary Injunction as requested.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.


            /s/
_____
Dale A. Cooter, Bar #227454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C.  20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Plaintiffs*
*Morton A. Bender and Grace M. Bende*  r

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April, 2006, a copy of the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS'

RESPONSE TO THE BENDERS' APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF

served electronically on:

> Haig V. Kalbian, Esq.
> Brawner Building
> 888 17th Street NW
> Suite 1000
> Washington DC 20006
> hkalbian@kalbianhagerty.com
>
> Peter Strand, Esq.
> Shook, Hardy & Bacon, L.L.P.
> Hamilton Square
> 600 14th Street, N.W.
> Suite 800
> Washington, D.C. 20005-2004
> pstrand@shb.com

                                        /s/
                                    Dale A. Cooter