# EXHIBIT A

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL13

1

```
1   SAME AS YESTERDAY
2   HELD AT THE OFFICES OF PAUL HASTINGS
3   75 EAST 55TH STREET
4   NEW YORK, NEW YORK
5   FOR THE WITNESS
6   by:  Gerald J. Fields, Esq
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

0    2

```
1   LOGAN D.   DELANY, JR.
2   41 NORTH BROADWAY IRVINGTON, NY 10533
```

Page 1

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL13

```
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```
0   3

```
1    (           , a witness having been sworn to tell the truth
2    was examined and testified as follows:) Cooter
3        Q    Good morning Mr. Delany nice to see you
4    again?
5        A    Good seeing you again.
6        Q    I am going to show your you are a lawyer,
7    you know the rules, right.  Fields necessarily
```
Page 2

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL13

17  putting together a group, to purchase the stock.

18  Q   Now, prior -- when Mr. Doley call you that
19  day and convied that information, did, was it before
20  or after he left New York for the shareholders
21  meeting, if you know.  He was at the shareholders
22  meeting.

23  Q   He was at the shareholders meeting?
24  A   Yes.
25  Q   Did you have any conversations with anyone

0    27

1   on behalf of the bank or Carolyn Jordan or Dave
2   Wilmot that day about a potential purchase?
3   A   I think Dave Dave Wilmot called me early
4   in the morning to try to get me to vote my shares
5   for management.
6           And I told him, I had already given
7   my proxy to I S A R D, I sent it, I don't remember
8   whether I physically gave it to Harold to give to I
9   S A R D or I sent it directly, I don't recall.
10  Q   So it is your recollection that early in
11  the morning of the 26th, you get a call from Wilmot?
12  A   I believe it was are Wilmot.
13  Q   Seeking to, or so listing your vote?
14  A   Yes.
15  Q   And your response was, I I have already
16  given my proxy to I S A R D?
17  A   Yes.
18  Q   Was it your understanding that I S A R D
19  with your proxy was going to vote your shares in
20  favor of Mr. Bender's slate?

Page 23

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL13

```
21    A    Correct.
22    Q    So as of the time you give I S A R D the
23   proxy you decide to vote for Bender; is that right?
24    A    Correct.
25    Q    Wilmot calls you on the morning of the
```
☐  28

```
1    26th?
2    A    Yes.
3    Q    Seeking if I am hearing this correctly
4    that you changed your mind?
5    A    Correct.
6    Q    What did you tell him about it, what did
7    you tell him?
8    A    I said, no.
9    Q    I want to see those I S A R D  proxies.
10        MS. MANGOLD:    What you have there is a
11   call list, also.
12        MR. COOTER:    We will come back to that.
13        MR. COOTER:    Mark this as 61 )
14              (Exhibit   marked for
15              identification, as of this
16              date.)
17    Q    Among the document is that you produced
18   toed is what is now before is marked as deposition
19   Exhibit 6 one entitled "contact report, would you
20   tell me what it is?
21    A    Its from my computer database on my
22   telephone calls.
23    Q    I see so as you have phone calls it is
24   your practice to enter the phone call into your
25   database and keep track of who called who and when?
```
Page 24

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL13

17    Q    I am confused about one thing I think you
18 told me that the evening sfer the 25th you gave a
19 proxy to Mr. Doley?
20    A    Right.
21    Q    Why did you do that if you had already
22 given a proxy to Mr. is ard and you exebted the
23 votes to be voted for a Bender candidate?
24    MR. FIELDS: You do it.
25    Q    Go a head. Correct me, I am trying to

0   34

1 understand?
2    A    Way said, I either mailed the proxy to is
3 ard, or I gave it to Harold physically to give to is
4 ard I do not recall which I did.
5    Q    I didn't understand, thank you?
6    A    Okay.
7    Q    Now, at some time you say you got a call
8 from Mr. Doley he was at the shareholders meeting
9 was it just the two of you on the phone?
10    A    I don't recall; probably.
11    Q    Tell me what you and Doley talked about
12 when he first get a call from Doley?
13    A    I got several calls from Doley.
14    Q    Yes?
15    A    Reporting on what was going on at the
16 meeting.
17    One call Doley told me that there
18 were a bunch of people from the P community saying
19 if Bender takes over the bank, they were going to
20 withdrew their money.

Page 29

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL 13

21    Q    A run on the bank, essentially cht rarn
22    Strand objection, form.
23    Q    Did he use the term run on the barng?
24    A    Not to my knowledge.
25    Q    What else did he tell you?.

