# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
--------------------------x
MORTON A. BENDER et al.,      :

        Plaintiffs,           :

    v.                        :  No. 1:06CV00092

CAROLYN D. JORDAN et al.,     :

        Defendants.           :  Volume
--------------------------x
```

COPY

Washington, D.C.

Tuesday, March 28, 2006

Deposition of

ROBERT ROYER

a witness, called for examination by counsel for

Plaintiffs, pursuant to notice and agreement of

counsel, beginning at approximately 10:06 a.m., at

the law office of Shook Hardy & Bacon, L.L.P., 600

14th Street, NW., Washington, D.C., before M. Bryce

Hixson of Beta Court Reporting, notary public in

and for the District of Columbia, when were present

on behalf of the respective parties:

2

1  APPEARANCES:
2    On behalf of Plaintiffs:
3      DALE A. COOTER, ESQUIRE
         Cooter Mangold Tompert & Karas, L.L.P.
4        5301 Wisconsin Avenue, NW., Suite 500
         Washington, D.C. 20015
5        (202) 537-0700
6    On behalf of Defendants Jordan et al.:
7      PETER E. STRAND, ESQUIRE
         Shook Hardy & Bacon, L.L.P.
8        Hamilton Square
         600 14th Street, NW., Suite 800
9        Washington, D.C. 20005-2004
         (202) 783-8400
10
11  ALSO PRESENT:
12    Morton A. Bender
13
14              * * * * *
15
16
17
18
19
20
21
22

3

1            C O N T E N T S
2  EXAMINATION BY:                    PAGE
3    Counsel for Plaintiffs          4
4  DEPOSITION EXHIBITS:
5  No. 15 - Notice of Deposition    10
6  No. 16 - Proxy                   110
7
8
9
10             * * * * *
11
12
13
14
15
16
17
18
19
20
21
22

4

1            P R O C E E D I N G S
2  Whereupon,
3            ROBERT ROYER
4  was called as a witness and, having been first
5  duly sworn, was examined and testified as follows:
6      EXAMINATION BY COUNSEL FOR PLAINTIFFS
7        BY MR. COOTER:
8    Q   Good morning. State your name and
9  address for the record, please.
10   A   Robert Royer, 925 15th Street
11  Northwest, Washington, D.C., 5th Floor,
12  20005.
13   Q   Is that your business address?
14   A   Yes, that's my business address.
15   Q   What's the name of the business?
16   A   Royer and Brooks.
17   Q   How big a firm is that?
18   A   It's two lawyers and three
19  non-lawyers.
20   Q   Okay.  And how long have you been a
21  lawyer?
22   A   How long I have been a lawyer?

5

1    Q   Yeah.
2    A   1976.
3    Q   Okay.  Give me your educational
4  background if you would, sir.
5    A   From when?
6    Q   High school forward.
7    A   West Point high school, Western
8  Michigan University, Michigan State
9  University Law School.
10   Q   When did you graduate from law
11  school?
12   A   When I became a lawyer in 1976.
13   Q   And what did you do after
14  graduation from law school?  Give me your
15  work history.
16   A   I worked in a small firm in
17  Detroit.  I ultimately within five or six
18  months later moved to Washington, and I
19  became counsel to a committee on the Hill.
20   Q   Which committee?
21   A   House administration and then a
22  select committee on intelligence.

2 (Pages 2 to 5)

6

1    Q    And how long were you in that role?
2    A    I would say about two years.
3    Q    What did you do then?
4    A    Some of it is -- I can't discuss --
5    others of it was mostly dealing with election
6    law and other things.
7    Q    I'm only interested in what
8    positions you held. I'm not interested
9    really in functionally what you did. What
10   positions have you held?
11   A    I was counsel to the committee on
12   house administration. I was counsel to the
13   chairman of the select committee on
14   intelligence.
15   Q    For what period of time?
16   A    The two years that I spoke to you
17   about.
18   Q    Okay. What did you do after that?
19   A    I went to work for a trade
20   association.
21   Q    Which?
22   A    The Securities Industry

7

1    Association.
2    Q    Okay. What did you do there?
3    A    I practiced banking and securities
4    law, tax law.
5    Q    For what period of time were you
6    there?
7    A    For approximately three or four
8    years --
9    Q    What did you do after that?
10   A    -- or two -- I guess for two and a
11   half years.
12   Q    What did you do after that?
13   A    Set up my own law firm.
14   Q    And is that Royer and Brooks?
15   A    Well, that's what it is today.
16   Q    I mean, has it been through
17   iterations?
18   A    It's always been Royer and
19   something.
20   Q    What is your specialty, if you have
21   one?
22   A    Well, we are generals in a lot of

8

1    ways; banking lawyers, securities lawyers.
2    We do some admiralty, we do some corporate
3    governance, just general law --
4    Q    Do you litigate?
5    A    I have litigated.
6    Q    What percentage of your time has
7    got litigation?
8    A    Under 5 percent.
9    Q    Tell me, when did you first become
10   acquainted in any sense, with Independence
11   Federal Savings Bank?
12   A    When they retained me.
13   Q    When was that?
14   A    I believe it was summer of last
15   year.
16   Q    Prior to that you'd -- is it
17   accurate that you'd had no involvement with
18   the bank prior to your retention last summer?
19   A    Yes, that will be accurate.
20   Q    Now, were you acquainted with any
21   -- prior to your retention, with any member
22   of the Board?

9

1    A    Yes.
2    Q    Who?
3    A    Carolyn Jordan.
4    Q    And how long had you known Ms.
5    Jordan?
6    A    Since about 1980.
7    Q    What is the nature of your
8    acquaintance or your relationship with Ms.
9    Jordan?
10   A    Professional.
11   Q    Where did you -- in what sense did
12   -- where did you meet her? On what job?
13   A    She was at the time working for
14   Senator Cranston of California.
15   Q    Okay. And have you stayed in touch
16   with her since the '80s?
17   A    Yeah, I stay in touch with all my
18   friends.
19   Q    So she's a friend, fair?
20   A    Yeah, just a friend.
21   Q    Now, who was the first to approach
22   you about the potential of being retained by

3 (Pages 6 to 9)