# EXHIBIT A

# MULDOON MURPHY & AGUGGIA LLP

ATTORNEYS AT LAW
5101 WISCONSIN AVENUE, NW
WASHINGTON, DC 20016
202.362.0840  FAX 202.966.9409
WWW.MULDOONMURPHY.COM

RECEIVED

2006 MAY 18 P 3:

EXAMINATION POLIC

May 18, 2006

**VIA COURIER**

Chief Counsel
Business Transactions Division
Office of Thrift Supervision
Department of the Treasury
1700 G Street, NW
Washington, D.C. 20552

> Re:    Independence Federal Savings Bank
>         Preliminary Proxy Materials
>         OTS Docket No. 7173

Dear Sir or Madam:

On behalf of Independence Federal Savings Bank (the "Savings Bank") and pursuant to 17 C.F.R. 240.14a-6 and 12 C.F.R. 563d.1, we have enclosed for filing four copies of a revised preliminary proxy statement to be furnished to the security holders of the Savings Bank in connection with its Annual Meeting of Stockholders to be held on July 19, 2006. In addition, we are submitting two copies marked to show changes from the initially filed material.

A fifth copy of the enclosed materials is being sent on this date to the Southeast Regional Office pursuant to 12 C.F.R. 563d.2.

Please date stamp the enclosed copy of this letter as a receipt and return to the messenger. Please address any comments your staff may have to the undersigned at (202) 362-0840.

Very truly yours,

MULDOON MURPHY & AGUGGIA LLP

John R. Hall

/Enclosures
cc:    Frances C. Augello, Office of Thrift Supervision
        Aaron B. Kahn, Office of Thrift Supervision
        Thomas L. Batties, Independence Federal Savings Bank
        Sheila R. Finlayson, Independence Federal Savings Bank

00277267.WPD

# SCHEDULE 14A
## (Rule 14a-101)
## INFORMATION REQUIRED IN PROXY STATEMENT

### SCHEDULE 14A INFORMATION
**Proxy Statement Pursuant to Section 14(a) of the Securities**
**Exchange Act of 1934 (Amendment No. _____ )**

Filed by the Registrant ☒
Filed by a Party other than the Registrant ☐

Check the appropriate box:
☒ Preliminary Proxy Statement
☐ Confidential, for Use of the OTS Only (as permitted by Rule 14a-6(e)(2))
☐ Definitive Proxy Statement
☐ Definitive Additional Materials
☐ Soliciting Material Pursuant to § 240.14a-12

### INDEPENDENCE FEDERAL SAVINGS BANK
(Name of Registrant as Specified in Its Charter)

_____

(Name of Person(s) Filing Proxy Statement, if Other Than the Registrant)

Payment of Filing Fee (Check the appropriate box):
☐ No fee required.
☒ Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

1. Title of each class of securities to which transaction applies:
_____

2. Aggregate number of securities to which transaction applies:
_____

3. Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):
_____

4. Proposed maximum aggregate value of transaction:
_____

5. Total fee paid:
$125.00
_____

☐ Fee paid previously with preliminary materials: _____

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the form or schedule and the date of its filing.

1. Amount previously paid:
_____

2. Form, Schedule or Registration Statement No.:
_____

3. Filing Party:
_____

4. Date Filed:
_____

00270255.DOC

[Independence Federal Savings Bank Logo/Letterhead]

June 21, 2006

Dear Shareholder:

We cordially invite you to attend the Annual Meeting of Shareholders of Independence Federal Savings Bank. The meeting will be held at The Mayflower Hotel, 1127 Connecticut Avenue, N.W., Washington, D.C., on Wednesday, July 19, 2006 at 11:00 a.m., local time. This proxy statement, along with the accompanying proxy card, is being first sent or delivered to shareholders of Independence Federal Savings Bank on or about June 21, 2006.

At the Annual Meeting, you will be asked to elect three directors to our Board of Directors and to ratify the appointment of our independent accountants, BDO Seidman, LLP, for the fiscal year ending December 31, 2006.

Whether or not you plan to attend the annual meeting, please complete, date and sign the enclosed proxy card and return it promptly in the postage-paid envelope provided.

On behalf of the Board of Directors, we thank you for your prompt attention to this important matter.

Sincerely,

Thomas L. Batties
Acting President and Chief Executive Officer

# INDEPENDENCE FEDERAL SAVINGS BANK
### 1229 Connecticut Avenue, N.W.
### Washington, D.C. 20036

## NOTICE OF ANNUAL MEETING OF SHAREHOLDERS
## TO BE HELD ON JULY 19, 2006

NOTICE IS HEREBY GIVEN that the Annual Meeting of Shareholders of Independence Federal Savings Bank ("Independence Federal") will be held at The Mayflower Hotel, 1127 Connecticut Avenue, N.W., Washington, D.C., on Wednesday, July 19, 2006 at 11:00 a.m., local time, for a vote for the following purposes:

(1)    The election of three directors of Independence Federal;

(2)    The ratification of the appointment of BDO Seidman, LLP as independent accountants for Independence Federal for the fiscal year ending December 31, 2006; and

(3)    Such other business as may properly come before the Annual Meeting.

As of the time of the mailing of this notice, the Board of Directors is not aware of any such other business.

Any action may be taken on the foregoing proposals at the Annual Meeting on the date specified above, or on any date(s) to which the Annual Meeting may be adjourned. In the event there are insufficient votes for a quorum at the time of the Annual Meeting, the Annual Meeting may be adjourned in order to permit further solicitation of proxies by Independence Federal. Only shareholders of record at the close of business on June 14, 2006 are entitled to vote at the Annual Meeting or any adjournments thereof.

You are requested to complete and sign the enclosed proxy card, which is solicited on behalf of the Board of Directors of Independence Federal, and to mail it promptly in the enclosed envelope. The proxy will not be used if you attend the Annual Meeting and vote in person. You should sign, date and mail your proxy card at your earliest convenience.

                    BY ORDER OF THE BOARD OF DIRECTORS


                    Sheila R. Finlayson
                    Corporate Secretary

Washington, D.C.
June 21, 2006


The Board of Directors of Independence Federal recommends that you vote "FOR" each of the proposals. Your support is appreciated.

31-May-06  15:13    From-SF&T                    +2026820355         T-092   P.07/32   F-667

# INDEPENDENCE FEDERAL SAVINGS BANK

---

# PROXY STATEMENT

---

This proxy statement is furnished in connection with the solicitation of proxies by the Board of Directors of Independence Federal Savings Bank ("Independence Federal" or the "Bank") to be used at the Annual Meeting of Shareholders of the Bank. The Annual Meeting is currently scheduled to be held at The Mayflower Hotel, 1127 Connecticut Avenue, N.W., Washington, D.C., on Wednesday, July 19, 2006, at 11:00 a.m., local time. This proxy statement and the enclosed proxy card are being first mailed to shareholders of record on or about June 21, 2006.

The Bank's Board of Directors had previously scheduled the Annual Meeting for Wednesday, May 17, 2006. Prior to giving notice to our shareholders of that date, as a result of issues that arose regarding voting procedures for the election of directors and the time required for the Bank's Board of Directors to consider those issues, the Board determined that the Annual Meeting needed to be delayed. Consequently, the Board of Directors approved and submitted to the Office of Thrift Supervision an amendment to the provision of the Bank's bylaws that otherwise requires that the Annual Meeting be held within 150 days after the end of the fiscal year to allow for the meeting in 2006 to be held at a later date. There is a possibility that the Annual Meeting now scheduled for Wednesday, July 19, 2006, could be further delayed, as shareholder Morton A. Bender ("Bender") filed a lawsuit on January 18, 2006 against the Bank, certain of the Bank's directors and Thomas L. Batties, the Bank's Acting President and Chief Executive Officer. The defendant directors include the five directors whose election was not primarily attributable to the nomination and/or vote of Bender. The defendant directors are Carolyn D. Jordan, Michael J. Cobb, William B. Fitzgerald, IV, David W. Wilmot and Eugene K. Youngentob. The lawsuit filed on behalf of Bender in the United States District Court for the District of Columbia raises objections concerning the conduct of the Bank's October 26, 2005 shareholders' meeting, the voting procedures at the meeting and the information provided to shareholders prior to the meeting. The lawsuit is seeking, among other things, to void the election results of the Bank's October 26, 2005 shareholders' meeting, neutralize the votes of certain shareholders, whom Bender identifies as "Harold Doley, along with a group of affiliated persons or entities" and "Jeffrey Thompson," in future elections of directors of the Bank and prevent the Bank from holding the Annual Meeting except by an Order of the Court. Bender is also seeking damages in the amount of $20 million from the defendant directors and the Acting President and Chief Executive Officer. If Bender is successful in his effort to prevent the Bank from holding the Annual Meeting until it is so ordered by the Court, the Annual Meeting will be delayed. If Bender is successful in some or all of his litigation claims, then the Annual Meeting may be delayed. If it becomes apparent to Bank management that the Annual Meeting will be delayed, we will promptly notify shareholders.

