IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
MOTON A. BENDER, et al.                )
                                       )
      Plaintiff,                       )
                                       )
      vs.                              )   Civil Action No. 1:06cv00092
                                       )
CAROLYN D. JORDAN, et al.              )
                                       )
      Defendants.                      )
_____)

**INDIVIDUAL DEFENDANTS' SUPPLEMENT TO PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

      The Individual Defendants, by and through the undersigned counsel, hereby submit supplements to the proposed Findings of Fact and Conclusions of Law (Document No. 38) at pp. 30-41 filed on May 19, 2006, as follows:

      1.    Ms. Marie Wood is the Executive Assistant to Mr. Wilmot, one of the defendants in this matter. (Wood Depo., p. 4:14-15:1) Plaintiffs took Ms. Wood's deposition in this matter on June 8, 2006.

      2.    Ms. Wood has been employed by Mr. Wilmot and his law firm for ten years. (Wood Depo., p. 5:20-6:5)

      3.    During the evening of October 25, 2005, Ms. Wood received an e-mail from Mr. Daniel Weitzel purporting to attach materials requested by Mr. Wilmot. (Wood Depo., p. 92:18-93:4) (Exhibit 70, Wood Depo. Ex. 6) Ms. Wood had never met or spoken to Mr. Weitzel. (Wood Depo., p. 93:14-16) Ms. Wood never discussed this e-mail with Mr. Wilmot. (Wood Depo., p.99:12-20) Rather, earlier on the evening of October 25, Mr. Jeffrey Thompson had advised Ms. Wood that she would be receiving materials to forward to Mr. Wilmot. (Wood

Depo., p.94:18-95:4)  Mr. Thompson is a long-time client of Mr. Wilmot's.  (Wood Depo., p.128:2-14)  Mr. Weitzel is another one of Mr. Thompson's attorneys.

4. Ms. Wood was unable to open the attachment to the e-mail she received from Mr. Weitzel.  (Wood Depo., p. 99:5-11 )

5. Later on during the evening of October 25, 2005, Ms. Wood forwarded the attachment to the earlier e-mail from Mr. Weitzel, without opening it, to Mr. Harold Doley.  (Wood Depo., p. 116:11-117:5) (Wood Depo. Ex. 8)  Ms. Wood has never met or spoken to Mr. Doley.  (Wood Depo., p. 115:21-116:10)  Notwithstanding the language of the forwarding e-mail, Ms. Wood sent the documents to Mr. Doley at the request of Mr. Jeffrey Thompson, not Mr. Wilmot.  (Wood Depo., p. 116:11-117:15)

6. Ms. Wood maintains Mr. Wilmot's schedule.  Mr. Wilmot's schedule for October 24 through 29, 2005 sets out his appointments for those dates.  (Wood Depo., p. 124:17-125:5) (Wood Depo. Ex. 9)  On October 26, Mr. Wilmot had a doctor's appointment prior to the IFSB annual meeting of shareholders. (Wood Depo., 33:9-21) (Wood Depo. Exhibit 9)

7. Ms. Wood did not see Mr. Wilmot when he came back from the first portion of the annual meeting of IFSB shareholders.  (Wood Depo., p. 101:12-22)

8. Ms. Wood spoke several times with either Ms. Bridgette Thompson or Mr. Jeff Thompson during the day on October 26, 2005.  (Wood Depo., p. 29:20-38:1)  Ms. Thompson is employed by Mr. Thompson.  During the initial call from Mr. Thompson's office that day, Ms. Thompson advised Ms. Wood that Mr. Thompson was sending over a cashier's check for deposit in the firm's trust account.  (Wood Depo., p. 26:21-27:12)

2

9.      Beginning at Sequence Step No. 3, Defendants Ex. 231 (Wood Depo. Ex. 2) sets out a true and accurate recounting of the events in which Ms. Wood was involved on October 25, 2005 and thereafter. (Wood Depo., p. 130:2-11) Ms. Wood testified that Exhibits B through J of Exhibit 231 (Wood Depo. Ex. 2) are true and accurate copies of documents related to the following sequence of events set forth in Exhibit 231. (Wood Depo., p. 129:8-19)

10.     On October 26, 2005, Ms. Wood received a cashier's check from Mr. Thompson. (Wood Depo., p. 29:20-30:8) The check was made payable to David Wilmot and was in the amount of $165,000. (Wood Depo. Exhibit 2, Attachment B)

11.     Mr. Thompson asked Ms. Wood to deposit the cashier's check made payable to Mr. Wilmot to Mr. Wilmot's trust account and thereafter draw a cashier's check made payable to Mr. Doley from the trust account. (Wood Depo., p. 32:10-33:5) Ms. Wood could not do this because she did not have signature authority on the trust account and there was no one in the office with signature authority. (Wood Depo., p. 34:11-14)

