ATTACHMENT 6

(WOOD DEPOSITION
EXHIBIT #6)

From:          Daniel P Weitzel [dweitzel@eblg.com]

Sent:          Tuesday, October 25, 2005 8:33 PM

r          )          mwood21564@aol.com

Cc:          Jeff Thompson

Attachments: draft purchase agreement 10-24-05.doc; LEGAL PROXY.doc


. Wood,

At the request of David, attached are two documents for David's use.  Dan

aniel  P. Weitzel
nterprise Business Law Group LLC
.70 Greensboro Drive
uite 850
cLean, VA 22102
i3 584 3258 (P)
i3 848 8333 (F)
i1 502 6220 (C)
veitzel@eblg.com




# PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (this "Agreement") is made and entered into as of October 25, 2005, by and between **[Harold Doley et al—to be filled in with the name of the seller]** (the "Seller") and David W. Wilmot (the "Purchaser").

## R E C I T A L S

A.     Seller is the record holder of _____ shares of the common stock (the "Shares") of Independence Federal Savings Bank ("IFSB").

B.     Seller possesses the voting rights to the Shares and IFSB is having a stockholders meeting on October 26, 2005 (the "Meeting"), at which certain matters will be voted upon.

C.     Purchaser desires to purchase the Shares as set forth herein.

D.     Seller has agreed to provide Purchaser a proxy with respect to the voting of the Shares at the Meeting in exchange for Purchaser's agreement to purchase the Shares from Seller, all upon the terms and subject to the conditions contained herein.

E.     The parties desire to make certain covenants and agreements in connection with the transactions contemplated hereby.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, and for such other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF SHARES AND TRANSFER OF VOTING RIGHTS

1.01     <u>Non-Refundable Deposit.</u>     Concurrent with the execution of this Agreement, Purchaser is providing Seller with a non-refundable deposit in the amount of **[Seller's pro rata portion of $100,000]**.  Such deposit shall be credited to the Purchase Price, as defined below, in the event the Purchaser purchases the Shares.

1.02     <u>Purchase and Sale of the Shares</u>.     Upon the terms and subject to the conditions of this Agreement, Seller hereby agrees to sell, assign, transfer, and convey to Purchaser and Purchaser hereby agrees to purchase from Seller, all right, title and interest of Seller in and to the Shares.

Purchaser's obligation to purchase the Shares is contingent on the receipt by Purchaser of any and all approvals and non-objections deemed necessary for Purchaser to acquire the Shares, including, but not by way of limitation, approvals and non-objections from the Office of Thrift

Supervision, if any. Purchaser agrees that within 45 days of the date hereof Purchaser will either purchase one half of the Shares or _____ shares or, if regulatory approval or non-objection is deemed to be necessary for the purchase of the Shares, prepare and file with the appropriate agency or other entity the necessary application or request, as the case may be. It is understood by Seller and Purchaser that Purchaser has no control over the processing, timing or probability of approval or non-objection with respect to such filings, if any. Assuming any necessary approval or non-objection has been received, Purchaser agrees that within 120 days of the date hereof he will purchase the remaining one half of the Shares or _____ shares.

Seller will transfer the Shares to Purchaser free and clear of all liens and encumbrances and warrants that Purchaser will have record and good and marketable title to the Shares.

1.03    Purchase Price. In consideration for the purchase by Purchaser of the Shares, Purchaser shall pay Seller $17.00 per share or $_____ in the aggregate (the "Purchase Price"). Upon payment, each portion of the Purchase Price will be paid by wire transfer of immediately available funds to an account designated by Seller.

1.04    Transfer of Voting Rights to the Shares. Effective with the execution of this Agreement, Seller shall provide Purchaser with a legal proxy, in substantially the form attached hereto as Exhibit A, whereby Seller will revoke any proxy previously given with respect to the Shares and appoint and constitute Purchaser as Seller's true and lawful attorney to vote the Shares in place of Seller at the Meeting and at any adjournment thereof on any matter properly brought before the Meeting, or any adjournment thereof, including, but not by way of limitation, the election of directors. Seller shall also appoint Purchaser to act in the same capacity and as fully as Seller could act if Seller had retained the voting rights to the Shares.

