

# Office of Thrift Supervision
Department of the Treasury

1700 G Street, N.W., Washington, DC 20552 • (202) 906-6000

June 16, 2006

VIA FACSIMILE and U.S. Mail
John R. Hall, Esq.
Muldoon Murphy & Aguggia LLP
5101 Wisconsin Avenue, N.W.
Washington, D.C. 20016

Robert S. Royer, Esq.
Royer & Brooks, LLP
925 15th Street, N.W., Fifth Floor
Washington, D.C. 20005

Re: Independence Federal Savings Bank
Washington, D.C. (Association)
OTS Docket No.: 7173
Revised Preliminary Proxy Materials

Dear Messrs. Hall and Royer:

The staff of the Office of Thrift Supervision (OTS) has reviewed the letter, dated June 7, 2006, and the Memorandum attached thereto, dated June 6, 2006 (collectively, Submission), prepared by Mr. Robert S. Royer, Royer & Brooks, LLP, which attempts to address OTS' request for the Association to provide adequate legal justification for allowing holders of proxies to allocate cumulative votes after the polls close.

In our opinion, fundamental fairness requires that all shareholders allocate their cumulative votes prior to the closing of the polls. On June 12, 2006, OTS staff advised Mr. Royer that the staff does not believe the Submission provided legal justification for allocating cumulative votes after the polls close. We acknowledge that there is case law that stands for the proposition that there may be an exception granted in unusual circumstances when it would be particularly inequitable to prevent a shareholder from voting and it would not be detrimental to any other shareholder to permit the late vote to be counted.[1] The cases do not suggest, however, that late voting would be permissible under the circumstances relevant here. In addition, OTS does not agree with the statement in the Submission that allocating such votes after the polls close is not a revocation of or change in the vote. Further, we do not agree that late allocation of proxy votes is permitted under the Association's charter and bylaws, or under Robert's Rules of Order (Rules). In our view, voting after the polls are closed is generally prohibited.

---

[1] See e.g., Dynamics Corporation of America v. CTS Corporation, 643 F. Supp. 215, 219 (N.D. Ill. 1986); Washington State Labor Council v. Federated American Insurance Co., 474 P.2d 98, 103 (Wash. 1970).

John R. Hall, Esq.
Robert S. Royer, Esq.

Page 2

The Submission indicates that fifteen states have statutory prohibitions against voting after the polls have closed, with five of the fifteen states allowing, in very limited circumstances and upon application to a court, acceptance of ballots, proxies or votes or any revocations thereof or changes thereto, after the closing of the polls.[2] Those limited circumstances arise out of the general principle that a shareholder, who as a result of a reasonable cause is unable to vote or is prevented from casting his vote during the regular time of balloting, may be permitted to vote after the balloting has closed and before the final results are officially announced; provided, such belated voting is not otherwise prohibited by statute, corporate bylaws, or other officially authorized and announced rules and is free of fraud, bad faith and/or overreaching.[3]

Further, the Submission indicates that the authority to allocate votes after the polls close may be viewed as part of the independent inspector of election's duties in tabulating the votes. We disagree. The decision as to how to allocate votes requires a judgment and is not a ministerial act of tabulation of votes. In any event, Article II, Section 13 of the Association's bylaws requires that the duties of the inspectors of election include such acts as may be proper to conduct the election or vote with fairness to all shareholders. Providing the inspectors of election with the ability to allocate the votes for the benefit of one party's slate of directors and not providing that same ability to all other shareholders after the close of the polls is inherently unfair.

