# ROYER & BROOKS, LLP
ATTORNEYS AT LAW
925 15TH STREET, NORTHWEST
FIFTH FLOOR
McPHERSON SQUARE
WASHINGTON, DISTRICT OF COLUMBIA 20005
WWW.ROYERBROOKS.COM

TELECOPIER
202.293.2768

TELEPHONE
202.296.0784

June 7, 2006

John M. Reich
Director
Office of Thrift Supervision
Department of Treasury
1700 G Street NW
Washington, DC 20552

John E. Bowman, Esq.
Chief Counsel
Office of Thrift Supervision
Department of Treasury
1700 G Street NW
Washington, DC 20552

<u>By Hand</u>

Re:   **Requested Memorandum Regarding Allocation and Cumulative Voting**

Dear Messrs. Reich and Bowman:

Attached please find the Memorandum Mr. Bowman requested from Independence Federal Savings Bank (Association) in the recent meeting held at the Office of Thrift Supervision under the auspices of the Director and senior staff, regarding the permissibility of allowing the allocation of cumulative votes after the polls have closed under the Association's charter and bylaws (including Robert's Rules of Order), federal and state securities law, and case law.

I request that you meet with representatives of the Association as soon as possible to discuss the contents of this Memorandum, as the legal findings in the Memorandum are in conflict with some of the requests OTS has suggested being included in the Association's proxy statement.

ROYER & BROOKS, LLP

Messrs. Reich and Bowman
Office of Thrift Supervision
June 7, 2006
Page 2

    Given that the Association's proxy statement must be mailed out in the very near future to accommodate the July 19, 2006 shareholders meeting, I will call you shortly to arrange for a meeting regarding the contents of this Memorandum. Unfortunately, I will be out of the country from June 14th to June 22nd. If possible, I would request we meet this Friday or Monday or Tuesday of next week.

                                          Sincerely,

                                          Robert S. Royer

Cc:    Carolyn Jordan, Esq., Chairman (with Attachment)
        Thomas L. Batties, Esq., President and Chief Executive Officer (with Attachment)
        John R. Hall, Esq. (with Attachment)
        John E. Ryan, Regional Director, OTS (with Attachments)

Attachment

# ROYER & BROOKS, LLP

ATTORNEYS AT LAW
925 15TH STREET, NORTHWEST
FIFTH FLOOR
MCPHERSON SQUARE
WASHINGTON, DISTRICT OF COLUMBIA 20005
WWW.ROYERBROOKS.COM

TELECOPIER
202.293.2768

TELEPHONE
202.296.0784

## Memorandum
## CONFIDENTIAL

To: John E. Bowman, Esq.
Chief Counsel
Office of Thrift Supervision
United States Department of Treasury

From: Royer & Brooks, LLP

Date: June 6, 2006

Re: The Office of Thrift Supervision's question relating to federal and state laws regarding the allocation of votes when voted cumulatively.

---

## The Issue

The memorandum is in response to the request from OTS that Independence Federal Savings Bank ("Association") provide a legal memorandum addressing the permissibility of allowing the allocation of cumulative votes after the polls have closed under the Association's charter and bylaws (including Robert's Rules of Order), federal securities law and state law. In preparing this legal memorandum we have reviewed all 50 state jurisdictions, all federal jurisdictions, all state and federal statutes, as well as interviewed a number of inspectors of elections to determine what, if any, guidance there might be.

## Federal and State Statutes

First, with the exception of the election of directors of national banks (12 U.S.C. § 61), the Federal Agricultural Mortgage Corporation (12 U.S.C. § 2279aa-4(a)(1)), and the Federal National Mortgage Association (12 U.S.C. § 1718(1)), cumulative voting for a corporation's board of directors is governed by the laws of the state in which the company is legally incorporated. Federal securities laws do not address this issue. Although Regulation 14A of the Securities and Exchange Commission governs the

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 2

solicitation of proxies, it does not address the issue of cumulative voting. Further, no federal statute or regulation sets forth procedures for allocating cumulative votes.

Generally, cumulative voting statutes occur in two forms: (1) the right to vote cumulatively is unqualifiedly granted to corporate stockholders; or (2) the right is accorded only where authorized by the charter of the corporation.[1] No state expressly prohibits cumulative voting for a corporation's board of directors although most states make it conditional on its inclusion in the articles of incorporation. Additionally, no state statute specifically addresses the issue of whether it is permissible to allocate cumulate votes after the polls have closed; apparently, as discussed below, allocation of votes after the polls have closed is part of the tabulation and ministerial duties of the inspectors of election and a standard industry practice.

