**MULDOON MURPHY & AGUGGIA** LLP

ATTORNEYS AT LAW
5101 WISCONSIN AVENUE, NW
WASHINGTON, DC 20016
202.362.0840   FAX 202.966.9409
WWW.MULDOONMURPHY.COM

June 27, 2006

**VIA FEDERAL EXPRESS**

The Nasdaq Stock Market
Nasdaq Reports Section
9600 Blackwell Road
5th Floor
Rockville, MD 20850
Attn:  Nikolai Utochkin

Re:     Independence Federal Savings Bank
        Washington, D.C.
        Form 8-K re:  Cease & Desist and Batties Resignation

Dear Mr. Utochkin:

On behalf of Independence Federal Savings Bank (the "Bank"), Washington, D.C., enclosed please find three (3) copies of the Form 8-K regarding Items 1.01 and 5.02(b).  Such Form 8-K was filed by the Bank with the Office of Thrift Supervision on June 27, 2006.

Please date stamp the enclosed copy of this letter and return it to the undersigned in the enclosed business reply envelope.  If you have any questions or comments regarding the enclosed, please contact the undersigned.

Very truly yours,

MULDOON MURPHY & AGUGGIA LLP

Thomas J. Haggerty

/Enclosures
cc:  Thomas L. Batties, Independence Federal Savings Bank
     Frances C. Augello, Office of Thrift Supervision
     Gary Jeffers, Office of Thrift Supervision



ATTORNEYS AT LAW
5101 WISCONSIN AVENUE, NW
WASHINGTON, DC 20016
202.362.0840   FAX 202.966.9409
WWW.MULDOONMURPHY.COM

June 27, 2006

**VIA COURIER**

Securities Filing Desk
Office of Chief Counsel
Business Transactions Division
Office of Thrift Supervision
Department of Treasury
1700 G Street, N.W.
Washington, D.C. 20552

       Re:    Independence Federal Savings Bank
               Washington, D.C.
               Form 8-K re:  Cease & Desist and Batties Resignation
               <u>OTS Docket No. 7173</u>

Dear Sir or Madam:

      Pursuant to Sections 12(i) and 13 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and 12 C.F.R. 563d.1, enclosed for filing by Independence Federal Savings Bank (the "Bank") are seven (7) copies (one of which is manually signed) of the enclosed Form 8-K regarding two items:  (1) the Office of Thrift Supervision's issuance of a Consent Order to Cease and Desist for Affirmative Relief to the Bank; and (2) the resignation of Mr. Thomas Batties from the position of Acting President and Chief Executive Officer of the Bank.  An additional complete copy of the Form 8-K is being sent for filing under separate cover to the Regional Director of the Office of Thrift Supervision of the Southeast Region pursuant to 12 C.F.R. 563d.2 and three (3) copies of the Form 8-K are being provided to The Nasdaq Stock Market, Inc.

      Please date stamp the enclosed copy of this letter as a receipt and return it via our courier.  If you have any questions regarding this filing, please contact the undersigned.

               Very truly yours,

               MULDOON MURPHY & AGUGGIA LLP

               Thomas J. Haggerty

/Enclosures
cc:  Thomas L. Batties, Independence Federal Savings Bank
     Frances C. Augello, Office of Thrift Supervision
     Gary Jeffers, Office of Thrift Supervision

MULDOON
MURPHY &
AGUGGIA LLP

ATTORNEYS AT LAW
5101 WISCONSIN AVENUE, NW
WASHINGTON, DC 20016
202.362.0840   FAX 202.966.9409
WWW.MULDOONMURPHY.COM

June 27, 2006

**VIA FEDERAL EXPRESS**

Mr. John E. Ryan
Regional Director
Southeast Regional Office
Office of Thrift Supervision
1475 Peachtree Street, N.E.
Atlanta, Georgia 30309

> Re:    Independence Federal Savings Bank (the "Bank")
>         Washington, D.C.
>         Form 8-K re:  Cease & Desist and Batties Resignation
>         OTS Docket No. 7173

Dear Mr. Ryan:

Enclosed please find one copy of the Form 8-K, regarding two items:  (1) the Office of Thrift Supervision's issuance of a Consent Order to Cease and Desist for Affirmative Relief to the Bank; and (2) the resignation of Mr. Thomas Batties from the position of Acting President and Chief Executive Officer of the Bank.  Such Form 8-K was filed, with the appropriate number of copies, by the Bank with the Office of Thrift Supervision, Washington, D.C., on June 27, 2006.

Please date stamp the enclosed copy of this letter and return it to the undersigned in the enclosed business reply envelope.  If you have any questions or comments regarding the enclosed, please contact the undersigned.

Very truly yours,

MULDOON MURPHY & AGUGGIA LLP

Thomas J. Haggerty

/Enclosures
cc:  Thomas L. Batties, Independence Federal Savings Bank
      Frances C. Augello, Office of Thrift Supervision
      Gary Jeffers, Office of Thrift Supervision

# OFFICE OF THRIFT SUPERVISION
## Washington, D.C. 20552

# FORM 8-K

### CURRENT REPORT

Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

Date of Report (Date of earliest event reported):  June 21, 2006

## INDEPENDENCE FEDERAL SAVINGS BANK
(exact name of registrant as specified in its charter)

| **UNITED STATES** | **7173** | **52-0883392** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (OTS File Number) | (I.R.S. Employer I.D. No.) |

### 1229 Connecticut Ave., N.W., Washington, D.C. 20036
(Address of principal executive offices)

Registrant's telephone number, including area code: **(202) 628-5500**

(Former name or former address, if changed since last report):  **Not Applicable**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 1.01.     <u>Entry Into a Material Definitive Agreement.</u>**

On June 23, 2006, the Office of Thrift Supervision (the "OTS") issued a Consent Order to Cease and Desist for Affirmative Relief (the "C&D") to Independence Federal Savings Bank (the "Bank"). Without admitting or denying that grounds exist, the Bank consented to the issuance of the C&D through the execution of a stipulation and consent to such issuance.

