## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORTON A. BENDER, et al. )<br><br>Plaintiff, )<br><br>vs. )<br><br>CAROLYN D. JORDAN, et al. )<br><br>Defendant. ) | Civil Action No. 1:06cv00092 |

## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR MOOTNESS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Defendants Carolyn D. Jordan, David Wilmot, and Thomas L. Batties ("Defendants") move the Court, pursuant Rule 12(b)(1) Fed. R. Civ. P., for an order dismissing Plaintiffs' First Amended Complaint on the grounds that complaint is moot.

I.    GROUNDS FOR MOTION

Defendants make this motion for the following reasons:

1.    A case is moot and should be dismissed if interim events have eradicated the affects of the alleged violations and there is no reasonable expectation that the alleged wrong will be repeated.

2.    In this case, interim events have resulted in Plaintiffs receiving all of the injunctive relief alleged in their Amended Complaint.  Specifically, Defendant Batties is no longer a bank employee, the other Defendants have resigned from the Board of Directors, and all Defendants have sold their shares of Bank stock.  Therefore, there is no impediment to Plaintiffs' exercising control of the bank.

- 1 -

136057v6

3.    Based upon Defendants' resignations and sale of stock, there is no reasonable expectation that the alleged wrong will be repeated.

For these reasons, Defendants respectfully suggest that his Court enter an Order dismissing Plaintiffs' First Amended Complaint on the grounds that it is moot and submit the following memorandum in support of their motion.

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises from events occurring before and during the October 26, 2005 Annual Meeting of Shareholders of Independence Federal Savings Bank ("IFSB" or "the Bank"). Plaintiffs argue that all of the alleged wrongdoings by Defendants "[were] done for the express purpose of denying Bender's rights to have a fair and informed vote on the Bender Nominees" and that "all of the shares voted for the Management Nominees are tainted by the conduct of the Individual Defendants...."  *See* First Amended Complaint, at ¶ 59 (Document 65).   Facts relevant to the pending motions are as follows:

1.    On January 20, 2006, Plaintiffs filed suit and named Thomas Batties, Carolyn Jordan, David Wilmot, Eugene Youngentob, Michael Cobb, William Fitzgerald, IV, and IFSB as Defendants.  Messrs. Jordan, Wilmot, Youngentob, Cobb and Fitzgerald were members of the IFSB board ("Director Defendants") and Mr. Batties was the President and C.E.O. of the Bank ("Defendant Batties").   *See* Verified Complaint (Document 1).   In their Original Complaint, Plaintiffs asserted six causes of action[1] and sought both preliminary and permanent injunctive relief and money damages.

---

[1] Plaintiffs' original six causes of action were as follows:  Violations of Section 13(d) of the Exchange Act (Count I); Violations of Section 14(a) of the Exchange Act (Count II); Violations of the Bank's by-laws and Robert's Rules of Order (Count III); Breach of Fiduciary Duties (Count IV); Defamation and Aiding and Abetting Defamation (Count V-Batties only); and Declaratory Judgment that IFSB be restrained from Indemnifying the Defendants for Costs and Attorneys fees for this action (Count VI-IFSB only).

136057v6

2.     At the time the lawsuit was filed, Ms. Jordan was the Chairman of the Board, Mr. Wilmot was the Vice-Chairman and the five Director Defendants constituted a majority of the Bank's nine member board of Directors.  *See* Jordan Affidavit, ¶ 4; Wilmot Affidavit, ¶ 4.  The other four members of the Board, Messrs. Isard, Hall, Deckelbaum and Wilson, constituted the "Bender Nominees" and supported Mr. Bender's agenda with regard to the Bank.[2]  On numerous critical matters, the five Director Defendant and the four Bender Directors would disagree and the majority Directors would prevail.

3.     The Defendants moved to dismiss the Original Complaint on a number of grounds, including Mr. Bender's lack of standing to sue on behalf of the other shareholders or derivatively for the benefit of the Bank.  (*See* Motion to Dismiss, Documents 24 and 25).  Plaintiffs repeatedly asserted that they were representing their own interests, and not the interests of the other shareholders.  Plaintiffs also affirmatively stated that the Bank was merely a nominal defendant.[3]  Ultimately, the Court denied Defendants' motions.  *See* July 21, 2006 Memorandum Opinion (Document 50), at p. 60.

4.     On April 21st, April 28th and May 4th, the Court heard testimony relating to Plaintiffs' Application for Preliminary Injunctive Relief.  *See,* Minute Entries on those dates.

5.     On June 30, 2006, Mr. Batties resigned from his position as President of the Bank and entered into a contract with IFSB to work in an advisory role.  Mr. Batties' contract ended on December 31, 2006.  *See* Batties Affidavit, ¶¶ 5, 7.   As a consequence, Mr. Batties is no longer involved in running the Bank.

---

[2]     The Court recognized that there are no disinterested Directors and observed, "…you've sued everybody but Bender's nominees, right?"  Mr. Bender's counsel agreed with the Court's observation.  *See* February 9, 2006 Hearing Transcript, at Lines 17:24-18:4, a copy of which is attached as Exhibit A.

[3]     See February 9, 2006 Hearing, at Lines 4:9-16.

6.    On July 21, 2006 the Court entered its Order granting Preliminary Injunctive relief to Mr. Bender.  In that Order, the Court granted in part and deferred in part Plaintiffs' Application for Preliminary Injunction, and enjoined the Bank from disseminating proxy materials to shareholders and holding shareholders' meetings until further order of the Court.  *See* July 21, 2006, Memorandum Opinion (Document 50), at p. 60; Order (Document 56).

7.    On August 18, 2006, four of the original five Director Defendants and Defendant Batties filed a notice of appeal.  *See* Notice of Interlocutory Appeal (Document 56). Mr. Fitzgerald did not participate in the appeal.

8.    On August 29, 2006, the Court entered its Order granting in part and denying in part Defendants' Motion to Stay Pending Appeal.  Specifically, the Court granted a stay pending the appeal, except that Plaintiffs were permitted to take the depositions of the named Defendants.  *See* August 29, 2006 Order (Docket Number 65).  The case has been stayed since that date.

9.    On August 16, 2006, there was a regularly scheduled meeting of the Board of Directors of the Bank.  Immediately prior to that meeting, one of the original Director Defendants, Mr. Fitzgerald, resigned from the Board.  *See also*  Wilmot Affidavit at ¶ 7. Subsequently, on September 26, 2006, Plaintiffs sought leave to dismiss Mr. Fitzgerald from the lawsuit, which motion was granted by the Court's Order of October 2, 2006.  *See* 10/02/06 Minute Entry Order.

10.    As a consequence of Mr. Fitzgerald's resignation, the Board was split evenly (4 to 4) between the Directors Defendant and the Bender Directors.

