UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MORTON A. BENDER, et al.,    )
                             )
          Plaintiffs,        )
                             )
     v.                      )
                             )    C.A. No. 1:06cv00092
CAROLYN D. JORDAN, et al.,   )    Honorable Rosemary M.
                             )    Collyer
                             )
          Defendants.        )
_____)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT FOR MOOTNESS

Plaintiffs Morton Bender and Grace Bender ("Bender"), by their undersigned counsel, hereby oppose the Motion of Defendants Carolyn D. Jordan, David Wilmot, and Thomas L. Batties ("Defendants") to Dismiss Plaintiffs' First Amended Complaint for Mootness.

## INTRODUCTION

The Defendants argue that because Jordan, Wilmot and Batties have now resigned from Independence Federal Savings Bank ("IFSB" or "the Bank"), there is no longer a "live" controversy, and the case should be dismissed.[1]  Bender

---

[1]  This motion has a *deja vu* feel to it: in the "poison pill case" (Case No. 1:04CV00736), this Court held a full evidentiary hearing on the Bank's preliminary injunction motion relating to the Bank's 13-D claims against Bender, which was equivalent to a trial on the merits.  The Court's findings, substantively denying those claims, were set forth

1

submits that a trial on the merits, or entry of an order of relief by consent is the only way to ensure that future Bank annual meetings are not plagued by the mischief that tainted the October 2005 Meeting.  In the absence of such a final adjudication (or consent order), the Defendants, or those allied with them, will be able to further obfuscate what happened at the 2005 Meeting, and in this Courtroom, and in the Court's preliminary injunction opinion.  Bender's rejoinder, and his own proxy materials, will be limited to "Bender believes that ..." and the "Court entered a preliminary injunction finding that ... ."[2]  Without final

_____

in detail in its Memorandum Order dated August 23, 2004. IFSB appealed the Court's denial of the request for preliminary injunctive relief, and then dismissed its appeal. Thereafter, the Bank sought to "voluntarily dismiss" the case without prejudice, after Bender had expended significant sums defending himself.  Although the prior litigant was the Bank, its litigation strategy was directed by the litigants here: the Defendant Directors and Batties.  It is thus not surprising that the tactic is strikingly similar: an adverse preliminary finding; an interlocutory appeal to avoid a final finding; a dismissal of the appeal prior to briefing; a motion seeking to dismiss the case without a final resolution on the merits.

[2]  Bender's future proxy materials (or shareholder solicitations) will of course be subject to the OTS comment process.  Without final findings, the OTS may limit Bender's ability to fully describe the events leading up to the 2005 meeting, the 13D and 14a violations, the breach of fiduciary duty, and the conduct of this litigation.  *See*, *e.g.,* Plaintiffs' Trial Exhibit 113 regarding the restrictions placed on Bender's communications with the shareholders in advance of the anticipated May 2005 meeting.

findings, those who oppose Bender will inevitably continue their campaign of misinformation.[3]


### ARGUMENT

### I.  THE MOOTNESS DOCTRINE

Defendants argue that "[t]he wrongdoing which forms the basis for the Plaintiffs' Amended Complaint has been eradicated, because altered circumstances have resulted in Plaintiffs' obtaining the relief they seek.  Because none of the Defendants presently hold stock in IFSB, nor are any of them presently serving as an Officer or Director of IFSB, the allegations set forth in the First Amended Complaint could not possibly recur."
Motion at 11.  As set forth in *Flores v. District of Columbia* , 437 F. Supp. 2d 22, 28 n.12 (D.D.C. 2006), when a defendant asserts that subsequent developments have mooted an action, the burden is on the defendant to establish that the case "is in fact moot."  In *Flores,* the Court noted that "where a

---

[3]  By way of example only, the McPhail/Douglass October 21, 2005 letter stated: "[T]he only time we are aware we got into U.S. District Court with Bender – though expensive – Independence Won, Bender Lost!"  This Court has detailed the history of the Bender/IFSB litigation in its preliminary injunction decision.  *See* July 21, 2006 Memorandum Opinion ("July 21 Memorandum") [D.D.C. Docket #50], at 38 n.25.

