IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORTON A. BENDER, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:06cv00092 |
| ) | |
| CAROLYN D. JORDAN, et al. ) | |
| ) | |
| Defendant. ) | |
| ) | |

**Reply Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Mootness**

The remaining defendants, Carolyn D. Jordan, David Wilmot, and Thomas L. Batties (the "Defendants") submit this memorandum in reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion to dismiss the First Amended Complaint for Mootness.

**ARGUMENT**

The parties agree that the D.C. Circuit applies a two-prong standard for determining whether a case is moot: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged wrong will be repeated. *Doe v. Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982 (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979). (Motion, pp. 11 – 12; Opposition, p. 5) Analysis of the first prong of the test for mootness requires: (1) a determination of the "effect" of the alleged wrong; and (2) whether that effect has been totally eradicated. *Id.* The second prong of the test requires a determination of whether there is a "reasonable expectation" that the wrong will be

1

repeated. *Id.* Both elements are present here. Nonetheless, Plaintiffs' seek to create an issue where one no longer exists, by arguing that the existing circumstances have not irrevocably eradicated the effect of the wrongs complained of or that those wrongs could be repeated. A three-point analysis demonstrates that Plaintiffs' position is untenable:

    1. The election of the Board Nominees, rather than Mr. Bender's Nominees, at the 2005 Annual Meeting of Bank Shareholders is the "effect" of the wrongdoing alleged by Plaintiffs.

    2. As a consequence of interim relief and subsequent events, the results of the 2005 election have been irrevocably eradicated, in that none of the Board Nominees remain on the board. A new election must be held and there is no obstacle to Mr. Bender seeking and obtaining the election of his nominees at that new meeting.

    3. Given the current circumstances, there is no reasonable expectation, or even possibility, that the wrongs complained of will be repeated in connection with the new election. None of the Defendants is in a position to participate in or affect the new election in any way.

**I. The Election of the Board Nominees is the "Effect" of the Alleged Wrongdoing**

    **A. Plaintiffs Allege that the Election is the Effect of the Alleged Wrongdoing**

Contrary to the allegations of their First Amended Complaint, Plaintiffs argue that the relief they seek is "broader" than the relief they already have. (Opposition, pp. 7-8) They imply that the "taint" about which they complain and for which they seek relief is broader than the allegedly tainted 2005 election. Yet, Plaintiffs' First Amended Complaint makes it absolutely clear that the "effect" of the wrongs complained of is the election of the Board Nominees, rather than Mr. Bender's Nominees, at the 2005 Annual

Meeting of Bank Shareholders.  Plaintiffs' background allegations, and the allegations set forth in each of the four counts directed to the Defendants, make this clear.  For example, Plaintiffs' allege that:

- "Defendants Wilmot, Jordan and Batties were **determined to prevent the election of the Bender Nominees**, as the first step in ridding the Bank of Bender.  IN advance of the Shareholders' Meeting, the Defendants' approach was two-pronged: to sway the vote by dissemination of misleading correspondence and Proxy materials, and to buy the vote by reaching an agreement with Doley for the Participant Shares."  (First Amended Complaint, ¶ 60 (Factual Background Relating to All Counts)) (emphasis added)

- "**The goal of the foregoing plan was to defeat the election of the Bender Nominees.**  To consummate the plan, several additional steps had to be accomplished at (or after) the Shareholders Meeting:  the Participant Shares had to be voted for the Management Nominees; the broker votes without instructions had to be voted for the Management Nominees; and the Master Ballot proxies had to be allocated after the close of the Meeting."  (First Amended Complaint, ¶ 64 (Factual Background Relating to All Counts)) (emphasis added)

