UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORTON A. BENDER, et al.,       )<br>                                                   )<br>            Plaintiffs,                      )<br>                                                   )<br>    v.                                            )<br>                                                   )<br>CAROLYN D. JORDON, et al.,    )<br>                                                   )<br>            Defendants.                  )<br>_____)  | C. A. No. 1:06cv00092<br>Honorable Rosemary M. Collyer |

### DEFENDANT, INDEPENDENCE FEDERAL SAVINGS BANK'S MOTION TO MODIFY PREMILINARY INJUNCTION

**COMES NOW** the Defendant, Independence Federal Savings Bank ("IFSB" or the "Bank"), by and through its undersigned counsel, pursuant to Fed. R. Civ. Proc. 7 and LCvR 7, and files this Motion to Modify Preliminary Injunction and for grounds in support thereof states as follows:

1. IFSB is presently seeking a modification of this Court's July 21, 2006 Order [Dkt. #51], which granted in part and deferred in part Plaintiffs' application for a preliminary injunction, and which enjoined IFSB and its Board of Directors from disseminating proxy materials to shareholders and holding shareholders' meetings until further order of the Court (the "Preliminary Injunction").

2. Because IFSB has been unable to hold its annual meeting and disseminate proxy materials to shareholders, IFSB has been unable to comply with certain regulations promulgated by the Office of Thrift Supervision ("OTS"), as well as the Marketplace Rules of the Nasdaq Stock Market ("Nasdaq"). Consequently, Nasdaq has made a determination to delist IFSB's securities, and the OTS, which has designated IFSB to be in "troubled condition," has required

IFSB to set forth a detailed timeline setting forth IFSB's plan for both removing all legal impediments to holding the Annual Meeting, and holding the Annual Meeting, on or before May 1, 2007, to prevent delisting by Nasdaq and to comply with OTS regulations.

3.      Since the issuance of the Preliminary Injunction, all of the original six individual Defendants have resigned from their positions with the Bank.  The remaining individual Defendants, Thomas L. Batties, David Wilmot and Carolyn D. Jordan have a pending Motion to Dismiss in which they have each submitted Affidavits to this Court attesting to certain facts describing their efforts to sever their ties with the Bank.

4.      Consequently, the facts considered by this Court when it issued the Preliminary Injunction have changed significantly.  The harm that the Bank has and will suffer by virtue of its inability to hold an annual meeting has greatly increased, while any potential harm that the Plaintiffs would suffer has been, at least, temporarily abated.

5.      Pursuant to LCvR 7(m), the undersigned counsel discussed the filing of the present Motion by telephone with counsel for Plaintiffs, Morton A. Bender and Grace Bender on February 9, 2007, and counsel for Plaintiff indicated that he would not consent to a modification of the Preliminary Injunction at that time.

6.      Pursuant to LCvR 7(m), the undersigned counsel discussed the filing of the present Motion by telephone with counsel for Defendants, Thomas L. Batties, David Wilmot and Carolyn D. Jordan, on January 31, 2007.  By subsequent e-mail communications on February 15, 2007, counsel for Defendants has indicated that his clients do not object to the relief requested herein.

7.      IFSB adopts and incorporates the attached Memorandum of Points and Authorities in Support of its Motion to Modify Preliminary Injunction.

WHEREFORE, Independence Federal Savings Bank, respectfully requests an Order from this Court modifying the July 21, 2006, Preliminary Injunction to allow IFSB to disseminate proxy materials to hold its annual meeting and to comply with the OTS Regulations and the Marketplace Rules of Nasdaq.

        Respectfully Submitted,

        MILES & STOCKBRIDGE P.C.

