```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

MORTON A. BENDER, et al.,        )
                                 )
        Plaintiffs,              )
                                 )
    v.                           )
                                 )   C.A. No. 1:06cv00092
CAROLYN D. JORDAN, et al.,       )   Honorable Rosemary M. Collyer
                                 )
        Defendants.              )
_____)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IFSB'S MOTION TO MODIFY PRELIMINARY INJUNCTION**

Plaintiffs Morton Bender and Grace Bender ("Bender"), by their undersigned counsel, hereby oppose the Motion of Independence Federal Savings Bank ("IFSB") to Modify Preliminary Injunction.

**REQUEST FOR HEARING**

Although Bender opposes the relief sought by the Bank (simply to modify the preliminary injunction to allow the Annual Meeting to take place), Bender would agree to a "conditional" modification of the preliminary injunction.[1]  Bender would have

---

[1] On page 9 of its Motion to Modify, IFSB acknowledges that "safeguards would have to be in place to prevent any of these individual Defendants involved in the alleged wrongdoing from participating in any fashion with the conduct of the shareholders' meeting ... ."  The proposed Order however, is simply a broad modification of the injunction, allowing the meeting to be held.  The Court's intervention is thus required, because in prior communications, the Benders and the Individual Defendants have been unable to reach agreement on what kind of modified relief might be appropriate.

no objection to allowing the Annual Meeting to go forward prior to the trial on the merits if the Individual Defendants, and those with whom they have acted prior to the October 2005 meeting, or any others acting in concert with them, are enjoined from being involved in the meeting.  Bender thus requests that this Court hold a hearing on this matter for the determination of an appropriate order.

## BACKGROUND

IFSB seeks, at the direction of the Office of Thrift Supervision ("OTS"), to modify this Court's preliminary injunction to allow proxy materials to be disseminated, and the Annual Meeting to be held.  The motivation for the OTS directive stems primarily from the October 26, 2006 and January 5, 2007 notifications from NASDAQ that it intended to "delist" IFSB due to its failure to solicit proxies and hold its 2005 Annual Meeting prior to December 31, 2006.[2]  IFSB has appealed the NASDAQ Staff's determination, and the General Counsel of NASDAQ has given IFSB formal notification that NASDAQ's Listing's Qualification's Panel will consider the appeal.  Motion to Modify at 5.

Apparently, only the threat of NASDAQ delisting can awaken

---

[2] Of course, IFSB held a Special Meeting of the Shareholders on October 26, 2005 – which is the focus of this case and the subject of the preliminary injunction.

the OTS from its somnambulant state.[3]  On January 31, 2007, the OTS sent a letter to IFSB which stated in pertinent part:

> ***Events since the July 21, 2006 order appear to have eliminated the need for continuing to enjoin the Annual Meeting.*** In addition, by letter dated January 5, 2007, the National Association of Securities Dealers Automated Quotations (Nasdaq) notified the Savings Bank that it intended to delist the Savings Bank's stock due to the Savings Bank's failure to hold the Annual Meeting in 2006, in violation of Nasdaq's listing requirements.
>
> The likelihood that the Nasdaq will delist the Savings Bank's stock presents concerns for the Savings Bank and its shareholders. OTS has designated Independence to be in "troubled condition." ***If the stock is delisted, it may make it more difficult for the Savings Bank to raise capital and it will be more difficult for shareholders and potential shareholders to buy and sell the Savings Bank's stock at prices set by an open market.***
>
> In light of the above, as the Savings Bank's securities and safety and soundness regulator, OTS believes that the Annual Meeting should be held. However, OTS recognizes that no annual meeting can be held nor may proxy materials be disseminated unless and until the District Court specifically authorizes the Savings Bank to do so or vacates the Injunction with regard to the Annual Meeting and proxy

---

[3]  By comparison, Bender's change of control application has been pending with the agency since September 2005.  Although the application was suspended in March 2006 as a result of issues with Columbo Bank (also owned by Bender), those matters were resolved to the satisfaction of the OTS by May 2006.  Nevertheless, and in the absence of other obstacles to approval, the agency has failed to act on the application, in violation of its own regulations.  Prior to its January 31st directive to the Bank, the OTS  attempted to resolve the potential NASDAQ delisting by urging Bender to consent to a modification of the injunction, and suggesting that his position in this litigation was a factor to be considered in the context of his change of control application.  Thus, from the sidelines, the OTS has injected itself into this litigation.  If the OTS wishes to impact this proceeding, perhaps it should be a party, where its attempts at selective "regulation" will be subject to the scrutiny of the Court.

