UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MORTON A. BENDER, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C. A. No. 1:06cv00092 |
| ) | Honorable Rosemary M. Collyer |
| **CAROLYN D. JORDON, et al.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT, INDEPENDENCE FEDERAL SAVINGS BANK'S
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND
PLEADINGS TO STATE CROSS-CLAIM OUT-OF-TIME**

**COMES NOW** the Defendant, Independence Federal Savings Bank ("IFSB" or the "Bank"), by and through its undersigned counsel, pursuant to Fed. R. Civ. Proc. R. 15 and LCvR 7(d), and files this Reply Memorandum in Support of its Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time and for grounds in support thereof states as follows:

**I.    INTRODUCTION**

Defendants, Carolyn D. Jordan, David Wilmot, and Thomas L. Batties (the "Individual Defendants") have opposed IFSB's Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time on the basis that IFSB's proposed cross-claim is not ripe for adjudication and, therefore, this Court lacks subject matter jurisdiction. Specifically, the Individual Defendants maintain that the Cross-claim is not ripe because there must be a final disposition of the underlying claims between Plaintiff and the Individual Defendants before it can be determined whether or not the Individual Defendants are entitled to indemnification under 12 C.F.R. § 545.121 (the "Regulation"). The Individual Defendants further maintain that even assuming a

final disposition occurs, the Cross-claim is not ripe if "the Board has not endeavored to take the vote *required* by the Regulation." See Opposition at 10 (Emphasis in original).

As set forth in more detail below, the Individual Defendants' Opposition ignores the well-established policies underlying cross-claims filed pursuant to Fed. R. Civ. P. Rule 13(g), which permits the filing of claims that have not matured and are dependent upon the determination of issues or other features in a case. Furthermore, the Individual Defendants misconstrue the Regulation, which serves as the basis for the Bank's right to recover advanced payments of expenses from the Individual Defendants.

## II. ARGUMENT

### A. The Regulation

The relevant portions of 12 C.F.R. § 545.121 provide that:

(b) General. Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an action is brought or threatened because that person is or was a director, officer, or employee of the association, for:

> (1) Any amount for which that person becomes liable under a judgment if [sic] such action; and

> (2) Reasonable costs and expenses, including reasonable attorney's fees, actually paid or incurred by that person in defending or settling such action, or in enforcing his or her rights under this section if he or she attains a favorable judgment in such enforcement action.

(c) Requirements. Indemnification shall be made to such [person] under paragraph (b) of this section only if:

> (1) Final judgment on the merits is in his or her favor; or

> (2) In case of:

> (i) Settlement,

> (ii) Final judgment against him or her, or

2

> (iii) Final judgment in his or her favor, other than on the merits, if a majority of the disinterested directors of the savings association determine that he or she was acting in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or its members.

Section 545.121(c)(1) "provides for mandatory indemnification if there is a 'final judgment on the merits' in the director's favor. Section 545.121(c)(2) provides for permissive indemnification when the result is less favorable, and upon the approval of a majority of the disinterested directors." Harris v. Resolution Trust Corporation, 939 F.2d 926, 928 (11th Cir. 1991). "Generally, no association may <u>grant</u> indemnification other than as specified in Section 545.121(c)(2). <u>Therefore, absent the determination by the board of directors and required notice to the OTS, a director may not be indemnified in the case of a settlement, judgment against the director or judgment in favor of the director other than on the merits</u>." See OTS Opinion Letter, 1989 WL 1114183 (October 6, 1989) (emphasis supplied) attached hereto as **Exhibit 1**.

Pursuant to 12 C.F.R. § 545.121(e):

> [i]f a majority of the directors of a savings association concludes that, in connection with an action, any <u>person ultimately may become entitled to indemnification under this section</u>, the directors may authorize payment of reasonable costs and expenses, including reasonable attorneys' fees, arising form the defense or settlement of such action. Nothing in this paragraph (e) shall prevent the directors of a savings association from imposing such conditions on a payment of expenses as they deem warranted and in the interests of the savings association. Before making advance payment of expenses under this paragraph (e), the savings association will be repaid if the person on whose behalf payment is made is later <u>determined not to be entitled to such indemnification</u>.

(Emphasis supplied). This section "simply <u>permits</u> the board of directors to prepay the director's expenses <u>if the board concludes that the director may ultimately be entitled to indemnification</u>."

See OTS opinion Letter, 1989 WL 1114183 (October 6, 1989) (emphasis supplied) attached hereto as **Exhibit 1**.

**B.     Background**

The decision to advance payments to the Individual Defendants pursuant to § 545.121(e) was made by the Board of Directors at the early stages of this litigation when the Individual Defendants, including those who have since been dismissed from this case, comprised a majority of the Board and voted in favor of the advancement of said expenses.[1]  At that time, there had been no evidence entered into the record of this case and no decision by this Court on Plaintiffs' request for a Preliminary Injunction.

