## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MORTON A. BENDER, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:06cv00092 |
| | ) | |
| CAROLYN D. JORDAN, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**Supplemental Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Mootness**

Defendants Carolyn D. Jordan, David Wilmot, and Thomas L. Batties ("Defendants") have filed a Motion to Dismiss Plaintiffs' First Amended Complaint for Mootness and Memorandum of Points and Authorities in Support. (Document No. 74) (the "Motion") In a Minute Entry Order of February 22, 2007 ("Minute Entry Order"), the Court requested supplemental briefing on the following two issues, stating, "Although the motion is fully briefed, no party has addressed paragraphs (F) and (H) of the Request for Relief in the First Amended Complaint." Defendants respectfully submit this Supplemental Memorandum of Points and Authorities in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint for Mootness ("Motion") as requested in the Minute Entry Order.

### Supplemental Facts

Defendants' provide the following supplemental facts in support of the Motion:

138207v1

1.      On February 15, 2007 Independence Federal Savings Bank ("IFSB" or the "Bank") filed its Motion to Modify Preliminary Injunction. (Doc. No. 77)[1] Plaintiffs would not consent to the requested relief, while Defendants did not oppose the motion. (Doc. No. 77, p. 2) Plaintiffs also filed an opposition to the motion. (Doc. No. 80)

2.      On February 22, 2007, the Court entered an Order that modified the July 21, 2006 Preliminary Injunction (Doc. No. 51) and, in effect, allowed the Bank to proceed with its next annual meeting. That Order provides as follows,

> The Court's July 21, 2006, Order [Dkt. #51] shall be MODIFIED as follows: the phrase "Defendants shall be ENJOINED from disseminating proxy materials to shareholders and holding shareholders' meetings until further order of the Court" is deleted, and is replaced with the phrase "Defendants Carolyn D. Jordan, David Wilmot, and Thomas L. Batties shall be ENJOINED from disseminating proxy materials to shareholders or soliciting proxies until further order of the Court."

3.      On information and belief, in light of the foregoing Order, scheduling and preparations for the next Annual Meeting of Shareholders of the Bank (the "New Annual Meeting") are going forward.

4.      On information and brief it remains true that Bank Directors nominated by, or favorable to, Mr. Bender constitute a controlling majority of the current Board of Directors of the Bank. (Motion, p. 3, ¶ 2, Doc. No. 74) They will be in charge of proxy materials submitted to shareholders on behalf of the Bank in connection with the New Annual Meeting. They will have an unfettered right to include information in the Bank's proxy materials, subject only to OTS approval and applicable laws.

5.      Similarly, the current majority Directors will be in charge of the conduct of the New Annual Meeting. They will have an unfettered right to correct each of the matters

---

[1]      References to "Doc. No." are to the docket numbers of documents contained in the Court's file.

138207v1

relating to the conduct of the meeting and the casting of votes about which Plaintiffs complain in their First Amended Complaint.

      6.     The following facts also remain unchanged: Defendants own no shares of stock in the Bank. (Motion, p. 8, ¶¶ 19–21, Doc. No. 74). Thus, Defendants will not be entitled to participate in, vote at, or attend the New Annual Meeting. (*Id.* pp. 8-9, ¶ 23). They will not be entitled to nominate directors or disseminate proxy materials. (*Id.*). Moreover, they have no plans to engage in any way in the preparation for or conduct of the New Annual Meeting. (*Id.* pp. 9-10, ¶ 24). Defendants are not acting in concert with and have no intention of contacting or trying to influence Mr. Harold Doley or any of his clients, or Mr. Jeff Thompson, or anyone else in regards to either the New Annual Meeting or the operation of the Bank. (Motion, Affidavits of Ms. Jordan, Mr. Wilmot, and Mr. Batties, Doc. No. 74).

## Supplemental Argument

The parties agree that the D.C. Circuit applies a two-prong standard for determining whether a case is moot: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged wrong will be repeated. *Doe v. Harris*, 696 F.2d 109, 111 (D.C. Cir. 1982 (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). (Motion, pp. 11 – 12; Opposition, p. 5). Analysis of the first prong of the test for mootness requires: (1) a determination of the "effect" of the alleged wrong; and (2) whether that effect has been totally eradicated. *Id.* The second prong of the test requires a determination of whether there is a "reasonable expectation" that the wrong will be repeated. *Id.* In their First Amended Complaint, Plaintiffs claim that the effect of the alleged wrongdoing is the allegedly tainted election of members of the Bank's Board of Directors at the 2005 Annual Meeting of Shareholders. (First Amended Complaint, *See* ¶¶ 60,

138207v1

64, 63, 93, 94, 98, 102, 103, and 105; Defendants' Reply Memorandum, p. 2, Doc. No. 76) (The

"Reply").

