## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MORTON A. BENDER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **C.A. No. 1:06cv00092** |
| **CAROLYN D. JORDAN, et al.,** | ) | **Honorable Rosemary M. Collyer** |
| | ) | |
| **Defendants.** | ) | |
| ———————————————— | ) | |

### MORTON AND GRACE BENDERS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR MOOTNESS

As ordered by the Court in its February 22, 2007 Minute Order[1], Plaintiffs Morton Bender and Grace Bender ("Bender"), by and through their undersigned counsel, hereby respond to the Supplemental Memorandum of Points and Authorities of Defendants Carolyn D. Jordan, David Wilmot, and Thomas L. Batties ("Defendants") in support of their Motion to Dismiss Plaintiffs' First Amended Complaint for Mootness.

## I.     PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL FACTS

At pages 2-3, Defendants identify six "supplemental facts." Fact Nos. 1 and 2 merely identify and describe two Court filings - IFSB's filing of its Motion to Modify Preliminary Injunction and the Court's Order modifying the preliminary injunction. Fact No. 3 avers that plans for the planning of the next annual meeting are going forward. For the purposes of this filing, Bender does not disagree with

---

[1] The Court directed the Parties to address Requests for Relief F and H of the First Amended Complaint.

the content of any of those factual recitations. In Fact No. 4, Defendants state that the Bank's current

directors will have "an unfettered right to include information in the Bank's proxy materials, subject only

to OTS approval and applicable laws." Obviously, if the materials are subject to the "requirement of

OTS approval and the existence of applicable laws," there is no such "unfettered right." In Fact No. 5,

the Defendants assert that the current Board will "have an unfettered right to correct each of the matters

relating to the conduct of the meeting and the casting of votes about which Plaintiffs complain in their

First Amended Complaint." As Plaintiffs have already explained in their January 2007 Memorandum of

Points and Authorities in Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended

Complaint for Mootness ("Bender's Jan. 2007 Opposition"), Bender and the Board will be constrained

in how effective any of their corrections might be absent a final adjudication on the merits in this action.

Fact No. 6 simply restates averments made in Defendants Motion to Dismiss, each of which Bender

responded to in his Opposition.[2]

## II.    PLAINTIFFS' CLAIMS REGARDING THE NEUTRALIZATION OF THE DOLEY AND THOMPSON'S SHARES ARE NOT MOOT

In Paragraph F of their Request for Relief in their First Amended Complaint, the Plaintiffs seek

"injunctive relief neutralizing all of the Participant Shares and the Thompson Shares in any future election

of Directors." In their Supplemental Memorandum, the Defendants state that because the owners of

---

[2] After their "supplemental Facts" section, in Sections I.A. and I.C. (Pages 5-6), the Defendants essentially restate the same arguments which they made in their previous briefs supporting their Motion to Dismiss. Because Bender has previously addressed these issues, and because they are not responsive to the Court's February 20, 2007 Minute Order, Bender does not address them herein.

the Participant Shares[3] and the Thompson Shares are not parties to this litigation, the Plaintiffs' claims should therefore be dismissed as non-justiciable or moot.

The Defendants offer no analysis supporting their contention. In fact, whether Thompson, Doley and/or others might be parties to, or affected by a final judgment, in this litigation has nothing to do with *mootness*, the basis of the Defendants' motion to dismiss. If the Defendants mean to make an argument under Federal Rule of Civil Procedure 12(b)(7) (dismissal for failure to join parties), then they should bring an appropriate motion so that issues pertinent to Rule 12(b)(7) can be briefed. Defendants should not be allowed to bring such an argument through the back door by way of a motion based on mootness. In any event, even if Defendants did have a basis for a Rule 12(b)(7) motion, wholesale dismissal of the Complaint would not be warranted and the Plaintiffs would seek leave to amend their Complaint to add additional Defendants. Ervin and Associates v. Dunlap, 33 F.Supp.2d 1, 13 (D.D.C. 1997) ("even if the Court determined that it is necessary to join the contract recipients as indispensable

