# ATTACHMENT A

## OFFICE OF THRIFT SUPERVISION

### Approval of Holding Company Acquisition

|  |  |
|---|---|
| **Order No.:** | **2007-11** |
| **Date:** | **March 23, 2007** |
| **Docket Nos.:** | **H-1299, 7173** |

Morton A. Bender, Grace M. Bender and John S. Wilson (collectively, Applicants) have applied to the Office of Thrift Supervision (OTS), pursuant to 12 U.S.C. § 1467a(e)(4) and 12 C.F.R. § 574.3, to acquire up to 51 percent of the common stock of Independence Federal Savings Bank, Washington, D.C. (Association) and otherwise exercise control over the Association, including seeking and effecting changes in directors and management (Application).

### Background

Mr. Bender is Chairman of the Board of Colombo Bancshares, Inc. (Holding Company) and its wholly owned federal savings bank subsidiary, Colombo Bank, Rockville, Maryland (Bank). Mr. Bender, along with his immediate family members, owns over 90 percent of the Holding Company's common stock. The Bank is a Deposit Insurance Fund (DIF)-insured federal stock savings bank.

Morton and Grace Bender (collectively, the Benders), currently hold approximately 21 percent of the Association's common stock. The Association is a publicly traded DIF-insured federal stock savings bank. The Benders propose to acquire additional shares of the Association's common stock through open market purchases, through privately negotiated transactions with individual shareholders, or through a partial tender offer. The Benders also contemplate taking action, including, among other things, soliciting proxies and effecting changes in directors and management.

### Holding Company Application

Section 10(h)(2) of the Home Owners' Loan Act (HOLA)[1] provides that it is unlawful for any individual who owns, controls, or holds with power to vote more than 25 percent of the voting shares of a savings and loan holding company to acquire control of a savings association not a subsidiary of such savings and loan holding company, unless OTS approves the acquisition pursuant to section 10(e)(4) of the HOLA.[2] Section 10(e)(4)(A) repeats the substance of section 10(h)(2), providing for OTS approval of acquisitions described in section 10(h)(2). Section 574.3(a) of the Acquisition of Control

---

[1]    12 U.S.C. § 1467a(h)(2).
[2]    12 U.S.C. § 1467a(e)(4).

Order No.: 2007-11
Page 2

Regulations restates the statutory approval requirement.

The Benders hold, in the aggregate, more than 25 percent of the shares of the Holding Company, a savings and loan holding company controlling the Bank. The Benders propose to acquire up to 51 percent of the Association's common stock. Accordingly, the proposed transaction requires OTS approval under HOLA section 10(e)(4). OTS regulations, at 12 C.F.R. §§ 574.7(b) and (c), require OTS to consider the managerial and financial resources and future prospects of the company and associations involved, the effect of the acquisition on the associations, the insurance risk to the DIF, and the convenience and needs of the community to be served.[3] Consideration of the managerial resources of a company or savings association must include consideration of the competence, experience, and integrity of the officers, directors, and principal shareholders of the company or savings association.[4] OTS must consider the impact of any acquisition on competition.[5] Also, 12 C.F.R. § 563e.29 requires that OTS take into account assessments under the Community Reinvestment Act (CRA) when approving holding company acquisitions.

With respect to managerial resources, OTS has considered the background of the Holding Company, the Bank, the Association and the Applicants. OTS, as the regulator of the Bank and the Holding Company, is familiar with their managerial resources and has extensive experience with the Benders. The Bank is operated by experienced management. We conclude that the managerial resources of the Holding Company and the Bank meet the standards for approval. With respect to the Association, OTS previously reviewed the character and responsibility of each of the Association's current directors under section 32 of the Federal Deposit Insurance Act.[6] In that review, OTS did not object to any of the directors based on the applicable review standards. In addition, Mr. Bender contemplates that he will review existing management and make changes as deemed necessary.

OTS has received a number of comments from the Association, various law firms representing the Association, and other shareholders regarding Mr. Bender and the Application. Specifically, the commenters alleged that Mr. Bender misused his prior OTS approval,[7] that he acted in concert with other shareholders to acquire control of the Association, that he made omissions or misrepresentations in his securities filings and applications filed with OTS, that he failed to submit an adequate business plan for the Association, that he has a history of regulatory problems, that he has made a tender offer without complying with applicable regulatory requirements, and that Mr. Bender should be required to make a tender offer to all shareholders.

---

[3]    12 U.S.C. § 1467a(e)(2); 12 C.F.R. § 574.7 (2006).
[4]    Id.
[5]    Id.
[6]    12 U.S.C. § 1831i.
[7]    On October 14, 2003, OTS approved an application by Mr. Bender and his family to acquire up to 100 percent of the Association's common stock through the Holding Company or otherwise (2003 Order). The authorization embodied in the 2003 Order expired on October 14, 2004.

