## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MORTON A. BENDER,** *et al.* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-92 (RMC)** |
| ) | |
| **CAROLYN D. JORDAN,** *et al.* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Carolyn D. Jordan and David Wilmot used to be Chairman and Vice Chairman, respectively, of the Board of Directors of Independence Federal Savings Bank ("IFSB" or "Bank"). They and former Bank President Thomas Batties are the remaining Defendants in this lawsuit brought by disaffected shareholder Morton A. Bender.[1] The parties have been engaged in a gigantic struggle for control of the Bank, most recently evidenced by this suit in which Mr. Bender challenges an October 2005 shareholder vote for members of the Board. In a decision dated July 21, 2006, this Court found that Mr. Bender had demonstrated a likelihood of success that he would prove that Ms. Jordan and Messrs. Wilmot and Batties, with others, violated the securities laws and the Bank's bylaws by their actions leading up to, and conducting, the shareholders' meeting. *See* July 21, 2006, Memorandum Opinion [Dkt. #50]. The Court entered a preliminary injunction, enjoining the Bank and its Board from disseminating proxy materials to shareholders and holding shareholders'

---

[1] Although Mr. Bender owns his IFSB shares jointly with his wife, and both Benders consequently are plaintiffs here, Mrs. Bender "is not an active participant in the matters relevant to this litigation and she is party solely in her capacity as a joint tenant shareholder with Bender." *See* Pls.' First Am. Compl. ¶ 3. Accordingly, the Court often refers only to Mr. Bender in the text of this Opinion.

meetings until further order.  *Id.* at 6; July 21, 2006, Order [Dkt. #51].  The Defendants – five members of the Board and Mr. Batties – immediately appealed the decision to the D.C. Circuit Court of Appeals.  *See* Defendants' Notice of Interlocutory Appeal [Dkt. #56.]  Since that time, however, all five Directors and Mr. Batties have resigned their positions.[2]  Messrs. Wilmot and Batties and Ms. Jordan have sold their stock in the Bank.  *See* Defs.' Mot. at 8.  The appeal to the Court of Appeals was withdrawn in December 2006, just as briefs would have been due.[3]  Mr. Bender has dismissed his claims against all but the three remaining Defendants,[4] who now seek dismissal on the basis that the claims are moot.  Mr. Bender opposes the motion to dismiss.

Mr. Bender has the essential relief he sought: the five Directors and Mr. Batties are no longer running the Bank and it is controlled now by his four nominees remaining on the Board. Mr. Bender does not seek monetary damages from the Defendants and none of them holds a position as Director, Officer, or Shareholder against whom further injunctive relief would be appropriate.

[2]  On June 30, 2006, Mr. Batties resigned from his position as President of the Bank and entered into a contract with IFSB to work in an advisory role.  Mr. Batties's contract ended on December 31, 2006.  *See* Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Defs.' Mot.") at 3.  On August 16, 2006, Mr. Fitzgerald resigned from the Board.  *See* Defs.' Mot. at 4. ).  Mr. Eugene Youngentob resigned from the Board in September 2006.  *See* Defs.' Mot. at 5.  Also in September, Mr. Michael Cobb resigned from the Board.  *See* Defs.' Mot. at 5. Mr. Fitzgerald, Mr. Yougentob, and Mr. Cobb were subsequently dismissed from the lawsuit by this Court's Order dated October 2, 2006.  *See* October 2, 2006, Minute Entry Order (granting the Plaintiffs' stipulation to dismiss action against William B. Fitzgerald, Eugene K. Yougentob, and Michael J. Cobb).

[3]  Thomas Batties, Carolyn Jordan, and David Wilmot filed their unopposed Motion to Withdraw Appeal with the United States Court of Appeals for the District of Columbia Circuit on December 29, 2006.  *See* Defs.' Mot., Exh. 2.

[4]  The Bank is an additional, albeit nominal, Defendant.  The preliminary injunction was lifted as to IFSB on Februray 22, 2007, so that it could hold a shareholders' meeting and distribute proxy materials in connection therewith, while the injunction remained in place against the three current Defendants pending decision on the motion to dismiss.