0    35

1    A    Rp.
2    A    He also said that he was concerned that if
3    Bender were to get control that the, that the
4    deposit base would be much reduced and the bank
5    would loose some of the franchise and some of the
6    value.
7    Q    What else did he tell you?
8    A    I don't recall, but that was the essence
9    of that one call.
10   Q    Before we move from that call. Yes.
11   Q    Did he tell you who it was if anyone who
12   told you if Bender was successful in this election
13   customers would with draw the funds from the bank,
14   what was the source of the information?
15   A    He may have told me, but I don't recall
16   because I didn't know the people.
17   Q    What did you say in response to that?
18   A    Well.
19   Q    Generally?
20   A    I asked him what did he think we should
21   do.
22   Q    What did he say?
23   A    He said, he said, you know, maybe you know
24   maybe we should vote for management. And I said,
25   no, I am voting for Bender, because Bender knows how

Page 30

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL13

0    36

```
 1   to make money.
 2        Q    Okay was that the extent of the first
 3   call?
 4        A    Yes.  And this may have taken place over
 5   several calls I don't think it was, I can't give you
 6   the sequence.
 7        Q    I accept that.
 8             Okay did you that have occasion to
 9   discuss a potential purchase of your stock in and
10   the bulk of your stock that day with Doley?
11        A    Doley called me later, at some point he
12   met with a group of people I think Wilmot was a mong
13   that group, I am not sure who else was in the group
14   and then Doley called and said, that, that Wilmot is
15   thinking about putting together a group, that would
16   buy, that would be willing to buy my stock for
17   18-dollars.
18        Q    Okay.
19             Eighteen-dollars a share.
20        Q    I am sorry?
21        A    Eighteen-dollar as share.
22        Q    Okay?
23        A    And I said to him, well, if, but the
24   condition of that was that the management had to
25   retain control of the bank.  I asked Harold whether
```

0    37

```
 1   that was real, whether he had the money, and Harold
 2   said, yes, he thought it was real and that he had
```

Page 31

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL 13

3  the money.
4  Q  Okay as this transaction then was relayed
5  to you, this potential transaction at 18-dollar s
6  did Mr. Doley tell you in effect, that in order to
7  do the transaction you would have to vote your
8  shares for the management?
9  A  Yes.
10  Q  That day?
11  A  Yes.
12  Q  When you inquired as to whether it was
13  real whether Wilmot had the money, Mr. Doley said
14  yes, did anything else happen in that conversation
15  other than what you just told me?
16  A  Not that I recall.
17  Q  Did you agree to vote your shares for the
18  management in exchange for this 18-dollar
19  transaction?
20  A  I told him let me think about it, and I
21  didn't make a decision right at that moment. I told
22  Harold, I still thought that Bender knew how to make
23  money, are s Wilmot could not wirte a check,.
24  Q  Why is that?
25  A  I didn't think he was that wealthy, where

0  38

1  he could wright a check for fer what he was
2  commiting to it was an uncertain offer.
3  Q  This offer that was being discussed was it
4  just for your stock or the stock controlled by
5  Doley?
6  A  It was also for his Doley.
7  Q  And whatever entity it had down there,

Page 32

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL 13

8    Doley Securities, right?

9    A    Yes.

10    Q    Was it your understanding at the time that

11 Mr. Doley controlled the stock that was held in the

12 name of customers of Doley Securities at that time?

13    A    No response.

14    Q    That you were talking to him on the phone?

15    A    It wasn't clear to me because Harold had,

16 there was a lady that, down in New Orleans who owned

17 a lot of the stock or was part of an entity that

18 owned a lot of the stock, I forget her name offhand.

19    Q    Roberts?

20    A    Yes, Roberts, sell CI A Roberts.

21    And I knew that Harold had to get

22 proxies from her, so I don't think that he had C A R

23 T E B L A  N C H E with Ms. Roberts.

24    Q    As you left Mr. Doley, the evening before?

25    A    Yes.

0 39

1    Q    -- was it your understanding that

2 Mr. Doley was going to vote the shares that he

3 controlled for Mr. Bender as he went to New York?