## GENERAL INFORMATION ABOUT VOTING

### Who Can Vote at the Meeting

You will be entitled to vote your Independence Federal common stock only if the records of the Bank show that you held your shares as of the close of business on June 14, 2006. Each voting share of common stock is entitled to one vote. As of the close of business on June 14, 2006, there were 1,552,448 shares of common stock of the Bank outstanding and entitled to vote.

## Attending the Meeting

If you are a beneficial owner of Independence Federal common stock held by a broker, bank or other nominee (i.e., in "street name"), you will need proof of ownership to be admitted to the meeting. A recent brokerage statement or letter from a bank or broker is an example of proof of ownership. If you want to vote your shares of Independence Federal common stock held in street name in person or at the meeting, you will need to obtain a written proxy in your name from the broker, bank or other nominee who holds your shares.

## Vote Required

The Annual Meeting will be held only if there is a quorum. A quorum exists if a majority of the outstanding shares of voting stock entitled to vote are represented at the meeting. If you return a valid proxy card or voting instructions or attend the meeting in person, your shares will be counted for purposes of determining whether there is a quorum, even if you abstain from voting. Broker non-votes also will be counted for purposes of determining the existence of a quorum. A broker non-vote occurs when a broker, bank or other nominee holding shares for a beneficial owner does not vote on a particular proposal because the nominee does not have discretionary voting power with respect to that item and has not received voting instructions from the beneficial owner.

*Proposal 1: The Election of Three Directors of Independence Federal.* Every shareholder entitled to vote has the right (i) to vote the number of voting shares owned by him or her for as many persons as there are directors to be elected and for whose election the shareholder has the right to vote or (ii) to cumulate his or her votes. If a shareholder wishes to cumulate his or her votes, such shareholder may cast that number of votes equal to the number of such directors to be elected multiplied by the number of voting shares owned by such shareholder for one nominee, or may distribute such votes among any number of nominees. **By marking the proxy card "FOR" all nominees, the shareholder gives the Board of Directors, as proxy, the right to vote his or her voting shares for such nominees or, except to the extent all cumulative votes which such shareholder is entitled to cast are specifically allocated, to distribute his or her votes among such nominees as the Board of Directors may determine appropriate in its discretion.** However, if a shareholder marks on the proxy card to "WITHHOLD AUTHORITY FOR ALL" nominees, the Board of Directors cannot vote the shares represented by such proxy for the election of directors. A shareholder may withhold authority for less than all of the nominees by marking the proxy card "FOR ALL EXCEPT" and filling in the circle next to the name of the nominee(s) for whom authority to vote is withheld. By inserting the number of votes to be cast for individual nominees, a shareholder may specify how his or her cumulative votes shall be cast. If all of a shareholder's cumulative votes covered by the proxy are not accounted for, the Board of Directors may vote the unaccounted shares and distribute votes among the nominees (other than nominees for whom the shareholder specifically withholds votes). If you are a beneficial owner and your shares are held by your broker, bank or other nominee, you should follow the instructions provided by your broker, bank or other nominee. Directors will be elected by a plurality of voting shares voted, without regard to proxies as to which authority for one or more of the nominees being proposed is withheld or the existence of broker non-votes.

*Proposal 2: The Ratification of the Appointment of BDO Seidman, LLP as the Bank's Independent Accountants for the Fiscal Year Ending December 31, 2006.* Concerning the ratification of the independent accountants and all other matters that may properly come before the Annual Meeting, by checking the appropriate box, a voting shareholder may: (i) vote "FOR" the item; (ii) vote "AGAINST" the item; or (iii) "ABSTAIN" from voting on the item. The ratification of the appointment of BDO Seidman, LLP as independent accountants will be decided by the affirmative vote of a majority

of the shares represented at the meeting and entitled to vote on the matter. On this matter, abstentions will have the same effect as a vote against the proposal and broker non-votes will have no effect on the voting.

### Shares Held by Officers and Directors of Independence Federal

As of the record date, directors and executive officers of Independence Federal owned approximately 6.36% of the outstanding shares of Independence Federal common stock.

### Voting by Proxy

The Board of Directors of Independence Federal is sending you this proxy statement for the purpose of requesting that you allow your shares of Independence Federal's voting stock to be represented at the meeting by the persons named on the enclosed proxy card. All voting shares of Independence Federal's common stock represented at the meeting by such properly executed proxy cards will be voted according to the instructions indicated on the cards. If you sign, date and return a proxy card without giving voting instructions, your shares will be voted as recommended by Independence Federal's Board of Directors. The Board of Directors has determined to allocate votes over which it has voting discretion through proxies in the following order of priority: James R. Haynes, Marion O. Greene, Jr. and Thomas L. Batties. Such allocation will be made prior to the closing of the polls for election of directors at the meeting. **The Board of Directors recommends a vote "FOR" each of the nominees for director and "FOR" ratification of BDO Seidman, LLP as the Bank's independent auditors.**

If any matters not described in this proxy statement are properly presented at the meeting, the persons named as proxies on the proxy card are entitled to use their own best judgment to determine how to vote your voting shares. This includes a motion to adjourn or postpone the meeting. If the meeting is postponed or adjourned, Independence Federal's voting stock may be voted by the persons named in the proxy card on the adjourned meeting date as well, unless you have revoked your proxy. Independence Federal is not aware of any other matters to be presented at the meeting.

It is important that proxies be returned promptly in the enclosed postage-paid envelope provided. You may revoke your proxy at any time before the vote is taken at the meeting. To revoke your proxy, you must either advise the Corporate Secretary of Independence Federal in writing before your common stock has been voted at the meeting, deliver a later dated proxy card, or attend the meeting and vote your shares in person. Attendance at the meeting will not in itself constitute revocation of your proxy. If you need assistance in completing your proxy card or have questions regarding the meeting, please contact Sheila R. Finlayson, Corporate Secretary, at (202) 628-5500.

If your Independence Federal common stock is held by a broker, bank or other nominee (*i.e.*, in "street name") you will receive instructions from your broker, bank or other nominee that you must follow in order to have your shares voted. Your broker or bank may allow you to deliver your voting instructions via the telephone or the internet. Please see the instruction form provided by your broker, bank or other nominee that accompanies this proxy statement upon receipt.

3

# CORPORATE GOVERNANCE

### General

Independence Federal periodically reviews its corporate governance policies and procedures to ensure that the Bank meets the highest standards of ethical conduct, reports results with accuracy and transparency and fully complies with the laws, rules and regulations that govern the Bank's operations. As part of this periodic corporate governance review, the Board of Directors reviews and adopts best corporate governance policies and practices for the Bank.

### Code of Ethics and Business Conduct

The Bank has adopted a Code of Ethics and Business Conduct (the "Code") that is designed to ensure that the Bank's directors, executive officers and employees meet the highest standards of ethical conduct. The Code requires that the Bank's directors, executive officers and employees avoid conflicts of interest, comply with all laws and other legal requirements, conduct business in an honest and ethical manner and otherwise act with integrity and in the Bank's best interest. Under the terms of the Code, directors, executive officers and employees are required to report any conduct that they believe in good faith to be an actual or apparent violation of the Code.

As a mechanism to encourage compliance with the Code, the Bank has established procedures to receive, retain and treat complaints received regarding accounting, internal controls and/or auditing matters. These procedures ensure that individuals may submit concerns regarding questionable accounting or auditing matters in a confidential and anonymous manner. The Code also prohibits the Bank from retaliating against any director, executive officer or employee who reports actual or apparent violations of the Code.

### Meetings of the Board of Directors

The business of Independence Federal is conducted through meetings and activities of its Board of Directors and committees. The Board of Directors of the Bank met 20 times during the year ended December 31, 2005. In carrying out its duties, the Board of Directors has the authority to establish committees and to appoint Board members to serve on those committees. No director attended fewer than 75% of the total meetings of the Board of Directors and committees on which he or she served.