12.     As an alternative, Ms. Wood drew funds from two Wilmot Business Accounts to fund a $163,000 cashier's check to Mr. Doley. (Wood Depo., p. 31:19-37:13)

13.     Ms. Wood prepared a letter instructing United Bank to draw a cashier's check in the amount of $163,000 in the name of Harold Doley. (Wood Depo., p. 37:1-9) (Wood Depo. Ex. 4) Ms. Wood signed the letter on behalf of Mr. Wilmot. Ms. Wood was authorized by Mr. Wilmot to sign such letters. (Wood Depo., p. 44:21-45:4)

14.     Ms. Wood was authorized by Mr. Wilmot to deposit and withdraw money from the two "Wilmot Business Accounts." (Wood Depo., p. 31:7-11)

3

131464v1

15. Ms. Wood used the proceeds from the debits to the Wilmot Business Accounts that Mr. Thompson requested to fund a $163,000 cashier's check made payable to Harold Doley. (Wood Depo., p. 42:3-43:4)

16. Mr. Thompson instructed Ms. Wood to have the check delivered to the Mayflower hotel. When she asked "who" it was to go to, and he said he would "take care of it." (Wood Depo., p. 37:14-22) A copy of the billing received by Mr. Wilmot's law firm shows that the package was picked up at 12:25 PM and taken to the Mayflower Hotel. (Wood Depo., p. 107:5-15) (Wood Ex. 7)

17. Ms. Wood then deposited the original DC Healthcare Cashier's Check payable to Mr. Wilmot in the trust account for Mr. Wilmot's law firm. (Wood Depo., p. 71:6-72:1) (Wood Depo. Exhibit 2, Exhibit 231)

18. On October 28, Ms. Wood wrote two checks to Mr. Wilmot on the law firm trust account reimbursing two of Mr. Wilmot's Business Accounts for the account debits on October 25, 2005. (Wood Depo., p. 47:12-48:1) (Wood Depo. Exhibit 2, Exhibit 231)

19. On November 12 or 13, Ms. Wood received the returned Doley's cashiers check and, per Mr. Thompson's instructions, deposited it in the two Wilmot Business Accounts. (Wood Depo., p. 50:14-53:3) (Wood Depo. Exhibit 2, Exhibit 231)

20. When Ms. Wood redeposited the cashier's check made payable to Mr. Doley, she wrote "Not for Purpose Intended" on the check and signed Mr. Wilmot's name. (Wood Depo. Ex. 5, p. 0208)

21. Proceeds from Doley's Cashier's check deposited in Wilmot Business Accounts were used to pay other Thompson vendors. (Wood Depo., p. 52:2-55:5) (Wood Depo. Exhibit 2, Exhibit 231)

22. Ms. Wood did not speak to Mr. Wilmot about the events of October 25, 2005 until November 13 or 14, 2005. (Wood Depo., p. 76:7-12)

23. The requests made by Mr. Thompson and Ms. Bridgette Thompson on October 25, 2005 were not unusual. In fact, based on Ms. Wood's ten years of experience working with Mr. Thompson, those activities were "business as usual." (Wood Depo., p. 131:11-132:5)

24. The record, the testimony of Ms. Wood, and the relevant records of account demonstrate that the cashier's check made payable to Harold Doley was never cashed.

                                  Respectfully Submitted

                                  SHOOK HARDY & BACon L.L.P.

                                  _____/s/_____
                                  Peter E. Strand
                                  Carlos E. Provencio
                                  Christine S. Hudson
                                  Hamilton Square
                                  600 14th Street, N.W.
                                  Suite 800
                                  Washington, D.C. 2005-2004
                                  Phone: 202-783-8400
                                  Fax: 202-783-4211
                                  Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of June, 2006, a true and complete copy of the foregoing **INDIVIDUAL DEFENDANTS' SUPPLEMENT TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** was sent electronically to the following:

>Dale A. Cooter, Esquire
>Cooter, Mangold, Tompert and Wayson, L.L.P.
>5301 Wisconsin Avenue, N.W.
>Suite 500
>Washington, D.C. 20015
>T:  (202)537-0700
>F:  (202)364-3664
>*Attorney for Plaintiffs*
>
>Haig V. Kalbian
>Mary Baker
>888 17th Street, N.W.
>Suite 1000
>The Brawner Building
>Washington, D.C. 20006
>*Attorney For Defendant Independence Federal Savings Bank*

                                                                                    _____/s/_____
                                                                                                Peter E. Strand

131464v1