## ARTICLE II
## MISCELLANEOUS PROVISIONS

2.01    Amendment and Modifications. This Agreement may be amended, modified and supplemented only by written agreement among the parties hereto which states that it is intended to be a modification of this Agreement.

2.02    Waiver of Compliance. Any failure of Seller, on the one hand, or Purchaser, on the other, to comply with any obligation, covenant, agreement or condition herein may be waived in writing by the other party, but such waiver or failure to insist upon strict compliance with such obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

2.03    Expenses. The parties agree that all fees and expenses incurred by them in connection with this Agreement and the transactions contemplated hereby shall be borne by the party incurring such fees and expenses, including, without limitation, all fees of counsel and accountants.

2.04    Assignment.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto without the prior written consent of the other party.

2.05    Governing Law.  This Agreement and the legal relationship among the parties hereto shall be governed and construed under the laws of the District of Columbia.

2.06    Counterparts.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Signature by telecopy shall be sufficient to evidence a party's intention to be bound hereby, provided that such party forwards his original signature to the other parties by first class mail or overnight delivery service.

2.07    Headings.  The headings of the Sections and Articles of this Agreement are inserted for convenience only and shall not constitute a part hereof or affect in any way the meaning or interpretation of this Agreement.

2.08    Entire Agreement.  This Agreement sets forth the final, complete and exclusive agreement and understanding of the parties hereto in respect of the subject matter contained herein, and supersedes all prior agreements, promises, covenants, arrangements, communications, representations or warranties, whether oral or written, by any representative of either party hereto.

2.09    Third Parties.  Except as specifically set forth or referred to herein, nothing herein expressed or implied is intended or shall be construed to confer upon or give to any person other than the parties hereto or their successors and assigns any rights or remedies under or by reason of this Agreement.

2.10    Further Assurances.  Each of the parties hereto agrees that from time to time, at the request of the other party hereto and without further consideration, it will execute and deliver such other documents and take such other action as such other party may reasonably request in order to consummate more effectively the transactions contemplated hereby.  The parties shall cooperate with each other in such actions and in securing requisite approvals or non-objections, if any.  Each party shall execute and deliver such further certificates, agreements and other documents and take such other actions as the other party reasonably may request to consummate or implement the transactions contemplated hereby or to evidence such events or matters.

2.11    **Confidential Nature of this Agreement.  Without the prior written consent of the other party, each party to this Agreement, together with their respective successors and assigns, if any, shall not disclose to any person or entity the fact that this Agreement exists or any of the terms, conditions or other facts with respect to transactions contemplated by this Agreement.  In the event that either party is requested or required in connection with any regulatory or legal proceeding to disclose the existence or the terms of this Agreement, the requested or required party shall give the other party prompt notice of**

3

such request or requirement so that it may seek an appropriate protective order. In the event that such protective order or other remedy is not obtained or is not sought, the party subject to such request or requirement will furnish only that portion of the information which it is legally required to disclose. Each party hereto will exercise commercially reasonable standards to ensure the confidential nature of this Agreement.


IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**"SELLER"**                                  **" PURCHASER"**


_____                    _____
   **Name of the record seller**                David W. Wilmot


4

## LEGAL PROXY

KNOW ALL PERSONS BY THESE PRESENTS, that I, _____, the holder of
_____shares of the common stock of Independence Federal Savings Bank do hereby
revoke any proxy heretofore given by me for said stock;


Further know, that I hereby appoint and constitute David W. Wilmot, Esq. as my true and
lawful attorney to vote as my proxy, for said shares of common stock only, in my stead at
the meeting of stockholders of Independence Federal Savings Bank to be held on October
26, 2005, or at any adjournment thereof, on any matter which may properly and legally
come before the meeting, including, but not by way of limitation, the election of
directors;

Finally know that I appoint the above named to act in the same capacity and as fully as I
could act if I were personally present at such meeting and had retained the voting rights
to such shares.



Dated:  October 25, 2005


_____

**Name and address of the
Person transferring the proxy
Together with evidence of such
 right**