The Association's bylaws require in Article II, Section 4 that "[a]nnual and special meetings shall be conducted in accordance with the most current edition of [the Rules]." Section 45 of Rules, provides that, once the polls are closed, no *ballot votes* will be allowed unless the polls are subsequently reopened by a majority vote.[4] Additionally, in the event that a presiding officer fails to vote in the case of a ballot before the polls are closed, he cannot then do so without the permission of the assembly.[5] The thrust of the Rules provisions is that once the polls close, no modification in the voting is permitted without the express consent of the shareholders at the meeting.[6]

In addition, the Association, as a publicly held corporation, is subject to the federal securities laws. In this regard, its proxy materials must comply with Regulation 14A of the Proxy Rules. The Association has been directed, and has complied in its preliminary proxy

---

[2] The Submission indicates that thirty-five states and the District of Columbia do not have statutes expressly prohibiting voting after the polls have closed; however, the Submission does not demonstrate that any of those states or the District have statutes permitting the practice.
[3] See Washington State Labor Council v. Federated American Insurance Co., 474 P.2d 98, 103 (Wash. 1970).
[4] See Rules (10th ed.), p. 401, l. 10-19.
[5] See Rules (10th ed.), p. 400, l. 25-28.
[6] The Submission quotes language in the Rules providing that votes may be changed at any time until the announcement of the voting results. It is clear, in our view, that this statement does not apply in the context of voting by ballot, and that the language addresses issues under deliberation in an assembly, not director elections where the results are announced after the close of the meeting.

John R. Hall, Esq.
Robert S. Royer, Esq.

Page 3

materials, to specify the order of priority in allocating management's proxies. Because of the "contested" nature of the forthcoming election and cumulative voting, OTS has determined that such disclosure may be relevant to a shareholder exercising his or her vote and for whom.[7]

Therefore, as previously requested, the disclosure contained in the proxy statement should set forth the procedures that will be used in this election regarding allocation of cumulative votes, the order of the priority, and that the polls will be closed when the meeting adjourns and that, once the polls close, no further allocation of cumulative votes will be permitted.[8]

Because the Association provided the United States District Court for the District of Columbia (Court) in the matter of Morton A. Bender, et al., v. Carolyn D. Jordan, et al., with the Submission and it is on the public record in the proceeding, please ensure the Court and parties to that proceeding receive copies of this letter within two business days of your receipt of this letter.

On June 14, 2006, OTS notified the Association that it was amending its November 4, 2003 "Troubled Condition Letter," and imposing additional supervisory directives and regulatory restrictions (Amended Letter). The Association is required to immediately file a report on Form 8-K addressing the requirements of the Amended Letter with OTS' Securities Filing Desk. In addition, additional disclosure may be required, as appropriate, in the proxy materials. Further, consideration should also be given to releasing a press release regarding the Amended Letter.

### General

The responsibility for the form and content of proxy soliciting material rests with the issuer. The fact that such material has been filed with or reviewed by the OTS staff shall not be deemed a finding by the OTS that such material is accurate and complete or that the OTS has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. Your attention is directed to Rule 14a-9(b) of the Proxy Rules.

Revised materials responsive to the staff's comments should be filed with the OTS. Pursuant to Rule 14a-6(h) of the Proxy Rules, two copies of such revised materials should be marked to reflect any changes that are made.

---

[7] See Item 6(c) of Schedule 14A of the Proxy Rules, which requires certain disclosure regarding cumulative voting rights.
[8] The Submission asserts that it is inappropriate to require disclosure of the manner in which votes would be allocated, citing a statement in Washington State Labor Council to the effect that it would disadvantage all parties engaged in a proxy contest to spell out, considerably in advance of an election meeting, how parties soliciting proxies would finally allocate such shares among their nominees. This statement, in our view, indicates that it would be inappropriate to require a party soliciting proxies to state specifically how many shares would be allocated to each candidate. It is appropriate, in our view, for a party that solicits proxies to indicate generally the priorities that would be used in allocating votes, and it is this general disclosure that we have required.

John R. Hall, Esq.
Robert S. Royer, Esq.

Page 4

Questions concerning the above should be directed to the undersigned at (202) 906-6151.

Sincerely,

Frances C. Augello
Senior Attorney
Business Transactions Division

cc: Regional Director
Regional Counsel
OTS Southeast Regional Office

Kevin A. Corcoran, BTD
Aaron B. Kahn, BTD
Don Dwyer, ESO