However, fifteen of the fifty states do prohibit voting after the polls have closed. Of these fifteen states, ten states include a prohibition on voting after the polls have closed in provisions relating to the conduct of shareholders' meetings or the duties of the chairperson. These ten states are Connecticut, Idaho, Iowa, Maine, Michigan, Mississippi, Oregon, South Dakota, West Virginia, and Wyoming.[2] The language for these states is substantively the same as the language from the Connecticut statute which is as follows:

> The chairperson of the meeting shall announce at the meeting when the polls close for each matter voted upon. If no announcement is made, the polls shall be deemed to have closed upon the final adjournment of the meeting. After the polls close, no ballots, proxies or votes, nor any revocations or changes thereto, may be accepted.[3]

---

[1] R. D. Hursh, Annotation, *Construction, Application, and Effect of Constitutional Provisions or Statutes Relating to Cumulative Voting of Stock for Corporate Directors*, 43 A.L.R.2d 1322 (1955).

[2] CONN. GEN. STAT. ' 33-702(d) (LEXIS through 2006 Supp.); IDAHO CODE ' 30-1-708 (4) (Bender, LEXIS through 2005 Sess.); IOWA CODE ' 490.708 (4) (LEXIS through 2005 legislation); ME. REV. STAT. tit. 13-C, ' 708 (4) (LEXIS through 2005 legislation); MICH. COMP. LAWS ' 450.1406 (3) (Bender, LEXIS through P.A. 138, 2006); MISS. CODE ANN. ' 79-4-7.08(d) (LEXIS through 2005 Reg. Sess. and 1st through 5th Extraordinary Sess.); OR. REV. STAT. ' 60.209(4) (LEXIS through 2005 Reg. Sess.); S.D. CODIFIED LAWS ' 47-1A-708 (LEXIS through 2005 legislation); W. VA. CODE ' 31D-7-708 (d) (Bender, LEXIS through 2006 Reg. Sess., House Bill 4037); WYO. STAT. ANN. ' 17-16-708(d) (Bender, LEXIS through 2005 legislation).

[3] CONN. GEN. STAT. § 33-702(d) (LEXIS through 2006 Supp.).

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 3

The remaining five states include language prohibiting voting after the polls are closed in provisions relating to the duties of inspectors of election and voting procedures. However, each of these states also include language providing that certain specified courts may allow the inspectors to accept votes after the closing of the polls upon application by a stockholder. These five states are Delaware, Kansas, New York, Oklahoma, and Virginia.[4] The language for these states is substantively the same and is generally as follows:

> The date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting. No ballot, proxies or votes, nor any revocations thereof or changes thereto, shall be accepted by the inspectors after the closing of the polls unless the [specified court] upon application by a stockholder shall determine otherwise.[5]

In summary, fifteen states do prohibit the acceptance of ballots, proxies or votes, or any revocations or changes thereto, after the polls have closed in an election of a corporation's board of directors. The issue then is whether allocating votes after the polls have closed constitutes a revocation or change to the votes as prohibited by these states' statutes. The issue of allocating votes after the polls have closed has only been addressed through case law as discussed later in this memorandum.

## The Association's Charter and By-laws

As to the Association, it is headquartered in the District of Columbia which does not have a statutory prohibition on voting for corporate directors after the polls close. Moreover, the Association is not a state-chartered institution but a federally-chartered stock savings bank which operates under the Federal Stock Charter. Section 5 of the Federal Stock Charter provides for cumulative voting in director elections by stating that "[e]ach holder of shares of common stock shall be entitled to one vote for each share held by such holder, except as to the cumulation of votes for the election of directors...". The Association's by-laws, which are modeled after the OTS' Model Bylaws for Stock Associations (OTS Form 1518), adopt the language of the OTS' Model Bylaws and