The C&D is attached to this Form 8-K as Exhibit 10.1, and is incorporated into this Item 1.01. Please refer to the C&D for a description of its terms and provisions.

In significant part, the C&D relates to the same matters covered by the Supervisory Directive from the OTS to the Bank dated June 14, 2006, which was described in a Form 8-K filed on June 20, 2006. That Supervisory Directive has now been terminated by the OTS and is superseded by the C&D.

**Item 5.02(b).  <u>Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers.</u>**

On June 21, 2006, Mr. Thomas L. Batties, the Bank's Acting President and Chief Executive Officer, submitted to the Board of Directors his resignation from the Bank. Mr. Batties agreed for such resignation to become effective upon the Board's appointment of an interim or permanent chief executive officer, which the Bank committed should occur shortly.

The Bank and Mr. Batties have entered into an agreement which, among other things, the Bank will pay Mr. Batties his current salary for six months after the effectiveness of his resignation and Mr. Batties has agreed to be available to consult with the Bank as reasonably required by the Bank to help provide a smooth and orderly management transition.

**Item 9.01.     <u>Financial Statements and Exhibits</u>.**

(a)     Financial Statements of Businesses Acquired:  Not applicable

(b)     Pro Forma Financial Information:  Not applicable

(c)     Exhibits

| <u>Number</u> | <u>Description</u> |
| --- | --- |
| 10.1 | Consent Order to Cease and Desist for Affirmative Relief Dated June 23, 2006 |
| 10.2 | Stipulation and Consent to the Issuance of an Order to Cease and Desist for Affirmative Relief |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**INDEPENDENCE FEDERAL
SAVINGS BANK**

Dated: *June 27*, 2006

By: _____

Sheila R. Finlayson, Esq.
*Vice President, Counsel & Corporate
Secretary*

**EXHIBIT 10.1**

UNITED STATES OF AMERICA
Before The
OFFICE OF THRIFT SUPERVISION

| | |
|---|---|
| In the Matter of ) | Order No.: ATL-2006-14 |
| ) | |
| Independence Federal Savings Bank, FSB ) | Date: June 23, 2006 |
| Washington, D.C. ) | |
| ) | |
| OTS Docket No.: 07173 ) | |

## CONSENT ORDER TO CEASE AND DESIST FOR AFFIRMATIVE RELIEF

WHEREAS, Independence Federal Savings Bank, FSB, Washington, D.C., OTS Docket No. 07173 (Independence or Bank), by and through its Board of Directors (Board), has executed a Stipulation and Consent to the Issuance of an Order to Cease and Desist for Affirmative Relief (Stipulation); and

WHEREAS, Independence, by executing the Stipulation, has consented and agreed to the issuance of this Consent Order to Cease and Desist for Affirmative Relief (C&D Order) by the Office of Thrift Supervision (OTS), pursuant to Section 8(b) of the Federal Deposit Insurance Act (FDIA), 12 U.S.C. § 1818(b)[1]; and

WHEREAS, the Director of the OTS has delegated to the Regional Directors of the OTS the authority to issue consent orders on behalf of the OTS pursuant to provisions of Section 8 of the FDIA, 12 U.S.C. § 1818.

NOW, THEREFORE, IT IS ORDERED THAT:

---

[1] All references to the United States Code (U.S.C.) are as amended.

## Order to Cease and Desist

1.      The Bank and its directors, officers, employees, and agents shall cease and desist from any action (alone or with another or others) for or toward causing, bringing about, participating in, counseling or the aiding and abetting of any violation of:

> a.   the Currency and Foreign Transactions Reporting Act, as amended by the USA Patriot Act and other laws (the Bank Secrecy Act or BSA), 31 U.S.C. §§ 5311 et seq., and the related BSA regulations issued by the U. S. Department of the Treasury, 31 C.F.R. Part 103; and the OTS, 12 C.F.R. § 563.177 (collectively with the aforementioned laws and regulations, the BSA Laws and Regulations); and

> b.   the OTS regulations governing suspicious activity reports (SAR) and other reports and statements set forth in 12 C.F.R. § 563.180 (SAR Regulations).

## Anti-Money Laundering/Bank Secrecy Act Compliance

2.      Effective immediately, the Board shall actively seek and retain as soon as possible a qualified and knowledgeable individual with appropriate training, expertise and experience in complying with the BSA Laws and Regulations, the SAR Regulations and the requirements and guidance set forth in the Federal Financial Institutions Examination Council's Bank Secrecy Act/Anti-Money Laundering Examination Manual (BSA Examination Manual) to serve as the Bank's BSA Officer. The Board shall ensure that the new BSA Officer has the necessary authority and resources to meet his or her responsibilities, which shall include the competent and effective implementation and administration of the Bank's BSA Compliance Program, and shall require the new BSA Officer to report directly to the Board's Audit Committee. In the interim, while such hiring effort is underway, the Bank shall, within five (5) days after the Effective Date of this C&D Order, designate a person with BSA training to serve as the interim BSA Officer under the close supervision of the Audit Committee of the Board.

3.    Effective immediately, Independence shall not establish any new account relationship or begin any new activity with any customer or entity that may be deemed a high-risk customer or that poses a higher risk of engaging in potentially unlawful activity (collectively, Higher Risk Accounts), pursuant to the BSA Laws and Regulations, the BSA Examination Manual, or the applicable guidance from OTS, other federal financial institution regulators, the Financial Crimes Enforcement Network (FinCEN), and Office of Foreign Assets Control (OFAC) (collectively, Regulatory Guidance), until such time as the Bank can demonstrate to the satisfaction of the OTS that its modified BSA Compliance Program (as defined in Paragraph 4 below) is adequate, complies with the BSA Laws and Regulations, the SAR Regulations, the BSA Examination Manual, and the Regulatory Guidance, and that Management and staff of the Bank are capable of fully implementing and complying with the BSA Compliance Program with respect to all existing accounts.