- 4 -

136057v6

11.    In September, Mr. Eugene Youngentob, another one of the original Director Defendants, resigned from the Board and sought leave to withdraw his appeal. Subsequently, Plaintiffs sought leave to dismiss Mr. Youngentob from the lawsuit, which motion was granted by the Court's order of October 2, 2006 (10/02/06 Minute Entry Order).

12.    Also in September, Mr. Michael Cobb, one of the original Director Defendants, resigned from the Board and sought leave to withdraw his appeal. Again, Plaintiffs subsequently sought leave to dismiss Mr. Cobb from the lawsuit, which motion was granted by the Court's order of October 2, 2006. *See* 10/02/06 Minute Entry Order.

13.    As a result of the foregoing, Ms. Jordan and Mr. Wilmot are the only two remaining members of the Board from what had been a five-member majority, and the four Bender Directors now constitute a majority of the Board.

14.    On September 22, 2006, the Court granted leave to Plaintiffs to file their First Amended Complaint. All individual Defendants named in the Original Complaint and the Bank were once again named as Defendants in the First Amended Complaint. *See* 9/22/06, Minute Entry.

15.    In their First Amended Complaint, Plaintiffs assert four counts against the Director Defendants and the Bank, and seek only preliminary and permanent injunctive relief, not damages. *See* First Amended Complaint (Document 68). In Count I, Plaintiffs allege that Director Defendants violated Section 13(d) of the Exchange Act by acting in concert with each other and other shareholders. In Count II, Plaintiffs allege that Defendant Directors violated Section 14(a) of the Exchange Act by disseminating false and/or misleading proxy materials to IFSB shareholders. In Count III, Plaintiffs allege that Defendant Directors violated IFSB by-

- 5 -

laws and Robert's Rules of Order by failing and refusing to conduct the election in a fair manner, depriving Plaintiffs and other shareholders of a fair vote.   In Count IV, Plaintiffs allege Defendant Directors breached their fiduciary duty of care and loyalty by providing shareholders with incomplete and misleading information and by failing to properly conduct the shareholder's meeting.   In Count VI, Plaintiffs seek Declaratory Relief from the Bank precluding them from indemnifying the Defendants for costs and attorneys fees for this action.

      16.    In their First Amended Complaint, Plaintiffs seek the following permanent injunctive relief:

- Requiring Director Defendants and Defendant Batties to comply with Section 13(d), fully disclosing their plans and purposes concerning IFSB;

- Requiring Director Defendants and Defendant Batties to comply with Section 14(a), to disclose to shareholders, in any future solicitations, the falsity and misleading nature of the 2005 Proxy Materials, the May 2005 Committee to Save Correspondence, and the October 2005 Letter to Shareholders, and the Bank's involvement in such letters;

- Preventing Director Defendants from causing the Bank to hold an Annual or Special Shareholders Meeting;

- Requiring the Defendants and the Bank to conduct any future Shareholders Meeting in conformance with Robert's Rules and the Bank's By-laws, and to enjoin further allocation of votes after the closing of the polls, and to enjoin

136057v6

the counting of broker routine votes for management nominees in absence of express direction from the beneficial shareholder; and

- Neutralizing all of the Participant Shares and the Thompson Shares in any future election of Directors. *See* First Amended Complaint (Document 68), at pp. 45-47.

17.    At the end of the day, Mr. Bender's objective is to "get rid of the whole board [the Defendant Directors] over there [at the Bank]... and the President [Mr. Batties]." Mr. Bender now has precisely what he would "love" to have.[4]

18.    Since the shift in the majority of the Board, the Board has, *inter alia*, undertaken the following actions:

a.    On August 16, 2006, Ms. Jordan was removed as Chairman of the Board and replaced by Mr. Elliott Hall, a Bender director. *See* Wilmot Affidavit at ¶ 8.

b.    On August 16, 2006, Mr. Wilmot was removed as Vice-Chair of the Board and replaced by Mr. Robert Isard, a Bender Director. *See* Wilmot Affidavit at ¶ 8.

c.    On December 19, 2006, the now-majority Directors voted to approve the hiring of Les Johnson, a candidate initially recommended by Mr. Bender and strongly supported by Mr. Bender, to serve as President of IFSB. Mr. Johnson is currently President of Columbo Bank, a financial institution owned and controlled by Mr. Bender. *See* Wilmot Affidavit at ¶ 16.

---

[4]    *See* Bender Deposition, at Lines 132:19-134:2, a copy of which is attached as Exhibit B.

136057v6

19.    Faced with the foregoing, Ms. Jordan concluded that her role in the Bank had diminished to the point where she could no longer implement plans which she felt were in the best interests of the Bank and all of its shareholders.  As a consequence, on January 5, 2006, she resigned her position on the Board, effectively immediately.  *See* Jordan Affidavit at ¶ 10; Strand Affidavit at ¶ 3.  At the same time, she gave instructions to her broker to sell all of her shares of Bank stock.  *Id.*, at ¶ 13; Strand Affidavit at ¶ 5.

20.    Similarly, faced with the foregoing, Mr. Wilmot concluded that his role in the Bank had diminished to the point where he could no longer implement plans which he felt were in the best interests of the Bank and all of its shareholders.  As a consequence, on January 3, 2006, he resigned his position on the Board, effectively immediately.  *See* Wilmot Affidavit at ¶ 17; Strand Affidavit at ¶ 2.  At the same time, he gave instructions to his broker to sell all of his shares of Bank stock.  *See* Wilmot Affidavit at ¶ 20; Strand Affidavit at ¶ 4.

21.    On December 2, 2006, Mr. Batties authorized the sale of all 200 of his IFSB shares of stock.  Batties Affidavit at ¶ 10.

22.    On December 29, 2006, Ms. Jordan, Mr. Wilmot and Mr. Batties filed an Unopposed Motion to Withdraw Appeal in the United States Court of Appeals for the District of Columbia Circuit.  *See* December 29, 2006 Motion, attached hereto as Exhibit C.

23.    As a result of the foregoing:

a.    Ms. Jordan and Mr. Wilmot cannot attend or vote at IFSB Board Meetings because they are no longer Directors on the IFSB board.

136057v6

b.  Neither Ms. Jordan, Mr. Batties or Mr. Wilmot can attend or vote at IFSB shareholder meetings because they are no longer shareholders of IFSB stock.

c.  Neither Ms. Jordan, Mr. Batties or Mr. Wilmot can participate in drafting proxy materials for the bank, nor can they solicit proxies to vote for a slate of nominees.

d.  None of the Defendants needs to file a Section 13(d).

e.  None of the Defendants can disseminate Proxy Materials pursuant to Section 14(a) of the Exchange Act .

f.  None of the Defendants has control over, or involvement in, the conduct of the annual meeting of shareholders or elections of the Board.

24.  Because they are no longer on the Board, Ms. Jordan and Mr. Wilmot have no fiduciary duties with regard to IFSB.  Because Mr. Batties is no longer an officer or employee of IFSB, he no longer has fiduciary duties.