defendant contends that its voluntary compliance with the plaintiff's demands has rendered the case moot, 'the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.* 528 U.S. 167, 189, 120 S.Ct. 693 (2000)). The *Flores* Court drew a distinction which is helpful to the analysis in this case, however: "[b]ecause the Court holds that the plaintiff's requests for relief have not all been satisfied, it need not decide whether the voluntary cessation doctrine applies here and thus need not determine whether defendant has demonstrated that the challenged conduct cannot reasonably be expected to recur." 437 F. Supp. 2d at 28 n.12.[4] The *Flores* Court found that the case was not moot, because the plaintiff parent had not received all the relief sought in the complaint, which the Court found to include a demand for compensatory education for

---

[4]  As the *Flores* Court noted, plaintiff Flores had "conflated two different but related exceptions to the mootness doctrine - cases where the defendant voluntarily ceases the activity challenged by the plaintiff [citation omitted], and cases where conduct impacting a plaintiff is capable of repetition but judicial review will be evaded ... [citation omitted]." 437 F. Supp. 2d at 27 n.9.  The Court avoided having to rule on the applicability of either exception because it determined that the plaintiff had not received all the relief she requested. *Id.*

her son.

In their Motion, Defendants argue both that Bender has received all the relief he sought in the First Amended Complaint, and also, that by virtue of events subsequent to the July 21st Order and Memorandum, the conduct complained of "will not be repeated."  Bender submits that his claim is not moot because he did not receive all the relief he seeks; even if he had received all relief however, the conduct is "capable of repetition," and therefore, permanent relief should be granted.

As the D. C. Circuit has stated:

> two conditions ... must be satisfied if a federal court
> is to dismiss a case as moot. First, the court must
> conclude "with assurance that 'there is no reasonable
> expectation ...' that the alleged violation will recur"
> ... second, ... it must be plain that "interim relief or
> events have **completely and irrevocably eradicated the
> effects** of the alleged violation."

*Doe v. Harris* , 696 F.2d 109, 111 (D.C.Cir.1982) (emphasis added)(quoting *County of Los Angeles v. Davis* , 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979)).  Here, it is clear that the Defendants' resignations have not "completely and irrevocably eradicated" the taint of the 2005 Shareholder Meeting, the 13D violations, the proxy violations, or the effects of the Committee to Save or the McPhail/Douglas solicitations.  Thus, this case cannot be dismissed as moot.

## II.  BENDER HAS NOT RECEIVED ALL RELIEF SOUGHT IN THE FIRST AMENDED COMPLAINT

Defendants contend that Plaintiffs have received "all of the injunctive relief alleged in their Amended Complaint" by virtue of the fact that Batties is no longer a bank employee, Wilmot and Jordan have resigned from the Board, and all Defendants have sold their shares of Bank stock.  Motion at 1.[5]  As set forth in the First Amended Complaint, Bender seeks the following permanent injunctive relief:

- Requiring Director Defendants and Defendant Batties to comply with Section 13(d), fully disclosing their plans and purposes concerning IFSB;

- Requiring Director Defendants and Defendant Batties to comply with Section 14(a), to disclose to shareholders, in any future solicitations, the falsity and misleading nature of the 2005 Proxy Materials, the May 2005 Committee to Save Correspondence, and the October 2005 Letter to Shareholders, and the Bank's involvement in such letters;

- Preventing Director Defendants from causing the Bank to hold an Annual or Special Shareholders Meeting;

- Requiring the Defendants and the Bank to conduct any

---

[5]  At the time this lawsuit was filed, Ms. Jordan was the Chairman of the Board, Mr. Wilmot was the Vice-Chairman, and the five Director Defendants (Jordan, Wilmot, Fitzgerald, Youngentob and Cobb) and constituted a majority of the Bank's nine member board of Directors.  Subsequent to the Court's preliminary injunction ruling (Order Granting (and deferring in part) Preliminary Injunctive Relief ("July 21 Order")[D.D.C. Docket #51]), all five of the Defendant Directors have resigned, with Ms. Jordan and Mr. Wilmot resigning within the past few weeks (at about the time the interlocutory appeal was voluntarily dismissed).

future Shareholders Meeting in conformance with Robert's Rules and the Bank's By-laws, and to enjoin further allocation of votes after the closing of the polls, and to enjoin the counting of broker routine votes for management nominees in absence of express direction from the beneficial shareholder; and Neutralizing all of the Participant Shares (the shares owned by the "Doley Shareholders") and the Thompson Shares in any future election of Directors;

•    Preventing Defendant IFSB from indemnifying (or making advance payments to) the Director Defendants and Defendant Batties for the expenses of this action.