- The Defendants' violations of Section 13(d) deprived all IFSB shareholders from information necessary to ensure a fair vote at the Shareholders' Meeting, and deprived the Plaintiffs of an election where the Bender Nominees were fairly considered by all shareholders.  **According, the election of the Management Nominees is irreparably tainted, and the results of the meeting are therefore void.**  Plaintiffs (and other shareholders and the investing public) have been, are being, and will continue to be irreparably harmed, in that they are left without material information, to which they are lawfully entitled, regarding the true interests and purposes of Defendants' efforts to control IFSB for their own interests, and to defeat the Bender Nominees.  **The information which was not provided in any Schedule 13D was essential to informed shareholders decisions with respect to voting IFSB share at the Shareholder Meeting,** and were also material to Bender's own communications with the shareholders.  (First Amended Complaint, ¶ 63 (Count I – Violations of Section 13(d) of the Exchange Act)) (emphasis added)

- The **false and misleading statements** identified above were material to the shareholders in determining whether to vote, and if so, how to vote, and thus, they have **tainted the shareholder vote at the October 25, 2005 meeting**.  (First Amended Complaint, ¶ 93 (Count II – Violations of Section 14(a) of the Exchange Act)) (emphasis added)

- The Director Defendants and Defendant Batties' **violations of Section 14(a) deprived all IFSB shareholders from information necessary to ensure a fair vote at the Shareholders' Meeting**, and deprived the Plaintiffs of an election where the

3

137381v1

Bender Nominees were fairly considered by all shareholders. **Accordingly, the election of the Management Nominees is irreparably tainted, and the results of the meeting are therefore void**. Plaintiffs (and other shareholders and the investing public) have bee, are being, and will continue to be irreparably harmed, in that they are left without material information, to which they are lawfully entitled, regarding the true interests and purposes of the Director Defendants and Defendants and Defendant Batties' efforts to control IFSB for their own interests, and to defeat the Bender Nominees. **The misstatements and omissions in the Proxy Materials and May 4th and October 21st letters were material and were essential to informed shareholder decisions with respect to voting at the Shareholder Meeting**. (First Amended Complaint, ¶ 94 (Count II – Violations of Section 14(a) of the Exchange Act)) (emphasis added)

- Count III of Plaintiffs' First Amended Complaint is captioned, "**Other Violations Tainting Election of Management Nominees** – Director Defendants and Defendant Batties" (emphasis added)

- As a result of the Director Defendants' and Defendant Batties' actions in failing and refusing to conduct the election in a fair manner, the Defendants have deprived Plaintiffs and the other shareholders of a fair vote for the election of directors. Accordingly, **the election of the Management Nominees is irreparably tainted, and the results of the meeting are therefore void. Plaintiffs (and other shareholders) have been, are being, and will continue to be irreparably harmed, by the defeat of one of the Bender Nominees (George Osbourne) and the election of the Management Directors in a meeting which failed to be conducted in a proper manner**. (First Amended Complaint, ¶ 98 (Count III – Other Violations Tainting Election of Management Nominees)) (emphasis added)

- The **conduct described in Counts I through III above was for the express purpose of causing the defeat of the two Bender Nominees, and the election of the Management Nominees**. Upon information and belief, and in furtherance of the plan to defeat the Bender Nominees, … (First Amended Complaint, ¶ 102 (Count IV – Breach of Fiduciary Duty by Director Defendants and Batties and Conspiracy to Breach fiduciary Duty)) (emphasis added)

- The agreement to purchase the Participant Shares was an instrumental part of the agreement of the Director Defendants and Defendant Batties to **defeat the Bender Nominees**, … (First Amended Complaint, ¶ 103 (Count IV – Breach of Fiduciary Duty by Director Defendants and Batties and Conspiracy to Breach fiduciary Duty)) (emphasis added)

- In violation of the fiduciary duty owed to the Plaintiffs, the Director Defendants and Batties' **sole purpose** in engaging in the above-described violations of the federal securities and banking laws, as well as IFSB By-laws and procedures, **was to prevent any control of IFSB from passing to Plaintiffs**. (First Amended Complaint, ¶ 105 (Count IV – Breach of Fiduciary Duty by Director Defendants and Batties and Conspiracy to Breach fiduciary Duty)) (emphasis added)

137381v1

Plaintiffs even quote some of the foregoing language in their own opposing memorandum, further establishing that the taint on the 2005 election is the gravamen of their case. (Opposition, pp. 8 – 9) Every allegation is focused exclusively and directly at the 2005 election of directors.