        /s/ G. Vann Canada, Jr.
        _____
        G. VANN CANADA, JR. (D.C. Bar #366414)
        JAMES A. SULLIVAN, JR. (D.C. Bar #475145)
        11 North Washington Street
        Suite 700
        Rockville, Maryland 20850
        Telephone: (301) 762-1600
        Fax: (301) 762-0363
        Attorneys for Defendant,
        Independence Federal Savings Bank

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MORTON A. BENDER, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C. A. No. 1:06cv00092 |
| ) | Honorable Rosemary M. Collyer |
| **CAROLYN D. JORDON, et al.,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### DEFENDANT, INDEPENDENCE FEDERAL SAVINGS BANK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY PREMILINARY INJUNCTION

**COMES NOW** the Defendant, Independence Federal Savings Bank ("IFSB" or the "Bank"), by and through its undersigned counsel, pursuant to Fed. R. Civ. Proc. 7 and LCvR 7, and files this Memorandum of Points and Authorities in Support of its Motion to Modify Preliminary Injunction and for grounds in support thereof states as follows:

**I.   INTRODUCTION**

IFSB is presently seeking a modification of this Court's July 21, 2006 Order, which granted in part and deferred in part Plaintiffs' application for a preliminary injunction, and which enjoined IFSB and its Board of Directors from disseminating proxy materials to shareholders and holding shareholders' meetings until further order of the Court (the "Preliminary Injunction"). The facts considered by this Court when it issued the Preliminary Injunction have changed significantly. As set forth in more detail below, the harm that the Bank has and will suffer by virtue of its inability to hold an annual meeting has greatly increased, while any potential harm that the Plaintiffs would suffer has been, at least, temporarily abated.

II.     **BACKGROUND**

In the present case, Plaintiffs, Morton A. Bender and Grace Bender (collectively the "Plaintiffs" or "Bender"), sued certain Directors and Board members of IFSB (collectively, the "Director Defendants") and its former Acting President and Chief Executive Officer alleging violations of numerous securities laws and IFSB's bylaws by their actions leading up to, and in conducting, a shareholders' meeting in October of 2005. IFSB was named as a nominal Defendant in the suit. The Plaintiffs sought, <u>inter alia</u>, preliminary relief in the form of an injunction preventing the dissemination of proxy material to IFSB shareholders and the holding of any annual or special meetings of shareholders, which this Court granted pursuant to its Memorandum Opinion [Dkt.#50] and Order [Dkt.#51] entered on July 21, 2006.

In its Memorandum Opinion, the Court concluded, <u>inter alia</u>, that the Plaintiffs were likely to succeed on the merits of certain claims in that: 1) the Director Defendants, through their chairman and vice chairman, acted as a group to acquire certain shares and voting power to solidify their control of the IFSB Board; acquired a beneficial ownership of said shares and voting power, which constituted nearly 10% of the Bank's outstanding shares, and; violated § 13(d) of the Exchange Act by failing to file the required Schedule 13D (<u>see</u> Memorandum Opinion at 28-31 [Dkt.#50]); 2) sent proxy solicitations containing multiple false and misleading material statements which led to election of the Management Nominees in violation of § 14(a) of the Exchange Act (<u>see</u> Memorandum Opinion at 34-44 [Dkt.#50]); and 3) violated § 45 of Robert's Rules by unilaterally allocating proxies after the polls closed (<u>see</u> Memorandum Opinion at 48-52 [Dkt.#50]).

In reaching its decision, the Court balanced the equitable factors as required in the consideration of preliminary injunctive relief. The Court concluded that the Plaintiff and all

shareholders suffered irreparable harm because they were "deprived of their statutory rights to receive accurate information and to be free of deceptive information, bearing on their investment and voting decisions. (See Memorandum Opinion at 54 [Dkt.#50]). The Court further concluded that Plaintiff "was the specific target of Defendants' machinations, and was unnecessarily frustrated in his attempts to participate in corporate governance." (See Memorandum Opinion at 54-55 [Dkt.#50]). The Court found that "these harms are not only actual and imminent, they are realized and ongoing. A vote based on this information has taken place; new, possibly illegitimate, directors have been installed; and a second election looms." (See Memorandum Opinion at 55 [Dkt.#50]). "This harm is compounded where, as here, an uninformed election has come to pass, and another election is imminent. Allowing the second election to go forward, where there is a substantial likelihood that the prior one was at best tainted, at worst void, would helplessly complicate matters, perhaps making it impossible to `unscramble the eggs' should the `post-hoc reorganization of a standing board' prove necessary." (See Memorandum Opinion at 55-56 [Dkt.#50]) (citation omitted). "In view of the impending second election, which if allowed to proceed may hopelessly jumble the Board's membership, injunctive relief remains the preferred remedy here, and is necessary to protect investors and effectuate the purposes of the Exchange Act." (See Memorandum Opinion at 56 [Dkt.#50]).