>restrictions.
>
>Therefore, OTS requires the savings Bank to submit to OTS within 7 calendar days of receipt of this letter a detailed timeline setting forth the Savings Bank's plan for both removing all legal impediments to holding the Annual Meeting, and holding the Annual Meeting, on or before May 1, 2007, to prevent delisting by Nasdaq and comply with OTS regulations. Specifically, the detailed timeline should include, but not limited to, the Savings Bank's ***plan for removal of the Injunction currently enjoining the Savings Bank from holding the Annual Meeting***, as well as the projected date of the proposed Annual Meeting, the date by which notice of the meeting and proxy materials will be prepared and submitted for regulatory review, assuming the District Court removes the Injunction.

*See* J. Ryan letter to IFSB Board of Directors, January 31, 2007, at page 2 (Exhibit 2 to Motion to Modify) (hereinafter "OTS Letter")(emphasis added). Thus, IFSB has been required by OTS to file this Motion. OTS's insistence that the annual meeting be held is motivated by the NASDAQ threat of "delisting," and based on its perception that recent "events" have "eliminated the need" for continuing to enjoin the Annual Meeting. Presumably, the "events" to which the OTS is referring are the resignations of the Defendant Directors and Batties.

**A.   PLAINTIFFS ARE WILLING TO CONSENT TO A LIMITED MODIFICATION TO THE PRELIMINARY INJUNCTION**

This Court held a status conference on August 3, 2006, and set the trial on the merits (anticipated to be two to three weeks) to begin on November 8, 2006. Immediately after the status conference, Bender sought to take additional discovery in anticipation of the trial on the merits. Individual Defendants

Carolyn Jordan, David Wilmot, Eugene Youngentob, Michael Cobb and Thomas Batties (hereinafter collectively referred to as the "Appealing Defendants"), however, filed a Notice of Appeal, and then moved this Court for a stay of further discovery and the trial on the merits. [Docket #60]. The stay was granted on August 29, 2006; this Court concluded that although the Appealing Defendants had not established their entitlement to a stay, it was in the best interest of the Bank for the litigation to be postponed until the D.C. Circuit issued its ruling on the legal issues raised in this interlocutory appeal. [Docket #65]. Immediately prior to the time their brief was due, the Appealing Defendants dismissed their interlocutory appeal (on December 31, 2006). By that time of course, the originally-scheduled November 2006 trial date was long gone, and this Court was involved (or shortly would become involved) in a protracted criminal trial. Thus, by the procedural machinations of the Appealing Defendants, it is seven months after the entry of the preliminary injunction, and Bender has not been able to obtain the permanent relief he seeks, or even do any discovery (except the continued deposition of Defendant Wilmot).

Bender cannot consent to the broad relief requested by IFSB – to modify the injunction to allow an annual meeting to occur. Although IFSB argues that allowing the meeting to occur would be

be harmless to Bender[4], such a broad modification of the injunction fails to address the taint of the prior meeting. Principally, it fails to protect Bender from renewed efforts by the Individual Defendants to spread misinformation, to defeat the new Bender nominees, and to continue their efforts with Thompson and Doley to thwart Bender, which this Court has preliminarily found to violate the securities laws.

Bender would however, agree to a modification of the preliminary injunction which enjoins the Individual Defendants, and those with whom they have acted prior to the October 2005 meeting, or any others acting in concert with them[5], from being involved in any future Shareholder's Meeting.

**B.   THE RESIGNATIONS OF THE INDIVIDUAL DEFENDANTS FROM IFSB DOES NOT PREVENT THEM FROM IN ENGAGING IN ADDITIONAL ACTIVITIES TO HARM BENDER IN THE CONTEXT OF A NEW MEETING**

IFSB argues that this Court should re-examine the

---

[4] The meeting would be conducted by the remaining directors: now-Chairman Elliott Hall, Nelson Deckelbaum, Robert Isard, and John Wilson.

[5] Given the turn of events with the Individual Defendants all resigning, the relief initially sought by Bender (and sought in the First Amended Complaint) is no longer adequate. Thus, Bender would seek leave to file a Supplemental Complaint pursuant to Fed. R. Civ. P. 15(d) to address the January resignations of Jordan, and Wilmot, and the earlier resignations of the other Individual Defendants. The Supplemental filing would deal with the changed circumstances now present: although these Defendants no longer control IFSB, and therefore will not conduct any future meeting of the shareholders, or issue the management proxy materials, Bender would seek to enjoin them from continuing their illegal activities with regard to the affairs of IFSB, and/or conspiring with others to harm Bender.