On July 21, 2006, this Court entered its Memorandum Opinion [Dkt.#50] and Order [Dkt.#51].  In its Memorandum Opinion, the Court concluded, inter alia, that the Plaintiffs were likely to succeed on the merits of certain claims in that: 1) the Director Defendants, through their chairman and vice chairman, acted as a group to acquire certain shares and voting power to solidify their control of the IFSB Board; acquired a beneficial ownership of said shares and voting power, which constituted nearly 10% of the Bank's outstanding shares, and; violated § 13(d) of the Exchange Act by failing to file the required Schedule 13D (see Memorandum Opinion at 28-31 [Dkt.#50]); 2) sent proxy solicitations containing multiple false and misleading material statements which led to election of the Management Nominees in violation of § 14(a) of the Exchange Act (see Memorandum Opinion at 34-44 [Dkt.#50]); and 3) violated § 45 of Robert's Rules by unilaterally allocating proxies after the polls closed (see Memorandum Opinion at 48-52 [Dkt.#50]).

---

[1] At that time, because the majority of the Board of Directors was comprised of Defendants in this litigation, the Bank joined with the Individual Defendants to argue in favor of the dismissal of the Plaintiffs' Count VI on the basis that it was not ripe under the Regulation.   Since that time, all of the Defendant Directors have resigned from their positions on the Board; the Bank has hired new counsel and is no longer affiliated in any way with the Individual Defendants or any arguments advanced by said Individual Defendants.

On August 4, 2006, John E. Ryan, Regional Director of the Office of Thrift Supervision ("OTS"), sent a letter to the "Board of Directors c/o Acting CEO E. Leroy Morris" of IFSB in which Mr. Ryan stated: "taking into consideration the weight of the findings in the Order against the Director Defendants, I have determined that it would be unsafe and unsound to permit Independence to continue to advance unsecured legal and related expenses on behalf of the Director Defendants in connection with this litigation." A true and correct copy of the August 4, 2006, OTS Letter is attached hereto as **Exhibit 2**. Mr. Ryan further required the Bank to "obtain collateral from each of the Director Defendants sufficient to ensure the reimbursement of the Bank for all legal and related expenses incurred to date, as well as sufficient to support any additional advances to cover any expenses in the future . . . ." Id. He further stated that "[u]ntil such time as sufficient collateral to cover already incurred expenses has been received and approved by OTS and the Board, no additional advancement of legal expenses should be permitted." Id.

> C. **Federal Rule of Civil Procedure 13(g) permits the filing of cross-claims that have not matured and/or are dependent upon the determination of issues or other features in the case.**

In opposing IFSB's Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time, the Individual Defendants argue that IFSB's proposed cross-claim is not ripe because there has not been a final resolution of the issues in this case so as to "trigger" the requirements of the Regulation. While IFSB generally concedes that the Individual Defendants' ultimate right to indemnification, vel non, is contingent upon a final disposition of the issues in this case under the Regulation, such a contingency should not prevent IFSB from asserting a cross-claim under Fed. R. Civ. P. Rule 13(g).

Rule 13(g) states that:

> [a] pleading may state as a cross-claim <u>any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action</u>. Such a cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

(Emphasis supplied). The fundamental policy and purpose behind a cross-claim is "to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps. In keeping with this policy, the courts have generally construed [Rule 13(g)] liberally in order to settle as many related claims as possible in a single action." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u>, § 1431 at 229 (2d ed. 1990) (footnotes omitted).

Thus, it is well-settled that Rule 13(g):

> <u>is not limited by text or purpose to definite or matured claims or causes of action. It is broad enough to include a claim of a contingent nature, the ultimate outcome of which depends upon the determination of other features or issues in the case</u>. The rule is remedial in nature, intended to promote the expeditious and economical adjudication in a single action of the entire subject matter arising from one set of facts; and it should be liberally construed to achieve that commendable objective.

<u>Providential Development Company v. United States Steel Company</u>, 236 F.2d 277, 281 (10th Cir. 1956) (emphasis supplied); <u>see also</u>, <u>Essex Builders Group, Inc. v. Amerisure Insurance Company</u>, 429 F. Supp.2d 1274, 1289 (M.D. Fla. 2005) (federal pleading rules permit the assertion of contingent cross-claims); <u>Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Secs., Inc.</u>, 823 F. Supp. 1188, 1190 (E.D. Pa. 1993)(Under Rule 13(g), a "cross-claim need not be mature at the time the cross-claim is originally asserted.").

Clearly, the claims asserted by IFSB in its Cross-claim to recover legal and related expenses advanced by IFSB on behalf of the Individual Defendants <u>in this litigation</u>, by their very nature, arise out of the same transaction and occurrence involved in the original action filed by the Plaintiffs herein. It would clearly be in the interests of judicial economy to resolve all claims together in one suit rather than to require IFSB to file a separate suit when the question of IFSB's right to recover said expenses is inescapably intertwined with this Courts factual findings and ultimate decision on the merits of the original claims.