## I.    Plaintiffs' Claims Seeking Neutralization of Shares Owned by Third Parties are

## Moot

In paragraph (F) of the Request for Relief in their First Amended Complaint Plaintiffs ask

the Court to, "grant injunctive relief neutralizing all of the Participant Shares and the Thompson

Share in any future election of Directors." The term "Participant Shares" is defined by Plaintiffs

in the following passage from their First Amended Complaint:

> Some of the Carver shares purchased by Doley Securities were
> retained by Doley Securities; some were sold to Logan
> ("Delancy"), who is Doley's neighbor; the remainder were sold to
> clients of Doley Securities. These Doley-related shareholders of
> IFSB stock are hereinafter collectively referred to as
> "Participants." The Participants together own 154, 685 shares of
> IFSB stock (hereinafter the "Participant Shares"), which is in
> excess of 5%, and just under 10% of the total IFSB's shares
> outstanding. (First Amended Complaint, p. 11, ¶ 33, Doc. No. 74)

Plaintiffs allege that the Defendants, Mr. Thompson, Mr. Doley and the Owners of the

Participant Shares[2] came together for the following wrongful purposes of:

> (i) opposing the election of the Bender Nominees, voting the
> Defendants' IFSB shares, together with the Thompson and
> Participant Shares, against the Bender Nominees, and persuading
> other shareholders to vote against the Bender Nominees; (ii)
> depriving those IFSB shareholders who voted in favor the Bender
> Nominees the opportunity of a fair election of the Bender
> Nominees; (iii) supporting the efforts of Jordan to continue
> controlling the IFSB Board despite a dismal record of
> mismanagement and negligence. First Amended Complaint, p.
> 24, ¶ 71, Doc. No. 74)

Plaintiffs allege that the wrong resulting from the above conduct was:

---

[2]    Hereafter, the Participants who own Participant Shares and Mr. Thompson will be
collectively referred to as the "Third Parties."

138207v1

The Defendants' violations of Section 13 (d) deprived all IFSB shareholders from information necessary to ensure a fair vote at the Shareholders' Meeting, and deprived the Plaintiffs of an election where the Bender Nominees were fairly considered by all shareholders. Accordingly, the election of the Management Nominees is irreparably tainted, and the results of the meeting are therefore void. Plaintiffs (and other shareholders and the investing public) have been, are being, and will continue to be irreparably harmed, in that they are left without material information, to which they are lawfully entitled, regarding the true interests and purposes of Defendants' efforts to control IFSB for their own interests, and to defeat the Bender Nominees. The information which was not provided in any Schedule 13D was essential to informed shareholder decisions with respect to voting IFSB shares at the Shareholder meeting, and were also material to Bender's own communications with the shareholders. First Amended Complaint, p. 25, ¶ 73, Doc. No. 74)

Plaintiffs' claims regarding the Third Party shares are moot because: (a) intervening events have completely and irrevocably eradicated the results of the 2005 Annual Meeting because the allegedly tainted election of Management Directors has been reversed; (b) there is no reasonable expectation the wrong will be repeated because Defendants own no shares and the current Board controls the conduct of the new election, specifically, the current Board controls the conduct of t he election; and (c) in any event, the Court does not have the power to issue an order against the Third Parties over whom it has not acquired personal jurisdiction.

A.    **Intervening Events Have Completely and Irrevocably Eradicated the Election of Management Directors at the 2005 Annual Meeting of Shareholders**

In their reply, Defendants demonstrated that the election of Management Directors at the 2005 Annual Meeting of Shareholders (the "2005 Meeting") is the effect of the wrongdoing alleged by Plaintiffs. (Reply, pp. 2-5, Doc. No. 76). The relief which Plaintiffs seek in their First Amended Complaint confirms that it is the 2005 election on which they focus. (Reply, pp. 5-6, Doc. No. 76)

138207v1

The effect of the alleged wrongful conduct – what Plaintiffs describe as the "taint" -- has been irrevocably eradicated. Not only have the two management nominees elected at the 2005 Meeting resigned, all of the other Defendant Directors have resigned as well. (Motion, p. 4-8, ¶¶ 9, 11, 12, 19, 20). The allegedly tainted Board election which resulted from what Plaintiffs allege was the wrongful conduct by Defendants and the Third Parties has thus been completely eliminated.

**B.      There is No Reasonable Expectation the Wrong Will be Repeated**

Defendants have already discussed the meaning of the term "reasonable expectation." (Reply, pp. 9-10, Doc. No. 76). Regardless of the standard applied, it is apparent that there is no reasonable expectation the wrong complained of will recur.