---

[3]     The Participant Shares are owned as follows:

| | |
|---|---|
| Cecilia Robert | 8,000 |
| Cheron Gaspard | 7,000 |
| Doley Securities, Inc. | 11,700 |
| Doley Securities Inventory Account | 18,400 |
| Doley Securities S.D.M.-CR. | 10,500 |
| I.R.A.-F.B.O.-Logan D. Delany, Jr. | 19,047 |
| Logan D. Delany, Jr. | 2,800 |
| Logan D. Delany, Jr. | 785 |
| Majestic Life Insurance Company | 57,453 |
| Majestic Mortuary | 9,500 |
| Resthaven Memorial Park | 9,500 |

The Participants together own 154,685 shares of IFSB stock.

3

parties, their nonjoinder would not be grounds for dismissal of Ervin's claim. The Court would allow Ervin to amend his Complaint to include the necessary parties"); Bank of America Corp. v. Lembgruber, 385 F. Supp.2d 200, 232 (S.D.N.Y. 2005)(Rule 12(b)(7) dismissal is inappropriate if absent parties can be joined); Neighborhood Develop. v. Advisory Council, 632 F.2d 21, 24-25 (6th Cir. 1980)(reversing district court's denial of plaintiff's motion for leave to amend complaint to name additional parties). This is especially so where, as here, the absence of Doley, Thompson and the Participant Shareholders results from the now all too familiar litigation tactics of the Defendants: in response to an adverse preliminary finding, the Defendants note an interlocutory appeal to avoid a final finding; they then seek, and obtain, a stay of discovery in the District Court (other than depositions of the Defendants)[4]; they dismiss the appeal prior to briefing; and they then immediately move to dismiss the case to avoid a final resolution on the merits. See n.1 to Bender's Jan. 2007 Opposition. Had the Defendants not appealed the grant of preliminary injunctive relief and had the Defendants not sought a stay of these proceedings, the case would have gone forward and the Plaintiffs would have been able to complete additional discovery, and then, if necessary, sought leave to amend their Complaint to add the very individuals whom the Defendants now complain are not before the Court.

Moreover, to the extent that the Court determines that neutralizing the "Group" shares from voting in subsequent meetings is an appropriate remedy for the 13d violations, Bender submits that this

---

[4]     As the Court may recall, prior to the preliminary injunction hearing, Doley had been deposed, but Bender had to seek the intervention of the District Court for the Southern District of New York to accomplish the deposition, and Doley failed to produce any documents. At the time the stay was entered, Bender had begun to take steps to depose Doley again, as well as Thompson and the owners of the Participant Shares.

Court can impose such a remedy even if Thompson, Doley and the owners of the Participant Shares are not parties to this action. Pursuant to Rule 65(d), Thompson, Doley and the owners of the Participant Shares can be bound by the terms of any permanent relief because they have "acted in concert" with Wilmot and Jordan: "Every order granting an injunction ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, *and upon those persons in active concert or participation with them* who receive actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d) (emphasis added).

In Podesta v. Calumet Industries, Inc., 1978 WL 1088, *11 -12 (N.D. Il. May 9, 1978), the plaintiff alleged that existing management of Calumet undertook a multifaceted scheme designed to entrench themselves. Among the various schemes was the adoption of an Employee Stock Ownership Plan, and the issuance of warrants, both of which resulted in the placing of shares in friendly hands. The Calumet Court determined that a violation of 13d had occurred, and that it was appropriate to sterilize the votes of the shares issued under the ESOP and warrant transactions in the upcoming meeting. Id. at *11-12. The court found that the potential harm to the "innocent employees who will be deprived of their votes in the election" (and who acquired their shares through the ESOP), was "not sufficient to outweigh the need to remedy the defendants' wrongdoing." Id. at *11. Bender submits that sterilization of votes at the upcoming meeting is appropriate for the wilful violation of 13d in this case. See Mason-Dixon Bancshares, Inc. v. Anthony Investments, Inc., 1997 WL 33482710 (D. Md. 1997)(sterilization remedy for intentional avoidance of compliance).[5] A trial on the merits is