To the extent that certain of Mr. Bender's actions exceeded the scope of OTS's prior approval, Mr. Bender ceased such activities promptly after being advised by OTS that such actions raised issues.  OTS considered whether Mr. Bender had acted in concert with other shareholders and did not find facts supporting the existence of concerted action.  To the extent that Mr. Bender omitted relevant information from a securities filing, Mr. Bender had advised OTS staff of his intent to do so, and subsequent events largely mitigated any effects of the omission. With respect to the filing of an adequate business plan, Mr. Bender did not have access to the information necessary to prepare a detailed business plan, and the Regional Office is recommending condition four below, requiring Mr. Bender to submit to OTS a revised three-year business plan for the Association.  With respect to Mr. Bender's and the Bank's regulatory history, the Bank's management, with the support of Mr. Bender, has appropriately addressed regulatory concerns.  With respect to the allegations that Mr. Bender's actions constituted a tender offer, OTS concluded that Mr. Bender did not commence a tender offer by his announcement of his intentions to buy additional shares of the Association's common stock.  Further, OTS has not identified any reason to require that the Applicants conduct a tender offer in order to purchase additional shares of the Association's common stock.

With respect to Mr. Wilson, OTS has reviewed the background of Mr. Wilson, as a current director of the Association, and has not objected to his service on the Association's board of directors.  Based on the foregoing, OTS concludes that the managerial resources of the Association and the Applicants are consistent with approval.

With respect to financial resources, OTS has considered the Applicants' financial position.  Mr. Bender has sufficient capital to effect the acquisition and has the resources to infuse additional capital into the Association if needed.  The Bank and the Association are "well capitalized."  The Holding Company is a shell corporation.  OTS concludes that the financial resources of the Applicants, the Association, the Bank and the Holding Company are consistent with approval.

With respect to future prospects, and risks to the DIF, based on its review of the financial and managerial resources of the Applicants, the Bank, the Holding Company and the Association, OTS concludes that the future prospects of the Applicants, the Bank, the Holding Company and the Association, and the risk to the DIF are consistent with approval, subject to the conditions set forth below.

With respect to the competitive impact of the transaction, Montgomery County, Maryland, is the only market in which both the Bank and the Association currently operate.  Both institutions have market shares of deposits that are under one percent.  In addition, OTS requested a competitive factors report from the U.S. Department of Justice (DOJ) regarding the competitive effects of the proposed transaction.  The DOJ did not identify any anti-competitive impact.  Accordingly, OTS concludes that the transaction is not objectionable on anti-competitive grounds.

With respect to the convenience and needs of the community, the Applicants anticipate making no significant changes in services or products offered by the Association as a result of the acquisition.  The Applicants intend to continue the two institutions' present policies and procedures addressing the needs of the relevant communities.  The Applicants represent that the Association will continue to provide programs, products and services that meet the existing or anticipated needs of the community, including low- and moderate-income geographies.  Accordingly, OTS concludes that approval of the Application is consistent with the convenience and needs of the communities to be served.

As for the CRA, both the Bank and the Association have "Satisfactory" CRA ratings.  OTS has received no comments from the public objecting to the proposed transaction on CRA grounds.  Accordingly, OTS concludes that approval of the proposed acquisition of the Association by the Applicants is consistent with the CRA.

**Conclusions**

Based on the Application and the foregoing analysis, OTS concludes that the Application satisfies the applicable approval standards, provided that the following conditions are complied with in a manner satisfactory to the OTS Southeast Regional Director, or his designee (Regional Director).  Accordingly, the Application is hereby approved, subject to the following conditions:

1.  The proposed acquisition contemplated by the Application must be consummated within one year from the date of this Order, in accordance with the terms and representations in the Application;

2.  On the first business day after the date or dates the Benders' shareholdings first exceed 25 percent and first exceed 50 percent of the stock of the Association, Mr. Bender must certify in writing to the Regional Director that no material adverse changes have occurred with respect to the financial condition or operation of the Association, as disclosed in the Application.  In addition, on the same date or dates, the chief financial officers of the Holding Company and the Bank must certify that there have been no material adverse events or material adverse changes with respect to the financial condition or operations of the Holding Company and the Bank.  If additional information having an adverse bearing on any feature of the Application is brought to the attention of Mr. Bender, the Holding Company, the Association, the Bank, or OTS since the date of the financial statements submitted with the Application, the transaction must not be consummated unless the information is presented to the Regional Director, and the Regional Director provides written non-objection to consummation of the transaction;

3.  The Applicants must advise the Regional Director in writing within 5 calendar days after the effective date or dates the Benders' shareholdings exceed 25 and 50

Order No.: 2007-11
Page 5

percent of the stock of the Association: (a) of the effective date of the respective acquisition; and (b) that the respective acquisition was consummated in accordance with all applicable laws and regulations, the Application and this Order; and

4.  At the direction of the Regional Director, the Applicants must submit to the OTS, for the prior, written non-objection of the Regional Director, a revised business plan for the Association for a three-year period. The Association must operate within the parameters of the business plan submitted with the Application or an approved, amended business plan for a three-year period. During that period, any proposed major deviations or material changes from the plan must be submitted for the prior, written non-objection of the Regional Director. The request for change must be submitted no later than 60 calendar days prior to the desired implementation.

Any other acquisitions of control of the Association, including, but not limited to acquisitions of stock or voting power, under circumstances materially inconsistent with or in a manner materially different from the information and representations contained in the Application, requires a separate filing with OTS under 12 C.F.R. Part 574.

The Regional Director may, for good cause, extend any time period specified herein for up to 120 calendar days.

By order of the Director of the Office of Thrift Supervision, or his designee, effective March 23, 2007.

Scott M. Polakoff
Deputy Director