You have won, Mr. Bender.  The case is now moot and will be dismissed.

## I. BACKGROUND

The First Amended Complaint, filed on September 22, 2006, prayed for the following

relief:

(A)    grant preliminary and permanent injunctive relief requiring the Director Defendants and Defendant Batties to comply with Section 13(d) of the Exchange Act, and the regulations thereunder, fully disclosing their plans and purposes concerning IFSB;

(B)    grant preliminary and permanent injunctive relief requiring the Director Defendants and Defendant Batties to comply with 14(a) of the Exchange Act, and the regulations thereunder, and 12 C.F.R. § 569 to disclose to the shareholders, in any future solicitations, the falsity and misleading nature of the 2005 Proxy Materials, the May 2005 Committee to Save Correspondence, and the October 2005 Letter to Shareholders, and to further disclose Defendants' and the Bank's involvement in the May and October 2005 correspondence[;]

(C)    grant injunctive relief voiding the election results of the October 26, 2005 Shareholders' Meeting;

(D)    grant injunctive relief preventing the Director Defendants from causing the Bank to hold an Annual or Special Meeting of the Shareholders until further Order of this Court;

(E)    grant injunctive relief requiring the Defendants and the Bank to conduct any future Annual or Special Meeting of the Shareholders in conformance with Roberts Rules of Order and the Bank's Bylaws, and to enjoin any further allocation of votes after the closing of the polls, and to enjoin the counting of broker routine votes for Management Nominees in the absence of express direction from the beneficial shareholder[;]

(F)    grant injunctive relief neutralizing all of the Participant Shares and the Thompson Shares in any future election of Directors;

(G)    grant injunctive relief preventing Defendant IFSB from indemnifying (or making advance payments to) the Director

Defendants and Defendant Batties for the expenses of this action;

(H)     award Plaintiffs their attorneys' fees and costs of this action;

(I)     grant such other and further relief as may be appropriate.

Plaintiffs' First Amended Complaint ("Pls.' First Am. Compl."), Request for Relief, at 45-47.

IFSB is a federally-chartered savings and loan ("S&L") with its principal place of business in the District of Columbia.[5]  The Bank operates under the regulatory oversight of the Office of Thrift Supervision ("OTS").  IFSB is an historically Black-owned-and-operated S&L that concentrates its marketing and loans in the Black and African-American community.  Defendants Jordan and Wilmot were members of the Bank's Board until early January 2007. *See* Defs.' Mot. ¶¶ 19-20.  Defendant Batties was its Acting President and Chief Executive Officer ("CEO") until his resignation on June 30, 2006, after which he worked for the Bank under a consulting contract until December 31, 2006.  The Defendants are African American and Mr. Bender is White[6].

Over the last few years, Mr. Bender increased his holdings in the Bank and, together with his wife, now owns approximately 21% of the Bank's outstanding shares.  *See* Pls.' First Am. Compl. at ¶ 3.  He has been a vociferous critic of the Bank's management and has tried to affect change by nominating like-thinking persons to its Board.  The Board continually resisted his

---

[5]  Details of the instant matter can be found in the Court's opinion on the motion for a preliminary injunction.  *Bender v. Jordan*, 06-cv-00092 (RMC) (July 21, 2006) [Dkt. #50]. Earlier versions of the dispute are reflected in *Bender v. Indep. Fed. Sav. Bank*, No. 05-1787 (D.D.C. Sept. 19, 2005); *Indep. Fed. Sav. Bank v. Bender*, 332 F. Supp. 2d 203 (D.D.C. 2004); *Indep. Fed. Sav. Bank v. Bender*, 326 F. Supp. 2d 36 (D.D.C. 2004); and *Bender v. Parks*, No. 03-cv-2485, 2004 U.S. Dist LEXIS 17090 (D.D.C. Jan. 15, 2004).

[6]The Court notes this fact only because it has been an on-going sub-text through various iterations of this dispute.  The racial overtones in this record would be hard to miss, but the Court concludes once again that they do not affect the legal issues.  *See* July 21, 2006, Memorandum Opinion, at 1, n.1 [Dkt. #50].

demands for change.