4    A    Yes.

5    Q    What was your understanding?

6    A    That was my understanding.

7    Q    By the close of the day on the 25th or

8 early morning on the 26th you believed your shares

9 were going to be voted for Bender and the shares

10 that Doley controlled were going to be voted for

11 Beb?

Page 33

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL 13

17  to buy the stock?
18     A   Oh, well, we had a conversation about I
19  asked him where Wilmot was going to get the cash to
20  buy uses out.
21     Q   Right.
22         What did he say?
23     A   He said that Wilmot and a group of people
24  that he was close to, had a lot of contacts he
25  mentioned some names who I don't recall right now

0   41

1   who were going to possibly put together the money
2   for this.
3      Q   Well, when he called you back to talk
4   about he is going to vote for the management
5   management and you should vote for the management
6   was there a further discussion about this potential
7   purchase by Wilmot and some group?
8      A   No.
9          Well, the only, we talked about a lot
10  of things in terms of what the condition s of a
11  possible purchase would be, but we recognized I
12  certainly recognized at the time, that that unless
13  he could wire the money to me, that day, that, you
14  know, this was just talk.  I mean, and I told
15  Harold, I said, you know, you know, no T I C K Y no
16  laundry.
17     Q   I understand what you are saying.
18     A   So that, so, so I thought what we had was,
19  was basically an indication of interest, that after
20  the shareholders zero meeting we would sit down and

Page 35

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL 13

21  have a conversation with Mr. Wilmot,.
22  Q   Was it your understanding that to keep
23  this interest open you had to vote your shares for
24  the management?
25  A   Yes.

0   42

1   Q   That was a condition of the discussion?
2   A   That was a condition of the discussion.
3   Q   Doley told you that?
4   A   Yes.
5   Q   And based on Mr. Doley's telling you that,
6   did you agree to vote the shares to the management?
7   A   Based on that among other things. You
8   have to remember, that I was in this as an
9   investment, it was not a lot of money for me.
10  Q   Right sncht I didn't want to spend a lot
11  of time and energy on this.
12      That Harold told me that he thought
13  that if Mr. Bender won that the bank would lose a
14  lot of deposits and maybe the value of the bank
15  wouldn't be as much as we thought it would be, so I
16  took that into consideration, I also took into
17  consideration the fact that we, that I might be able
18  to sell my stock to Mr. Wilmot.
19  Q   If you voted your shares to the
20  management?
21  A   If I voted my shares for the back
22  management.
23  Q   Based on what you have just told me you
24  did agree to vote your shares for the bank for the
25  management?

Page 36

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL 13

0   99

1   Q   Again looking back to the 25th and 26th?
2   A   Yes.
3   Q   Did you know of your own personal
4   knowledge how Doley Securities was going to vote its
5   shares on the meeting of the 26th?
6   A   Yes.
7   Q   And from where did you get that
8   information?
9   A   Harold Doley.
10  Q   What had he told you?
11  A   He was going to vote those shares, the day
12  before on the 25th, Doley was going to vote for
13  Bender; Bender's slate.
14  Q   And then on the 26th?
15  A   On the 26th, some time midday, Doley
16  chained his mind.
17  Q   Has Mr. Doley ever told you that he
18  controls C E C crevment robt be ror bert or the way
19  she s will vote her shares?
20  A   No.
21  Q   Has Mr. Doley ever told he controls Sh
22  sell?
23  Q   Did he ever tell you he controls the three
24  Doley entities listed there or the way they will
25  vote their shares?

0   100

1   A   He owns the company so I assume that he
2   controls them but he never has said to me that he

Page 85

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL13

3  controls if Doley securities.
4     Q    That is your assumption?
5     A    I assume that he controls Doley
6  securities.
7     Q    There are three listings there for Logan
8  Delany, junior, correct.
9     Q    If my math is correct you own about 22,632
10 shares, is that correct, sir avenue the listing on
11 this document?
12    A    Yes .
13    Q    That is true today,?
14    A    Yes.
15    Q    Does Mr. Doley control you or the way you
16 are going to vote your shares?
17    A    No.
18    Q    And I believe you have already testified
19 that you were going to vote for Mr. Bender's slate
20 on the 25th?
21    A    Yes.
22    Q    And then changed your mind on the 26th?
23    A    Yes.
24    Q    Looking to the next entry, Majestic life
25 insurance company?

0   101

1     A    Yes .
2     Q    Do you know who runs or controls Majestic
3  life insurance company?
4     A    I know that Ms. Robert is somehow
5  connected with Majestic life insurance company and
6  mortgage ture a reand the Memorial park, but, but
7  exactly what her connection is, I don't know.

Page 86

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL 13

8  Q  Has Mr. Doley ever told you that he
9  controls Majestic life insurance company and the
10 voting of the shares represented here?
11 A  No.
12 Q  How about Majestic more ture re?
13 A  No.
14 Q  Or Rest Haven Memorial park?
15 A  No.
16 Q  As of October 25th did you know how those
17 three entities were going to vote their shares?
18 A  Once again based on the conversation I
19 heard, it sounded like they were going to vote for
20 Bender on the 25th.
21 Q  Did you have any knowledge as to whether
22 any of those three entities have engaged in
23 discussions with Mr. Wilmot or others on the 26th
24 regarding the possible sale of their shares?
25 A  I don't know much.