*Attendance at the Annual Meeting.* The Board of Directors encourages each director to attend the Annual Meeting of Shareholders. All of the directors attended the 2005 Annual Meeting of Shareholders held on May 11, 2005 that was adjourned prior to the vote on the election of directors and the 2005 Special Meeting in lieu of an Annual Meeting of Shareholders held on October 26, 2005.

### Committees of the Board of Directors

*Executive Committee.* On June 30, 2005, the Board of Directors established an Executive Committee of the Board consisting of Carolyn D. Jordan, Esq. (Chair), Eugene K. Youngentob and David W. Wilmot, Esq. When the Board of Directors is not in session, the Executive Committee may exercise all of the authority of the Board of Directors except the authority to declare dividends, amend the charter and bylaws of the Bank, or recommend to the shareholders a plan of merger, consolidation or conversion, the sale, lease or other disposition of all or substantially all of the property and assets of the Bank otherwise than in the usual and regular course of business, a voluntary dissolution of the Bank, a revocation of any of the forgoing or the approval of any transactions in which any member of the

4

Executive Committee, directly or indirectly, has any material beneficial interest. This committee met by teleconference as necessary during the year ended December 31, 2005.

*Audit Committee.* The Board of Directors has a separately-designated standing Audit Committee established in accordance with Section 10A(m) of the Securities Exchange Act of 1934, as amended. The Audit Committee, consisting of Michael J. Cobb, CPA (Chair), Carolyn D. Jordan, Esq., Eugene K. Youngentob and Robert B. Isard, meets periodically with independent auditors and management to review accounting, auditing, internal control structure and financial reporting matters. This committee met five times during the year ended December 31, 2005. Each member of the Audit Committee has been determined to be independent in accordance with the listing standards of the Nasdaq Stock Market. The Board of Directors has determined that Michael J. Cobb, CPA, is an audit committee financial expert under the rules of the Securities and Exchange Commission and, as such, he also qualifies as an audit committee member with financial sophistication under the Nasdaq listing standards. The Audit Committee acts under a written charter adopted by the Board of Directors. The Audit Committee's charter was revised during the year ended December 31, 2005, and a copy of the revised charter is included as <u>Appendix A</u> to this proxy statement.

*Compensation Committee.* The Compensation Committee reviews the compensation for executive officers and employees of the Bank. Nelson Deckelbaum, Esq. (Chair), Michael J. Cobb, CPA, John Silvanus Wilson, Jr. and Eugene K. Youngentob serve on this committee, which met four times in the year ended December 31, 2005. Mr. Wilson replaced Carolyn D. Jordan, Esq., who served on this committee until November 2005.

*Nominating Committee.* Pursuant to the Bank's bylaws, the full Board of Directors acts as a Nominating Committee for the selection of management nominees for election as directors of the Bank. The Bank, however, has also established a Nominating/Corporate Governance Committee comprised of independent directors, discussed below, to advise the Board of Directors regarding nominations of directors and other corporate governance matters. The Board of Directors met three times in 2005 in its capacity as a Nominating Committee and twice in 2006 with respect to the 2006 Annual Meeting of Shareholders.

*Nominating/Corporate Governance Committee.* The Bank's Nominating/Corporate Governance Committee, consisting of Carolyn D. Jordan, Esq. (Chair), Michael J. Cobb, David W. Wilmot, Esq., Nelson Deckelbaum, Esq., Elliott S. Hall, Esq. and Eugene K. Youngentob, assists the Board of Directors in identifying qualified individuals to serve as Board members, determining the composition of the Board of Directors and its committees, monitoring a process to assess Board effectiveness and developing and implementing the Bank's corporate governance guidelines. The Nominating/Corporate Governance Committee also considers and recommends the nominees for director to stand for election at the Bank's Annual Meeting of Shareholders. The Nominating/Corporate Governance Committee met four times in 2005 to recommend nominees for director to stand for election and twice in 2006 with regard to the Bank's 2006 Annual Meeting of Shareholders. Each member of the Nominating/Corporate Governance Committee is independent in accordance with the NASD Manual. The procedures of the Nominating/Corporate Governance Committee required to be disclosed by the rules of the Securities and Exchange Commission are included in this proxy statement. See "Nominating/Corporate Governance Committee Procedures." The Nominating/Corporate Governance Committee will consider director candidates recommended by shareholders, when such candidates appear to be qualified to serve on the Bank's Board of Directors, as described below in "Nominating/Corporate Governance Committee Procedures." The Nominating/Corporate Governance Committee acts under a written charter adopted by the Board of Directors, a copy of which was included as an appendix to the proxy statement for the 2004 Special Meeting in Lieu of an Annual Meeting of Shareholders.

*Loan Committee.* In November 2004, Independence Federal's Board of Directors appointed a Loan Committee of directors and executive officers to review and approve certain mortgage and other types of loans. This committee consists of William B. Fitzgerald, IV (Chair), Robert B. Isard, Thomas L. Batties, Esq., William L. Fuller and E. Leroy Morris. The Loan Committee corresponded electronically and telephonically as required to discuss loan requests and approve loans during the year ended December 31, 2005.

## Directors' Compensation

*Directors' Fees.* Effective March 2006, a fee of $825 per regular monthly meeting attended is paid to each member of the Board of Directors as compensation for services rendered as a director. Prior to this, a fee of $1,650 was paid to each director for attendance at regular meetings of the Board. This fee was reduced, effective in March 2006, and equals one-half of the amount paid per meeting during the year ended December 31, 2005. Attendance at special meetings is not compensated and directors do not receive fees for service on the Bank's Committees. For the year ended December 31, 2005, the Bank paid directors and directors emeritus aggregate fees of $227,700. Members of the Board of Directors of the Bank are also directors of the Bank's subsidiary, IFC. Pursuant to a resolution adopted by the Board of Directors of the Bank in January 1999, a retirement plan was established for directors who had served on the Bank's Board for a continuous period in excess of 16 years. Upon the mutual agreement of the Board of Directors and such eligible director, at the time of the director's separation from the Board, such director shall be designated a "Director Emeritus." The former director serves the Bank in an advisory capacity and receives as compensation $1,650 per regular meeting of the Board for a period of five years from the director's separation from the Board. Death and/or disability (the inability to perform as requested) shall terminate the payments to a Director Emeritus. Currently, the Bank has three former Board members serving as Directors Emeritus: Francis L. Smith, Jeanne Viner Bell and William L. Davis. The Board determined not to reduce the compensation paid to the Directors Emeritus pursuant to the retirement plan.

## STOCK OWNERSHIP

Persons and groups owning in excess of 5% of the common stock of Independence Federal are required to file certain reports regarding such ownership with the Bank and the Office of Thrift Supervision ("OTS"). Based upon filings made with the OTS or other information, the Bank is aware as of March 31, 2006 that the following persons were beneficial owners of more than 5% of the Bank's common stock. A person may be considered to own any shares of common stock over which he or she has, directly or indirectly, sole or shared voting or investing power.

| Name and Address of Beneficial Owner | Amount and Nature of Common Stock | Percent of Class |
|---|---|---|
| Morton A. Bender (1) .................................... Grace M. Bender  2838 McGill Terrace, N.W.  Washington, D.C. 20008 | 326,000 shares | 21.00% |
| Faustine Fitzgerald (2)..................................... 7349 Mission Hills Drive  Las Vegas, Nevada 89113 | 205,639 shares | 13.25% |

| | | |
|---|---|---|
| Tontine Financial Partners, L.P. (3)................. | 135,689 shares | 8.74% |
| Tontine Management L.L.C. | | |
| Tontine Overseas Associates, L.L.C. | | |
| Jeffrey L. Gendell | | |
|    55 Railroad Avenue, 3rd Floor | | |
|    Greenwich, Connecticut 06830 | | |
| | | |
| Jeffery E. Thompson (4) ................................. | 111,600 shares | 7.19% |
|    1101 15th Street, N.W. | | |
|    Suite 400 | | |
|    Washington, D.C. 20005 | | |

(1) Based on information contained in a Schedule 13D/A filed with the OTS on August 29, 2005 on behalf of Morton A. Bender and Grace M. Bender. Mr. and Mrs. Bender share voting and dispositive power over all 326,000 shares. On August 29, 2005, Bender filed Amendment No. 18 to his Schedule 13D reporting that he had submitted a new application with the OTS requesting approval to acquire and exercise more control over Independence Federal. Specifically, Bender disclosed that he wants to increase his ownership in the Bank to 51%, or 791,749 shares. His stated goal is to have a majority of the Board of Directors be persons who are his nominees or representatives who have similar views to his about the future of Independence Federal. The change in control application is still pending.

(2) Includes 8,950 shares held by Ms. Fitzgerald's daughter.