---

[4] DEL. CODE ANN. tit 8, § 231(c) (LEXIS through 75 Del. Laws, Ch 268); Kan. Stat. Ann. § 17-6521(c) (LEXIS through 2004 Supp.); N.Y. Bus. Corp. § 611(c) (Bender, LEXIS through Act of Apr. 26, 2006, Ch. 60); Okla. Stat. tit.18, § 1075.1(C) (LEXIS through 2005 Extraordinary Sess., Act 1); Va. Code Ann. § 13.1-664.1(C) (Bender, LEXIS through 2005 Reg. Sess., Acts 2005, cc. 1 to 951).
[5] DEL. CODE ANN. tit 8, § 231(c) (LEXIS through 75 Del. Laws, Ch 268)

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 4

expressly allow for cumulative voting in an election for the board of directors but do not specify the procedure to be used in allocating the votes. Section 12 of Article II of the by-laws reads as follows:

> **Section 12. Cumulative Voting.** Every shareholder entitled to vote at an election for directors shall have the right to vote, in person or by proxy, the number of shares owned by the shareholder for as many persons as there are directors to be elected and for whose election the shareholder has the right to vote, or to cumulate the votes by giving one candidate as many votes as the number of such directors to be elected multiplied by the number of shares shall equal or by distributing such votes on the same principle among any number of candidates.

Other than the direction provided in Section 12, the Association's by-laws do not address the procedure for allocating cumulative votes. Neither do Robert's Rules of Order which the Association adopts in Section 4 of the by-laws to the extent they do not conflict with OTS regulations or the by-laws.[6] Cumulative voting is addressed in Rule 46 of Robert's Rules of Order and its description is nearly identical to what is in the Association's by-laws. A review of federal and state cases revealed no cases where Robert's Rules of Order was the specific issue with respect to a board of directors election.

The by-laws do, however, in Section 13 provide the Inspectors of Election with broad authority to decide questions relating to the acceptance or rejection of votes. Again, this section of the Association's by-laws adopts the language of the OTS' Model Bylaws for Stock Associations. Section 13 cites the duties of Inspectors of Election as including:

---

[6] *See* EDWARD R. ARANOW & HERBERT A. EINHORN, PROXY CONTESTS FOR CORPORATE CONTROL, § 12.03, n. 21 (3rd. ed. 1998) [hereinafter ARANOW & EINHORN] (noting that commentators have widely accepted the view that the use of Robert's Rules of Order is inappropriate at stockholders' meetings). Aranow & Einhorn cite the following as the rationale for this position:
> [Robert's Rules] was designed for deliberative assemblies, such as a legislature, where each member has an equal vote, and debate prior to the voting is designed to enable the members to reach an informed opinion on the issue under consideration...At stockholders' meetings, the large majority of voting members has cast its vote in advance, and debate at the meeting has little or no effect on the outcome of most substantive votes.

Id., citing R. Franklin Balotti, Jess A Finkelstein & Gregory P. Williams, Meetings of Stockholders, note 1, § 9.1 (2d ed. 1991).

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 5

> "... determining the number of shares and the voting power of each shares, the shares represented at the meeting, the existence of a quorum, and the authenticity, validity and effect of proxies; receiving votes, ballots or consents; hearing and determining all challenges and questions in any way arising in connection with the rights to vote; counting and tabulating all votes or consents; determining the result; and such acts as may be proper to conduct the election or vote with fairness to all shareholders."

As noted above, the Association's charter and by-laws are modeled after the OTS's Model Charter and Bylaws for Stock Associations, neither of which address the permissibility of allocating cumulative votes after the polls have closed in an election of directors. Neither do these two models address the broader issue of whether ballots, proxies or votes may or may not be accepted after the polls have closed. Nor is this issue addressed in 12 CFR 552, the OTS regulations dealing with Federal Stock Associations' incorporation, organization and conversion. The OTS' silence on this issue is relevant because the Model Bylaws, in particular, follow the general outline of the state statutes on the corporate governance of businesses. It begs the question of why didn't the OTS, if it intended to prohibit the acceptance of votes after the polls have closed, include a provision in the sections of its Model Bylaws dealing with the conduct of shareholder meetings or the duties of the chairperson or the duties of the inspectors of election prohibiting the acceptance of such votes. Without such a provision in the Model Bylaws or the OTS regulations or a federal statute, the OTS, like the remaining 35 states which do not prohibit voting after the polls have closed, must rely on case law to address this issue.