4.    Within ten (10) days after the Effective Date of this C&D Order, the Board shall retain a knowledgeable and qualified third party with appropriate expertise and experience to conduct, a comprehensive review of the Bank's written program for compliance with the BSA Laws and Regulations, SAR Regulations, and the guidance set forth in the BSA Examination Manual (BSA Compliance Program), including the governance, organization and performance of the BSA Compliance Program staff (Third Party Review). The Third Party Review shall be completed and documented in a written report (Third Party Report) within forty (40) days of the Effective Date of this C&D Order. Within thirty (30) days after the completion of the Third Party Report, unless otherwise indicated in the subparagraphs below, the Board shall revise the Bank's BSA Compliance Program and take all actions necessary and appropriate to strengthen and ensure that the BSA Compliance Program is adequate, appropriate, and designed to ensure the Bank's full compliance with the BSA Laws and Regulations, the SAR Regulations, and the guidance set forth in the BSA Examination Manual. At a minimum, the Board shall take the following actions:

a.    In conjunction with the effort to retain a new BSA Officer as required by Paragraph 2 above, within thirty (30) days after the completion of the Third Party

*Independence Federal Savings Bank C&D Order*    3

Report, the Board's Audit Committee shall conduct a comprehensive review of the Bank's resources and staff assigned responsibility for compliance with the BSA Compliance Program, the BSA Laws and Regulations, and the SAR Regulations to ensure that the management and organizational structure, including the resources dedicated to the BSA Compliance Program, are appropriate for the Bank's size, complexity and level of risk and that the BSA Compliance Program is adequately staffed by qualified and trained personnel. This review may be conducted with the assistance of a qualified and competent third party with experience in compliance with the BSA Laws and Regulations and SAR Regulations. Within fifteen (15) days after completion of this review, the Audit Committee shall provide the full Board with a written report detailing the results of the Audit Committee's review, including all recommended corrective actions. The Board will review, adopt, and require Management to implement all changes necessary and appropriate to strengthen and improve the staff, resources, and organizational and reporting structure of the Bank's BSA Compliance Program. The Board shall establish timeframes for the completion of all corrective actions and shall monitor, not less than monthly, the completion status of all corrective actions. A copy of the Audit Committee's report and a notice indicating the full Board's review and adoption of corrective actions with appropriate timeframes shall be provided to the Regional Director within ten (10) days after the Board's adoption. Copies of the actual Board meeting minutes evidencing this review and corrective actions shall be provided to the Regional Director within ten (10) days after the minutes are approved by the Board. Further, copies of the Board minutes detailing the Board's monthly review of the completion status of the corrective actions adopted pursuant to this subparagraph shall be provided to the Regional Director within ten (10) days after the date of the minutes evidencing the Board's review of such monthly completion status review are approved by the Board.

b.  Within thirty (30) days after the completion of the Third Party Report, the Board shall revise the Bank's BSA Compliance Program to include (i) specific written methodologies and periodic risk assessments to assign risk levels to the Bank's customers, accounts and products (Risk Assignment Methodology); and (ii)

appropriate ongoing due diligence, oversight, and monitoring procedures and systems, including recordkeeping and documentation requirements, based upon the risk level assigned to the customer, account or product in accordance with the Bank's Risk Assignment Methodology, including enhanced due diligence levels and oversight, monitoring and documentation requirements for Higher Risk Accounts.

c.  Within thirty (30) days after the completion of the Third Party Report, the Board shall establish and adopt specific policies and procedures and manuals to ensure the Bank's accurate, complete and timely completion and filing of Currency Transaction Reports (CTR) with appropriate regulatory agencies and law enforcement authorities in compliance with applicable law and regulation;

d.  Within thirty (30) days after the completion of the Third Party Report, the Board shall review and revise the Bank's BSA Compliance Program to ensure that it incorporates appropriate written procedures, manuals, policies, and formal systems to adequately monitor accounts and transactions, including conducting a review of large cash transactions in an amount equal to or exceeding $3,000.00, to timely and effectively identify suspicious activities or transactions, including the structuring of transactions to evade the filing of a CTR, for appropriate action.

e.  Within thirty (30) days after the completion of the Third Party Report, the Board shall require Management to ensure that all branch offices and appropriate personnel are fully informed of and comply with the Bank's policies, procedures, manuals and systems for identifying transactions that may require a SAR filing, including all review processes and reporting guidelines for such transactions.  Management shall review all accounts or transactions identified as suspicious, consistent with written monitoring and review procedures adopted by the Board, and take appropriate corrective action (including, without limitation, filing of a SAR and increased monitoring and oversight).  The Bank shall fully document its review of all accounts and transactions, including review of the large cash transactions report.  The Bank shall ensure that it fully documents any investigation or review of transactions identified as suspicious, including the determinations made regarding such accounts

and transactions and the actions taken with regard to such accounts and transactions. Management shall provide the Board with a written monthly report identifying the activities or transactions identified as suspicious, the results of any review or investigation, and the actions taken by Management.

f.    Within thirty (30) days after the completion of the Third Party Report, the Board shall review and revise the Bank's policies and procedures for compliance with the applicable requirements of the OFAC regulations, 31 C.F.R. Part 500, (OFAC Policy) to ensure that the weaknesses, deficiencies and possible violations discussed in the OTS's February 13, 2006 Report of Examination (2006 Examination) have been fully addressed and that the OFAC Policy is adequate and effective to ensure the Bank's compliance with applicable laws, regulations and Regulatory Guidance.  The Board shall ensure that the OFAC Policy specifically requires, and that Management conducts, appropriate OFAC checks of all wire transfer parties using the OFAC Specially Designated Nationals list.

g.    Within thirty (30) days after the completion of the Third Party Report, the Board shall review the Bank's customer identification policies and procedures (CIP Policy) and know your customer policies and procedures (KYC Policy) and ensure that the weaknesses, deficiencies and violations discussed in the 2006 Examination have been fully addressed and that the CIP Policy and KYC Policy are adequate and effective to ensure the Bank's compliance with applicable laws, regulations and Regulatory Guidance.  The CIP Policy and KYC Policy shall comply with the requirements set forth in 31 C.F.R. § 103.121 and contain specific account opening procedures and documentation requirements to ensure the Bank appropriately identifies all account owners, including beneficial owners.  The Board shall require Management to perform an annual assessment of the adequacy and effectiveness of the CIP Policy and KYC Policy for the Bank and for each individual branch, including an assessment of the adequacy and reliability of data and information obtained and maintained by the Bank and each individual branch, and identify any deficiencies, weaknesses or noncompliance with the CIP Policy, KYC Policy, or applicable laws, regulations, and Regulatory Guidance.  Management shall complete its assessment within forty-five