25.  Other than the procedural bar of the preliminary injunction, there is currently no other factual impediment to the Bank holding shareholder meetings, soliciting proxies, and running the annual meeting of shareholders in the manner suggested by the Court's Order of July 21, 2006.

26.  Furthermore, Ms. Jordan, Mr. Wilmot and Mr. Batties have all signed sworn affidavits stating that:

136057v6

     a.     Defendants have no intention to serve as Officers of IFSB now or in the future. *See* Wilmot Affidavit at ¶ 17; *See* Jordan Affidavit at ¶ 12, *See* Batties Affidavit at ¶ 9.

     b.     Defendants have no intention to buy shares of stock in IFSB now or in the future. *See* Wilmot Affidavit at ¶ 19; *See* Jordan Affidavit at ¶ 11, *See* Batties Affidavit at ¶ 14.

     c.     Defendants have no present or future plan or purpose concerning IFSB. They have no intention to contact any shareholder or IFSB Board member to discuss any IFSB-related business. *See* Wilmot Affidavit at ¶¶ 24, 25; *See* Jordan Affidavit at ¶¶ 16, 17; *See* Batties Affidavit at ¶¶ 19, 20.

     27.     Because they are no longer shareholders or Directors or officers at IFSB, Defendants cannot affect or control decisions made by the Board or by shareholders at IFSB. Additionally, they have no intention to attempt to influence any decisions of the Board of Directors and/or shareholders at IFSB.

     Due to the changed circumstances, the three remaining Defendants no longer have the ability to influence, control or otherwise make decisions affecting the Bank. Because the relief sought by Mr. Bender is directly related to the Defendants' abilities to do so, Mr. Bender's First Amended Complaint is moot and should be dismissed with prejudice.

III.    <u>12(b)(1) LEGAL STANDARD</u>

     A Motion to Dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1). *Flores v. District of Columbia*, 437 F. Supp. 2d 22 (D.D.C. 2006). That rule imposes on the Court "an affirmative obligation to insure that it is acting within the scope of its jurisdictional authority." *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 5 (D.D.C. 2004)

136057v6

(citations omitted). Under the mootness doctrine, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). "Even where the litigation poses a life controversy when filed, the doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties 'rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 286 U.S. App. D.C. 256, 915 F.2d 699, 701 (D.C. Cir. 1990) (citations omitted). While the movant has the burden of proving mootness, a plaintiff must defend a motion to dismiss, brought under Rule 12(b)(1), by proving by a preponderance of the evidence that the court has jurisdiction to hear its claims. *Am. Fed'n of Gov't Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139, 142 (D.C.Cir.2003).

IV.    <u>ARGUMENT</u>

Plaintiffs' claims are moot. The allegations set forth in the First Amended Complaint stem from events that surround the Defendants' alleged illegal conduct as officers, Directors, and/or shareholders of IFSB prior to and during the 2005 Annual Meeting of Shareholders of the Bank. The wrongdoing which forms the basis for the Plaintiffs' Amended Complaint has been eradicated, because altered circumstances have resulted in Plaintiffs' obtaining the relief they seek. Because none of the Defendants presently hold stock in IFSB, nor are any of them presently serving as an Officer or Director of IFSB, the allegations set forth in the First Amended Complaint could not possibly recur. Therefore, Plaintiffs' First Amended Complaint is moot and should be dismissed with prejudice.

A.    **The Legal Standard for Mootness**

A case is moot if the Defendant can demonstrate that two conditions have been met: 1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and 2) there is no reasonable expectation that the alleged wrong will be repeated.

- 11 -

*County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383 (1979). When both conditions are satisfied, the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law. *Id.*

Although a Defendant's disclaimer of any intention to revive alleged wrongful practices sought to be enjoined will not suffice to make the case moot, it is one of the factors to be considered in determining appropriateness of granting an injunction to a discontinued act. *W.T. Grant*, 345 U.S. 629, 632, 73 S. Ct. 894, 987 (1953). Other factors that may be relevant include expressed intent to comply, effectiveness of discontinuance, and, in some cases, character of past violations. *Id.*

Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. *Id.* Still, the party moving for the injunction must satisfy the court that relief is still needed. *Id.* In other words, there must exist some cognizable danger of recurrent violation, and it must be more than mere possibility of a recurrence which serves to keep the case viable. *Id.*

Here, the resignation by Mr. Batties as President of IFSB, the resignations by Mr. Wilmot and Ms. Jordan as Directors of the bank, along with the three Defendants selling their IFSB shares, are all interim events that have eradicated the effects of the alleged violations and eliminated any possibility that the Defendants can repeat the alleged wrongs. As such, they cannot repeat the offenses of which they have been accused and the lawsuit should be dismissed as moot.

B.    **The Allegations in the Complaint are Moot**

1.    **Interim Events Have Irrevocably Eradicated the Effects of the Alleged Violation**

Mr. Bender fundamentally argues in his Amended Complaint that his nominee for the Board did not get elected due to the Director Defendants' conduct leading up to the annual meeting of shareholders and their failure to conduct the meeting properly. Simply put, Mr. Bender wanted his two nominees to get elected so he could control the Board. One of Mr. Bender's nominees was elected. Had Mr. Bender's second nominee been elected on October 25, 2005, Mr. Bender would have controlled the IFSB Board (5-4). Now, the relief sought by Mr. Bender, i.e., control of the Board, has been effectuated through the resignation of all five original Director Defendants and Defendant Batties. As a result of the resignations, Bender supporters now control the Board. In fact, not only are Bender supporters the majority of the Board, they make up the entire board. As a result of the interim events, i.e., the resignations of all five Director Defendants and Defendant Batties, the effect of the alleged violations have been irrevocably eradicated.

A review of the injunctive relief which Plaintiffs seeks demonstrates that changed circumstances have resulted in Plaintiffs obtaining all of the relief they seek, thus eradicating the alleged wrongdoing:

- Defendants have no obligation to make a filing pursuant to Section 13(d) in that they own no stock and have no plans or purpose concerning the Bank;

- Defendants have no ability to affect the preparation or dissemination of proxy materials pursuant to Section 14(a). That responsibility now falls to the Bender Directors who constitute a majority of the Board. As such, they can include all information in the proxy which they feel is appropriate, so long as they comply with applicable laws;

- 13 -

- The Defendants have no ability to direct the Bank to hold (or not to hold) an Annual or Special Shareholders Meeting. Again, that responsibility falls to the four remaining directors;

- The Defendants have no ability to affect the conduct of any future Shareholders' Meetings. The remaining members of the Board are free to conduct the meeting pursuant to Bank by-laws and in compliance with applicable rules and regulations; and

- The Defendants own no shares of Bank stock to neutralize. They have no right to vote at any meeting.