*See* First Amended Complaint (Document #68), at pp. 45-47.  As required by Fed. R. Civ. P. 65(d), the injunctive relief sought by Bender would be predicated on factual and legal findings that the Defendants committed the acts alleged.

Although prior to the 2005 Shareholder's meeting, Bender sought to have his two nominees, John Wilson and Osbourne George, elected to the Board, Defendants misapprehend the relief sought by Bender in this action.  It is not, as they contend, "control of the Board," which they argue has been effectuated through the resignation of the five original Director Defendants and Defendant Batties.  Motion at 13.[6] The relief sought by Bender with regard to the meeting is much

_____

    [6]  Bender's ability to "control" IFSB has not been accomplished, and cannot be accomplished, until the OTS approves his application for change of control, which is still pending.  Moreover, the current Board members are not "puppets" subject to his control, nor would they be, even after change of control is approved.

7

broader – he seeks to remove the taint of the 2005 Annual Meeting: to declare it void, and to have appropriate disclosures made to the public in anticipation of the next meeting.  Thus, the final findings in this action will ultimately impact the OTS regulatory process, the procedures for the next shareholders' meeting, solicitations and proxies in anticipation of the next meeting, and the Bank's efforts to seek return of funds advanced on behalf of the Individual Defendants.

Defendants argue that "because they are no longer on the Board, Ms. Jordan and Mr. Wilmot have no fiduciary duties with regard to IFSB. Because Mr. Batties is no longer an officer or employee of IFSB, he no longer has fiduciary duties."  Motion at ¶24.  Count IV of the First Amended Complaint seeks injunctive relief for the breach of fiduciary on the grounds that as a result of Defendants' conduct:

> the election of the Management Nominees is irreparably tainted, and the results of the meeting are therefore void.  Plaintiffs (and other shareholders and the investing public) have been, are being, and will continue to be irreparably harmed, in that they are left without material information, to which they are lawfully entitled, regarding the true interests and purposes of the Director Defendants and Defendant Batties' efforts to control IFSB for their own interests, and to defeat the Bender Nominees.  Plaintiffs (and other shareholders) have been, are being, and will continue to be irreparably harmed, by the defeat of one of the Bender Nominees (George Osbourne) and the election of the Management Directors in a meeting which failed to be conducted in a

8

proper manner.

First Amended Complaint [Docket #68], ¶106.  Because the 2005
Annual Meeting was tainted as a result of the breach of
fiduciary duty, Bender seeks permanent injunctive relief to
cure the taint of those breaches: including voiding the
election results, and neutralizing the Participant Shares and
the Thompson Shares in any future election of Directors.

In addition, a final finding as to the Defendants' breach
of fiduciary duty will establish  IFSB's entitlement to seek
return of the funds that were advanced on behalf of the
Defendants in this action.  Thus, the relief sought by Bender
includes a declaration that indemnification by IFSB of the
litigation costs of the Defendants is not appropriate.  When
IFSB seeks reimbursement of funds advanced on behalf of the
Defendant Directors and Batties, it will undoubtedly be met
with an argument, pursuant to 12 C.F.R. §545.121(c)(iii) or
(iv), that the Defendant "was acting in good faith within the
scope of his or her employment or authority... and for a
purpose ... that was in the best interests of the savings
association or its members."[7]   Indeed, in the Affidavits

---

[7]  Pursuant to 12 CFR § 545.121, indemnification "shall be
made ... only if:

(1) Final judgment on the merits in his or her favor; or
(2) In a case of:

attached to the Motion to Dismiss, both Jordan and Wilmot
refer to "plans which [he/she] felt were in the best interests
of the Bank and all of its shareholders."  Jordan Affidavit at
¶10; Wilmot Affidavit at ¶17.  In the absence of a final
adjudication from this Court regarding the Defendants'
conduct, IFSB will have a more difficult case to undertake to
establish lack of good faith.[8]  A final finding on the
Individual Defendants' conduct (securities violations, breach
of fiduciary duty) would have collateral estoppel effect in
any future litigation seeking refund of the advances by IFSB.