### B. Plaintiffs Seek Remedies Reversing the Outcome of the Election

The remedies which Plaintiffs seek in their First Amended Complaint confirm that it is the allegedly "tainted" election of board members at the 2005 Annual Meeting of Shareholders which is the focus of this entire case:

- Requiring Director Defendants and Defendant Batties to comply with Section 13(d), fully disclosing their plans and purposes concerning IFSB;

- Requiring Director Defendants and Defendant Batties to comply with Section 14(a), to disclose to shareholders, in any future solicitations, the falsity and misleading nature of the 2005 Proxy Materials, the May 2005 Committee to Save Correspondence, and the October 2005 Letter to Shareholders, and the Bank's involvement in such letters;

- Preventing Director Defendants from causing the Bank to hold an Annual or Special Shareholders Meeting;

- Requiring the Defendants and the Bank to conduct any future Shareholders Meeting in conformance with Robert's Rules and the Bank's By-laws, and to enjoin further allocation of votes after the closing of the polls, and to enjoin the counting of broker routine votes for management nominees in absence of express direction from the beneficial shareholder; and

- Neutralizing all of the Participant Shares and the Thompson Share in any future election of Directors. (First Amended Complaint, pp. 45 – 47)

In their Opposing Memorandum, Plaintiffs provide a concise description of the relief they seek. Count IV of their Amended Complaint is a claim for breach of fiduciary duty. That count combines all of the other wrongful conduct about which Plaintiffs complain and asserts that the conduct constituted a breach of Defendants' fiduciary

duties. (First Amended Complaint, ¶ 102) In their Opposition, Plaintiffs flatly state that, "Bender seeks permanent injunctive relief to cure the taint of those breaches: including voiding the election results, and neutralizing the Participant Shares and the Thompson Shares in any future election of Directors." (Opposition, p. 9) Plaintiffs have already garnered all of that relief from these Defendants. In the unlikely event that Plaintiffs can continue to assert claims and get relief against third-parties to this action, such claims do not create a dispute with these Defendants.

Based on what they said in their pleadings and in their Opposing Memorandum, Plaintiffs' sole aim is to set aside the results ("taint") of the 2005 election, hold a new election and neutralize Defendants' ability to vote in that new election. Any claim that they seek more than that is a recent development and disingenuous at best.

### D. Plaintiffs Lack Standing to Pursue the Bank's Claims

Plaintiffs' reliance on Count VI of their First Amended Complaint as an example of an ongoing dispute with these Defendants is misplaced. First, the Bank has refused to advance attorneys fees to the Defendants since the Court's July 21 Order. Similarly, the OTS has forbidden the Bank to advance attorneys' fees. Thus, Plaintiffs already have the relief they seek. Second, Plaintiffs argue that any attempt by the Bank to recover fees already advanced somehow creates a dispute between Plaintiffs and Defendants. It does not. The Court will recall that, in Count VI, Plaintiffs seek a declaration that the Bank be restrained from indemnifying the Defendants. (First Amended Complaint, p. 43, Count VI) As Plaintiffs correctly point out in footnote 8 of their Opposition, the Court has not yet ruled on Defendants' Motion to Dismiss this Count on the grounds that Plaintiffs lack standing to bring the claim. In that same footnote, Plaintiffs advise that the Bank intends

to bring a cross-claim against Defendants seeking a "declaration regarding the absence of grounds for indemnification under 12 CFR § 545.212, and return of the litigation expenses that previously were advanced on behalf of the Individual Defendants." (Opposition, p. 10, n. 8)  Without debating the merits of a claim by the Bank against these Defendants, Plaintiffs current position makes it irrefutably clear that the claim, to the extent it is ripe, is one owned by the Bank, not Plaintiffs.  Plaintiffs do not have standing to bring the claim, unless it was brought derivatively.  For example, Plaintiffs repeatedly refer to this claim as one belonging to the Bank.  (*See* Opposition "a final finding as to the Defendants' breach of fiduciary duty will establish **IFSB's entitlement to** seek return of the funds that were advanced on behalf of the Defendants in this action," (p. 9); "When **IFSB seeks reimbursement** of funds advanced on behalf of the Defendant Directors and Batties, . . . " (p. 9); and "IFSB will have a more difficult case to undertake . . ." (p.10))  (emphasis added)  Given these tacit admissions that the claims set forth in Count IV belong to the Bank, Defendants respectfully suggest that their original motion to dismiss this claim should now be granted.