      The Court recognized that "delaying the next shareholders' meeting would not come without cost. It would add further uncertainty to the leadership of a troubled institution. And `it is axiomatic that enjoining a shareholder[s'] meeting may affect the price of a company's stock.' But these prospects are insufficient to allow a tainted Board to become further entrenched by a second election." (See Memorandum Opinion at 57 [Dkt.#50])(citations omitted). The Court

further concluded that a preliminary injunction would serve the public interest in effective enforcement of the securities laws. (See Memorandum Opinion at 57-58 [Dkt.#50]).

Since the issuance of the Preliminary Injunction, all of the original six individual Defendants have resigned from their positions with the Bank.[1] The remaining individual Defendants, Thomas L. Batties, David Wilmot and Carolyn D. Jordan have a pending Motion to Dismiss in which they have each submitted Affidavits to this Court attesting to certain facts describing their efforts to sever their ties with the Bank. They have each indicated, inter alia, that they have no intentions to serve as directors or officers of IFSB; purchase shares of IFSB stock; attend or vote at IFSB shareholders' meetings; draft proxy materials; contact any shareholders or board members; or, affect or control any decisions made by the Board of Directors. (See Defendants' Motion to Dismiss [Dkt.#74]).

At the same time, certain events have transpired since the issuance of the Preliminary Injunction, which seriously threaten the viability of IFSB, its securities, and its shareholders' interests. On October 5, 2006, IFSB received a letter by facsimile from Douglas D. McKenney, CFA, the Director of Listing Qualifications for The Nasdaq Stock Market, Inc., advising IFSB that it "had not yet filed a proxy statement or other information regarding its annual meeting for the fiscal year ended December 31, 2005, as required by Marketplace Rules 4350(e) and 4350(g) (the "Rules")." (Footnotes omitted). Mr. McKenney further stated that "[i]n order to comply with the Rules, the Company must solicit proxies *and hold its annual meeting* of shareholders for

---

[1] Director Defendants, William B. Fitzgerald, IV, Eugene K. Youngentob and Michael J. Cobb were dismissed without prejudice from this case by this Court's Minute Order Entry dated October 2, 2006. Defendant, Thomas L. Batties, who resigned from his position as President of the Bank, subsequently entered into a contract with IFSB to work in an advisory role; however, that contract ended on December 31, 2006. (See Defendants' Motion to Dismiss at 5 [Dkt.#74]). On August 16, 2006, Defendant, Carolyn D. Jordan was removed as Chairman of the Board and was replaced by Elliott Hall. On the same date, Defendant, David Wilmot was removed as Vice-Chair of the Board and replaced by Robert Isard. Both Ms. Jordan and Mr. Wilmot have since resigned from their positions on the Board and have apparently authorized the sale of any their shares of Bank stock. (See Defendants' Motion to Dismiss at 7 [Dkt.#74]).

the fiscal year ended December 31, 2005, no later than December 31, 2006. If it does not solicit proxies *and hold its annual meeting* on or before December 31, 2006, its securities will be immediately subject to delisting." (Emphasis in original). A true and correct copy of the October 5, 2006, Nasdaq Letter is attached hereto and incorporated herein as **Exhibit 1.**

Because of the existence of the Preliminary Injunction in this case, IFSB was unable to solicit proxies and hold its annual meeting of shareholders for the fiscal year ended December 31, 2005. Consequently, on January 5, 2007, IFSB received notice from Nasdaq that it intended to delist IFSB's securities from the Nasdaq Stock Market due to its failure to comply with Nasdaq Marketplace Rules 4350(e) and 4350(g). On January 8, 2007, IFSB requested a hearing in response to Nasdaq's Staff Determination Letter, and on the same date, Nasdaq's Office of General Counsel sent a letter to IFSB giving formal notice that a Nasdaq Listing Qualification's Panel will consider IFSB's appeal of the Nasdaq Staff's determination to delist IFSB's securities from the Nasdaq Stock Market due to rule deficiencies for failure to comply with Nasdaq Marketplace Rules 4350(e) and 4350(g).