circumstances which led it to grant the preliminary injunction. As did Jordan, Wilmot and Batties in their recent Motion to Dismiss [Docket # 74], IFSB argues that with the Individual Defendants' resignations, the potential harm to Bender is eliminated, and a meeting should be allowed.  As set forth above however (and as argued previously in Bender's Opposition to Jordan, Wilmot and Batties' Motion to Dismiss [Docket #75]), a trial on the merits, or entry of an order of relief by consent, is the only way to ensure that future Bank annual meetings are not plagued by the mischief that tainted the October 2005 Meeting.  In the absence of such a final adjudication (or consent order), the Defendants, or those allied with them, will be able to further obfuscate what happened at the 2005 Meeting, and in the preliminary injunction hearings, and in the Court's preliminary injunction opinion.  Bender's rejoinder, and his own proxy materials, will be limited to "Bender believes that ..." and the "Court entered a preliminary injunction finding that ... ."  Without final findings – or an appropriate interim order now – those who oppose Bender will inevitably continue their campaign of misinformation.[6]  Here, it is clear that the Defendants'

---

[6] By way of example only, the McPhail/Douglass October 21, 2005 letter stated: "[T]he only time we are aware we got into U.S. District Court with Bender – though expensive – Independence Won, Bender Lost!"  This Court has detailed the history of the Bender/IFSB litigation in its preliminary injunction decision. *See* July 21, 2006 Memorandum Opinion ("July 21 Memorandum") [D.D.C. Docket #50], at 38 n.25.

resignations have not removed the taint of the 2005 Shareholder Meeting, the 13D violations, the proxy violations, or the effects of the Committee to Save or the McPhail/Douglas solicitations.

As set forth above, Bender will consent to modification of the preliminary injunction to allow the Annual Meeting to be held – but only to the extent that the Individual Defendants, and those acting with them, are enjoined from any participation in the process. Bender submits that such a condition is appropriate so that the taint of the prior meeting is not compounded.[7]

IFSB also relies on the affidavits of Jordan, Wilmot and Batties, which state that they do not intend to serve as officers of IFSB or buy shares of IFSB, and that they have "no present or future plan or purpose concerning IFSB" and "no intention to contact any shareholder or IFSB Board member to discuss any IFSB-related business." As the D.C. Circuit stated in *SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994):

> [i]f a defendant could survive summary judgment [for the grant of a permanent injunction] by simply submitting a self-serving statement about his desire to conform to the law in the future, it "would establish ... a ritualistic dodge around a permanent injunction on a motion for summary judgment."

*Id.* at 695 (quoting *SEC v. Murphy*, 626 F.2d 633, 656 (9th Cir.

---

[7] Clearly, if the trial on the merits had not been thwarted by the Appealing Defendants, it is likely that the Court would have made final findings by this time, with clear direction as to the status of the October 2005 Meeting, and the procedures for a future meeting.

1980)).[8]  Although not seeking summary judgment, the IFSB Motion has the potential for a similar dodge.  One only has to consider the impact of the "Committee to Save" and McPhail/Douglas solicitations to conclude that the Defendants' lack of an official role with IFSB does not establish that they will not be able to impact a future election by sending, participating in, or assisting with solicitations to the shareholders.  The proxy rules clearly apply to "solicitations"[9] without regard to whether any of these Defendants are in a position to prepare "official" proxy materials on behalf of the Bank.  The kind of conduct that caused injury here – the forming of a group, the failure to file a 13D, the complicity in the shareholder solicitations – is conduct which can occur without regard to Defendants' official position with IFSB.  Moreover, given the Court's preliminary injunction findings with regard to the credibility of the IFSB witnesses[10], Jordan, Wilmot and Batties' professions of future "uninvolvement" are simply not believable.  Except for issuing official bank proxy materials, and actually running the next

---

[8] Bilzerian's affidavit indicated that he would not violate the federal securities laws in the future.  29 F.3d at 695.

[9] Pursuant to 17 C.F.R. § 240.14a-9, no solicitation (not limited to proxy materials) may be made by means of any communication which is false or misleading, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

[10] The Court noted "the efforts of all IFSB witnesses to obscure and obfuscate ... ."  July 21 Memorandum at 31.