The attempt by the Individual Defendants' to characterize IFSB's proposed cross-claim as "unripe" fails to account for the allowance of "contingent" cross-claims as set forth above. In the present case, the contingency triggering the operation of the Regulation is absolutely going to take place during the course of this case. One way or the other, there will be a final disposition of this case whether it be a final judgment in favor or against the Individual Defendants or a settlement. At that time, this Court will be empowered to decide the merits of IFSB's Cross-claim, which arises out of the same transaction and events which are involved in the underlying case between Plaintiffs and the Individual Defendants.

### D. **The Regulation does not mandate a vote on the issue of "good faith" for this Court to determine the merits of IFSB's Cross-claim to recover expenses advanced on behalf of the Individual Defendants pursuant to 12 C.F.R. § 545.121(e).**

The Individual Defendants interpret the Regulation to <u>require</u> that a vote by the disinterested directors take place to determine whether or not the Individual Defendants acted "in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or its members." See § 545.121(c)(2) Thus, the Individual Defendants argue that the Cross-claim

would not be ripe even assuming a final disposition entered in this case if "the Board has not endeavored to take the vote *required* by the Regulation." See Opposition at 10 (Emphasis in original).

Contrary to the Individual Defendants' argument, the Regulation simply does not "require" that a vote take place to determine whether or not its director should be granted indemnification under § 545.121(c)(2). Indemnification under (c)(2) is clearly "permissive." While a vote (and notice to the OTS) is required if the board decides that it wants to grant indemnification to a person that may otherwise not be entitled to indemnification under (c)(1), there is no such mandatory requirement that a vote actually take place. As the OTS has opined, "[g]enerally, no association may grant indemnification other than as specified in Section 545.121(c)(2). Absent the determination by the board of directors and required notice to the OTS, a director may not be indemnified in the case of a settlement, judgment against the director or judgment in favor of the director other than on the merits." OTS opinion Letter, 1989 WL 1114183 (October 6, 1989) (emphasis supplied) attached hereto as **Exhibit 1**.

Clearly, § 545.121(e) allows the Board to advance expenses when it concludes that "any person ultimately may become entitled to indemnification under this section." (Emphasis supplied). Furthermore, under § 545.12(e), a person who has received advanced payments must agree to repay any such advances if that person "is later determined not to be entitled to indemnification." (Emphasis supplied). Accordingly, IFSB's Cross-claim seeks reimbursement of the fees advanced on behalf of the Individual Defendants in the event that they are determined not to be entitled to indemnification. A person is only "entitled" to indemnification if he has received a final judgment on the merits in his or her favor under (c)(1). While a person who is not entitled to indemnification may ultimately be granted permissive indemnification under

(c)(2), there is simply no requirement that such indemnification be granted. Thus, all that is required for this Court to determine the merits of the Cross-claim is a final disposition of this case. If a final judgment on the merits is entered in favor of the Individual Defendants as required by (c)(1), then the Individual Defendants would prevail. Conversely, if a final judgment on the merits is not entered in favor of the Individual Defendants as required by (c)(1), the Individual Defendants would not be entitled to indemnification, and IFSB would prevail.

In the present case, the Individual Defendants' interpretation of the Regulation to <u>require</u> a vote of the disinterested Board of Directors on the issue of good faith before IFSB can assert a claim for reimbursement of expenses advanced on behalf of the Individual Defendants would make no sense. The Court has already taken testimony in this case, which is part of the record, and upon which the Court has concluded that the Individual Defendants were responsible for making false and misleading statements and omissions in proxy solicitations leading up to the October Shareholders' Meeting, and that Plaintiffs are likely to succeed on the merits of their claims. <u>See</u> Fed. R. Civ. P. Rule 65(a)(2)("any evidence received upon an application for preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial."). Under these circumstances, the Board of Directors should give proper deference to the Court's factual findings and should not be <u>required</u> to take a vote in an attempt to overcome them.[2] Should the Individual Defendants receive anything less than a judgment in their favor on the merits, then the evidence received and factual findings made by the Court would remain undisturbed, and the Court would then be empowered to decide the merits of IFSB's Cross-claim.

---

[2] IFSB disagrees with the Individual Defendants' argument that there are presently no "disinterested directors." IFSB would maintain that the term "disinterested director" includes any person, who is not being sued and, thus, not claiming the right to indemnification under the Regulation.

## III. CONCLUSION

For the reasons set forth above, Independence Federal Savings Bank, respectfully requests an Order from this Court granting this Motion and allowing Independence Federal Savings Bank to amend its pleadings to state a Cross-Claim Out-of-Time in this case.

Respectfully Submitted,

MILES & STOCKBRIDGE P.C.


/s/ G. Vann Canada, Jr.
_____
G. VANN CANADA, JR. (D.C. Bar #366414)
JAMES A. SULLIVAN, JR. (D.C. Bar #475145)
11 North Washington Street
Suite 700
Rockville, Maryland 20850
Telephone: (301) 762-1600
Fax:  (301) 762-0363
Attorneys for Defendant,
Independence Federal Savings Bank