Defendants own no shares of Bank stock and have no intention of contacting any shareholder of the Bank to discuss Bank related business or in an attempting to influence any decision by a Bank shareholder. This includes any attempt to influence a shareholder in their decision how to vote their shares at the New Annual Meeting. Confirming the foregoing, each of the Defendants has signed a sworn affidavit stating the following:

> I have no present or future plan or purpose concerning IFSB.
>
> I have no intention of contacting any shareholder of contacting any shareholder or IFSB Board member to discuss any IFSB-related business.
>
> As a former shareholder or Director at IFSB I will be unable to affect or control decisions made by the Board or by shareholders at IFSB. Additionally, I have no intention to attempt to influence any decisions of the Board of Directors and/or shareholders at IFSB. (Motion, Attached Affidavits of Jordan (¶¶ 19, 20, 21); Wilmot (¶¶ 19, 20, 21); and Batties (¶¶ 16, 17, 18); Doc. No. 74)

Each of the foregoing statements continues to be true. Thus, it is apparent that there will be no contact, much less any agreement, between Defendants and any of the Third

6

138207v1

Parties regarding the New Annual Meeting. There is no reasonable expectation the alleged wrong will be repeated.

Moreover, the current Board of Directors of the Bank has the unfettered right to nominate directors candidates, solicit proxies, and conduct the New Annual Meeting so as to avoid the taint and conform to all of the relief which Plaintiffs' seek. There is simply no reasonable expectation that the wrongs complained of can, or will, be repeated.

**C.    The Court Lacks the Power to Issue the Requested Relief against the Third Parties**

There is no dispute that none of the Third Parties are parties to this suit. Generally, a court does not have power to an issue an order against a non-party and over whom it has not acquired personal jurisdiction. *Hatahley v. U.S.*, 351 U.S. 173 (1956); *see also* FEDERAL PRACTICE AND PROCEDURE, WRIGHT, CHARLES ALAN, § 2956. For this reason, Plaintiffs' claims are either non-justiciable or moot.

**II.    Plaintiffs' Claims for Attorneys' Fees Are Moot**

In paragraph (H) of their Request for Relief, Plaintiffs ask the Court to, "award Plaintiffs their attorneys' fees and costs of this action" (First Amended Complaint, p. 47, Doc. No. 76). By law, an interest in attorneys fees is insufficient to create a case or controversy where none exists on the merits of the underlying claim.

For all of the reasons set forth in the Motion, Reply and this memorandum, the underlying claims asserted by Plaintiffs in this case are moot and should be dismissed. Plaintiffs may argue that the case is not moot because they are seeking attorney's fees. This argument is contrary to long-standing precedent, however, because a case does not retain its character as a live dispute when the substance of the litigation is moot. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480, 110 S. Ct. 1249, 1255 (1990) (citations omitted). "This interest in attorney's fees

138207v1

is…insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Id.*; *see also*, *Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 233, n. 7 (D.C. Cir. 1988) ("A request for attorney's fees does not preserve a case which is otherwise moot"). A pending claim for attorney's fees, standing alone, does not entitle a federal court to adjudicate the merits of a dispute which in other respects was no longer live. *Friends*, 859 F.2d at 233. "Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs." *Lewis*, 494 U.S. at 480, 110 S. Ct. at 1255. The Supreme Court explained the reasoning for this sound rationale:

> The interests in judicial economy served by consistent application of the mootness doctrine would be largely undermined if appellate courts undertook to resolve questions of law which had no effect on the parties save for their possible relevance to a subsequent ancillary dispute over attorneys' fees.

*Lewis*, 494 U.S. at 480, 110 S. Ct. at 1255. The same logic holds true for cases pending in the District Court. Issues otherwise rendered moot do not become live controversies merely because of an ancillary dispute over attorneys' fees.

Plaintiffs should not be permitted to litigate moot claims in order to determine whether they can get "sunk costs" that are a by-product of this litigation. Allowing them to do so is a waste of judicial resources and contrary to long-standing legal precedent.

### Conclusion

Defendants respectfully submit that, for the foregoing reasons, as well as the reasons set forth in their Motion and their Reply, Plaintiffs' First Amended Complaint should be dismissed.

Respectfully submitted,

March 9, 2007

8

138207v1

SHOOK, HARDY & BACON, LLP


_____/s/_____

Peter E. Strand
Carlos E. Provencio
Christine S. Hudson
Hamilton Square
600 14th Street, N.W.
Suite 800
Washington, DC 20005
Phone: 202-783-8400
Fax: 202-783-4211

Attorneys for the Individual Defendants

138207v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March, 2007, a true and complete copy of the forgoing **Supplemental Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Mootness** was sent electronically to the following:

Dale A. Cooter, Esquire
Cooter, Mangold, Tompert and Wayson, L.L.P.
5301 Wisconsin Ave, NW
Suite 500
Washington, D.C.  20015
T: (202)537-0700
F: (202)364-3664
*Attorneys for Plaintiffs*

G. Vann Canada, Jr.
Miles & Stockbridge P.C.
11 North Washington Street
Suite 700
Rockville, Maryland 20850
T:  (301) 762-1600
F:  (301) 762-0363
*Attorneys for Defendant,*
*Independence Federal Savings Bank*


_____/s/_____
Attorneys for the Appellants


10

138207v1