---

[5]     As this Court recognized in its Memorandum Opinion granting the preliminary injunction, Thompson directed his counsel to prepare a purchase agreement for the Doley Participants' stock with

appropriate to determine which of the Thompson, Doley, or Participant Shares should be sterilized in any future meetings. See Id. at *9 (before sterilizing shares, court must consider the interests of innocent shareholders who granted proxies without knowledge of the alleged violations). Here, it is unknown whether the owners of the Participant Shares (other than those owned by entities affiliated with Doley himself) are "innocent bystanders" or affirmatively intended (or ratified the decision) to become a member of the Doley/Thompson/Wilmot/Jordan "Group" which voted proxies for management at the October 2005 meeting in violation of 13d.[6]

Thus, whether Bender must join Thompson, Doley and the Participant Shareholders to obtain the relief he seeks, or whether Fed. R. Civ. P. 65(b) is broad enough to allow such relief against non-parties, the relief sought in Paragraph F of the Request for Relief is not subject to dismissal on grounds of mootness, and a trial on the merits is necessary to determine whether Bender is entitled to such relief.

## III.    THE PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEYS FEES

In Paragraph H of the prayer for relief, the Plaintiffs seek to recover their attorneys fees and costs. The Defendants argue that if the underlying issues of the case are each moot, then a request for attorneys fees and costs is not sufficient to keep the case pending. The Defendants' argument completely misses the mark. Bender has not argued, and does not intend to argue, that the attorneys

_____

Defendant Wilmot's name on it as the purchaser, apparently recognizing that a purchase of the Participant Shares by Thompson himself needed OTS approval. Mem. Op. at 13-14, 30. Further, this Court found that Bender was likely to succeed on his allegation that the Group's failure to file a 13D, and Thompson's failure to amend his 13D, constituted a violation of Section 13d of the Exchange Act. Mem. Op. at 31.

[6]    Of course, here, discovery was stayed at the request of the Defendants, just as Bender began to embark on discovery to determine what the owners of the Participant Shares knew, and what instructions they gave to Doley.

fees request, standing alone, would keep the merits of the case alive. Rather, as part of his relief,

Bender will, at the conclusion of this case - whether by way of dispositive motion or after a trial on the

merits - seek his attorneys fees and costs. For all the reasons stated in their January 2007 Opposition,

Plaintiffs obviously disagree with the Defendants' underlying premise - that all the substantive issues of

the case are now moot. However, even if the Defendants were correct, the Court would still be

obligated to rule on the Benders' request for attorneys fees - not as a way to keep the case alive (as

Defendants mistakenly argue), but strictly as a sanctions issue.

The Defendants and their attorneys may be sanctioned either under Rule 11 or pursuant to the

Private Securities Litigation Reform Act ("PSLRA"), which imposes on the Court a mandatory

obligation to assess the Defendants and their counsel's compliance with Rule 11 in this litigation.

*Gorman v. Coogan*, 2004 WL 2713095 (D. Maine 2004). If the Court determines that Rule 11 has

been violated, the Court has a mandatory obligation to impose sanctions. *De La Fuente v. DCI*

*Telecommunications, Inc.*, 259 F. Supp.2d 250, 256 (S.D.N.Y. 2003). The sanctions provision of

the PSLRA (15 U.S.C. §78u-4(c))[7] provides for mandatory review of the Defendants' filings, and that

the court "shall impose sanctions" for a violation of Rule 11.