The facts of this case concern a 2005 shareholders' meeting, convened in October 2005, at which shareholders were to elect three new Board members. The Board had three nominees and Mr. Bender had two. Mr. Bender complained here that the Board and Mr. Batties violated their disclosure obligations under § 13(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78m(d), and regulations promulgated thereunder. He sought an injunction to require proper disclosure; to neutralize shares allegedly acquired in violation of those obligations; to void the election results from the October 26, 2005, Shareholders' Meeting; to compel accurate proxy disclosures pursuant to § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and accompanying regulations; to forbid further shareholders' meetings until the procedural irregularities were resolved; and to compel adherence to the Bank's bylaws in any future meeting. He also sought a court order preventing IFSB from indemnifying, or making advance payments to, the Director Defendants and Mr. Batties for expenses and fees incurred in defending this action.[7] Four counts requested preliminary injunctive relief: alleged violations of § 13(d) of the Exchange Act (Count I) and § 14(a) of the Exchange Act (Count II); alleged violations of the Bank's bylaws (Count III); and the request for a declaratory judgment barring indemnification and advancement of fees (Count VI).[8] After a three-day evidentiary hearing, the Court found that Mr. Bender had met the standards for preliminary relief on Counts I, II, and III and issued a preliminary injunction. *See* July 21, 2006,

---

[7] The Bank has filed a cross claim against Ms. Jordan and Messrs. Wilmot and Batties to recover monies advanced for attorneys' fees. That claim is not addressed in this opinion.

[8] Count V, which advanced a defamation claim, was dropped, as was a request for monetary damages, when the First Amended Complaint was filed on September 22, 2006. *See* Plaintiffs' Verified Complaint filed January 18, 2006 [Dkt. #1] (requesting compensatory damages and punitive damages).

Memorandum Opinion [Dkt. #50]. The Court deferred decision on Count VI. *Id.*

The hearing on the motion for a preliminary injunction revealed the following. In anticipation of a scheduled May 11, 2005, shareholders' meeting at which three directors would be elected to the Bank's Board, Mr. Bender wrote to all shareholders setting forth his positions regarding the Bank's performance and providing information regarding his two nominees. A different letter was sent to shareholders dated May 4, 2005, purportedly from the "Committee to Save Independence Federal Savings Bank." The Court has found that the allegedly independent Committee was a creature of the Bank and its public relations firm, a fact hidden from shareholders and the OTS. *See Id.* at 5-11. In reaction to Mr. Bender's nominations, the Board continued the shareholders' meeting to June 8 and then to September 14, 2005. *Id.* at 10-11.

Mr. Bender filed an amended Schedule 13D[9] in early September 2005, indicating that he had filed a change-of-control application with OTS and, upon its approval, would seek to increase his ownership interest to 51% through purchases from existing shareholders. As a result, the Board continued the shareholders' meeting to October 26, 2005. Mr. Bender sent a letter to all shareholders on October 3, 2005, touting his two nominees. The Bank distributed proxy materials to shareholders on October 4, 2005, touting its three nominees. Two IFSB shareholders, again with hidden assistance from the Bank, sent a letter to shareholders on October 21, 2005, urging a vote against Mr. Bender's nominees.

---

[9] Section 13(d)(1) of the Exchange Act, 15 U.S.C. § 78m(d)(1), requires stock purchasers to disclose, on Schedule 13D, the acquisition of beneficial ownership of more than five percent of a company's equity securities within ten days of purchase. *SEC v. Bilzerian*, 29 F.3d 689, 692 n.3 (D.C. Cir. 1994).