0  102

1  Q  Do you have any knowledge as to why it was
2  those three entities voted their shares as they did
3  on October 26th?
4  A  No.
5  Q  Do you have any knowledge as to why
6  Cecelia Roberts or Gaspard voted there shares on
7  October 26th?
8  A  No.
9  Q  How about the three Doley entities do you
10 have any knowledge as to why they voted their shares
11 the way they did?

Page 87

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL13

```
12    A    Yes.
13    Q    Mr. Doley tell you that?
14    A    Yes.
15    Q    What did he tell you.
16         A he was recommending to me that I
17   vote the way he votes it was for the same reason
18   that I mentioned earlier in the deposition, there
19   was a possibility of the bank losing deposit s and
20   diminishing the value if Mr. Bender became, if his
21   slate won and Bender got control.
22         And then the second thing is that
23   there would be a possibility of doing a deal with
24   the Wilmot group, for 18-dollars a share.
25    Q    Did you know who was in the Wilmot group?
```

103

```
1     A    No.
2     Q    Did you ever ask?
3     A    Yes .
4     Q    But no one told you?
5     A    They mentioned a couple of names but the
6    names didn't register to me, at the time.  I think
7    other than Mr. Johnson son I had not heard of
8    anybody.
9     Q    So names went by but you just don't
10   remember?
11    A    I don't remember.
12    Q    All right.
13         Have you ever met a gentleman by the
14   name of Michael C OB B who is a defendant in this
15   lawsuit?
16    A    I don't believe so.
```
Page 88

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

APRIL 13

17  got it?
18  A    Right.
19  Q    Just to be clear as of today, this
20  purchase agreement Exhibit 6 six has not been
21  executed ;correct?
22  A    I don't know.
23  Q    On your behalf?
24  A    Not on my behalf New York.
25  Q    So far as you know there have been no

0  125

1   further discussions regarding Exhibit 6 six or any
2   kind of purchase agreement, correct?
3   A    That is correct.
4   Q    Let me hand you what has been previously
5   mark as Exhibit three?
6   A    Yes.
7   Q    Have you ever seen that letter before
8   today?
9   A    I don't know whether I have seen this
10  before or not.  I received some letters from people,
11  saying that Bender was a bad guy but I didn't really
12  pay 59 attention to it.
13  Q    Let me hand you what has been marked as
14  Exhibit one, I don't want to hide the B A  L   L that
15  is another letter if shareholders saying that Bender
16  is a bad guy.
17       MR. COOTER:  Will you stipulate that I
18       that is what it says.
19  A    Well.
20  Q    To use your terminology.

Page 107

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief

```
                          APRIL13
     21            Looking at Exhibit 1 and three, let
     22   me ask you a couple of questions we will find on it
     23   was think which is more important than what I think.
     24            And we will take them together so we
     25   can get out of her, did either Exhibit 1 or Exhibit
0  126


      1   3, in any way have relevance or a role in your
      2   decision as to how to vote your shares at the annual
      3   meeting of shareholders on October 26th?
      4       A    Not directly S.
      5            MR. FIELDS:  Fields you haven't
      6   established that he has even read these.
      7       Q    I will go back and do that. you said you
      8   knew about a couple of letters?
      9       A    Yes.
     10       Q    Did you ever read Exhibit 1?
     11       A    No.  I, I may have skimmed through it when
     12   it came through the mail, I probably did probably
     13   skim through it and through it away.
     14       Q    What about Exhibit 3, did you ever read
     15   Exhibit 3?
     16       A    The same thing, I may have looked at it,
     17   skimmed through it, I don't recall whether it was
     18   these specific letter is that I received in the
     19   mail, I did receive letters in the mail basically
     20   saying that I should not vote for Bender's slate.
     21       Q    Based upon was said I think I know the
     22   answer were either Exhibit 1 or Exhibit 3 in any way
     23   material to your decision as to how to vote your
     24   shares on the 26th?
     25       A    It was, I, I thought of them in core Rob
                             Page 108
```

Bender, et al., v. Jordan, et al., C.A. No. 1:06cv00092 (RMC)
Exhibit A in Support of Plaintiffs' Memorandum in Reply to Defendants'
Response to The Benders' Application for Preliminary Injunctive Relief