(3) Based on the information contained in a Schedule 13G/A filed with the OTS dated February 10, 2005, Tontine Financial Partners, L.P. and Tontine Management, L.L.C. share voting and dispositive power over 97,042 shares. Tontine Overseas Associates, L.L.C. shares voting and dispositive power over 13,842 shares and Jeffrey Gendell shares voting and dispositive power over 110,884 shares and sole voting and dispositive power over 24,805 shares.

(4) Based on information contained in a Schedule 13D filed with the OTS dated September 28, 2005. That Schedule 13D states: "There are no contracts, arrangements, understandings or relationships (legal or otherwise) between Mr. Thompson and any other person with respect to any securities of the Issuer. Mr. Michael J. Cobb is a member of the Issuer's Board of Directors and is also a 1% stockholder of TCBA [Thompson, Cobb, Bazilio and Associates, P.C., of which Mr. Thompson is Chairman and Chief Executive Officer]. Mr. Thompson has not had any prior discussion or other communication with Mr. Cobb regarding Mr. Thompson's purchase of shares of the common stock."

## PROPOSAL I — ELECTION OF DIRECTORS

The Bank's Board of Directors currently is composed of nine members with staggered terms. Three directors will be elected at the meeting for three-year terms, or until their successors are elected and qualified. The directors whose terms are expiring as of this annual meeting include Nelson Deckelbaum, Esq., Elliott S. Hall, Esq. and Eugene K. Youngentob. Messrs. Deckelbaum and Hall were nominated to their directorships by stockholder Morton A. Bender and the majority of the Board of Directors did not favor their nomination for re-election. Mr. Youngentob announced on March 2, 2006 that he is retiring from the Bank's Board of Directors as of the end of his current term and will not run for re-election. The three nominees proposed by the majority of the Board of Directors for election are Thomas L. Batties, Esq., Marion O. Greene, Jr. and James R. Haynes, Esq. None of these three candidates is currently serving on the Bank's Board of Directors.

All Board nominees have agreed to serve for a three-year term if elected, or until their respective successors shall have been elected and qualified. No director nominee is being proposed for election pursuant to any agreement or understanding between any person and the Bank. Prior to a new director nominated by the Board taking office, the OTS must approve such director. This regulatory approval requirement is the result of the Bank being deemed a "troubled institution" by the OTS pursuant to a letter

dated November 4, 2003.  Because Messrs. Batties, Greene and Haynes are not currently directors, they will be able to serve as directors if elected by shareholders, only with OTS approval.  The Bank has filed an application with the OTS on behalf of each of the three proposed directors and pursuant to OTS policy, the Bank expects that the review period will extend until the first business day after the OTS receives notification that Messrs. Batties, Greene and Haynes have been elected by shareholders.  Pursuant to the bylaws of Independence Federal, the Board of Directors acts as a Nominating Committee for selecting the management nominees for election as directors.  In this capacity, the Board of Directors accepts the recommendations of the Nominating/Corporate Governance Committee.  A non-management director of the Bank recommended each of Messrs. Batties, Greene and Haynes to the Nominating/Corporate Governance Committee.  The Nominating/Corporate Governance Committee then recommended their nominations to the full Board of Directors, which, acting as the Nominating Committee, adopted the recommendation.

It is intended that the proxies solicited by the Board of Directors will be voted for the election of said nominees or, at the discretion of the Board of Directors, cumulatively voted for any of such nominees, unless the proxy card is marked to indicate that such authorization is expressly withheld.  The Board of Directors has determined to allocate votes over which it has voting discretion through proxies in the following order of priority:  James R. Haynes, Marion O. Greene, Jr. and Thomas L. Batties.  Such allocation will be made prior to the closing of the polls for election of directors at the meeting.  If any nominee is unable to serve, the shares represented by all valid proxies will be voted for the election of such substitute as the Board of Directors may recommend.  At this time, the Board of Directors knows of no reason why any nominee might be unavailable to serve.

The Board of Directors recommends that you vote "FOR" the election of its nominees.

## Information as to Nominees, Continuing Directors and Retiring Director

The Board of Directors has determined that all of its directors meet the definition of "independent" set forth in Rule 4200(a)(15) of the National Association of Securities Dealers' Manual (the "NASD Manual"), except for William B. Fitzgerald, IV.  Since the common stock of the Bank is quoted on the Nasdaq Stock Market, Inc., the Bank is required to have a majority of its Board of Directors composed of independent directors.  The Bank is in compliance with this listing standard and will continue to be in compliance upon the election of the proposed nominees.

The nominees, continuing directors and retiring director, their ages, position with Independence Federal and principal occupation and employment for the past five years, the year each was first elected as a director of Independence Federal, the year in which their individual term as director expires and the amount of common stock and the percent thereof beneficially owned by each, all as of March 31, 2006, are shown on the following table.  This information is based on information furnished by the nominee or director and information known to the Bank.  The address of each director is in care of Independence Federal, 1229 Connecticut Ave., N.W., Washington, D.C. 20036.  A person may be considered to beneficially own any shares of common stock over which he or she has, directly or indirectly, sole or shared voting or investing power.

8

| Name and Principal Occupation | Age | Director Since | Expiration of Term | Common Stock Amount and Nature of Beneficial Ownership [1] (Shares) | Percent of Class |
|---|---|---|---|---|---|
| **Nominees for Director:** | | | | | |
| Thomas L. Battles, Esq. Acting President and Chief Executive Officer since June 2003, and from May 1999 through February 2003 served as President and Chief Executive Officer of Enterprise Federal Savings Bank. | 53 | N/A | N/A | 200 | *% |
| Marion O. Greene, Jr. Chief Executive Officer of American Development Corporation, a management consulting firm, since 2002. From 1995 to 2002, Mr. Greene served as Executive Vice President of McKissack & McKissack of Washington, D.C., Inc., an architecture, design and engineering firm. | 68 | N/A | N/A | — | *% |
| James R. Haynes, Esq. President and Chief Executive Officer of Care Services Corp. since 1995 and Creative Management Corp. since 2000. | 66 | N/A | N/A | — | *% |
| **Directors Continuing in Office:** | | | | | |
| Carolyn D. Jordan, Esq. Chairperson of the Board of Directors since June 2005 and previously served as Vice Chairperson since 2003, Attorney (retired), Executive Director of the National Credit Union Administration from 1997 to 2001. | 65 | 2001 | 2007 | 121 | *% |
| Michael J. Cobb, CPA Accountant, Partner with Thompson, Cobb, Bazilio & Associates, Washington, D.C. CPA firm, since 1997. | 51 | 2000 | 2007 | 21,708 [2] | 1.40% |
| Robert B. Isard Consultant since 2005. Formerly Chief Operating Officer, 2004 to 2005, and from 2000 to 2004 in other executive positions, including Chief Financial Officer, with McKissack & McKissack, a professional design and construction management firm, Philadelphia, PA. | 59 | 2004 | 2007 | 70,103 [3] | 4.52% |
| William B. Fitzgerald, IV President and Chief Executive Officer, Burwell Development, LLC, a real estate development and marketing firm, since 1999. | 48 | 1999 | 2008 | 121 | *% |

9

| Name and Principal Occupation | Age | Director Since | Expiration of Term | Common Stock | |
|---|---|---|---|---|---|
| | | | | Amount and Nature of Beneficial Ownership [1] (Shares) | Percent of Class |
| Real Estate Appraiser/Broker with Long & Foster Companies since 1998. | | | | | |
| David W. Wilmot, Esq. Vice Chairperson since June 2005. Attorney, Partner at Harmon, Wilmot, Brown & Bagwell, L.L.P., Washington, D.C., since 1974. | 62 | 2002 | 2008 | 484 | *% |
| John Silvanus Wilson, Jr. Executive Dean at George Washington University since September 2001. From 1985 to 2001, Mr. Wilson served as a director at Massachusetts Institute of Technology. | 48 | 2005 | 2008 | 101 | *% |
| **Other Current Directors:** | | | | | |
| Elliott S. Hall, Esq. Attorney, Partner with Dykema Gossett, Washington, D.C., since 2002, and Vice President of Ford Motor Co. from 1987 through 2002. | 68 | 2003 | 2006 | 110 | *% |
| Nelson Deckelbaum, Esq. Attorney, Senior partner in the law firm of Deckelbaum, Ogens and Raftery, Chtd., since 1975. | 78 | 2003 | 2006 | 110 | *% |
| **Retiring Director:** | | | | | |
| Eugene K. Youngentob Consultant since 2001 and Principal from 1980 to 2001 of Arkin, Youngentob Associates, LLC, Bethesda, Maryland, a firm specializing in executive and employee benefit planning, estate planning and financial analysis. | 74 | 2001 | 2006 | 5,445 | * |

10

| Name and Principal Occupation | Age | Director Since | Expiration of Term | Common Stock | |
|---|---|---|---|---|---|
| | | | | Amount and Nature of Beneficial Ownership [1] (Shares) | Percent of Class |
| All directors, nominees and executive officers as a group (18 persons) | — | — | — | 98,670 | 6.36% |

* Represents less than 1% of the Bank's voting securities.
(1) Unless otherwise noted, all shares are owned directly or indirectly by the named individuals or by their spouses and children, over which shares the named individuals effectively exercise sole or shared voting and investment power.
(2) Includes 21,567 shares over which Mr. Cobb, his mother and his brother share voting power.
(3) Includes 47,254 shares held by his mother's estate, over which Mr. Isard has voting power, and 986 shares held by his wife.