However, as mentioned previously, a prohibition on voting after the polls have closed does not address definitively the narrower issue of whether allocating cumulative votes after the polls have closed would be prohibited. The special problems which arise in reconciling proxies and ballots is perhaps best exemplified by Delaware's response to the court's holding in <u>Concord Fin. v. Tri-State Motor Transit Co.</u>, 567 A.2d 1 (Del. Ch. 1989). In this case, the inspectors of election resolved a broker overvote by requesting the correct vote from the broker's intermediary for proxy tabulation. The court rejected the use of this extrinsic evidence and required an adjustment in the tabulation of each party's votes, giving each party a net number of votes to be allocated after the polls had closed as is the standard industry practice. Delaware responded to the court's refusal to accept extrinsic evidence by amending its statute, permitting inspectors to consider

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 6

"other reliable information" beyond the corporation's books and records and proxies and ballots for the purpose of reconciling proxies and ballots.[7]

The Association's by-laws as well as the OTS' Model Bylaws also provide the inspectors of election with quasi-judicial powers such as "hearing and determining all challenges and questions in any way arising in connection with the rights to vote" as well as discretionary powers, i.e. "...such acts as may be proper to conduct the election or vote with fairness to all shareholders." These powers are in addition to the inspectors' other duties, including "... determining the number of shares and the voting power of each share ... the authenticity, validity and effect of proxies; receiving votes, ballots or consents ... counting and tabulating all votes or consents ...". These powers and duties could well be interpreted to include the authority of the inspectors of election to obtain "other reliable information" on how to allocate votes in accordance with the shareholders' wishes.

Case Law

Although it is generally held that inspectors of election are ministerial rather than judicial officers, courts too have found that inspectors of election may exercise discretionary powers. This is particularly true with respect to opening and closing the polls where, in most jurisdictions, the courts have held that inspectors of election may, in the exercise of reasonable discretion and for the purpose of enabling all stockholders to vote, keep the polls open beyond the time designated for closing the polls or limited by the board of directors.[8] See Clopton v. Chandler, 150 P. 1012, 1015 (Cal. Ct. App. 1915); State ex rel. Dunbar v. Hohmann, 248 S.W.2d 49, 52 (Mo. Ct. App. 1952); Re Mohawk & Hudson R.R. Co., 19 Wend. 135, 147 (N.Y. Sup. Ct. 1838); and Smith v. Orange & Rockland Utilities, Inc., 617 N.Y.S.2d 278, 280 (N.Y. Sup. Ct. 1994).

The guiding principle in these cases as well as the statutes and bylaws discussed above is

---

[7] ARANOW & EINHORN, supra note 4, § 19.07(A) (1999 Supp.).
[8] In the Clopton case, the by-laws therein were very similar to the Association's by-laws relating to the powers of the Inspectors of Election in that they provided that "...a committee on elections...shall...pass upon all proxies, provide for the complete registering of proxies, counting of ballots, preservation of the records of election....All questions touching the qualification of voters, validity of proxies and the acceptance or rejection of votes shall be decided by said committee....Said committee...shall cause to be prepared a register of voters, which shall...contain among other things, the name of the shareholder, the number of shares he is entitled to vote, the name of the proxy, and other matters that in the judgment of said committee...said register shall contain." Clopton v. Chandler, 150 P. 1012, 1015 (Cal. Ct. App. 1915).

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 7

that the election be conducted in a manner which is fair to all shareholders and avoid procedures which would result in disenfranchisement. To this end, the Inspector of Election should make an effort to apply procedural rules that will be equitable and serve the interests of preserving shareholder voting rights. This would include the authority to allocate votes in accordance with the shareholders' wishes.

Although some states, as noted above, have begun to restrict the time during which votes may be accepted, most states continue to follow the precedent that "... a vote, although actually cast, does not become final until the result of the voting has been announced, until which time any vote may be changed at the will of the voter." 19 C.J.S. Corps. § 440(a)(1990), citing Zierath Combination Drill Co. v. Croake, 131 P. 335 (Cal. Ct. App. 1913). Other jurisdictions have held similarly. Dynamics Corporation of America v. CTS Corporation, 643 F. Supp. 215, 218 (N.D. Ill. 1986).[9] This precedent is so well-established that it is also found in Rule 46 of Robert's Rules of Order, stating that "[a] member has the right to change his vote up to the time the vote is finally announced."