(45) days after the end of each calendar year, beginning with 2006, and shall provide a copy of its assessment to the Board within ten (10) days after completion.

h. Within thirty (30) days after the Effective Date of this C&D Order, the Board shall retain a qualified independent outside third party with knowledge of the BSA Laws and Regulations and experience in compliance with the requirements imposed by such laws and regulations to conduct a review of the Bank's operations to identify suspicious transactions (SAR Review). The SAR Review shall cover the period beginning on January 1, 2005, and ending on the Effective Date of this C&D Order, and shall identify all suspicious transactions and activities for which the filing of a SAR or further investigation was required. The SAR Review shall be completed within ninety (90) days after the Effective Date of this C&D Order and the findings detailed in a written report to the Board (SAR Report). Within fifteen (15) days after completion of the SAR Report, the Board shall review the SAR Report findings and direct Management to immediately investigate and/or prepare and file with the appropriate regulatory agencies and law enforcement authorities any required SARs. Within thirty (30) days after the above mandated Board review of the SAR Report, Management shall submit a report to the Board that includes, at a minimum, a list of all transactions and activities identified as suspicious by the third party consultant and for which a SAR was required to be filed, the relevant date(s) of the transaction or activity, a brief description of the facts and circumstances requiring the filing of a SAR, and the date that each SAR was actually filed with appropriate regulatory and law enforcement authorities (SAR Report). A copy of Management's SAR Report and a notice reflecting the Board's review of the SAR Report shall be provided to the Regional Director within ten (10) days after the Board' review. Copies of the actual Board meeting minutes evidencing this review shall be provided to the Regional Director within ten (10) days after the minutes are approved by the Board.

i. Within ninety (90) days after the Effective Date of this C&D Order, Management shall develop, and the Board shall review and adopt, a comprehensive training program for all appropriate operational and supervisory personnel to ensure awareness of their responsibility for (i) compliance with the requirements of the BSA

Laws and Regulations and the OTS regulations governing SAR filings; (ii) the BSA and AML risks inherent in their departments and products; and (iii) any changes to the Bank's BSA Compliance Program required by this C&D Order, the Bank's BSA Audit, future OTS examinations, and amendments to the BSA Laws and Regulations (BSA Training Program). The BSA Training Program should include requirements for mandatory attendance, the frequency of training, specialized training procedures for certain departments of the Bank based upon the particular operations and risk presented by such areas (such as the wire transfer department), and procedures and timing for updating the BSA Training Program and materials based upon violations, deficiencies and weaknesses identified by the BSA Audit, future OTS examinations, or the Bank's external independent audit. The Bank shall maintain documentation of all BSA training attended by its employees.

5.      Beginning with the calendar year 2006, the Board shall conduct a comprehensive review of the Bank's BSA Compliance Program for that year and annually thereafter and adopt and implement such amendments as are necessary to ensure: (i) the adequacy and effectiveness of the BSA Compliance Program in view of the Bank's business operations, activities, products, business lines, methods of product delivery, geographic markets or types of customers, including significant changes in the foregoing; (ii) Independence's compliance with the BSA Laws and Regulations and SAR Regulations; (iii) the appropriate identification and monitoring of accounts and transactions that pose greater than normal risks for compliance with the BSA Laws and Regulations and SAR Regulations; (iv) the timely and accurate reporting of suspicious activities or transactions with appropriate law enforcement and bank regulatory authorities; and (v) the accurate completion and maintenance of documents, forms, logs and records as required or necessitated by the BSA Laws and Regulations and SAR Regulations.

**Management and Board Oversight**

6.      In addition to the efforts to retain a new BSA Officer, as required by Paragraph 2 above, within sixty (60) days after the Effective Date of this C&D Order, the Board shall conduct a review of the Bank's existing personnel and overall organizational and

reporting structure to identify current and future staffing needs that must be met and organizational and reporting changes that must be made to strengthen and improve the Bank's safe and sound operation and compliance with applicable laws and regulations.

7.    Within ninety (90) days after the Effective Date of this C&D Order, the Board shall prepare, adopt and implement a written staffing plan that details the results of the Board's review under Paragraph 6 above, including identification of all staffing and organizational weaknesses, specific corrective actions adopted by the Board to address the staffing and organizational weaknesses, and establishing timeframes for the completion of Board adopted corrective action, which shall include hiring the necessary qualified staff, maintaining qualified staff in key positions, and cross-training employees as necessary (Staffing Plan). The Staffing Plan will incorporate the Board's efforts to retain a new BSA Officer, as required by Paragraph 2 above, if such individual has not already been retained. The Staffing Plan shall include a training plan to ensure that employees receive the necessary training based upon their respective positions and responsibilities (Training Plan). The Training Plan shall require mandatory attendance, specify the frequency of training, and include procedures and timeframes for updating training programs and materials and the method for delivering training. The Bank shall maintain adequate documentation and records of all training attended by each employee. The Board shall take all steps necessary to ensure that the Staffing Plan and Training Plan required by this Paragraph 7 are implemented and, thereafter, fully adhered to by Management and staff of the Bank.

8.    Effective immediately, the Board shall undertake to review the duties, responsibilities, procedures, operations and performance of the Board and its key committees in overseeing the Bank's operations and Management's performance of its duties and responsibilities. Within sixty (60) days after the Effective Date of this C&D Order, the Board shall take such action and make such changes as are necessary to strengthen and improve its oversight of the Bank's operations and Management's performance of its duties and responsibilities, including but not limited to, requiring all original external audits, reports, reviews, independent tests, and other evaluations of key

operational and compliance areas of the Bank to be provided directly to the Audit
Committee by the entity or individual conducting the review at the same time as a copy is
provided to Management.