In *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704 (1974), an individual action was brought by an unsuccessful law school applicant against various state and university officials challenging their admissions policy as unconstitutional. *Id.* at 314, 1704. The trial court granted preliminary injunctive relief in the form of admission into the law school, and Defendants appealed. *Id.* By the time the *writ of certiorari* was granted by the United States Supreme Court, the plaintiff was in his last quarter of law school and all parties agreed that any decision on the substantive issues would have no bearing on his ability to graduate. *Id.* at 317, 1706. Because the relief sought (getting into law school) matched the relief given (getting into and graduating from law school) the Supreme Court held that the Court could not reach the merits of the litigation. *Id.* at 320, 1707.

Here, the case is analogous to the *DeFunis* case. Mr. Bender's First Amended Complaint stems from allegations of alleged wrongdoings during the October 26, 2005 Shareholder's Meeting. Mr. Bender alleged that his nominees were not afforded a fair election due to alleged wrongdoings by the Defendants. In his First Amended Complaint, the relief

sought in Counts II through V (conducting the shareholder meeting fairly) now matches the effect the resignations have on the Board (i.e., Bender control of the Board and the ability to control the conduct of the meetings). Count I sought to have the Director Defendants file a 13(d). Because they are no longer shareholders, Defendants are not required to file a 13(d).

2.    **There is no Reasonable Expectation the Alleged Wrong Will be Repeated; In Fact the Alleged Wrong Cannot be Repeated**

Each allegation in the First Amended Complaint is dependent upon the Defendants' ability to vote at board meetings, vote at shareholder meetings, or control day-to-day operations at the bank. *See* ¶ 10, above. The Defendants are no longer involved in the bank in any capacity and so have no control in the operation of the Bank or any future meeting of shareholders.

In *W.T. Grant*, the Government appealed from a judgment dismissing a civil action brought against a Director and three pairs of corporations on which he served as a Director, alleging violations of the Clayton Act. *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897 (1953). Specifically, the government alleged that the size and competitive relationship of each set of companies brought the interlocks within the reach of section 8 of the Clayton Act, and it sought injunctive relief in the form of termination of the interlocks and to enjoin future violations by the individual and corporate Defendants. *Id.* Soon after the suits were filed, the Defendant Director resigned from all three boards, and he filed a motion to dismiss for mootness. The Supreme Court upheld the District Court's mootness determination, agreeing with the district court that "there is not the slightest threat that the Defendants will attempt any future activity in violation of section 8." *Id.*

Here, all five Director Defendants have resigned from the Bank, Mr. Batties resigned as President and C.E.O. of the Bank, and all three remaining Defendants have sold their

136057v6

IFSB stock. Furthermore, each swore in their affidavits that they do not have any intention to serve as an officer or director in the future. As such, there is no threat that Defendants will ever be in a position to have control over the IFSB board.

### 3. Plaintiff Cannot Demonstrate an "Actual Ongoing Controversy"

Plaintiffs have the burden to prove by a preponderance of the evidence that relief is still needed and that the court has jurisdiction to hear the case. *Am. Fed'n of Gov't Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139, 142 (D.C. Cir. 2003). In order to do this, Plaintiffs must show that there is an actual ongoing controversy. *Honig v. Doe*, 484 U.S. 305, 317, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). An actual ongoing controversy must affect the rights of litigants in the case before them. *Pub. Util. Comm'n of California v. FERC*, 344 U.S. App. D.C. 341, 236 F.3d 708 713 (D.C. Cir. 2001). Here, Plaintiffs cannot meet their burden because a judgment would not affect the rights of the individual Defendants.

All of the relief sought by Mr. Bender has been effectuated because the Director Defendants and Defendant Batties resigned from their positions at the bank. Furthermore, the four Directors who currently sit on the IFSB Board are either Bender nominees or support Mr. Bender's agenda. Because Mr. Bender is unable to meet his burden to show that there is an actual ongoing controversy, the First Amended Complaint should be dismissed as moot.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

January 5, 2007

SHOOK, HARDY & BACON, LLP

- 16 -

136057v6

_____

Peter E. Strand
Carlos E. Provencio
Christine S. Hudson
Hamilton Square
600 14th Street, N.W.
Suite 800
Washington, DC 20005
Phone: 202-783-8400
Fax: 202-783-4211

Attorneys for the Individual Defendants

136057v6

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2007, a true and complete copy of the forgoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR MOOTNESS was sent electronically to the following:

> Dale A. Cooter, Esquire
> Cooter, Mangold, Tompert and Wayson, L.L.P.
> 5301 Wisconsin Ave, NW
> Suite 500
> Washington, D.C.  20015
> T: (202)537-0700
> F: (202)364-3664
> *Attorneys for Plaintiffs*

_____/s/_____
Attorneys for the Appellants

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MORTON A. BENDER, et al.                )
                                        )
            Plaintiff,                  )
                                        )
                vs.                     )        Civil Action No. 1:06cv00092
                                        )
CAROLYN D. JORDAN, et al.               )
                                        )
            Defendant.                  )
                                        )

## AFFIDAVIT OF CAROLYN JORDAN

Carolyn Jordan, being duly sworn, deposes and says:

1.  My name is Carolyn Jordan. I am over the age of 18 years old, of sound mind, and make this affidavit on personal knowledge.

2.  I am a defendant in the above-captioned case.

3.  I bought 100 shares of stock in Independent Federal Savings Bank ("IFSB" or :the Bank") approximately six years ago.

4.  In 2001, I was elected to the Board of Directors of IFSB. I have been a Director continually since that date. Beginning in approximately October, 2004, I became Chairman of the Board.

5.  On January 20, 2006, Morton A. Bender brought this lawsuit against six defendants, including me, four other members of the IFSB Board of Directors and the then President of the Bank, Thomas Batties.

6.  On January 20, 2006, Morton A. Bender brought this lawsuit against six defendants, including me, four other members of the IFSB Board of Directors (the "Director Defendants") and the then President of the Bank, Thomas Batties.

7.  On July 21, 2006, the Court entered an Order granting preliminary injunctive relief. In that Order, the Court: granted in part and deferred in part Plaintiffs' Application for Preliminary Injunction, and enjoined the Bank from disseminating proxy materials to shareholders and holding shareholders' meetings until further order of the Court.

8.  On August 16, 2006, Mr. Fitzgerald, one of the Director Defendants, resigned from the Board of IFSB.

136110v1

8.   On August 16, 2006, Mr. Fitzgerald, one of the Director Defendants, resigned from the Board of IFSB.

9.   At a Board meeting held on August 16, 2006, I was removed as Chairman of the Board and replaced by Mr. Elliott S. Hall. At the same time, Mr. Wilmot was removed as Vice-Chairman of the Board and replaced by Mr. Robert B. Isard.

10.  In light of the existing make-up of the Board of Directors of the Bank, it has become apparent to me that my role, if any, will be limited to a minority director. Thus, I intend to resign from the Board.

11.  I have no intention of serving as a Director at IFSB now or in the future.

12.  I have no intention of serving as an Officer of IFSB now or in the future.

13.  I will instruct my broker to sell all 100 shares of IFSB stock that I own. Thereafter, I will no longer be a shareholder of IFSB stock.