This case is unlike the situation in *DeFunis v. Odegaard*,

---

|       |       |                                                    |
|-------|-------|----------------------------------------------------|
| (i)   |       | Settlement,                                        |
| (iii) |       | Final judgment against him or her, or              |
| (iv)  |       | Final judgment in his or her favor, other than     |
| on    |       | the merits, if a majority of disinterested         |
|       |       | directors of the savings association determine     |
|       |       | that he or she was acting in good faith within     |
|       |       | the scope of his or her employment or              |
|       |       | authority... and for a purpose ... that was in     |
|       |       | the best interests of the savings association or   |
|       |       | its members.                                       |

[8]  The Court has not ruled on Defendants' original motion
to dismiss the indemnification count.  Defendants argued the
claim should be dismissed on grounds that it is derivative.
Undersigned counsel has been advised by Vann Canada, counsel
for IFSB, that in the interest of judicial economy, the Bank
is considering filing a motion for leave to file a cross-claim
in this case.  The contemplated cross-claim would seek a
declaration regarding the absence of grounds for
indemnification under 12 CFR § 545.121, and return of the
litigation expenses that previously were advanced on behalf of
the Individual Defendants.

416 U.S. 312, 94 S.Ct. 1704 (1974), relied upon by Defendants, where an unsuccessful law school applicant brought an action against various state and university officials challenging their admissions policy as unconstitutional. 416 U.S. at 314. By the time the writ of certiorari was granted by the United States Supreme Court, the plaintiff was in his last quarter of law school and all parties agreed that any decision on the substantive issues would have no bearing on his ability to graduate. Id. at 317.  In that case, the relief sought (getting into law school) matched the relief given (getting into and graduating from law school).  As set forth above, the relief sought by Bender is much broader than simply getting the Defendants to resign and sell their stock.

III.   **THE CONDUCT COMPLAINED OF IS CAPABLE OF REPETITION**

In support of their argument that this case is moot, Jordan, Wilmot and Batties have all submitted affidavits stating that they do not intend to serve as officers of IFSB or buy shares of IFSB.  Further, they attest that they have "no present or future plan or purpose concerning IFSB" and "no intention to contact any shareholder or IFSB Board member to discuss any IFSB-related business."  As the D.C. Circuit stated in *SEC v. Bilzerian* , 29 F.3d 689 (D.C. Cir. 1994):

[i]f a defendant could survive summary judgment [for the

11

grant of a permanent injunction] by simply submitting a self-serving statement about his desire to conform to the law in the future, it "would establish ... a ritualistic dodge around a permanent injunction on a motion for summary judgment."

*Id.* at 695 (quoting *SEC v. Murphy*, 626 F.2d 633, 656 (9th Cir. 1980)).[9]  At pages 8-9 of the Motion to Dismiss, Defendants assert that, as a result of their resignations and sales of IFSB stock:

> a. Ms. Jordan and Mr. Wilmot cannot attend or vote at IFSB Board Meetings because they are no longer Directors on the IFSB board.

> b. Neither Ms. Jordan, Mr. Batties or Mr. Wilmot can attend or vote at IFSB shareholder meetings because they are no longer shareholders of IFSB stock.

> c. Neither Ms. Jordan, Mr. Batties or Mr. Wilmot can participate in drafting proxy materials for the bank, nor can they solicit proxies to vote for a slate of nominees.

> d. None of the Defendants needs to file a Section 13(d).

> e. None of the Defendants can disseminate Proxy Materials pursuant to Section 14(a) of the Exchange Act.

> f. None of the Defendants has control over, or involvement in, the conduct of the annual meeting of shareholders or elections of the Board.

Motion at ¶23.  With regard to c. and e., one only has to

---

[9]  Bilzerian's affidavit indicated that he would not violate the federal securities laws in the future.  29 F.3d at 695.

consider the impact of the "Committee to Save" and
McPhail/Douglas solicitations to conclude that the Defendants'
lack of an official role with IFSB does not establish that
they will not be able to impact a future election by sending,
participating in, or assisting with solicitations to the
shareholders.   The proxy rules clearly apply to
"solicitations"[10] without regard to whether any of these
Defendants are in a position to prepare "official" proxy
materials on behalf of the Bank.