## II. The Results of the "Tainted" Election Have Been Irrevocably Eradicated

### A. The Results of the Election Have Been Reversed

All of the six original defendants, including the two elected to the Bank Board of Directors in the 2005 Election, have resigned from the Board.  Thus, the results of the "tainted" election have been reversed.

### B. A New Election is Necessary

137381v1

Given the existing Board vacancies, the current Bender-controlled Board may fill those vacancies pending a new election. (Article III, Section 11 of the Amended and Restated By-law of the Bank) In any event, a new election will be necessary.

### C. The Bender-Controlled Board will Conduct the New Election

There can be no dispute that the conduct of the new election, including the composition of the board proxy solicitation materials, will be the responsibility, and under the auspices, of the present Bender-controlled Board of Directors. That Board, not Defendants, will prepare proxy solicitation materials for delivery to the shareholders. Plaintiffs' arguments that the OTS may not approve the content of proxy solicitation materials (Opposition, p. 2, n. 2) are neither an issue currently before this Court, nor one that is ripe. The assertion is also entirely speculative. In any event, should the Board or Mr. Bender have a dispute with the OTS regarding the content of proxy materials, they have adequate remedies clearly set out in the applicable regulations allowing them to seek judicial relief.

### D. Plaintiffs Already Have all the Relief They Seek

Given the foregoing, and for the reasons set forth in Defendants' opening memorandum, it is apparent that Plaintiffs already have all of the relief they request and more. None of the six original defendants remain on the Board. None of the Defendants can or will participate in the scheduling or conduct of the next Annual Meeting of Shareholders where new board members will be elected. Mr. Bender's Board members will control that process from start to finish. None of the Defendants can or will participate in the preparation of proxy materials or solicit proxies, while Mr. Bender's hand-selected Board will control that process. None of the Defendants will be able to

vote at the new election. The members of Mr. Bender's Board will be able to solicit and then vote proxies for Board nominees. The existing circumstances have provided Plaintiffs with all the relief they sought.

### III. There is No Reasonable Expectation the Alleged Wrongs will be Repeated

The second prong of the test for mootness looks to whether there is a "reasonable expectation" that the wrong complained of will be repeated. Existing circumstances amply demonstrate that the requirement is met in this case.

#### A. Plaintiffs Misconstrue the Standard

Plaintiffs incorrectly rely on cases arising from election disputes to impose a higher standard than is imposed by law. (Opposition, p. 16) Plaintiffs argue that, since Defendants or others may be "capable" of wrongful conduct in the future, that creates a controversy now. (*See* Opposition, pp. 2, 15) This is not the law.

The Supreme Court applies a two-prong test to determine whether the "capable of repetition, yet evading review" exception applies. A court can exercise jurisdiction only if: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. *Wisconsin Right to Life, Inc. v. Federal Election Comm'n*, 2006 WL 3746669, *4 (D.D.C. 2006) (citing *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 774 (1978)). In this case, Plaintiffs did not seek injunctive relief until well after the 2005 board of directors election. As set forth in Defendants briefs, the results of the 2005 election have been entirely reversed.

Even under the cases cited by Plaintiffs, Courts must determine whether there is a reasonable expectation that the same complaining party will be subjected to the same

9

action again in order to find the case moot. *Id.* There is no law suggesting that the "capable of committing a wrong standard" applies in any case. If there were, no case would ever be moot. The standard is the reasonable expectation that Plaintiffs will be subject to the same actions again. They will not.