On January 31, 2007, the Office of Thrift Supervision sent a letter to IFSB which stated, in pertinent part, as follows:

> On July 21, 2006, U.S. District Court for the District of Columbia (District Court) issued a preliminary injunction in the case entitled, <u>Bender v. Jordan</u>, Civil No. 1:06-cv-00092-RMC (D.C.D.C.), enjoining the Savings Bank from disseminating proxy materials and holding its shareholders' meetings without court approval (Injunction). The Savings Bank has thus not yet held the required shareholders' meeting.
>
> Events since the July 21, 2006 order appear to have eliminated the need for continuing to enjoin the Annual Meeting. In addition, by letter dated January 5, 2007, the National Association of Securities Dealers Automated Quotations (Nasdaq) notified the Savings Bank that it intended to delist the Savings Bank's stock due to the Savings Bank's failure to hold the Annual Meeting in 2006, in violation of Nasdaq's listing requirements.

>The likelihood that the Nasdaq will delist the Savings Bank's stock presents concerns for the Savings Bank and its shareholders. OTS has designated Independence to be in "troubled condition." If the stock is delisted, it may make it more difficult for the Savings Bank to raise capital and it will be more difficult for shareholders and potential shareholders to buy and sell the Savings Bank's stock at prices set by an open market.
>
>In light of the above, as the Savings Bank's securities and safety and soundness regulator, OTS believes that the Annual Meeting should be held. However, OTS recognizes that no annual meeting can be held nor may proxy materials be disseminated unless and until the District Court specifically authorizes the Savings Bank to do so or vacates the Injunction with regard to the Annual Meeting and proxy restrictions.
>
>Therefore, OTS requires the savings Bank to submit to OTS within 7 calendar days of receipt of this letter a detailed timeline setting forth the Savings Bank's plan for both removing all legal impediments to holding the Annual Meeting, and holding the Annual Meeting, on or before May 1, 2007, to prevent delisting by Nasdaq and comply with OTS regulations. Specifically, the detailed timeline should include, but not limited to, the Savings Bank's plan for removal of the Injunction currently enjoining the Savings Bank from holding the Annual Meeting, as well as the projected date of the proposed Annual Meeting, the date by which notice of the meeting and proxy materials will be prepared and submitted for regulatory review, assuming the District Court removes the Injunction.

A true and correct copy of the January 31, 2007, OTS Letter is attached hereto and incorporated herein as **Exhibit 2** (footnote omitted)**.**

## III.    ARGUMENT

Interlocutory orders are subject to modification at any time prior to final judgment. Langevine v. District of Columbia, 106 F.3d 1018, 1023 (D.C. Cir. 1997). "'[S]o long as the court has jurisdiction over an action, it should have complete power over interlocutory orders made therein and should be able to revise them when it is consonant with equity to do so.'" Schoen v. Washington Post, 246 F.2d 670, 673 (D.C. Cir. 1957)(quoting John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 90-91, 42 S.Ct. 196, 199, 66 L.Ed. 475 (1922)(internal quotation marks and emphasis omitted).

Absent an appeal, a district court has complete power over its interlocutory orders, including preliminary injunctions. <u>Decatur Liquors, Inc. v. District of Columbia</u>, 2005 WL 607881, at *2 (D.D.C. March 16, 2005). "Accordingly, it is normally within the discretion of the district court to dissolve an injunction where, for example, `changed circumstances eviscerate the justification therefor . . . .'" <u>Id</u>.(quoting <u>SEC v. Vision Communications</u>, 1995 U.S. Dist. LEXIS 2868, at *6 (D.D.C. March 6, 1995). Modification of a preliminary injunction is proper where there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable. <u>Favia v. Indiana University of Pennsylvania</u>, 7 F.3d 332, 337 (3d Cir. 1993).