annual meeting, all of the conduct of which Bender complains is susceptible of repetition, without regard to whether the Defendants own stock or have an official position with the Bank.[11]  Absent a final decision on the merits in this case, any order modifying the injunction should be limited so that the Individual Defendants are not able to continue to wage their war against Bender.

C.   **THE "HARM" TO IFSB IS SOLELY AS A RESULT OF THE OTS's DECLARATION OF AN EMERGENCY**

In its January 31st letter, the OTS has required IFSB to take steps to remove "all legal impediments to holding the Annual Meeting, and holding the Annual Meeting, on or before May 1, 2007, to prevent delisting by Nasdaq and comply with OTS regulations."  Prior to January 31, 2006, however, OTS expressed no concern that the failure to hold a meeting was in violation of 12 CFR §552.6(a), and indeed (as set forth in OTS's January 31st letter), the OTS had provided temporary waivers of the regulation through August 28, 2006.  This Court's preliminary injunction was entered on July 21, 2006, prohibiting the meeting from taking place.  Until NASDAQ threatened to delist the Bank's stock however, the OTS seemed perfectly content to let this Court sort out the imbroglio that is IFSB.  Now however, OTS is concerned.

---

[11] Of course, Judy Smith and Impact Strategies had no "official position" with the Bank, but the "Committee to Save Independence" was a significant contributor to the "information that was in the mix" preceding the 2005 Shareholder Meeting.

According to the OTS:

> If the stock is delisted, it may make it more difficult for the Savings Bank to raise capital and it will be more difficult for shareholders and potential shareholders to buy and sell the Savings Bank's stock at prices set by an open market.

See OTS Letter at page 2 (Exhibit 2 to the Motion to Modify). Both of the OTS-expressed concerns are red herrings: as a troubled institution, IFSB is hardly in a position to embark on a public stock offering to "raise capital." Moreover, such a public stock offering would be cost-prohibitive to accomplish. OTS's other concern is the ability of the public to trade in open market transactions.[12] This is an illusory concern as well. As set forth in the attached Declaration of Robert Freedman, if the stock is delisted by NASDAQ, and assuming the Bank keeps up with its securities filings, it may qualify to trade "over the counter" on the NASD Bulletin Board.[13] Freedman Declaration at

---

[12] As the regulator of IFSB, the OTS does not stand in *parens patrie* to individual shareholders, whose buying and selling of IFSB shares in this thinly traded market has no impact on the financial stability of the Bank. By virtue of its January 31st directive, the OTS has forced IFSB to spend more of its resources on legal fees to file the Motion to Modify the Injunction. Of course, if the OTS were truly concerned with IFSB's financial health, it would approve Bender's change of control application, consistent with its statutory and regulatory mandate.

[13] The OTC Bulletin Board®(OTCBB) is a regulated quotation service that displays "real-time quotes, last-sale prices, and volume information in over-the-counter (OTC) securities." See www.otcbb.com/issuerinformation/inssureinfo.stm.

11

¶5. Because IFSB stock is thinly traded (Freedman Declaration at ¶6), open market transactions should not be impacted if the stock is traded over the counter rather than on NASDAQ. Moreover, the NASDAQ listing costs IFSB $27,000.00 per year; there is no charge to an issuer for quotation on the Bulletin Board. Freedman Declaration at ¶7. Bender submits that given the current situation at the Bank, the cost of that NASDAQ listing outweighs the benefit to IFSB of maintaining the listing.

## **CONCLUSION**

For the foregoing reasons, IFSB's Motion to Modify the Preliminary Injunction should be denied. Alternatively, if the injunction is modified, it should include a prohibition against the Individual Defendants (or those who have acted, or are acting, in concert with them) from participating in any way in any future meeting of IFSB shareholders.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.

　　　　　　/s/
Dale A. Cooter, Bar #277454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C.  20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Morton A. Bender and Grace M. Bender*

**CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that a copy of the foregoing *Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant IFSB's Motion to Modify Preliminary Injunction* was sent electronically via the Court's ECF system on the 21st day of February 2007, to:

>Peter Strand, Esquire
>Shook, Hardy & Bacon, L.L.P.
>Hamilton Square
>600 14th Street, N.W.
>Suite 800
>Washington, D.C. 20005-2004

>Vann Canada, Esquire
>Miles & Stockbridge
>11 North Washington Street
>Suite 700
>Rockville MD 20850

>   /s/
>Dale A. Cooter