The PSLRA expressly provides for a review by the Court "upon final adjucation." Thus,

whether or not the Court agrees with the Defendants's position regarding mootness, the issue of

---

[7] The mandatory sanctions provision in the PSLRA applies to both class actions and individual actions, and applies to actions seeking damages as well as to actions seeking injunctive relief. *Simon DeBartolo Group v. Richard E. Jacobs Group*, 985 F. Supp. 427, 430-31 (S.D.N.Y. 1997), *affirmed in part, rev'd in part on other grounds,* 186 F.3d 157 (2d Cir. 1999). The mandatory sanction provisions also apply to 13d litigation. *Gorman v. Coogan*, 2004 WL 2713095 (D. Maine 2004).

attorneys fees and costs is very much still an issue that will have to be resolved. As noted by the *Gorman* Court, the commentary to Rule 11 states that litigants are subject to Rule 11 sanctions "'for insisting upon a position after it is no longer tenable'" and their Rule 11 compliance continues to be measured throughout the litigation, and includes "'reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.'" *Gorman*, 2004 WL 2713095, *20 (quoting Advisory Committee notes to 1993 amendment to Rule 11). Here, the story told by the Defendants, both on paper and in testimony during the preliminary injunction hearing, was largely fiction. The limited scope of this Memorandum does not lend itself to a full explication of the reasons why Bender should be awarded his attorneys fees and costs of this action. Bender will fully brief this issue at the appropriate time. By way of example only, as pointed out in ¶16 of Bender's Proposed Findings of Fact and Conclusions of Law [Docket #37], Defendant Batties denied any involvement in the creation or dissemination of the Committee Letter in his filings in this case – Batties Answer [Docket #9], ¶58 (Batties denies "participation" in Committee to Save letter); see also, Individual Defendants' Opposition to Motion for Preliminary Injunction [Docket #30], ¶23 ("None of the individual Defendants had any involvement in the preparation or the mailing of the letter"); ¶27 ("No officer, director or employee of the Bank was involved with the Committee letter"). Batties' denial of involvement with the Committee Letter continued in his testimony at the preliminary injunction hearing. April 21, 2006 Hearing (Batties) at 119-24. In addition, as set forth in ¶49 of Bender's Findings of Fact, in ¶51 of their Opposition to the Preliminary Injunction Motion [Docket #30], the Individual Defendants asserted: "No director, officer, employee or agent of IFSB was directly involved in the negotiations between Mr. Doley and Mr. Thompson." As this Court has found, both Wilmot and

Jordan were indeed directly involved in those negotiations.

Having now resigned their positions from the Bank, however, does not somehow exonerate the Defendants from the consequences of the non-truths and half-truths they told. The positions the Defendants took remain subject to the scrutiny of this Court even if the Court were to grant the Motion to Dismiss. The Defendants have sought for years to stymie Bender's rights to fully and effectively participate in the democratic process to which he is entitled as a shareholder of IFSB. The true extent of the Defendants' acrimony did not come to light, however, until this litigation. That the Defendants would so willingly evade the truth as to what happened in connection with the 2005 meeting - from the "Committee to Save the Bank" to the orchestrated Doley/Thompson group – is reprehensible. That they would now seek to deprive the Benders of their right to seek attorneys fees and costs is probably therefore not surprising.

## CONCLUSION

For the foregoing reasons and those stated in its Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, the Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.

_____/s/_____

Dale A. Cooter, Bar #277454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C.  20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Defendants*
 *Morton A. Bender and Grace M. Bender*

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing PLAINTIFFS' MEMORANDUM OF

POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'

FIRST AMENDED COMPLAINT FOR MOOTNESS was sent electronically via the Court's ECF

system on the 20th day of March 2007, to:

> Peter Strand, Esquire
> Shook, Hardy & Bacon, L.L.P.
> Hamilton Square
> 600 14th Street, N.W.
> Suite 800
> Washington, D.C. 20005-2004
>
> Vann Canada, Esquire
> Miles & Stockbridge
> 11 North Washington Street
> Suite 700
> Rockville MD 20850

> _____/s/_____
> Dale A. Cooter