As the date for the meeting approached, Ms. Jordan and Messrs. Wilmot and Batties became increasingly anxious that Mr. Bender would persuade enough shareholders to vote for his nominees. Doley Securities LLC controlled a block of IFSB stock in the amount of 154,685 shares, which was just under ten percent of the total shares outstanding. The Court found it likely that Mr. Bender would prove that Ms. Jordan and Mr. Wilmot persuaded Mr. Doley to sell those shares ostensibly to a group put together by Mr. Wilmot but actually to Jeffrey Thompson, a friend and client of Mr. Wilmot and a business partner with Bank Director Michael Cobb. *See id*. at 12-18. The evidence presented by Mr. Bender indicated that this deal was hatched over lunch just before the oft-delayed shareholders meeting finally started. *Id.* In return, Mr. Doley was required – and persuaded other owners of the Doley shares – to cast all votes for the management nominees. *Id.* When the meeting convened, Mr. Bender lodged two formal proxy challenges but Ms. Jordan ruled them out of order and the Independent Inspector of Elections ("IIOE") did not consider them or rule on them. *Id.* at 18. The Board waited three days – until after the IIOE certified the vote – to allocate its proxies among the nominees; it was thereby able to ensure that two of its nominees were elected. *Id*. at 18-19. One of Mr. Bender's nominees was elected.

This lawsuit followed.

On July 21, 2006, the Court entered its Order granting preliminary injunctive relief to Mr. Bender. *See* [Dkt. #51]. On August 18, 2006, the Director Defendants and Mr. Batties filed a notice of appeal. On August 29, 2006, the Court entered a stay pending appeal. On August 16, 2006, there was a regularly scheduled meeting of the Directors of the Bank. Immediately prior to that meeting, one of the Director Defendants, William Fitzgerald, resigned from the Board. As a result, the Board was split evenly (4 to 4) between the Defendant Directors and the so-called Bender

Directors. Defs.' Mot. ¶ 10.  At the August 16 meeting, Ms. Jordan was removed as Chairman and replaced by Elliott Hall, a director associated with Mr. Bender. *Id.* ¶ 18(a).  On that same date, Mr. Wilmot was removed as Vice-Chair and replaced by Robert Isard, another director associated with Mr. Bender. *Id.* ¶ 18(b).  In September, Eugene Youngentob and Michael Cobb, Defendant Directors, resigned from the Board, withdrew their appeals, and were dismissed from this case.  As a result, only Ms. Jordan and Mr. Wilmot remained on the Board and as Director Defendants, along with former CEO Mr. Batties.  On December 19, 2006, a majority of the directors voted to hire Les Johnson to serve as President of IFSB. *Id.* ¶ 18(c).  On December 29, 2006, Ms. Jordan and Messrs. Wilmot and Batties filed an unopposed motion to withdraw their appeal.  Mr. Wilmot resigned from the Board on January 3, 2006 and instructed his broker to sell his Bank stock.  Ms. Jordan resigned from the Board on January 5, 2006, and gave instructions to her broker to sell her Bank stock.

        On March 23, 2007, the OTS granted the application of Mr. and Mrs. Bender and John S. Wilson to acquire up to 51% of the common stock of IFSB. *See* Defs.' Supplemental Submission in Supp. of their Mot. to Dismiss Pls.' First Am. Compl. for Mootness at 1 [Dkt. #88].

## II.  LEGAL STANDARDS

        A motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1). *Flores v. District of Columbia*, 437 F. Supp. 2d 22 (D.D.C. 2006).  That rule imposes on the Court "an affirmative obligation to insure that it is acting within the scope of its jurisdictional authority." *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 5 (D.D.C. 2004).  Under the Constitution, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988).  "Even where the litigation posed a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired

that the decision will neither presently affect the parties' 'rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citations omitted).  While the movant has the burden of proving mootness, a plaintiff must defend a motion to dismiss, brought under Rule 12(b)(1), by proving by a preponderance of the evidence that the court has jurisdiction to hear its claims.  *Am. Fed. Of Gov't Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139 (D.C. Cir. 2003).

A case is moot if a defendant can demonstrate that two conditions have been met: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged wrong(s) will be repeated. *Doe v. Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  When both conditions are satisfied, the case is moot because neither party has a legally congnizable interest in the final determination of the underlying facts and law.  *See id* (noting that "two conditions . . . must be satisfied if a federal court is to dismiss a case as moot.  First, the court must conclude 'with assurance that "there is no reasonable . . ."' expectation that the alleged violation will recur' [and] . . . second, . . . it must be plain that 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" (citation omitted)).