## Summary of Business Experience of Nominees Who are Not Currently Directors or an Executive Officer

*Marion O. Greene, Jr.*, age 68, currently serves as the Chief Executive Officer of American Development Corporation, which provides a variety of problem solving professional support services to publicly traded companies, federal government agencies and state and municipal governments. From 1995 to 2002, Mr. Greene was an Executive Vice President of McKissack & McKissack of Washington, D.C., Inc., where he designed and installed systems and procedures in operations, finance, accounting, personnel and business development.

*James R. Haynes, Esq.*, age 66, currently serves as President and Chief Executive Officer of Care Services Corp. since 1995 and Creative Management Corp. since 2000. Both corporations own childcare centers. Mr. Haynes received a law degree from George Washington University and has engaged in the practice of law, as well as real estate development activities, for more than 30 years.

## Executive Officers Who Are Not Also Directors

*Timothy L. Anderson*, age 48, joined Independence Federal in September 2005 as Vice President of Operations. Prior to that, Mr. Anderson served as Chief Operating Officer at the Treasury Department Federal Credit Union from May 2003 through September 2005. Mr. Anderson also served as Vice President of Operations at Equitable Bank from 1994 through 2000 and, from 2000 through 2003, Mr. Anderson oversaw financial/lending centers at BB&T and M&T Banks in Greenbelt, MD. Mr. Anderson does not own any Independence Federal common stock.

*Thomas L. Batties, Esq.*, age 53, currently serves as Acting President and Chief Executive Officer of the Bank and has held such positions since he joined the Bank in June 2003. Prior to this appointment, he served as the President and Chief Executive Officer of Enterprise Federal Savings Bank from May 1999 to February 2003. Mr. Batties beneficially owns 200 shares of Independence Federal common stock.

*Jacqueline Daughtry-Miller*, age 59, joined Independence Federal in 1985. In August 1999, she was promoted to Senior Vice President of the Student Loan Department. Prior to this appointment, she served as Vice President of Student Loans since March 1988. Ms. Daughtry-Miller beneficially owns 17 shares of Independence Federal common stock.

11

*Sheila R. Finlayson, Esq.,* age 39, currently serves as Vice President, Counsel and Corporate Secretary of the Bank and has held the latter two positions since March 2004 and March 2002, respectively. Ms. Finlayson is a graduate of the Howard University School of Law. Ms. Finlayson joined Independence Federal in October 1998, serving as Special Assistant to the President. Ms. Finlayson does not own any Independence Federal common stock.

*William L. Fuller,* age 62, served as the Acting Chief Lending Officer of the Bank from November 2004 until his resignation effective March 31, 2006. Prior to joining Independence Federal, Mr. Fuller served as the Senior Vice President and Chief Lending Officer of Harbor Bank from July 2002 until October 2004 and as the President of Legacy Banc (in organization) from January 2001 until July 2002. Mr. Fuller does not own any Independence Federal common stock.

*E. Leroy Morris,* age 63, joined Independence Federal in July 2003 as Executive Vice President and Chief Financial Officer of the Bank. Prior to that appointment, Mr. Morris served as the Executive Vice President and Chief Financial Officer of Enterprise Federal Savings Bank from January 1996 through July 2003. Mr. Morris beneficially owns 150 shares of Independence Federal common stock.

*Stanley W. Parsons,* age 51, is currently the Chief Information Officer/Vice President of Information Technology of the Bank and has held this position since November 2004. Prior to this, Mr. Parsons served as Vice President of Operations from June 2001 to August 2003 and subsequently as Vice President of Product Administration. Mr. Parsons does not own any Independence Federal common stock.

## PROPOSAL II — RATIFICATION OF INDEPENDENT AUDITORS

The Audit Committee of the Board of Directors has appointed BDO Seidman, LLP to be Independence Federal's independent auditors for the 2006 fiscal year, subject to ratification by stockholders. A representative of BDO Seidman, LLP is expected to be present at the Annual Meeting to respond to appropriate questions from stockholders and will have the opportunity to make a statement should he or she desire to do so.

If the ratification of the appointment of the auditors is not approved by a majority of the votes cast by stockholders at the Annual Meeting, other independent public accountants may be considered by the Audit Committee of the Board of Directors.

**The Board of Directors recommends that you vote "FOR" the ratification of BDO Seidman, LLP as the independent accountants of Independence Federal.**

Unless marked to the contrary, the shares represented by the enclosed proxy card will be voted "FOR" ratification of the appointment of BDO Seidman, LLP as the independent accountants of Independence Federal.

**Audit Fees**

The following table sets forth the fees billed to Independence Federal for the fiscal years ended December 31, 2005 and 2004 by BDO Seidman, LLP. It should also be noted that the Bank paid $22,000 for audit fees and $8,000 for all other fees in the year ended December 31, 2004 to PricewaterhouseCoopers LLP for the conclusion of PricewaterhouseCoopers' advisory services to the Bank that ended December 5, 2003.

| BDO Seidman, LLP | 2005 | 2004 |
| --- | --- | --- |
| Audit Fees........................................ | $93,445 | $205,041 |
| Audit-related fees ............................. | — | — |
| Tax fees [1] .................................... | — | 19,500 |
| All other fees ................................... | — | — |

(1)    For tax filing and tax-related compliance and other advisory services.

## Policy on Audit Committee Pre-Approval of Audit and Permissible Non-Audit Services of Independent Auditors

The Audit Committee is responsible for appointing and overseeing the work of the independent auditors and setting the independent auditors' compensation. The Audit Committee's charter provides that it will approve in advance any non-audit services permitted by the Exchange Act, including tax services, that the independent auditors of Independence Federal provide to the Bank, unless such prior approval is waived because of permitted exceptions under the Exchange Act, including, but not limited to, the 5% *de minimis* exception. During the fiscal year ended December 31, 2005, the Audit Committee approved all of the "audit-related," "tax" and "other fees" billed by BDO Seidman, LLP to Independence Federal.

## Audit Committee Report

The Audit Committee of Independence Federal's Board of Directors is composed of four directors and operates under a written charter adopted by the Board of Directors. The Board of Directors of the Bank has determined that each Audit Committee member is independent in accordance with the listing standards of the Nasdaq Stock Market, Inc.

The Bank's Audit Committee is responsible for the supervision of the internal audit function. The internal audit function is conducted by Walker and Company, LLP, an independent public accounting firm. The audit function includes monitoring the Bank's internal control system. The Bank's independent auditors, BDO Seidman, LLP, are responsible for performing an independent audit of the Bank's consolidated financial statements and issuing an opinion on the conformity of those financial statements with generally accepted accounting principles. The Audit Committee oversees the Bank's internal controls and financial reporting process on behalf of the Board of Directors.

In this context, the Audit Committee has met and held discussions with management and the independent auditors. Management represented to the Audit Committee that the Bank's consolidated financial statements were prepared in accordance with generally accepted accounting principles, and the Audit Committee has reviewed and discussed the consolidated financial statements with management and the independent auditors. The Audit Committee discussed with the independent auditors matters required to be discussed by the Statement on Auditing Standards No. 61 (Communication With Audit Committees), including the quality, not just the acceptability, of the accounting principles, the reasonableness of significant judgments, and the clarity of the disclosures in the financial statements.

In addition, the Audit Committee has received the written disclosures and the letter from the independent auditors required by the Independence Standards Board Standard No. 1 (Independence Discussions With Audit Committees) and has discussed with the independent auditors the auditors' independence from the Bank and its management. In concluding that the auditors are independent, the Audit Committee considered, among other factors, that the auditors provided no non-audit services.