In Zierath, the court stated that "[c]orporation elections are business affairs, not controlled by the laws affecting general elections, and should be conducted in a business way and in a manner affording all stockholders the fullest liberty in expressing their wishes, disregarding technical matters which enter into general elections controlled and restricted by special statutes." Zierath, 131 P. at 2-3. The wide breadth the courts have provided to elections for corporate directors is further exemplified by the courts' refusal to invalidate elections due to irregularities in the reception or rejection of votes where the final result of the voting would not be different had the errors not been made. 19 CJS Corps. § 442 (1990), citing Haslam v. Carlson, 124 A. 734 (R.I. 1924).[10]

In allowing ballots for corporate directors to be cast after the closing of polls but before the final vote has been announced, courts have relied on "... the fundamental rule that all who are entitled to take part shall be treated with fairness and good faith." Young v. Jebbett, 211 N.Y.S. 61 (App. Div. 1925). This principle was more developed in

---

[9] Citing Zierath Combination Drill Co. v. Croake, 131 P. 335 (Cal. Ct. App. 1913); State ex rel. Dunbar v. Hohman, 248 S.W.2d 49, 51 (Mo. App. 1952); Young v. Jebbett, 211 N.Y.S. 61, 66 (App. Div. 1925); Wells v. Beekman Terrace, Inc., 197 N.Y.S.2d 79, 82 (Trial Term. 1960); Salgo v. Matthews, 497 S.W.2d 620, 630 (Tex. App. 1973); Washington State Labor Council v. Federated American Insurance Co., 474 P.2d 98, 103 (Wash. 1970).

[10] In Haslam, the court found that, while the tellers failure to report to the stockholders that they had rejected 264 ballots cast for the petitioner was irregular, it did not affect the result of the election, and it would do no good to declare the election invalid. Haslam, 124 A. at 735.

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 8

<u>Washington State Labor Council v. Federated American Insurance Co.</u>, 474 P.2d 98 (Wash. 1970), where the court held that:

> The principle emerging from the cited authorities is that a shareholder, who through inadvertence, mistake, or other reasonable cause is unable to vote or is prevented from casting his vote or his proxy votes during the regular time of balloting, will not be precluded from voting after the balloting has closed and before the final results are officially announced; provided, such belated voting is not prohibited by statute, corporate bylaw, or other officially authorized and announced rules and is free of fraud, bad faith and/or overreaching. <u>Id</u>. at 104.

The court, in the above case, emphasized the importance of not disenfranchising a stockholder. The court stated that "[t]he right of a qualified shareholder in a corporation to vote, either personally or by proxy, for the directors who are to manage affairs is a valuable and vested property right. It is one of the most important rights incident to stock ownership and should not be annulled for purely technical reasons." <u>Washington State Labor Council</u>, 474 P.2d at 103, citing <u>State ex rel. Swanson v. Perham</u>, 191 P.2d 689 (Wash. 1948); <u>State ex rel. Johnson v. Heap</u>, 95 P.2d 1039 (Wash. 1939); <u>State ex rel. Lidral v. Superior Court</u>, 89 P.2d 501 (Wash. 1939).

The <u>Washington State Labor Council</u> case is significant in the present instance because it addresses directly the issue of allocating cumulative votes after the polls have closed. In this case, as in that of the Association, (1) The company's proxy solicitation informed shareholders concerning cumulative voting rights, listed all the candidates, and indicated the nominees for whom the company would vote; however, the solicitations did not detail the strategy the company would use in casting a cumulative vote; (2) The company's officers considered the method by which they would cast their cumulative vote prior to meeting, although they did not know the total number of proxies they would have; (3) The voting concluded and the shareholders' meeting adjourned with the announcement that ballot tabulation would commence; (4) The company's officers had no effective opportunity to cast the company's ballots during the shareholders' meeting; (5) Following adjournment, the company's officers determined the number of proxies held on behalf of the company (in the Association's case, this was determined by the Inspectors of Election); and (6) Following their predetermined and undisclosed voting strategy, the company's officers cast their cumulative votes. <u>Washington State Labor Council</u>, 474 P.2d at 99-101.