**Strategic Business Plan**

9.      The Board shall conduct and complete a comprehensive review of the Bank's
business and operations and develop a written future operating strategy to address
Independence's declining market share by providing for the introduction of new products
and services or the improvement of existing products and services that will better meet
the needs of the community served by Independence and reverse the declining trend of
assets and deposits (Review). The Review shall include the investigation of the Bank's
continued high operating expenses and their negative effect on Independence's earnings
and overall performance. The Review also shall incorporate the review of legal expenses
required by Paragraph 12 below. The Review also shall include an assessment of the
financial and managerial resources needed and available to the Bank to implement the
Board's long term operating strategy.

10.     Within ninety (90) days after the Effective Date of this C&D Order, the results of
the Review and the written long term strategy developed pursuant to Paragraph 9 above
shall be incorporated into a comprehensive three year written business plan approved by
the Board and covering the second half of calendar year 2006, calendar years 2007 and
2008, as well as the first half of calendar year 2009 (Business Plan). The Business Plan
shall be delivered to the Regional Director for review and approval no later than ten (10)
days after the above-required Board approval of the Business Plan. The Board shall
revise the Business Plan as required by the Regional Director within fifteen (15) days of
receipt of written direction from the Regional Director. The Business Plan, as modified
consistent with the written direction of the Regional Director, shall be complied with by
Management and the Board and shall not be further revised or changed in any way
without the prior written approval of the Regional Director. The Board shall review the
Bank's performance under the OTS approved Business Plan not less than quarterly and

make such amendments as are necessary in consideration of the Bank's performance under the prior quarter of the Business Plan. The Bank's Business Plan shall, at a minimum, address the following matters.

a.  The Business Plan must contain a thorough discussion of the Bank's existing and future operations and lines of business for the time period covered by the Business Plan. The Business Plan shall include (i) a specific discussion of the Bank's current and future operating strategies; (ii) an analysis of the earnings and profitability of all business lines; (iii) an analysis of the related risks of all business lines; (iv) a discussion of the Bank's resources, infrastructure, personnel, and expertise supporting the Bank's ability to engage in the identified business lines; and (v) supporting documentation for all relevant assumptions and projections. Reliance by the Bank upon non-traditional and non-recurring income (such as fee income) sources will be discussed, including the profitability, stability, duration and risks presented by such income sources.

b.  The Business Plan will discuss the Bank's current capital position and future capital needs necessary to implement and carry out the strategies and business operations contained in the Business Plan. The Business Plan will list and discuss the Board's plans and strategies for improving and/or maintaining capital sufficient to (i) meet the Bank's capital needs under the Business Plan, (ii) adequately support the risk profile of the Bank, (iii) comply with applicable regulatory capital requirements, and (iv) satisfy the requirements of the Bank's liquidity policy.

c.  The Business Plan must discuss specific Board strategies for improving the Bank's core earnings and profitability, including how the business activities and operations identified in subparagraph (a) above will affect the Bank's overall earnings and profitability. The Business Plan also will discuss the Board's strategies for reducing the Bank's operating expenses.

d.  The Business Plan also must include quarterly pro forma financial statements (balance sheet and income statement) and the relevant assumptions upon which the Business Plan and financial statements are based.

11.    In the event the Board determines that the Bank does not have the financial or managerial resources available to restore the Bank's operations to sustained profitability while maintaining full compliance with applicable laws and regulations, or the Board determines that the best interest of the shareholders would be served by adoption of alternative strategies, the Board must give serious consideration to the merger and/or sale of the Bank and, in lieu of the Business Plan required by Paragraph 10 above, will submit to the Regional Director for review and approval such alternative strategies as are necessary to accomplish this goal.  Such alternative strategy submission to the Regional Director shall be made no later than ninety (90) days after the Effective Date of this C&D Order and shall include a detailed operating plan covering the time period prior to the consummation of the proposed merger and/or sale.

## Operations, Expenses and Third Party Professionals

12.    Effectively immediately, the Board shall closely monitor, document and control the level of operational expenses and devise methods to minimize legal expenses and avoid the duplication of effort by multiple attorneys or consultants.  The Board shall require Management to obtain Board review and approval prior to incurring or paying any expense or invoice, or incurring any debt, or executing any contract for products or services for or in an amount that exceeds $100,000.  The Board shall require Management to prepare quarterly reports comparing projected operational costs and expenses, as detailed in either the Business Plan approved pursuant to Paragraph 10 above or the operating plan approved pursuant to Paragraph 11 above, with actual operational costs and expenses and documenting the reasons for any variances.

13.    Beginning with the calendar year 2006, the Board shall perform a detailed annual review of all associations and relationships with accountants, attorneys and other similar

persons or firms providing professional services to the Bank (Professionals) consistent with the requirements of Thrift Bulletin (TB) 82a (Annual Professionals Review). The Annual Professionals Review shall specifically focus on the following factors:

a.  the nature and types of services provided;

b.  the quality and effectiveness of the services;

c.  the need for such services;

d.  the cost of the services, including whether such cost is reasonable; and

e.  the costs of similar services offered by other persons or firms not currently engaged by the Bank.

The Board's review of the Annual Professionals Review and any conclusions reached by the Board as a result of the Review shall be documented in the minutes of the appropriate Board Meeting. The Board shall submit a copy of the Annual Professionals Review and a notice reflecting the Board's review and conclusions to the Regional Director within ten (10) days after the date of the appropriate Board meeting. Copies of the actual Board meeting minutes evidencing this review and conclusions shall be provided to the Regional Director within ten (10) days after the minutes are approved by the Board.