14.  I have no intention of buying shares of stock in IFSB now or in the future.

15.  Pursuant to the By-Laws of the Bank, a Bank Director must own 100 shares of Bank stock. Because I do not intend to own shares of IFSB stock, and have no intention of buying IFSB shares now or in the future, I cannot serve as a Director on the IFSB Board.

16.  As a former Director of IFSB, I will be unable to attend or vote at IFSB Board Meetings

17.  As a former shareholder of IFSB stock, I will be unable to attend or vote at IFSB Shareholder Meetings.

18.  As a former shareholder or Director at IFSB, I will be unable to participate in drafting proxy materials for the bank, nor will I be able to solicit proxies to vote for a certain slate of nominees.

19.  I have no present or future plan or purpose concerning IFSB.

20.  I have no intention of contacting any shareholder or IFSB Board member to discuss any IFSB-related business.

21.  As a former shareholder or Director at IFSB I will be unable to affect or control decisions made by the Board or by shareholders at IFSB. Additionally, I have no intention to attempt to influence any decisions of the Board of Directors and/or shareholders at IFSB.

On this the 31 day of December, 2006, I so swear:

Carolyn Jordan

Subscribed and sworn to before me, the undersigned, this 26 day of DEC 2006.

Notary Public

My commission expires:          STEPHEN H. SELTZER
                        NOTARY PUBLIC STATE OF MARYLAND
                        My Commission Expires July 1, 2010

136110v1

# EXHIBIT A

January 4, 2007


Mr. Elliott S. Hall, Chairman, Board of Directors
c/o E. Leroy Morris
Independence Federal Savings Bank
1229 Connecticut Avenue, N.W.
Washington, D.C. 20036

RE:    Resignation

Dear Mr. Hall:

Please accept this letter as my resignation from the Board of Directors of Independence Federal Savings Bank, effective immediately.

Sincerely,

Carolyn D. Jordan

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORTON A. BENDER, et al.      ) | |
| )  | |
| Plaintiff,      ) | |
| )  | |
| vs.      ) | Civil Action No. 1:06cv00092 |
| )  | |
| CAROLYN D. JORDAN, et al.      ) | |
| )  | |
| Defendant.      ) | |
| )  | |

## AFFIDAVIT OF DAVID WILMOT

David W. Wilmot, being duly sworn, deposes and says:

1.  My name is David W. Wilmot. I am over the age of 18 years old, of sound mind, and make this affidavit on personal knowledge.

2.  I am a defendant in the above-captioned case.

3.  I bought 400 shares of stock in Independent Federal Savings Bank ("IFSB") approximately five years ago.

4.  In 2002, I was elected to the Board of Directors of IFSB. I have been a Director continually since that date. I also served as Vice-Chairman of the Board for some of that time.

5.  On January 20, 2006, Morton A. Bender brought this lawsuit against six defendants, including me, four other members of the IFSB Board of Directors (the "Director Defendants") and the then President of the Bank, Thomas Batties.

6.  On July 21, 2006, the Court entered an Order granting preliminary injunctive relief. In that Order, the Court: granted in part and deferred in part Plaintiffs' Application for Preliminary Injunction, and enjoined the Bank from disseminating proxy materials to shareholders and holding shareholders' meetings until further order of the Court.

7.  On August 16, 2006, Mr. Fitzgerald, one of the Director Defendants, resigned from the Board of IFSB.

8.  At a Board meeting held on August 16, 2006, Ms. Jordan was removed as Chairman of the Board and replaced by Mr. Elliott S. Hall. At the same time, I was removed as Vice-Chairman of the Board and replaced by Mr. Robert B. Isard.

9.      On August 18, 2006, five of the defendant directors filed a notice of appeal with the United States Court of Appeals for the District of Columbia (the "Notice of Appeal").

10.     On August 29, 2006, this Court entered an Order granting in part and denying in part Defendants' Motion for Stay of Litigation Pending Appeal.  Specifically, the Court stayed the litigation pending the appeal, except that the Court permitted certain depositions to be taken by Plaintiffs.

11.     On or about September 11, 2006 Mr. Youngentob resigned from the Board.  On or about September 20, 2006, Mr. Cobb resigned from the Board.

12.     On November 21, 2006, the U.S. Court of Appeals for the D.C. Circuit entered an Order allowing Messrs. Youngentob and Cobb to withdraw their appeals.

13.     In the wake of the resignations by Messrs. Fitzgerald, Youngentob and Cobb, the make-up of the Board was altered.  Previously, the five Director Defendants comprised a majority of the Board.  With the resignations, only Ms. Jordan and myself were left as Board members, and the four directors who had previously made up the minority were now the majority – exercising four votes to our two.

14.     Given the past alignment of the four directors already on the board,  Mr. Bender has nominated or is associated with a majority of 4 of the 6 current members of the Board of IFSB.

15.     On December 19, 2006, the majority directors of the IFSB Board passed a resolution to hire Les Johnson, a candidate initially recommended by Mr. Bender, and strongly supported by Mr. Bender, to serve as President of the Bank.  In fact, Mr. Bender had recently hired Mr. Johnson to be President of Colombo Bank, a bank owned and controlled by Mr. Bender.

16.     In light of the existing make-up of the Board of Directors of the Bank, it has become apparent to me that my role, if any, will be limited to a minority director.  Thus, I intend to resign from the Board.

17.     I have no intent to serve as an Officer of IFSB now or in the future.

18.     I will instruct my broker to sell all 400 shares of IFSB stock that I own.  Thereafter, I will no longer be a shareholder of IFSB stock.

19.     I have no intent to buy shares of stock in IFSB now or in the future.

20.     Pursuant to the By-Laws of the Bank, a Bank Director must own 100 shares of Bank stock.  Because I do not intend to own shares of IFSB stock, and have no intent to buy IFSB shares now or in the future, I cannot serve as a Director on the IFSB Board.

21.     As a former Director of IFSB, I will be unable to attend or vote at IFSB Board Meetings.

22.   As a former shareholder of IFSB stock, I will be unable to attend or vote at IFSB Shareholder Meetings.

23.   As a former shareholder or Director at IFSB, I will be unable to participate in drafting proxy materials for the bank, nor will I be able to solicit proxies to vote for a slate of nominees.

24.   I have no present or future plan or purpose concerning IFSB.

25.   I have no intent to contact any shareholder or IFSB Board member to discuss any IFSB-related business.

26.   As a former shareholder or Director at IFSB, I will be unable to affect or control decisions made by the Board or by shareholders at IFSB. Additionally, I have no intent to attempt to influence any decisions of the Board of Directors and/or shareholders at IFSB.

On this the 27th day of December, 2006, I so swear:

_____
David W. Wilmot

Subscribed and sworn to before me, the undersigned, this 27th day of Dec 2006.