Furthermore, Defendants' assertion, set forth in ¶23 d.,
that "[n]one of the Defendants needs to file a Section 13(d)"
is simply wrong.   As this Court recognized in its July 21,
2006 Memorandum:

> On these facts, the Court readily concludes that Ms.
> Jordan and Mr. Wilmot, acting on behalf of the Director
> Defendants, agreed to act together with Mr. Thompson for
> the purpose of acquiring, holding, and-at a bare
> minimum-voting the Doley Participants' shares held by Mr.
> Doley. This group is thus deemed to have acquired
> beneficial ownership for purposes of Section 13(d) as of
> the date of such agreement, see 17 C.F.R. § 240.13d-5,
> which the Court finds to be no later than midday on
> October 26, 2005. That the actual sale of the Doley
> Participants' shares may never have been consummated is
> of no consequence here; the group, as described above,
> beneficially owned those shares because, as a condition

---

[10]   Pursuant to 17 C.F.R. § 240.14a-9, no solicitation
(not limited to proxy materials) may be made by means of any
communication which is false or misleading, or which omits to
state any material fact necessary in order to make the
statements therein not false or misleading.

> of the agreement, it acquired voting power over them. See
> 17 C.F.R. § 240.13d-3(a). By acquiring voting power over
> the Doley Participants' shares, which constituted nearly
> 10% of the Bank's outstanding shares, the group exceeded
> the 5% threshold set forth in § 13(d), and was required
> to file a Schedule 13D within 10 days, which it
> indisputably failed to do.

July 21 Memorandum at 30-31. The fact that Defendants are no

longer Board members, an officer, or stockholders, does not

absolve them from their requirement to file a 13D.  Section

13(d)(1) of the Exchange Act, 15 U.S.C. § 78m(d)(1), requires

stock purchasers to disclose, on Schedule 13D, the acquisition

of beneficial ownership[11] of more than five percent of a

company's equity securities within ten days of purchase.  *See*

*SEC v. Bilzerian*, 29 F.3d 689, 692 n. 3.   At this point, the

failure of the Defendants (and particularly Jordan and Wilmot)

to file a 13D (particularly in light of the Court's

preliminary injunction findings of a "group") is a continuing

---

[11]  A "beneficial owner" includes "any person who,
directly or indirectly, through any contract, arrangement,
understanding, relationship, or otherwise has or shares ...
[v]oting power which includes the power to vote, or to direct
the voting of, such security." 17 C.F.R. § 240.13d-3(a). In
addition, "when two or more persons agree to act together for
the purpose of acquiring, holding, voting or disposing of
equity securities of an issuer, the group formed thereby shall
be deemed to have acquired beneficial ownership, for purposes
of Section 13(d) and (g) of the [Exchange] Act, as of the date
of such agreement, of all equity securities of that issuer
beneficially owned by any such person." 17 C.F.R. §
240.13d-5(b)(1).  "The agreement may be formal or informal and
may be proved by direct or circumstantial evidence."  Morales
v. Quintel Entm't Inc., 249 F.3d 115, 124 (2d Cir.2001).

violation of Section 13(d).  Their sale of their stock, and their resignations from the Bank, do not cure their failure to promptly file the 13D once the group was formed.  The kind of conduct that caused injury here – the forming of a group, the failure to file a 13D, the complicity in the shareholder solicitations – is conduct which can occur without regard to Defendants' official position with IFSB.  Moreover, given the Court's preliminary injunction findings with regard to the credibility of the IFSB witnesses[12], Jordan, Wilmot and Batties' professions of future "uninvolvement" are simply not believable.  Defendants contend that "they cannot repeat the offenses of which they have been accused and the lawsuit should be dismissed as moot."  Motion at 12.  This is simply not so: except for issuing official bank proxy materials, and running the next annual meeting, all of the conduct of which Bender complains is susceptible of repetition, without regard to whether the Defendants own stock or have an official position with the Bank.[13]  Without a final decision on the

_____

[12] The Court noted "the efforts of all IFSB witnesses to obscure and obfuscate ... ."  July 21 Memorandum at 31.

[13]  Of course, Judy Smith and Impact Strategies had no "official position" with the Bank, but the "Committee to Save Independence" was a significant contributor to the "information that was in the mix" preceding the 2005 Shareholder Meeting.

merits in this case, the Defendants will be able to continue to wage their war against Bender, if not in an official capacity, no doubt from the sidelines.

As the District of Columbia Circuit has recognized, "[c]ontroversies that arise in election campaigns are unquestionably among those saved from mootness under the exception for matters 'capable of repetition, yet evading review.'" *Branch v. FCC*, 824 F.2d 37, 41 n. 2 (D.C.Cir.1987); *see also Wisconsin Right To Life, Inc. v. Federal Election Com'n,* 2006 WL 3746669, *3 (D.D.C.,2006)(and cases cited therein)("Plaintiff's citation to no less than ten federal court decisions involving election-related challenges in which this exception [to mootness] was applied well establishes this point"). The analysis in those cases is equally applicable here, because although the 2005 election is over, its taint remains, and it is likely that the foes of Bender will continue the same mis-information tactics in the future.