### B. Plaintiffs Will Not and Cannot Repeat the Alleges Wrongs in Any Event

Regardless of what standard is applied, it is clear that the conduct complained of will not, and indeed, cannot recur. Consider the following:

- Plaintiffs complain that Defendants failed to comply with Rule 13 (d) prior to the 2005 Meeting by failing to file the necessary disclosure of their intentions. (Count I) Yet, Defendants no longer own any shares in the Bank and have publicly filed a sworn affidavit saying that they have no intention to serve as officers or directors of the Bank now or in the future, have no intention to purchase any shares of Bank stock now or in the future, have no present or future plan or purpose concerning the Bank, and have no intention of contacting any shareholder of Bank or Bank Board member to discuss bank-related business. Their sworn intentions could not be any more clear. The need for further action by this Court simply does not exist.

- Plaintiffs complain that, in connection with the 2005 Meeting, Defendants included false and misleading statement in the Bank Proxy Solicitation Materials as well as other letters sent to shareholders. (Count II) There is no dispute that Defendants will be completely unable to participate in any way in the preparation or dissemination of the Bank's Official Proxy Solicitation Materials. (*See* Opposition, p. 15, ". . . except for issuing official bank proxy materials . . ." ) That task will be left to the current, Bender-controlled Board. Moreover, each of the Defendants has signed a sworn affidavit

indicating their intent not to participate in the affairs of the Bank.[1]  Even if these Defendants wished to contact Bank Shareholders, because they no longer own shares, they do not have access to current Shareholders Lists.  (Article II, Section 7 of the Amended and Restated By-laws of the Bank).

- Plaintiffs complain that Defendants failed to comply with applicable Bank by-laws and conducted the 2005 Meeting and election in an unfair manner.  (Count II)  Again, there can be no dispute that, as non-shareholders, Defendants will be unable to attend the next Annual Meeting of Bank Shareholders.  Similarly, as non-Directors, they cannot and will not have any role in the scheduling or conduct of the meeting.  (*See,* Opposition, p. 15 " . . . and running the next annual meeting . . . ")  The conduct of the meeting will be the responsibility of the current Board.

- Finally, Plaintiffs complain that Defendants breached their fiduciary responsibilities in connection with the 2005 Meeting and resulting election.  Defendants will have no role in the next meeting and election.  Simply put, they will have no opportunity to breach any duty in connection with the Bank, even assuming such a duty is still owed, which it is not.

## CONCLUSION

For these reasons, and for the reasons set forth in their original memorandum, Defendants respectfully suggest that Plaintiffs' First Amended Complaint against them should be dismissed as moot.

Respectfully submitted,

---

[1] In any event, fashioning the relief which Plaintiffs appear to seek – a permanent "gag order" prohibiting these defendants from ever saying anything about the Bank or Mr. Bender ever again – would be both impossible and an unconstitutional prior restraint.  It would also involve the Court in the internal operations of the Bank to an unprecedented extent.

137381v1

January 5, 2007

SHOOK, HARDY & BACON, LLP

_____
Peter E. Strand
Carlos E. Provencio
Christine S. Hudson
Hamilton Square
600 14th Street, N.W.
Suite 800
Washington, DC 20005
Phone: 202-783-8400
Fax: 202-783-4211

Attorneys for the Individual Defendants

12

137381v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2007, a true and complete copy of the forgoing **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR MOOTNESS** was sent electronically to the following:

>Dale A. Cooter, Esquire
>Cooter, Mangold, Tompert and Wayson, L.L.P.
>5301 Wisconsin Ave, NW
>Suite 500
>Washington, D.C.  20015
>T: (202)537-0700
>F: (202)364-3664
>*Attorneys for Plaintiffs*
>
>Vann Canada, Esquire
>Miles & Stockbridge
>11 North Washington Street
>Suite 700
>Rockville, Maryland 20850
>*Attorney for Independence Federal Savings Bank*

>                        /s/
>Attorneys for the Appellants

137381v1