The power of a court of equity to modify a decree of injunctive relief is "'long-established, broad and flexible.'" <u>U.S. v. Western Electric Company, Inc.</u>, 46 F.3d 1198, 1202 (D.C. Cir. 1995) (quoting <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 706 F.2d 956, 967 (2d. Cir.), <u>cert</u>. <u>denied</u>, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 562 (1968)). A court "has the power to modify [an injunction] from time to time and adjust it to the necessities of a shifting situation." <u>In re Certain Carriers Represented by Eastern, Western and Southeastern Carriers' Conference Committees</u>, 241 F. Supp. 1004, 1005 (D.D.C. 1965). At the request of an enjoined party, a court may relieve the party of the decree's constraints. <u>Western Electric</u>, 46 F.3d at 1202.

Applying these principles to case before the Court, IFSB respectfully requests that this Court re-examine the equitable factors which led to the issuance of the Preliminary Injunction and to consider the factual circumstances which have changed since that time. As set forth in greater detail above, because IFSB has been unable to hold its annual meeting and disseminate proxy materials to shareholders, IFSB has been unable to comply with certain regulations

promulgated by the Office of Thrift Supervision ("OTS"), as well as the Marketplace Rules of the Nasdaq Stock Market ("Nasdaq"). Consequently, Nasdaq has made a determination to delist IFSB's securities, and the OTS, which has designated IFSB to be in "troubled condition," has required IFSB to set forth a detailed timeline setting forth IFSB's plan for both removing all legal impediments to holding the Annual Meeting, and holding the Annual Meeting, on or before May 1, 2007, to prevent delisting by Nasdaq and to comply with OTS regulations.

Thus, IFSB is presently in an untenable position of having to comply with the Preliminary Injunction and, at the same time, violating the OTS regulations and Nasdaq's Marketplace Rules. Although the Court previously considered the effects of a delay in holding shareholders' meetings caused by the Preliminary Injunction, at no time was it ever contemplated that Nasdaq would delist IFSB's securities. Clearly, the Bank and its shareholders will suffer irreparable harm if its securities are delisted by Nasdaq. Such a circumstance would undoubtedly cause the securities to lose substantial value and potentially threaten the very existence of the Bank. As the OTS indicated, "[i]f the stock is delisted, it may make it more difficult for the Savings Bank to raise capital and it will be more difficult for shareholders and potential shareholders to buy and sell the Savings Bank's stock at prices set by an open market." See Exhibit 2. Under these circumstances, IFSB respectfully requests that the Court modify the Preliminary Injunction so as to permit IFSB to disseminate proxy materials to hold its annual meeting for the fiscal year ended December 31, 2005.

While the potential harm to the Bank has increased by virtue of its inability to conduct an annual meeting, conversely, the harm that the Plaintiffs would potentially suffer has significantly decreased. All six of the original individual Defendants have resigned from their positions with the Bank. Three of the Defendants have been dismissed from this case, and the

remaining three Defendants have executed Affidavits attesting to the fact that they are and will not be affiliated with the Bank in any way. Although IFSB recognizes that safeguards have to be kept in place to prevent any of these individual Defendants involved in the alleged wrongdoing from participating in any fashion with the conduct of the shareholders' meeting, under these circumstances, this Court should be able to fashion a modified Order so as to allow IFSB to comply with the OTS Regulations and Marketplace Rules of Nasdaq and, at the same time, protect the interests of the Plaintiffs.

## IV. CONCLUSION

For the reasons set forth above, Independence Federal Savings Bank, respectfully requests an Order from this Court modifying the July 21, 2006, Preliminary Injunction to allow IFSB to disseminate proxy materials to hold its annual meeting and to comply with the OTS Regulations and the Marketplace Rules of Nasdaq.

Respectfully Submitted,

MILES & STOCKBRIDGE P.C.

/s/ G. Vann Canada, Jr.
_____
G. VANN CANADA, JR. (D.C. Bar #366414)
JAMES A. SULLIVAN, JR. (D.C. Bar #475145)
11 North Washington Street
Suite 700
Rockville, Maryland 20850
Telephone: (301) 762-1600
Fax: (301) 762-0363
Attorneys for Defendant,
Independence Federal Savings Bank