### III.  ANALYSIS

Ms. Jordan and Messrs. Wilmot and Batties no longer hold any position with IFSB and no longer own any IFSB stock.  None of them could circulate proxy materials, attend shareholder meetings, or cast any votes.  None of them has any intention to serve as officers of IFSB, buy its shares, or contact any shareholder or IFSB Board member to discuss Bank-related business now or in the future.  *See* Defs.' Mot., Attached Affidavits of Carolyn Jordan, David Wilmot, and Thomas

Batties. Due to these changed circumstances, these three Defendants no longer have the ability to influence, control or otherwise make decisions affecting the Bank. The Court finds, therefore, and Mr. Bender does not seriously contest, that there is no reasonable expectation that the alleged violations of the securities laws and Bank bylaws would recur.

More serious, however, is the argument that these events have not completely and irrevocably eradicated the effects of the alleged violations. The Defendants argue that the Amended Complaint fundamentally complained that Mr. Bender's nominee for the Board did not get elected due to their actions and that their resignations mean that his associates now control the Board. Therefore, they contend, the change in events has completed eradicated any effect of their alleged violations. Mr. Bender protests that his complaint is broader than described and seeks "to remove the taint of the 2005 Annual Meeting: to declare it void, and to have appropriate disclosures made to the public in anticipation of the next meeting." Plaintiffs' Mem. of P. & A. in Opp. to Defs.' Mot. to Dismiss ("Pls.' Opp.") at 8. He notes that a final adjudication here would allow clear communications with Bank shareholders as to these past events and aid OTS oversight of the Bank. Relying on *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167 (2000), Mr. Bender asserts "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id.* at 189 (citations omitted; internal quotations and ellipses omitted).

Mr. Bender wants the public record to be clear and all IFSB shareholders properly notified that the three remaining Defendants here violated the securities laws and their fiduciary duties as directors of the Bank. After a lengthy evidentiary hearing, the Court made those findings

-10-

of fact and conclusions of law on a preliminary basis. *See* July 21, 2006, Memorandum Opinion [Dkt. #50]. The Director Defendants and Mr. Batties promptly appealed but have now withdrawn their appeal without briefing. They have thus voluntarily left the record with the Court's preliminary findings unrebutted. That will have to do. While "[t]he voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot. . . . , [t]he case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *United States v. W.T. Grant Co.*, 345 U.S. 630, 632 (1953) (citation omitted). No further relief against these remaining Defendants could affect real life: enjoining them from improper disclosures, gamesmanship in conducting shareholder meetings, and hidden promises to obtain shareholder votes would be an empty gesture because none of them is in a position to take such actions.[10]

        The Court has considered the public interest in this litigation as well. Certainly most of the Bank's shareholders and the OTS were kept in the dark concerning these Defendants' activities surrounding the 2005 Shareholders Meeting. The question is whether, without a final adjudication, the effects of the alleged violations have been completely and irrevocably eradicated. Mr. Bender is the plaintiff in this particular suit, *see supra* n. 1,7, but IFSB itself is at stake. Likewise, without debating the merits of the claim, the Bank has filed a cross-claim against Defendants and is the correct party to pursue this claim to its conclusion. *See* Defendant Independence Federal Savings Bank's Motion for Leave to Amend Pleadings to State Cross-Claim

---

[10] Mr. Bender in paragraph (H) of his Request for Relief asks the Court to, "award Plaintiffs their attorneys' fees and costs of this action." Pls.' First Am. Compl. at 47. Nonetheless, a case does not retain its character as a live dispute when the substance of the litigation is moot. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).

-11-

Out-of-Time [Dkt. #78]; *see also,* May 30, 2007, Minute Entry Order (granting motion).

## IV.  CONCLUSION

The Court concludes that the Bank can now proceed to conduct shareholder meetings, elect new Board members, and work to re-grow its business without the distraction or cost of this litigation. The public and shareholders' need to know must be satisfied with the preliminary findings. Therefore, Defendants' motion will be granted and Mr. Bender's complaint against the three remaining Defendants will be dismissed.  A memorializing order accompanies this Opinion.


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: May 31, 2007