13

The Audit Committee discussed with the Bank's independent auditors the overall scope and plans for their audit. The Audit Committee meets with the independent auditors, with and without management present, to discuss the results of their examination, their evaluation of the Bank's internal controls and the overall quality of the Bank's financial reporting.

In performing all of these functions, the Audit Committee acts only in an oversight capacity. In its oversight role, the Audit Committee relies on the work and assurances of the Bank's management, which has the primary responsibility for financial statements and reports, and of the independent auditors who, in their report, express an opinion on the conformity of the Bank's financial statements to generally accepted accounting principles. The Audit Committee's oversight does not provide it with an independent basis to determine that management has maintained appropriate accounting and financial reporting principles or policies, or appropriate internal controls and procedures designed to assure compliance with accounting standards and applicable laws and regulations.

Furthermore, the Audit Committee's considerations and discussions with management and the independent auditors do not assure that the Bank's financial statements are presented in accordance with generally accepted accounting principles, that the audit of the Bank's financial statements has been carried out in accordance with generally accepted auditing standards or that the Bank's independent auditors are in fact "independent."

In reliance on the reviews and discussions referred to above, the Audit Committee recommended to the Board of Directors, and the Board has approved, that the audited consolidated financial statements be included in the Bank's Annual Report on Form 10-KSB for the year ended December 31, 2005 for filing with the OTS. The Audit Committee and the Board of Directors also have approved, subject to shareholder ratification, the selection of the Bank's independent auditors.

**The Audit Committee of the Board of Directors
of Independence Federal**

**Michael J. Cobb, CPA, Chairman
Carolyn D. Jordan, Esq. (Ex Officio)
Eugene K. Youngentob
Robert B. Isard**

14

31-May-06  15:27    From-SF&T                                    +2026820355                T-092   P.21/32   F-667

# EXECUTIVE COMPENSATION

## Executive Compensation Table

The following table sets forth for the years ended December 31, 2005, 2004 and 2003, the cash compensation paid by Independence Federal and its subsidiary, as well as certain other compensation paid or accrued for these years, to the Chief Executive Officer and the Chief Financial Officer (the "Named Executive Officers"). No other executive officer of the Bank received salary and bonus totaling $100,000 or more during the fiscal year ended December 31, 2005.

| Name and Principal Position | Year | Annual Compensation | | Other Annual Compensation ($) |
|---|---|---|---|---|
| | | Salary ($)[1] | Bonus ($) | |
| Thomas L. Batties[2] Acting President and Chief Executive Officer | 2005 2004 2003 | $220,000 220,000 118,835 | — — 60,000[3] | — — — |
| E. Leroy Morris[4] Executive Vice President and Chief Financial Officer | 2005 2004 2003 | $100,400 99,388 42,530 | — 2,500 — | — — — |

[1] For 2005, 2004 and 2003, there were no (a) perquisites over the lesser of $50,000 or 10% of the individual's total salary and bonus for the year; (b) payments of above-market preferential earnings on deferred compensation; (c) payments of earnings with respect to long-term incentive plans prior to settlement or maturation; (d) tax payment reimbursements; or (e) preferential discounts on stock.

[2] Mr. Batties also received $11,590 as a consultant for IFC prior to his retention as an officer by the Bank. This compensation is not included in the table above.

[3] Represents a payment pursuant to the terms of his employment agreement dated July 1, 2003.

[4] Mr. Morris joined Independence Federal in July 2003.

### *Employment Agreements.*

The Board approved in April 2005 a two-year employment agreement for Thomas L. Batties as President and Chief Executive Officer of the Bank, subject to pending OTS approval. The employment agreement provides for a base annual salary of $220,000. The agreement also provides that Mr. Batties will be entitled to participate in discretionary bonuses or other incentive compensation programs that the Bank may award from time to time to senior management, life insurance coverage in the amount of $500,000, disability insurance coverage, use of an automobile, and all medical, dental, pension, profit-sharing and retirement plans as may be approved from time to time by the Bank for the benefit of its employees. In the event Mr. Batties' employment is terminated for reasons other than cause, Mr. Batties would be entitled to receive 6/12ths of the base salary then in effect or the compensation due to him under the remaining term of the agreement.

The Board also approved in April 2005 a new employment agreement for E. Leroy Morris, Executive Vice President and Chief Financial Officer of the Bank, subject to pending OTS approval. A previous employment agreement with Mr. Morris, effective July 2, 2003, terminated on July 5, 2005. The new employment agreement, which is substantially similar to the terminated agreement, provides that, commencing on the first anniversary date of the agreement and continuing each anniversary date thereafter, the Bank can extend the agreement for an additional year. The agreement provides Mr. Morris with a base salary of $100,400. In addition to his base compensation, Mr. Morris is eligible to participate

15

in all medical, dental, pension, profit-sharing and retirement plans sponsored by the Bank. In the event Mr. Morris is terminated for reasons other than cause, Mr. Morris would receive the lesser of six months' salary or his base salary due for the remaining term of the agreement. In addition to his severance pay, for the remaining term of his employment agreement, Mr. Morris would receive benefits under all Bank-sponsored retirement, health and welfare plans. In the event Mr. Morris' employment is terminated for reasons other than cause, Mr. Morris would be subject to a six-month non-compete agreement.

# OTHER INFORMATION RELATING TO DIRECTORS AND EXECUTIVE OFFICERS

## Section 16(a) Beneficial Ownership Reporting Compliance

Section 16(a) of the Securities Exchange Act of 1934 (the "Exchange Act") requires Independence Federal's officers (as defined in regulations promulgated thereunder) and directors and persons who own more than 10% of a registered class of Independence Federal's equity securities to file reports of ownership and changes in ownership with the OTS. Officers, directors and greater than 10% shareholders are required by such regulations to furnish Independence Federal with copies of all Section 16(a) forms they file.

Based upon a review of Forms 3, 4 and 5 received by Independence Federal in accordance with Rule 16a-3(e) under the Exchange Act, Independence Federal believes that each of its executive officers and directors has timely complied with applicable reporting requirements for transactions in Independence Federal's common stock during the fiscal year ended December 31, 2005, with the following exceptions: the filing of a Form 4 reporting a stock purchase by Mr. Batties and the filing of a Form 3 upon Mr. Wilson becoming a director of the Bank.

## Transactions With Management

*Loans to Officers and Directors.* Independence Federal, like many financial institutions, has followed a policy of granting various types of loans to officers, directors and employees in accordance with applicable federal law. The loans have been made in the ordinary course of business and on substantially the same terms, including interest rates and collateral, as those prevailing at the time for comparable transactions with Independence Federal's customers, except for loans made pursuant to programs generally available to all employees, including officers and directors, and do not involve more than the normal risk of collectibility or present other unfavorable features.

*Other Transactions.* Director Nelson Deckelbaum is a senior partner at the law firm of Deckelbaum, Ogens and Raftery, Chtd., which has been retained by the Bank for collection services, including foreclosures, as well as the defense of minor lawsuits. The amount paid by the Bank to the firm for services rendered in 2005 did not exceed five percent of the law firm's gross revenues for its 2005 fiscal year.

## Shareholder Nominations

The Nominating/Corporate Governance Committee will consider shareholder recommendations in its selection of nominees to the Board of Directors for the 2007 Annual Meeting of Shareholders upon receipt by the Board of Directors of the information detailed below for shareholder nominations no later than December 31, 2006. Such recommendations must contain the name, age, business and residence addresses, the principal occupation or employment, the number of shares of common stock of Independence Federal that are beneficially owned, and such other information concerning each such

recommended nominee as would be required under the rules of the SEC, as administered by the OTS, in a proxy statement soliciting proxies for the election of such recommended nominee as a director. Such notice shall include a signed consent to serve as a director of Independence Federal, if elected, from each such recommended nominee.

# NOMINATING/CORPORATE GOVERNANCE COMMITTEE PROCEDURES

### General

It is the policy of the Nominating/Corporate Governance Committee of the Board of Directors of the Bank to consider director candidates recommended by shareholders who appear to be qualified to serve on the Bank's Board of Directors. The Nominating/Corporate Governance Committee may choose not to consider an unsolicited recommendation if no vacancy exists on the Board of Directors and the Nominating/Corporate Governance Committee does not perceive a need to increase the size of the Board of Directors. To avoid the unnecessary use of the Nominating/Corporate Governance Committee's resources, the Nominating/Corporate Governance Committee will consider only those Director candidates recommended in accordance with the procedures set forth below.