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 9

Also significant in the <u>Washington State Labor Council</u> case is the appellant's contention that "...the method, manner or strategy by which cumulative votes would be allocated and cast in a directors' election constitute 'material matters'..." under the Washington Revenue Code which the company should have furnished in its proxy solicitations, and that a pre-election announcement of the company's prospective vote allocations constitutes a "condition precedent" to the exercise of cumulative voting rights under the state's insurance regulations regarding proxies. <u>Id</u>. at 101-102. The OTS has similarly submitted that the Association should disclose in its proxy statements the order of priority of management's nominees in allocating the cumulative vote. In the <u>Washington State Labor Council</u> case, the court held that the information furnished by the respondent constituted all the material matters required, stating that it would be "... to the disadvantage of all concerned, to hold that parties engaged in a proxy contest were compelled by its general terms, at the expense of otherwise invalidating their vote, to spell out considerably in advance of an election meeting, and without knowledge of how many proxy votes they would ultimately have, precisely how they would finally allocate such votes among their nominees." <u>Id</u>. at 102. Thus, the <u>Washington State Labor Council</u> case stands for the proposition that including a company's prospective vote allocations in its proxy solicitations is neither material nor required, and nor is it desirable.

It is clear that certain general rules have emerged from the case law surrounding the issue of whether ballots may be cast after the closing of the polls. First, the election of a corporation's directors are business affairs that are not controlled by general election laws and should be conducted so as to afford all stockholders the fullest liberty in expressing their wishes, disregarding technical matters which enter into general elections controlled and restricted by special statutes. Second, all entitled to take part in stockholder voting shall be treated with fairness and good faith. Third, the right of a shareholder to vote, either personally or by proxy, for a corporation's board of directors is a valuable and vested property right that should not be annulled for purely technical reasons. Fourth, a vote in a corporate election does not become final until the result of the voting has been announced, until which time a vote may be changed at the will of

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 10

the voter. Fifth, in the exercise of reasonable discretion and for the purpose of enabling all stockholders to vote, inspectors of election may keep the polls open beyond the time designated for closing the polls or limited by the board of directors.

## Conclusion

In summary, although fifteen states have enacted statutes prohibiting the acceptance of ballots, proxies or votes, or any revocations or changes thereto, after the polls have closed in an election of a corporation's board of directors, it is unclear whether allocating votes after the polls have closed constitutes a revocation or change to the votes as prohibited by these states' statutes. The issue of allocating votes after the polls have closed has only been addressed through case law, with <u>Washington State Labor Council</u> being the seminal case. Nothing in the Association's charter or bylaws or in federal law or in the law of the District of Columbia, where the Association is headquartered, would prohibit the allocation of cumulative votes after the polls have closed but before the final result of the voting is announced. Furthermore, the broad authority (both quasi-judicial and discretionary) granted the Inspectors of Election in the Association's bylaws and the OTS' Model Bylaws may be interpreted as granting the inspectors of election the authority to obtain "other reliable information" on how to allocate votes after the polls have closed in accordance with the shareholders wishes. Aside from the quasi-judicial and discretionary powers granted the inspectors, the authority to allocate votes may be viewed as part of the inspector's duties in tabulating votes or determining the effect of the proxies. Clearly, under the circumstances, allowing votes to be allocated after the polls have closed but before the final result of the voting is announced is not only permissible but, to disallow such an allocation, would deprive the shareholder of an important property right. Moreover, requiring the Association to disclose, in its proxy statement, the order of priority of management's nominees in allocating the cumulative vote would be, as the court held in the <u>Washington State Labor Council</u> case, to the disadvantage of all concerned.

As a final note, it is important to understand that the election of the Association's board of directors was an anomaly in that it had the appearance of a proxy contest but was not a proxy contest, per se, in that no dissident proxy statement and solicitation were filed. If this had been required as should have been the case, both the dissident group and management would each have been given the opportunity to allocate the undesignated shares they would have controlled as they deemed appropriate. However, because the

ROYER & BROOKS, LLP

John E. Bowman, Esq.
Office of Thrift Supervision
Confidential Memorandum
Page 11

dissident group did not solicit proxies, the inspectors of election were left with five candidates for three seats and required "other reliable information" to reconcile the shareholders' wishes for the undesignated shares under the management's control. The board of directors was given the discretion to allocate the undesignated shares as provided in the proxy solicitation. The procedures used by the inspectors of election in allocating the shares conform to industry standards and is consistent with the case law discussed above.

Respectfully Submitted.

                                            Royer & Brooks, LLP

ROYER & BROOKS, LLP