**Interest Rate Risk**

14.    The Board shall undertake to review the Bank's interest rate risk (IRR) Policy and revise the Policy (Revised IRR Policy) to ensure that IRR management practices are consistent with the guidance set forth in TB 13a. The Board approved NPV exposure limits (Board Limits) must be revised to more prudent levels, as defined in Appendix A of TB 13a. The Revised IRR Policy and the Board Limits shall be delivered to the Regional Director for review and approval no later than thirty (30) days after the Effective Date of this C&D Order. The Board shall revise the Revised IRR Policy and/or the Board Limits as required by the Regional Director within fifteen (15) days of receipt of written direction from the Regional Director. The Revised IRR Policy and/or the Board Limits, as modified consistent with the written direction of the Regional Director, shall be complied with by Management and the Board and shall not be further revised or changed in any way without the prior written approval of the Regional Director. The

*Independence Federal Savings Bank C&D Order*    13

Board must ensure that the Bank's IRR exposure is reviewed on quarterly basis. Beginning with the calendar quarter ending September 30, 2006, the Board shall require Management to submit quarterly reports to the Board's Audit Committee within sixty (60) days after the end of each calendar quarter regarding the Bank's IRR and compliance with the Revised IRR Policy and the revised Board Limits during the immediately preceding calendar quarter (Quarterly IRR Report). At the next Board meeting following the Audit Committee's receipt of the Quarterly IRR Report, the Board shall review the Quarterly IRR Report for the immediately preceding calendar quarter and adopt specific corrective actions as are necessary and appropriate and designed to ensure compliance with the Revised IRR Policy and the revised Board Limits. The Board's review of each Quarterly IRR Report and the corrective actions adopted as a result shall be documented in the minutes of the appropriate Board meeting. The Board shall submit a copy of each Quarterly IRR Report and a notice reflecting the Board's review and adoption of corrective action to the Regional Director within ten (10) days after the date of the appropriate Board meeting. Copies of the actual Board meeting minutes evidencing this review and corrective actions shall be provided to the Regional Director within ten (10) days after the minutes are approved by the Board.

## Internal Audit and Controls

15.    Within sixty (60) days after the Effective Date of this C&D Order, the Board shall review and amend the Bank's written policies and procedures regarding internal controls and external audits to strengthen and improve the Board's review and oversight of third party audit results (Audit and Internal Control Policy). The Audit and Internal Control Policy shall require that the original of all third party reviews and audits, including but not limited to, third party BSA independent tests, compliance reviews, be provided directly to the Internal Auditor and the Bank's Audit Committee, with a copy provided to Management. The Internal Auditor shall report directly to the Board's Audit Committee.

## Board Compliance Committee

16.     Within thirty (30) days of the Effective Date of this C&D Order, the Board shall appoint a committee comprising three (3) or more Directors, the majority of whom shall be independent of Management, to monitor and coordinate the Bank's compliance with the provisions of this C&D Order and the completion of all corrective action required in the 2006 Examination (the Regulatory Compliance Committee).

17.     Beginning with the calendar quarter ending September 30, 2006, within thirty (30) days after the end of each calendar quarter the Regulatory Compliance Committee shall submit a written progress report to the Board detailing the actions taken or required to be taken to comply with each provision of this C&D Order and the actions required by the 2006 Examination, as well as the results and status of those actions (Quarterly Progress Report). The Quarterly Progress Report shall include conclusions regarding the Bank's compliance with each provision of this C&D Order, specifically identifying (i) all areas of noncompliance; (ii) necessary corrective actions; and (iii) mandatory completion dates for the corrective actions.

18.     Beginning with the calendar quarter ending September 30, 2006, within forty-five (45) days after the end of each calendar quarter the Board shall submit to the Regional Director: (i) a copy of the Quarterly Progress Report required by Paragraph 17 above, with any additional comments made by the Board; and (ii) a written certification that each Director has reviewed the report.

## Compliance with Order

19.     All policies, procedures, corrective actions, plans, programs, reviews and systems required by this C&D Order (collectively, Policies and Procedures) shall conform to all applicable statutes, regulations, OTS policy and guidance. The Board shall submit copies of all Policies and Procedures required by this C&D Order to the Regional Director within the timeframes specified or, in the event a timeframe is not specified, within thirty

(30) days after adoption by the Board. The Board shall revise such Policies and Procedures as required by the Regional Director within thirty (30) days of receipt of written direction from the Regional Director. The Policies and Procedures, as modified consistent with the written direction of the Regional Director, shall be incorporated into this C&D Order and any deviation from such Policies and Procedures shall be a violation of this C&D Order.

## Definitions

20.    All technical words or terms used in this C&D Order for which meanings are not specified or otherwise provided by the provisions of this C&D Order shall, insofar as applicable, have meanings as defined in Chapter V of Title 12 of the Code of Federal Regulations, the HOLA, the FDIA, OTS Memoranda or other published OTS guidance. Any such technical words or terms used in this C&D Order and undefined in said Code of Federal Regulations, the HOLA, the FDIA, OTS Memoranda, or other published regulatory guidance shall have meanings that are in accordance with the best custom and usage in the savings and loan industry.

## Successor Statutes, Regulations, Guidance, Amendments

21.    Reference in this C&D Order to provisions of statutes, regulations, OTS Memoranda, and other published regulatory guidance shall be deemed to include references to all amendments to such provisions as have been made as of the Effective Date and references to successor provisions as they become applicable.

## No Violations Authorized; OTS Not Restricted

22.    Nothing in this C&D Order or the Stipulation shall be construed as: (a) allowing the Bank to violate any law, rule, regulation, or policy statement to which it is subject, or (b) restricting or estopping the OTS from taking any action(s) that it believes are appropriate in fulfilling the responsibilities placed upon it by law including, without

limitation, any type of supervisory, enforcement or other action that the OTS determines to be appropriate, arising out of matters described in the most recent Report of Examination, or based on other matters.

**Time Limits; Effect of Headings; Separability Clause; Stipulation Incorporated**

23.    Time limitations for compliance with the terms of this C&D Order run from the Effective Date, unless otherwise noted.

24.    The section and paragraph headings herein are for convenience only and shall not affect the construction hereof.

25.    In case any provision in this C&D Order is ruled to be invalid, illegal or unenforceable by the decision of any court of competent jurisdiction, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby, unless the Regional Director in his/her sole discretion determines otherwise.