_____
Notary Public

My commission expires:



MARIA A. WOOD
NOTARY PUBLIC
PRINCE GEORGE'S COUNTY
MARYLAND
My Commission Expires Oct. 1 2008

On this the 27 day of December, 2006, I so swear:

_____
David W. Wilmot

Subscribed and sworn to before me, the undersigned, this _27th_ day of _Dec._ 2006.

_____
Notary Public

My commission expires:



# EXHIBIT A

# HARMON, WILMOT & BROWN, L.L.P.

**ATTORNEYS AT LAW**
**1010 VERMONT AVENUE, N.W.**
**SUITE 810**
**WASHINGTON, D.C. 20005**
TELEPHONE: 1(202)783-9100
FACSIMILE: 1(202)783-9103

DAVID W. WILMOT (D.C.-PA.)
E-MAIL: DWWDC@aol.com

January 4, 2007

Mr. Elliott S. Hall, Chairman, Board of Directors
c/o E. Leroy Morris
Independence Federal Savings Bank
1229 Connecticut Avenue, N.W.
Washington, D.C. 20036

RE:    Resignation

Dear Mr. Hall:

Please accept this letter as my resignation from the Board of Directors of Independence Federal Savings Bank, effective immediately.

Sincerely,

David W. Wilmot

bcc: Peter Strand

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORTON A. BENDER, et al. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     Civil Action No. 1:06cv00092 |
| | ) |
| CAROLYN D. JORDAN, et al. | ) |
| | ) |
| Defendant. | ) |

### AFFIDAVIT OF THOMAS L. BATTIES

Thomas L. Batties, being duly sworn, deposes and says:

1. My name is Thomas L. Batties. I am over 18, of sound mind, and make this affidavit on personal knowledge.

2. I am a defendant in the above-captioned case.

3. In June, 2003, I became acting President and CEO of IFSB. I was never a Director of IFSB.

4. During my tenure, I bought 200 shares of stock in Independent Federal Savings Bank.

5. Effective June 30, 2006, I resigned as President and CEO of IFSB.

6. After my resignation, I entered into a contract with IFSB to serve in an advisory role.

7. My advisory contract expires on December 30, 2006 with no intent to seek an extension.

8. I have no intent to serve as a Director at IFSB now or in the future.

9. I have no intent to serve as an Officer of IFSB now or in the future.

10. In addition, on December 2, 2006, I instructed my broker to sell all 200 shares of IFSB stock that I own. Therefore, I am no longer a shareholder of IFSB stock.

11. I have no intent to buy shares of stock in IFSB now or in the future.

136165v1

12. Pursuant to the By-Laws of the Bank, a Bank Director must own 100 shares of Bank stock. Because I do not own shares of IFSB stock, and have no intent to buy IFSB shares now or in the future, I cannot serve as a Director on the IFSB Board.

13. Since I am not a Director of IFSB I cannot attend or vote at IFSB Board Meetings.

14. Because I am no longer a shareholder of IFSB stock I cannot attend or vote at IFSB Shareholder Meetings.

15. Because I am no longer a shareholder nor a Director at IFSB, I cannot participate in drafting proxy materials for the bank, nor can I solicit proxies to vote for a certain slate of nominees.

16. I have no present or future plan or purpose concerning IFSB.

17. I have no intent to contact any shareholder or IFSB Board member to discuss any IFSB-related business.

18. Because I am no longer a shareholder or Officer at IFSB I cannot affect or control decisions made by the Board or by shareholders at IFSB. Additionally, I have no intent to attempt to influence any decisions of the Board of Directors and/or shareholders at IFSB.

136165v1

_____
Thomas L. Batties

Subscribed and sworn to before me, the undersigned, this 29th day of December 2006.


_____
Notary Public


My commission expires:

LANCE S. MELDON
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires December 1, 2007

136165v1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MORTON A. BENDER, et al.<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN D. JORDAN, et al.<br><br>Defendant. | Civil Action No. 1:06cv00092 |

## AFFIDAVIT OF PETER E. STRAND

Peter E. Strand being duly sworn, deposes and says:

1.    My name is Peter E. Strand.  I am over the age of 18 years old, of sound mind, and make this affidavit on personal knowledge.

2.    On January 4, 2007, Mr. David Wilmot submitted his resignation from the Board of Directors of Independence Federal Savings Bank to Elliott S. Hall, Chairman of the Board of Directors of the Bank c/o E. Leroy Morris.  A true and accurate copy Mr. Wilmot's January 4, 2007 letter of resignation is attached hereto as Exhibit A.

3.    On January 5, 2007, Ms. Carolyn Jordan submitted her resignation from the Board of Directors of Independence Federal Savings Bank to Elliott S. Hall, Chairman of the Board of Directors of the Bank c/o E. Leroy Morris.  A true and accurate copy of Ms. Jordan's January 5, 2007 letter of resignation is attached hereto as Exhibit B.

4.    On January 4, 2007, Mr. Wilmot instructed is broker to sell all of his remaining shares of Bank stock.  As a consequence of that instruction, Mr. Wilmot will no longer be a shareholder of Independence Federal Savings Bank stock.

5.    On January 5, 2007, Ms. Jordan instructed her broker to sell all 100 shares of Bank stock.  As a consequence of that instruction, Ms. Jordan will no longer be a shareholder of Independence Federal Savings Bank stock.

136423v1

FURTHER, Affiant saith not.

_____
Peter E. Strand

Subscribed and sworn to before me, the undersigned, this _____5th_____ day of January, 2007.

_Kay D. Dallosta_

_____
Notary Public

My commission expires:

KAY D. DALLOSTA
Notary Public District Of Columbia
My Commission Expires June 14, 2007

136423v1

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MORTON A. BENDER ET AL.,   :
                     :
       Plaintiffs,  :
     vs.           :        Docket No. CA 06-92
                     :
CAROLYN D. JORDAN, ET AL  :      Washington, D.C.
                     :  Thursday, February 9, 2006
                     :       2:35 p.m.
       Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:      Dale A. Cooter, Esquire
                          Donna S. Mangold, Esquire
                          COOTER, MANGOLD
                          TOMPERT, & KARAS, L.L.P.
                          5301 Wisconsin Avenue, NW
                          Suite 500
                          Washington, DC  20015
                          (202) 537-0700

For the Defendants:      Peter E. Strand, Esquire
(via telephone)          Christie S. Hudson, Esquire
                          SHOOK HARDY & BACON, L.L.P.
                          600 14th Street, NW
                          Suite 800
                          Washington, DC  20005
                          (202) 783-8400

                          HAIG V. KALBIAN, Esquire
                          Kalbian Hagerty LLP
                        The Brawner Building
                        888 17th Street, NW
                        Suite 1000
                        Washington, DC  20005
                        (202) 223-5600

**COPY**

Appearances continued:


Court Reporter:                 CRYSTAL M. PILGRIM, RPR
                                United States District Court
                                District of Columbia
                                333 Constitution Avenue, NW
                                Room 4806-A
                                Washington, DC  20001
                                (202) 589-1166

Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

1  authorize the advancement of legal expenses, because there's no

2  pending reason that they can't move forward with that.