In support of their "it will not be repeated argument," Defendants rely on *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897 (1953). In that case, the Government appealed from a judgment dismissing a civil action brought against a director and corporations on which he served as a director, alleging violations of interlocking directorates

16

provision of the Clayton Act.   The government sought

injunctive relief in the form of termination of the interlocks

and to enjoin future violations by the individual director and

the corporations.   345 U.S. at 630.   After the suits were

filed, the defendant director resigned from the boards, and

filed a motion to dismiss for mootness, which was granted by

the district court.   *Id.* at 630-31.   The Defendants have made

the following argument with regard to *W.T. Grant:*

> [t]he Supreme Court [in *W.T. Grant*] upheld the District
> Court's mootness determination, agreeing with the
> district court that "there is not the slightest threat
> that the Defendants will attempt any future activity in
> violation of section 8."

Motion at 15 (citing *U.S. v. W.T. Grant Co.*, 345 U.S. at

632).[14]   In fact, the Supreme Court *did not* uphold the

mootness determination of the district court.   Indeed, it

stated:

> We conclude that, **although the actions were not moot, no
> abuse of discretion** has been demonstrated in the trial
> court's refusal to award injunctive relief.

345 U.S. at 635-36 (emphasis added).   The Supreme Court

commented that if it had been "sitting as a trial court" it

might have been persuaded by the government's arguments that

_____

[14]   At most, the Supreme Court (at 345 U.S. 631, not page
632) merely repeated the conclusion of the District Court
about not "the slightest threat ... ."

the director's professed intention to comply with the Clayton
Act was not to be believed.  The Supreme Court found however,
that in ruling on a request for injunctive relief, "the
chancellor's decision is based on all of the circumstances;
his discretion is necessarily broad and a strong showing of
abuse must be made to reverse it."  345 U.S. at 633.  The
Supreme Court merely found that the district court had not
abused its discretion.  It did not, as the Defendants argue at
page 15, "uphold the District Court's mootness determination"
or agree with the District Court that there was no threat of
future illegal activity.  *See* 345 U.S. at 634-36.  Indeed, the
Supreme Court emphasized that a defendant "may return to his
old ways" and "a public interest in having the legality of the
practices settled, militates against a mootness conclusion."
*Id.* at 632.  Thus, "the courts have rightfully refused to
grant defendants such a powerful weapon against public law
enforcement."  *Id.*

     In addition, the *W.T. Grant* Court pointed out that a
controversy over the legality of the challenged practices
remains, even if the defendant voluntarily ceases the
allegedly illegal conduct.  345 U.S. at 632.  Of course here,
the Defendants did not cease their illegal conduct, they
merely resigned their positions.  Unlike the situation in *W.T.*

*Grant,* the Defendants' positions with the Bank in and of themselves were not the predicate for the violation.  Thus, contrary to Defendants' argument at page 16 (and also because Bender has not obtained all the relief he seeks), there is indeed a live controversy for this Court to adjudicate.

As the Supreme Court recently stated in *Friends of the Earth v. Laidlaw,* 528 U.S. 167, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts would be compelled to leave the defendant free to return to his old ways."  *Id.* at 189 (citations omitted; internal quotations and ellipses omitted).  Thus, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 190.  The Defendants have not met their "formidable burden" of demonstrating that the wrongful behavior will not occur again, and thus, this case should not be dismissed.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint should be denied.

19

Respectfully  submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.


_____/s/_____
Dale A. Cooter, Bar #277454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C.   20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Defendants*
 *Morton A. Bender and Grace M. Bende*  r

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing *Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint* was sent electronically via the Court's ECF system on the 29th day of January 2007,  to:

Peter Strand, Esquire
Shook, Hardy & Bacon, L.L.P.
Hamilton Square
600 14th Street, N.W.
Suite 800
Washington, D.C. 20005-2004


Vann Canada, Esquire
Miles & Stockbridge
11 North Washington Street
Suite 700
Rockville MD 20850


_____/s/_____
Dale A. Cooter

21