### Procedures to be Followed by Shareholders

To submit a recommendation of a director candidate to the Nominating/Corporate Governance Committee, a shareholder should submit the following information in writing, addressed to the Chairman of the Nominating/Corporate Governance Committee, care of the Corporate Secretary, at the main office of the Bank:

1.    The name of the person recommended as a director candidate;

2.    All information relating to such person that is required to be disclosed in solicitations of proxies for election of directors pursuant to Regulation 14A under the Securities Exchange Act of 1934, as amended;

3.    The written consent of the person being recommended as a director candidate to being named in the proxy statement as a nominee and to serving as a director if elected;

4.    As to the shareholder making the recommendation, the name and address of such shareholder as they appear on the Bank's books; provided, however, that if the shareholder is not a registered holder of the Bank's common stock, the shareholder should submit his or her name and address along with a current written statement from the record holder of the shares that reflects ownership of the Bank's common stock; and

5.    A statement disclosing whether such shareholder is acting with or on behalf of any other person and, if applicable, the identity of such person.

In order for a director candidate to be considered for nomination at the Bank's annual meeting of shareholders, the recommendation must be received by the Nominating/Corporate Governance Committee at least 120 calendar days prior to the date the Bank's proxy statement was released to shareholders in connection with the previous year's annual meeting, advanced by one year.

17

## Minimum Qualifications

The Nominating/Corporate Governance Committee has adopted a set of criteria that it considers when it selects individuals to be nominated for election to the Board of Directors. A candidate must meet the eligibility requirements set forth in the Bank's Bylaws, which include a requirement to own shares of Independence Federal common stock. A candidate also must meet any qualification requirements set forth in any Board or committee governing documents.

If the candidate is deemed eligible for election to the Board of Directors, the Nominating/Corporate Governance Committee will then evaluate the prospective nominee to determine if he or she possesses the following qualifications, qualities or skills:

- financial, regulatory and business experience;
- familiarity with and participation in the local community;
- integrity, honesty and reputation;
- dedication to the Bank and its shareholders; and
- independence.

The Nominating/Corporate Governance Committee will also consider any other factors it deems relevant, including age, diversity, size of the Board of Directors and regulatory disclosure obligations.

Director candidates nominated by shareholders, rather than the Board, are not subject to evaluation under the minimum qualifications and the Board cannot give any assurances that such nominees meet those qualifications.

With respect to nominating an existing director for re-election to the Board of Directors, the Nominating/Corporate Governance Committee will consider and review an existing Director's Board and committee attendance and performance; length of Board service; experience, skills and contributions that the existing director brings to the Board and Independence Federal.

## Process for Identifying and Evaluating Nominees

The process that the Nominating/Corporate Governance Committee follows to identify and evaluate individuals to be nominated for election to the Board of Directors is as follows:

*Identification.* For purposes of identifying nominees for the Board of Directors, the Nominating/Corporate Governance Committee relies on personal contacts of the committee members and other members of the Board of Directors, as well as its knowledge of members of the communities served by the Bank. The Nominating/Corporate Governance Committee will also consider director candidates recommended by shareholders in accordance with the policy and procedures set forth above. The Nominating/Corporate Governance Committee has not previously used an independent search firm to identify nominees.

*Evaluation.* In evaluating potential nominees, the Nominating/Corporate Governance Committee determines whether the candidate is eligible and qualified for service on the Board of Directors by evaluating the candidate under certain criteria, which are described above. If such individual fulfills these criteria, the Nominating/Corporate Governance Committee will conduct a check of the individual's background and interview the candidate to further assess the qualities of the prospective nominee and the contributions he or she would make to the Board.

18

## AVAILABLE INFORMATION

The Independence Federal Annual Report to Shareholders for 2005, which contains its audited financial statements for 2005, prepared in accordance with generally accepted accounting principles in the United States, is being furnished along with this proxy statement to shareholders of record as of June 14, 2006.

The Bank is subject to the reporting and proxy statement requirements of the Securities Exchange Act of 1934, and, in accordance therewith, files reports, proxy statements and other information with the OTS. Copies of such materials may be obtained at prescribed rates from the OTS at 1700 G Street, N.W., Washington, D.C. 20552.

A copy of Independence Federal's Form 10-KSB and Form 10-KSB/A for the fiscal year ended December 31, 2005 and the Form 10-QSB for the quarter ending March 31, 2006, as filed with the OTS, will be furnished without charge to persons who were shareholders as of the close of business on June 14, 2006 upon written request to Sheila R. Finlayson, Corporate Secretary, Independence Federal Savings Bank, 1229 Connecticut Avenue, N.W., Washington, D.C. 20036; (202) 628-5500. The Form 10-KSB, Form 10-KSB/A and Form 10-QSB are also available on the Bank's website.

## SUBMISSION OF FUTURE SHAREHOLDER PROPOSALS AND NOMINATIONS

Any new business to be taken up at an Annual Meeting must be stated in writing and filed with the Bank's Corporate Secretary at least five (5) days before the date of such annual meeting.

In order to be eligible for inclusion in the Bank's proxy materials for next year's annual meeting of shareholders, any shareholder proposal to take action at such meeting should be directed to the care of Sheila R. Finlayson, Corporate Secretary, and received at the Bank's main office at 1229 Connecticut Avenue, N.W., Washington, D.C. 20036, no later than December 15, 2006. Any such proposals shall be subject to the requirements of the proxy rules adopted under the Exchange Act and administered by the OTS.

## SHAREHOLDER COMMUNICATIONS

Independence Federal encourages shareholder communications to the Board of Directors and/or individual directors. All communications from shareholders should be addressed to Independence Federal Savings Bank, 1229 Connecticut Avenue, N.W., Washington, D.C. 20036, ATTN: Corporate Secretary. Communications to the Board of Directors should be in the care of Sheila R. Finlayson, Corporate Secretary. Communications to individual directors should also be sent to such director at the Company's address. Shareholders who wish to communicate with a Committee of the Board should direct their communications to the Chair of the particular committee in care of Sheila R. Finlayson, Corporate Secretary, with a copy to the Chair of the Nominating/Corporate Governance Committee. It will be in the discretion of the Nominating/Corporate Governance Committee whether to bring to the attention of the full Board any communication sent to the full Board.

# MISCELLANEOUS

The cost of the solicitation of proxies on behalf of the Board of the Bank will be borne by Independence Federal. Proxies may be solicited personally or by telephone by directors, officers and other employees of Independence Federal without any additional compensation. Independence Federal will also request persons, firms and corporations holding shares in their names, or in the name of their nominees, which are beneficially owned by others, to send proxy material to, and obtain proxies from, the beneficial owners, and will reimburse those record holders for their reasonable expenses in doing so.

Independence Federal's annual report to shareholders is being mailed to persons who were shareholders as of the close of business on June 14, 2006. Any shareholder who has not received a copy of the annual report may obtain a copy from the Bank's website or by writing to the Corporate Secretary of Independence Federal. The annual report is not to be treated as part of the proxy solicitation material or as having been incorporated herein by reference.

By Order of the Board of Directors

Sheila R. Finlayson
Corporate Secretary

June 21, 2006
Washington, D.C.

<u>**APPENDIX A**</u>

## INDEPENDENCE FEDERAL SAVINGS BANK
## AUDIT COMMITTEE CHARTER

### Organization

The primary function of the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of Independence Federal Savings Bank (the "Bank") is to review: the integrity of the financial reports and other financial information provided by the Bank to any governmental body or the public, including any certification, report, opinion or review performed by the Bank's independent accountants; the Bank's compliance with legal and regulatory requirements; the independent accountant's qualifications and independence; the performance of the Bank's internal audit functions, its independent accountants and system of internal controls and disclosure procedures regarding finance, accounting, legal compliance and ethics that management and the Board have established; the Bank's auditing, accounting and financial reporting processes generally; and the preparation of information required by the Securities and Exchange Commission and Office of Thrift Supervision rules to be included in the Bank's annual proxy statement.

The Audit Committee will be comprised of three or more directors as determined by the Board each of whom shall satisfy the definition of independent director as defined in any qualitative listing requirements for Nasdaq Stock Market, Inc. issuers and any applicable Securities and Exchange Commission or Office of Thrift Supervision rules and regulations. All members of the Audit Committee must be financially literate at time of appointment, meaning they must have the ability to read and understand fundamental financial statements, including the Bank's balance sheet, income statement and cash flow statement. In addition, at least one member of the Audit Committee shall have past employment in finance or accounting, requisite professional certification in accounting, or any other comparable experience or background which results in the individual's financial sophistication, including having been a chief executive officer, chief financial officer or other senior officer with oversight responsibilities. The members of the Audit Committee will be elected by the Board on an annual basis.