26.    The Stipulation is made a part hereof and is incorporated herein by this reference.

**Effective Date; Duration**

27.    This C&D Order is and shall become effective on the date it is issued, i.e., the Effective Date as shown on the first page hereof.  This C&D Order (including the related

[This Space Intentionally Left Blank]

Stipulation) shall remain in effect until terminated, modified or suspended, in writing by the OTS, acting through its Director, Regional Director or other authorized representative.


**OFFICE OF THRIFT SUPERVISION**

By: _____

John P. Ryan
Regional Director, Southeast

**EXHIBIT 10.2**

UNITED STATES OF AMERICA
Before The
OFFICE OF THRIFT SUPERVISION

|  |  |  |
|---|---|---|
| In the Matter of | ) | Order No.:  ATL-2006-14 |
|  | ) |  |
| Independence Federal Savings Bank, FSB | ) | Date:  June 23, 2006 |
| Washington, D.C. | ) |  |
|  | ) |  |
| OTS Docket No.: 07173 | ) |  |

## STIPULATION AND CONSENT TO THE ISSUANCE OF AN
## ORDER TO CEASE AND DESIST FOR AFFIRMATIVE RELIEF

WHEREAS, the Office of Thrift Supervision (OTS), based upon information derived from the exercise of its regulatory responsibilities, is of the opinion that grounds exist to initiate an administrative cease and desist proceeding for affirmative relief against Independence Federal Savings Bank, FSB, Washington, D.C. OTS Docket No. 07173 (Independence or Bank) pursuant to Section 8(b) of the Federal Deposit Insurance Act (FDIA), 12 U.S.C. § 1818(b),[1] and

WHEREAS, Independence desires to cooperate with the OTS and to avoid the time and expense of such administrative proceeding, and

WHEREAS, Independence enters into this Stipulation and Consent to the Issuance of an Order to Cease and Desist for Affirmative Relief (Stipulation) (i) without any adjudication on the merits, (ii) without admitting or denying that grounds exist to initiate an administrative cease and desist proceeding, (iii) without admitting or denying the Findings of Fact, except as to Jurisdiction (Paragraph 1 below), which jurisdiction is admitted, and (iv) solely for the purpose

---

[1] All references to the United States Code (U.S.C.) are as amended, unless otherwise indicated.

of settling this matter in accordance with Rule 408 of the Federal Rules of Evidence and equivalent state provisions.

NOW, THEREFORE, on these premises, Independence hereby stipulates and agrees as follows:

1. **Jurisdiction.**

   a.    Independence is a "savings association" within the meaning of Section 3(b) of the FDIA, 12 U.S.C. § 1813(b), and Section 2(4) of the Home Owners' Loan Act (HOLA), 12 U.S.C. § 1462(4). Accordingly, Independence is an "insured depository institution" as that term is defined in Section 3(c) of the FDIA, 12 U.S.C. § 1813(c).

   b.    Pursuant to Section 3(q) of the FDIA, 12 U.S.C. § 1813(q), the Director of the OTS is the "appropriate Federal banking agency" with jurisdiction to maintain an administrative cease and desist proceeding against such a savings association. Therefore, the Bank is subject to the jurisdiction of the OTS to initiate and maintain a cease and desist proceeding against it pursuant to Section 8(b) of the FDIA, 12 U.S.C. § 1818(b). The Director of the OTS has delegated to the Regional Director of the Southeast Region of the OTS or his/her designee (Regional Director) the authority to issue cease and desist orders where the savings association has consented to the issuance of the orders.

2. **OTS Findings of Fact.**

   The OTS finds that:

   a.    Independence has violated various laws and regulations to which the Bank is subject, as outlined in detail in the OTS's February 13, 2006 Report of Examination of Independence (2006 Examination). Such violations include, but are not limited to, violations of the Currency and Foreign Transactions Reporting Act, as amended by the

USA Patriot Act and other laws (the Bank Secrecy Act or BSA);[2] the related BSA

regulations issued by the U. S. Department of the Treasury, 31 C.F.R. Part 103, and the

OTS, 12 C.F.R. § 563.177; and the OTS regulations governing suspicious activity reports

(SAR) and other reports and statements set forth in 12 C.F.R. § 563.180.

b.      Independence has engaged in unsafe and unsound practices including, but not

limited to: (i) failing to maintain an effective consumer compliance strategy and program

that provides for adequate and appropriate system controls, real-time monitoring, periodic

self-assessment, organizational accountability, responsiveness to needed improvements,

and effective training; (ii) failing to conduct appropriate customer reviews and account

oversight to monitor accounts and transactions for potentially unlawful activity, including

but not limited to money laundering, and to ensure the Bank's compliance with Office of

Foreign Assets Control regulations; (iii) failing to implement all appropriate corrective

action addressing prior examination criticisms; (iv) failing to reduce the Bank's high

operating costs and reverse the Bank's ongoing operational losses and declines in capital;

(v) failing to implement a business plan that would achieve profitable operations for the

Bank; (vi) failing to comply with the terms and provisions of Board adopted resolutions

concerning the Bank's interest rate risk exposure; (vii) failing to maintain a fully

effective internal audit and control program with appropriate and effective reporting to,

and review and oversight by, the Board, which has resulted in the Board's failure to

timely and effectively adopt and implement appropriate corrective actions and ensure

prompt Board confirmation of Management's implementation of, and the Bank's

compliance with, such appropriate corrective actions to address the weaknesses in the

Bank's operations; and (viii) failing to adequately review third party contracts and control

---

[2] 31 U.S.C. § 5311 et seq.

expenses related to services provided by third party professionals, including expenses for duplicative work.

c.      Board and Management oversight of the Bank's activities and operations is substantially inadequate, ineffective and has failed to ensure that the Bank is operated in a safe and sound manner. Independence has continued to incur significant operating losses resulting from diminished earnings and high operating expenses. The OTS has noted deterioration in almost all areas of the Bank's activities and operations. The OTS has determined that Management and the Board have failed to implement a business plan appropriate for the Bank's size, complexity and business operations, designed to produce adequate earnings, maintain appropriate and effective expense controls, and provide for appropriate Board measurement and review of the Bank's performance, including the adoption of appropriate corrective action to address material changes in performance.

d.      Management and the Board also have failed to ensure that the Bank has qualified Management, adequate and appropriate personnel levels, appropriate staff organization, and training. These deficiencies include the failure to fill key Management positions in a timely manner with qualified personnel, failure to retain qualified Management in those key positions, and failure to maintain the necessary depth of expertise in critical operational areas. The Bank has experienced significant staff departures at all levels and personnel turnover at key officer positions including, but not limited to, accounting and financial oversight, lending, consumer compliance and BSA compliance. Management and the Board have failed to ensure that the Bank's staff and personnel needs are fully satisfied. Management and the Board also have failed to develop and maintain compliance with an effective staff training plan to mandate that new staff is adequately

and appropriately trained to ensure the Bank's compliance with applicable laws and regulations and safe and sound operations.