3          THE COURT:  I don't know why they would wait for me.

4          MR. STRAND:  Well, Your Honor, that was something in

5  the law firm in my persona, because the question has been shall

6  we go ahead and authorize the resolution?  I said we're going

7  to have this hearing today, so let's not do it yet.  So we're

8  here today.

9      But as far as I know, they could go out this afternoon and

10 have the resolution authorizing the advancement of legal

11 expenses.  There's no prohibition from doing that.

12         THE COURT:  I don't know of one, do you Mr. Cooter?

13         MR. COOTER:  At the risk of sounding like the

14 President, depends on who they is.  Whose the they?  If you

15 look at the reg it has two provisions.  It deals with if a

16 majority of the board were to conclude that there is a likely

17 entitlement to indemnification, they may vote to advance

18 expenses.

19     There's another provision that deals with alternatively if

20 without regard to likelihood of success on the issue of

21 indemnification, the disinterested directors think that things

22 were done in good faith, the disinterested directors can do

23 things.  The problem is that counsel --

24         THE COURT:  Are there any disinterested directors?

25         MR. COOTER:  Well, let me say it to you this way.

18

```
 1              THE COURT:  I mean you've sued everybody except
 2   Mr. Bender's nominees right?
 3              MR. COOTER:  That's right.
 4              THE COURT:  Okay.
 5              MR. COOTER:  Let me just say to you, to turn the
 6   question on its head a little bit.  I don't mean to be
 7   impertinent.  I know that the defendants are not disinterested.
 8   It's impossible.
 9              THE COURT:  Well, I agree with that.
10              MR. COOTER:  Which is where I start and end.  Now as
11   a practical matter, the notion -- I will tell you that my
12   understanding is that if the thing came to a vote it would
13   almost certainly be five to four.  The first question is
14   whether or not these interested directors even have the power
15   to vote on their own indemnification, which may be an issue for
16   you at some point.
17              THE COURT:  It's the sort of thing --
18              MR. COOTER:  But let me say --
19              THE COURT:  Wait, wait, stop.  It's the sort of thing
20   where they may need to vote on indemnification for each of them
21   individually, and each of them individually set out the vote on
22   indemnification of the house.  I mean I don't know, I'm not the
23   board.  I don't advise the board.
24              MR. COOTER:  I thought through that scenario which is
25   usually how it's done in the case of board compensation, the
```

# EXHIBIT B

Page 130

1 to my attorney, he wrote it, I didn't, and I
2 am not a lawyer.
3     Q    All right, let me ask you these
4 questions.  Do you seek money damages for
5 some of the claims?
6     A    I believe that's correct.
7     Q    All right, do you seek to reverse
8 the results of the election outright and
9 elect your Board nominees to the exclusion of
10 the other management nominees?
11     A    I can't tell you that because there
12 are a lot of options open to us and my
13 attorney will probably have to address that.
14     Q    Do you seek to neutralize the votes
15 of any of the various groups or folks we
16 talked about?
17     A    Again, I refer you to my attorney.
18     Q    You don't know?
19     A    Well, we've discussed lots of
20 different things that could or couldn't
21 happen, and we need --
22     MR. COOTER:  I instruct you not to

Page 131

1 talk about that, thank you.
2     BY MR. STRAND:
3     Q    What I want to know is what you as
4 the plaintiff in this case, seek as relief,
5 and I believe I am entitled to answers to
6 those questions.  So my question is then with
7 regard to the outcome of the election, what
8 relief do you seek?
9     MR. COOTER:  Well, he's already
10 told you.
11     MR. STRAND:  Well, all I've heard
12 is, "I don't know."
13     THE WITNESS:  No.
14     MR. COOTER:  He said talk to my
15 lawyer, that's what he said.  He says he
16 can't answer it.
17     BY MR. STRAND:
18     Q    So you don't know?
19     A    No, I said I know that we're
20 seeking -- you asked me specifically
21 "monetary", and I said, "Yes, we are."
22     Q    Right.

Page 132

1     A    And with regard to everything else
2 I've asked you that you've got to speak to
3 attorney, because he is smarter than I am and
4 he can answer your questions.
5     MR. COOTER:  I need an expedited
6 transcript to that last question and answer.
7     BY MR. STRAND:
8     Q    Let me cut through, let me cut
9 through it all, Mr. Bender.  At the end of
10 the day --
11     A    Hold it --
12     MR. COOTER:  Go ahead.
13     THE WITNESS:  Take that off the
14 record.
15     BY MR. STRAND:
16     Q    I don't know if that would be --
17 counsel and his client can argue all they
18 want.  Setting aside money damages for a
19 moment, Mr. Bender, at the end of the day is
20 your objective in this lawsuit to get your
21 two nominees put on the Board of Directors of
22 Independence Federal Savings Bank?

Page 133

1     A    I already have one on, you are
2 talking about the two that were nominated and
3 up for the election in 2005?
4     Q    Yes, sir.
5     A    One already is on the Board.
6     Q    Okay, so is it your objective to
7 get the other one on the Board?
8     A    Again, I am not sure of all the
9 alternatives, you have to speak to my
10 attorney.
11     Q    Well, I don't want to talk to your
12 attorney about it, I want to talk about you
13 personally.
14     A    If you want my opinion what I would
15 love to do is get rid of the whole Board over
16 there.
17     Q    Okay, why?
18     A    Because I don't think they run the
19 bank properly.
20     Q    Deckelbaum?
21     A    The majority directors, pardon me.
22     Q    The folks that I represent?

34 (Pages 130 to 133)

Page 134

1    A    And the President, yes.
2    Q    And the President, okay.
3    A    You do represent, now you don't --
4    Q    I do represent.
5    A    You do represent?
6    Q    All right, so here is -- my
7    question is what I am trying to do is -- what
8    I'm trying to get at is other than monetary
9    damages what are you trying to accomplish by
10   this lawsuit?  Is your intent -- and what you
11   are trying to accomplish by this lawsuit is
12   to get the other director that you nominated
13   for the fall of 2005, put on the Board of
14   Directors to the exclusion of one of the
15   nominees, one of the management nominees?
16   A    Ultimately that may be one of the
17   outcomes, yes.
18   Q    Because if we go through all of
19   this and the results of election don't
20   change, what difference does it make, Mr.
21   Bender?
22   A    If we go through all this, what

Page 135

1    difference does it make?  Well, if they've
2    done things illegally, to my judgment, I
3    think they should be punished for it.  I
4    don't want stand like a judge, but I am not
5    just getting the -- my other nominee on the
6    Board, who's -- if I got the other nominee on
7    the Board, that only gives me four people,
8    four directors on the Board.  It doesn't
9    change the constitution of the Board, there
10   are nine people on the Board.
11   Q    Weren't there just eight, I mean,
12   there are nine.  You said four, that's what I
13   was trying to focus in on, you have Mr.
14   Green, who you nominated --
15   A    Mr. Green and --
16   Q    And Mr. -- who is the other nominee
17   that you have filed for?
18   A    John Wilson and Osbourne George.
19   Q    You wanted Mr. George on it and Mr.
20   Wilson on it, correct?
21   A    Yes.
22   Q    You have Mr. Isard on, correct?