### Responsibilities

In carrying out its responsibilities, the Audit Committee believes its policies and procedures should remain flexible, in order to best react to changing conditions and to ensure to the directors and stockholders that the corporate accounting and reporting practices of the Bank are in accordance with all requirements and are of the highest quality. To fulfill its responsibilities and duties the Audit Committee shall:

1.   Provide an open avenue of communication between management, the independent auditor, internal audit department and the Board.

2.    Meet four times per year or more frequently as circumstances may require.  A quorum of the Audit Committee shall be declared when a majority of the appointed members of the Audit Committee are in attendance.

3.    The Audit Committee shall meet with the independent auditors and management at least quarterly to review the Bank's financial statements.  In meetings attended by the independent auditors or by regulatory examiners, a portion of the meeting will be reserved for the Audit Committee to meet in closed session with these parties.

4.    Keep written minutes for all meetings.

5.    Review with the independent auditor and internal audit department the work to be performed by each to assure completeness of coverage, reduction of redundant efforts and the effective use of audit resources.

6.    Review all significant risks or exposures to the Bank found during audits performed by the independent auditor and internal audit department and ensure that these items are discussed with management.  From these discussions, assess and report to the Board regarding how the findings should be addressed.

7.    Review recommendations from the independent auditor and internal auditing department regarding internal controls and other matters relating to the accounting policies and procedures of the Bank.

8.    Following each meeting of the Audit Committee, the chairman of the committee will submit a record of the meeting to the Board including any recommendations that the Committee may deem appropriate.

9.    Ensure that the independent auditor discusses with the Audit Committee their judgments about the quality, not just the acceptability, of the Bank's accounting principles as applied in the financial reports.  The discussion should include such issues as the clarity of the Bank's financial disclosures and degree of aggressiveness or conservatism of the Bank's accounting principles and underlying estimates and other significant decisions made by management in preparing the financial disclosures.

10.    Review the Bank's audited annual financial statements and the independent auditor's opinion regarding such financial statements, including a review of the nature and extent of any significant changes in accounting principles.

11.    Arrange for the independent auditor to be available to the full Board at least annually to discuss the results of the annual audit and the audited financial statements that are a part of the annual report to stockholders.

12.    Review with management, the independent auditor, internal audit department and legal counsel, legal and regulatory matters that may have a material impact on the financial statements.

13. Review with management and the independent auditor all interim financial reports filed pursuant to the Securities Exchange Act of 1934.

14. Generally discuss earnings press releases and financial information as well as earnings guidance provided to analysts and rating agencies.

15. Select the independent auditor, considering independence and effectiveness, and be ultimately responsible for their compensation, retention and oversight (including resolution of disagreements between management and the auditor regarding financial reporting) for the purpose of preparing or issuing an audit report or related work, and each such registered public accounting firm shall report directly to the audit committee. The Audit Committee should confirm the independence of the independent auditor by requiring them to disclose in writing all relationships that, in the auditor's professional judgment, may reasonably be thought to bear on the ability to perform the audit independently and objectively.

16. Review the performance of the independent auditor.

17. Review the activities, organizational structure and qualifications of the internal audit department. The Audit Committee should also review and concur in the appointment, replacement, reassignment, or dismissal of the manager of the internal audit department.

18. Be authorized to retain independent counsel and other advisors as it deems necessary to carry out its duties. In connection therewith, the Audit Committee shall be provided appropriate funding, as determined by the Audit Committee, for payment to such counsel and other advisors. In addition, the Audit Committee shall be provided funding for ordinary administrative expenses of the Audit Committee.

19. Have in place procedures for (1) receiving, retaining and treating complaints regarding accounting, internal accounting controls, or auditing matters, and (2) the confidential, anonymous submission by employees of concerns regarding questionable accounting or auditing matters.

20. Approve, in advance, all permissible non-audit services to be completed by the independent auditor. Such approval process will ensure that the independent auditor does not provide any non-audit services to the Bank that are prohibited by law or regulation.

21. Set clear hiring policies for hiring employees or former employees of the independent auditors.

22. Review and approve all related-party transactions.

23. The Audit Committee shall oversee the Bank's development, implementation and use of major information technology initiatives, enhancements and security policies, especially with regard to internal controls, risk management, financial management and audit

functions.  The Audit Committee may also direct Management to engage an independent auditor to assess the Bank's information technology functions and security policies.  The Audit Committee shall also:  (i) oversee management's development and use of the IT strategic plan and IT security procedures, especially with regard to internal controls, risk management and financial management issues; (ii) receive periodic reports on interaction of the IT department/IT functions and users/business units; (iii) review and receive periodic reports on major IT projects, budgets, priorities, standards and performance, as well as vendor engagement; and (iv) direct the Bank's Internal Auditor and External Independent Auditor to review and assess the Bank's IT functions, especially with regard to internal controls, risk management and financial management issues, and receive audit reports concerning the same.

In addition to the responsibilities presented above, the Audit Committee will examine this Charter on an annual basis to assure that it remains adequate to address the responsibilities of the Committee.  Further, the Committee will disclose in each annual proxy statement to its stockholders whether it satisfied the responsibilities during the prior year in compliance with the Charter, and will disclose a copy of the Charter once every three years either in the annual report to stockholders or proxy statement.

# REVOCABLE PROXY

## INDEPENDENCE FEDERAL SAVINGS BANK
## ANNUAL MEETING OF SHAREHOLDERS

### JULY 19, 2006
### 11:00 a.m.

### THIS PROXY IS SOLICITED ON BEHALF OF THE BOARD OF DIRECTORS

The undersigned hereby appoints the Board of Directors of Independence Federal Savings Bank ("Independence Federal") to act as proxy for the undersigned, and to vote all shares of common stock of Independence Federal which the undersigned is entitled to vote, with all the powers the undersigned would possess if personally present, at the Annual Meeting of Shareholders on July 19, 2006, at 11:00 a.m., and at any and all adjournments thereof.

### PLEASE COMPLETE, DATE, SIGN AND MAIL THIS PROXY PROMPTLY IN THE ENCLOSED POSTAGE-PREPAID ENVELOPE.

1. The election as Directors of all nominees listed (except as marked to the contrary below).

**Read Instructions Carefully Before you Mark in an O or on the lines below**

☐ FOR ALL NOMINEES

☐ WITHHOLD AUTHORITY FOR ALL NOMINEES

☐ FOR ALL EXCEPT (See Instructions below)

**NOMINEES:**
Thomas L. Batties, Esq.          O    _____
Marion O. Greene, Jr.            O    _____
James R. Haynes, Esq.            O    _____

**INSTRUCTIONS:** To withhold authority to vote for any individual nominee(s), mark "FOR ALL EXCEPT" and fill in the circle next to each nominee you wish to withhold, as shown here: (●). To specify how to cumulate your vote for one or more of the above nominees, write the manner in which such votes shall be cumulated in the space to the right of the nominee's name(s). If you are cumulating your vote, do not mark the circle.

2. The ratification of BDO Seidman, LLP as independent accountants for the fiscal year ending December 31, 2006.

| FOR | AGAINST | ABSTAIN |
|-----|---------|---------|
| ☐ | ☐ | ☐ |

### THE BOARD OF DIRECTORS RECOMMENDS A VOTE "FOR" BOTH PROPOSALS

This proxy is revocable and will be voted in accordance with specified directions. This proxy will be voted cumulatively "FOR" any or all of the nominees for Director for whom authority is granted to vote; and, if not contrary to instructions, "FOR" ratification of the independent accountants. If any other business is presented at the annual meeting, including whether or not to adjourn the meeting, this proxy will be voted by the proxies in their best judgment. At the present time, the Board of Directors knows of no other business to be presented at the annual meeting. This proxy also confers discretionary authority on the Board of Directors to vote with respect to any other business that may come before the annual meeting or any adjournment thereof.

1

The undersigned acknowledges receipt from Independence Federal Savings Bank before the execution of this proxy, of a Notice of Annual Meeting of Stockholders and of a proxy statement for the Annual Meeting.

Dated: _____, 2006

_____
SIGNATURE OF STOCKHOLDER

_____
SIGNATURE OF CO-HOLDER (IF ANY)

Please sign exactly as your name appears on this card.  When signing as attorney, executor, administrator, trustee or guardian, please give your full title.  If shares are held jointly, each holder may sign but only one signature is required.

2