3.    **Consent**.

Independence consents to the issuance by the OTS of the accompanying Consent Order to Cease and Desist for Affirmative Relief (C&D Order). The Bank further agrees to comply with the terms of the C&D Order upon issuance and stipulates that the C&D Order complies with all requirements of law.

4.    **Finality**.

The C&D Order is issued under 12 U.S.C. §§ 1818(b). Upon its issuance by the Regional Director, it shall be a final order, effective and fully enforceable by the OTS under the provisions of Section 8(i) of the FDIA, 12 U.S.C. § 1818(i).

5.    **Waivers**.

Independence waives the following:

a.    the right to be served with any written notice of the OTS's charges against it as provided by 12 U.S.C. § 1818(b);

b.    the right to an administrative hearing of the OTS's charges against it as provided by 12 U.S.C. § 1818(b);

c.    the right to seek judicial review of the C&D Order including, without limitation, any such right provided by 12 U.S.C. §§ 1818(h) and (i), or otherwise to challenge the validity of the C&D Order;

d.    any and all claims against the OTS, including its employees and agents, and any other governmental entity for the award of fees, costs, or expenses related to this OTS enforcement matter and/or the C&D Order, whether arising under common law, the

Equal Access to Justice Act, 5 U.S.C. § 504, or 28 U.S.C. § 2412; and

e.     the right to assert this proceeding, its consent to issuance of the C&D Order, and/or the issuance of the C&D Order, as the basis for a claim of double jeopardy in any pending or future proceeding brought by the United States Department of Justice or any other governmental entity.

6.     **Other Governmental Actions Not Affected.**

a.     Upon the OTS's issuance of the accompanying C&D Order, following the OTS's acceptance of this Stipulation executed by Independence, OTS does release and discharge Independence from all potential claims and charges that have been or might have been asserted by the OTS, based on the alleged violations described in the Findings of Fact set forth in Paragraph 2 of this Stipulation, to the extent known to the OTS as of the effective date of the accompanying C&D Order.   However, the violations alleged above in Paragraph 2 of this Stipulation may be utilized by the OTS in future enforcement actions to establish a pattern or practice of violations or the continuation of a pattern or practice of violations.  This release shall not preclude or affect any right of the OTS to determine and ensure compliance with the terms and provisions of this Stipulation and the accompanying C&D Order.

b.     Independence acknowledges and agrees that its consent to the issuance of the accompanying C&D Order is solely for the purpose of resolving certain potential OTS administrative enforcement charges as provided by Paragraph 6(a) above, and does not otherwise release, discharge, compromise, settle, dismiss, resolve, or in any way affect any actions, charges against, liability, or other administrative, civil, or criminal proceeding that arise pursuant to this action or otherwise, and that may be or have been

brought by another governmental entity.

7.    **Agreement for Continuing Cooperation.**

Independence agrees that, on reasonable notice and without service of a subpoena, it will promptly respond to any written request from the OTS for documents that the OTS reasonably requests to demonstrate compliance with the C&D Order.  Independence agrees to cooperate with the OTS or any other federal agency in any review requested by the OTS or any other federal government agency, or in any investigation, litigation, or other proceeding relating to the Bank, its holding company, subsidiaries, service corporations, or institution-affiliated parties.

8.    **Miscellaneous.**

a.    The construction and validity of this Stipulation and the C&D Order shall be governed by the laws of the United States of America.

b.    If any provision of this Stipulation and the C&D Order is ruled to be invalid, illegal, or unenforceable by the decision of any Court of competent jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby, unless the Regional Director in his or her sole discretion determines otherwise.

c.    All references to the OTS in this Stipulation and the C&D Order shall also mean any of the OTS's predecessors, successors, and assigns.

d.    The section and paragraph headings in this Stipulation and the C&D Order are for convenience only, and such headings shall not affect the interpretation of this Stipulation or the C&D Order.

e.    The terms of this Stipulation and the C&D Order represent the final agreement of the parties with respect to the subject matters hereof and constitute the sole agreement of

the parties with respect to such subject matters.

f.     This Stipulation and the C&D Order shall remain in effect until terminated, modified, or suspended in writing by the OTS, acting through its Director, Deputy Director, Regional Director, or other authorized representative.

9.    **Signature of Directors.**

Each Director signing this Stipulation attests that he/she voted in favor of a resolution authorizing the execution of the Stipulation.

**WHEREFORE**, Independence, by a majority of its directors, executes this Stipulation

[This Space Intentionally Left Blank]

and Consent to the Issuance of an Order to Cease and Desist for Affirmative Relief intending to

be legally bound hereby.

**INDEPENDENCE FSB**
**Washington, D.C.**
Accepted by a majority of its directors:

By: _____
Carolyn D. Jordan
Chairman of the Board

_____
David W. Wilmot
Vice Chairman of the Board

_____
Michael J. Cobb, Director

_____
Nelson Deckelbaum, Director

_____
William B. FitzGerald, IV,
Director

_____
Elliot S. Hall, Director

_____
Robert B. Isard, Director

_____
John S. Wilson, Jr., Director

_____
Eugene K. Youngentob, Director

**OFFICE OF THRIFT SUPERVISION**

_____
John E. Ryan
Regional Director

Dated: _____6/23/06_____