Page 136

1    A    No.
2    Q    No, he is not yours?
3    A    He is not mine, he is independent.
4    Q    You don't claim him?
5    A    I can't claim him, he's not mine.
6    Q    Mr. Deckelbaum, he is one of your
7    nominees?
8    A    Yes.
9    Q    Mr. Hall's one of your nominees?
10   A    That's correct.
11   Q    So you are saying that Mr. Isard
12   isn't included, you only have four?
13   A    That's correct, I have nominated
14   four people in my dealings with Independence
15   Bank, and I've got as of this time, subject
16   to this suit, three of my nominees on the
17   Board, and I consider Isard an independent.
18   Q    Is there any way a reasonable
19   person could disagree with you and vote for
20   management slates of directors to the
21   exclusion of your slate of directors?
22        MR. COOTER:  You are asking his

Page 137

1    opinion?
2         MR. STRAND:  Yes, sir.
3         THE WITNESS:  Can you ask it again?
4         MR. COOTER:  Sure.
5         BY MR. STRAND:
6    Q    Sure, thinking of October 25, 2006,
7    is there any way a reasonable person could
8    disagree with your view and vote for
9    management's slate of directors as opposed to
10   your slate of directors?
11   A    Anyone can do whatever they want.
12   Q    So a reasonable person could do
13   that?
14   A    An unreasonable person could do it
15   also.
16   Q    But a reasonable person can do
17   that; is your answer "yes"?
18   A    My answer is anyone could do what
19   they want to do.
20   Q    So reasonable people could disagree
21   about who are the appropriate or best
22   directors for the bank, correct?

35 (Pages 134 to 137)

# EXHIBIT C

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

DEC 2 9 2006

RECEIVED

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| CAROLYN D. JORDAN, et al. | ) |
|  | ) |
| Appellants, | ) |
|  | ) |
| vs. | ) |
|  | )      Case No. 06-7141 |
| MORTON A. BENDER, et al. | ) |
|  | ) |
| Appellees. | ) |

## APPELLANTS THOMAS BATTIES, CAROLYN JORDAN AND DAVID WILMOTS' UNOPPOSED MOTION TO WITHDRAW APPEAL

Pursuant to Rule 42(b), Federal Rules of Appellate Procedure, and Circuit Rule 27(g)(1), Appellants Thomas Batties, Carolyn Jordan and David Wilmot hereby file this Unopposed Motion to Withdraw Appeal in this docket. This Motion is filed on behalf of Mr. Batties, Ms. Jordan and Mr. Wilmot, who are the remaining three Appellants.

Undersigned Counsel for Appellants has consulted with Counsel for Appellee Morton Bender and is authorized to state that Appellees consent to this Motion. A Proposed Order has been attached to this Motion for the Court's convenience.

Respectfully Submitted,

Dated December 29, 2006

SHOOK HARDY & BACON LLP

Peter E. Strand
Carlos E. Provencio

136042v1

Christie Hudson
Hamilton Square
600 14th St. NW
Suite 800
Washington, DC 20005-2004
Phone: 202-783-8400
Fax: 202-783-4211

Attorney for Defendants Jordan, Wilmot, and
Batties

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of December, 2006, a true and complete copy of the forgoing **APPELLANT THOMAS BATTIES, CAROLYN JORDAN AND DAVID WILMOT'S UNOPPOSED MOTION TO WITHDRAW APPEAL** was sent first class mail pre-paid to the following:

> Dale A. Cooter, Esq.
> Cooter, Mangold, Tompert and Wayson, L.L.P.
> 5301 Wisconsin Ave, NW
> Suite 500
> Washington, D.C.  20015
> T: (202)537-0700
> F: (202)364-3664
> *Attorneys for Plaintiffs*
>
> G. Vann Canada, Jr.
> James A. Sullivan, Jr.
> Miles & Stockbridge P.C.
> 11 North Washington Street
> Suite 700
> Rockville, Maryland 20850-4229
> Direct Number: 301.517.4805
> Main Number: 301.762.1600
> Fax Number: 301.762.0363
> *Attorneys for Defendant Independence Federal Savings Bank*

_____
Peter E. Strand

136042v1

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| CAROLYN D. JORDAN, et al. | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 06-7141 |
| MORTON A. BENDER, et al. | ) | |
| | ) | |
| | ) | |
| Appellees. | | |

## **PROPOSED ORDER**

Upon consideration of Appellants Thomas Batties, Carolyn Jordan and David Wilmots' Unopposed Motion to Withdraw Appeal ("Motion"), which was filed by Peter E. Strand, Carlos E. Provencio, Christine S. Hudson, and the law firm of Shook, Hardy & Bacon L.L.P., and it otherwise appearing to the Court that good cause exists for granting said Motion, it is hereby:

ORDERED that the Motion is GRANTED.

This _____ day of _____, 2006

_____
JUDGE, U.S. Court of Appeals for
the District of Columbia Circuit

136043v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                         |   |                              |
|-----------------------------------------|---|------------------------------|
| MORTON A. BENDER, et al.                | ) |                              |
|                                         | ) |                              |
| Plaintiff,                              | ) |                              |
|                                         | ) |                              |
| vs.                                     | ) | Civil Action No. 1:06cv00092 |
|                                         | ) |                              |
| CAROLYN D. JORDAN, et al.               | ) |                              |
|                                         | ) |                              |
| Defendant.                              | ) |                              |
|                                         | ) |                              |

## PROPOSED ORDER

Upon consideration of DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT FOR MOOTNESS, which was filed by Peter E. Strand,
Carlos E. Provencio, Christine S. Hudson, and the law firm of Shook, Hardy & Bacon L.L.P.,
and it otherwise appearing to the Court that good cause exists for granting said Motion, it is
hereby:

ORDERED that the Motion is GRANTED.

This _____ day of _____, 2007

_____

JUDGE, U.S. District Court for
the District of Columbia Circuit

136399v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2007, a true and complete copy of the forgoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR MOOTNESS was sent electronically to the following:

> Dale A. Cooter, Esquire
> Cooter, Mangold, Tompert and Wayson, L.L.P.
> 5301 Wisconsin Ave, NW
> Suite 500
> Washington, D.C.  20015
> T: (202)537-0700
> F: (202)364-3664
> *Attorneys for Plaintiffs*

_____/s/_____
Attorneys for the Appellants

136057v6