UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MORTON A. BENDER, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C. A. No. 1:06cv00092 |
| ) | Honorable Rosemary M. Collyer |
| **CAROLYN D. JORDON, et al.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| **INDEPENDENCE FEDERAL SAVINGS** ) | |
| **BANK,** ) | |
| ) | |
| Cross-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **CAROLYN D. JORDAN, et al.** ) | |
| ) | |
| Cross-Defendants. ) | |

**CROSS-PLAINTIFF, INDEPENDENCE FEDERAL SAVINGS BANK'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS CROSS-PLAINTIFF'S CROSS-CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(1)**

**COMES NOW** the Defendant, Independence Federal Savings Bank ("IFSB" or the "Bank"), by and through its undersigned counsel, pursuant to LCvR 7(b), and files this Memorandum of Points and Authorities in Opposition to Cross-Defendants' Motion to Dismiss Cross-Plaintiff's Cross-Claim pursuant to Fed. R. Civ. P. 12(b)(1) and for grounds in support thereof states as follows:

I.   **INTRODUCTION**

By Minute Order dated May 30, 2007, this Court granted IFSB's Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time [Dkt.#78] despite the Memorandum in Opposition to the IFSB's Motion [Dkt.#83] filed by Cross-Defendants, Carolyn D. Jordan, David Wilmot, and Thomas L. Batties (the "Cross-Defendants").

In a Memorandum Opinion [Dkt.#90] and Order [Dkt.#91] dated May 31, 2007, this Court granted the Cross-Defendants' Motion to Dismiss the First Amended Complaint filed by Plaintiffs, Morton A. Bender and Grace Bender, as Moot. In its Memorandum Opinion, this Court noted that "the Bank has filed a cross-claim against Defendants and is the correct party to pursue this claim to its conclusion." See Memorandum Opinion [Dkt.#90] at 11.

Cross-Defendants have now filed a Motion to Dismiss IFSB's Cross-Claim (the "Cross-Claim") on the basis that this Court lacks subject matter jurisdiction. Specifically, Cross-Defendants argue that IFSB's claims do not arise under federal law and that this Court has no discretion to maintain supplementary jurisdiction over IFSB's claims, which it characterizes as "state-law" claims. Alternatively, the Cross-Defendants maintain (for a second time) that the claims asserted in the Cross-Claim are not ripe for determination, notwithstanding this Court's ruling on IFSB's Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time.

As set forth in more detail below, this Court has federal jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because the claims asserted by IFSB in its Cross-Claim arise out of legal and contractual duties mandated by federal law, and the resolution of these claims will depend upon the application and interpretation of federal law. Furthermore, based upon the arguments previously advanced by IFSB, and because this Court has rendered a final decision on

the underlying claim pursuant to its Memorandum Opinion [Dkt.#90] and Order [Dkt.#91] dated May 31, 2007, there is no question that IFSB's claims are ripe.

## II. BACKGROUND

### A. The Regulation

Pursuant to 12 C.F.R. § 545.121 (the "Regulation"), a Federal savings association "shall indemnify its directors, officers, and employees" in accordance with the express requirements set forth in the Regulation. The Regulation provides, inter alia, that:

> (b) General.   Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an action is brought or threatened because that person is or was a director, officer, or employee of the association, for:
>
> (1) Any amount for which that person becomes liable under a judgment if [sic] such action;  and
>
> (2) Reasonable costs and expenses, including reasonable attorney's fees, actually paid or incurred by that person in defending or settling such action, or in enforcing his or her rights under this section if he or she attains a favorable judgment in such enforcement action.
>
> (c) Requirements.   Indemnification shall be made to such [person] under paragraph (b) of this section only if:
>
> (1) Final judgment on the merits is in his or her favor;  or
>
> (2) In case of:
>
> (i) Settlement,
>
> (ii) Final judgment against him or her, or
>
> (iii) Final judgment in his or her favor, other than on the merits, if a majority of the disinterested directors of the savings association determine that he or she was acting in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or

3

its members.

However, no indemnification shall be made unless the association gives the Office at least 60 days' notice of its intention to make such indemnification. Such notice shall state the facts on which the action arose, the terms of any settlement, and any disposition of the action by a court. Such notice, a copy thereof, and a certified copy of the resolution containing the required determination by the board of directors shall be sent to the Regional Director, who shall promptly acknowledge receipt thereof. The notice period shall run from the date of such receipt. No such indemnification shall be made if the OTS advises the association in writing, within such notice period, of his or her objection thereto.

Section 545.121(c)(1) "provides for mandatory indemnification if there is a `final judgment on the merits' in the director's favor. Section 545.121(c)(2) provides for permissive indemnification when the result is less favorable, and upon the approval of a majority of the disinterested directors."  Harris v. Resolution Trust Corporation, 939 F.2d 926, 928 (11th Cir. 1991). Thus, indemnification is only <u>required</u> under 12 C.F.R. § 545.121 when there has been a final judgment on the merits in the officer or director's favor.  Waldboro Bank, F.S.B. v. American Casualty Company of Reading, Pennsylvania, 775 F. Supp. 432, 433-34 (D. Me. 1991).

Pursuant to 12 C.F.R. § 545.121(e):

> [i]f a majority of the directors of a savings association concludes that, in connection with an action, any person ultimately may become entitled to indemnification under this section, the directors may authorize payment of reasonable costs and expenses, including reasonable attorneys' fees, arising form the defense or settlement of such action. Nothing in this paragraph (e) shall prevent the directors of a savings association from imposing such conditions on a payment of expenses as they deem warranted and in the interests of the savings association. <u>Before making advance payment of expenses under this paragraph (e), the savings association shall obtain an agreement that the savings association will be repaid if the person on whose behalf payment is made is later determined not to be entitled to such indemnification</u>.

(Emphasis supplied). This section "permits the board of directors to prepay the director's expenses if the board concludes that the director may ultimately be entitled to indemnification." See OTS opinion Letter, 1989 WL 1114183 (October 6, 1989) attached hereto as **Exhibit 1**.

    B.    <u>IFSB's Advancement of Fees and Expenses to Cross-Defendants</u>

On or about January 18, 2006, Plaintiffs, Morton A. Bender and Grace Bender instituted the present action against IFSB and five of its Directors, as well as its then Acting President and Chief Executive Officer. In accordance with the regulations promulgated by the Office of Thrift Supervision ("OTS"), which exclusively govern indemnification of directors and officers in the context of litigation, 12 C.F.R. § 545.121(e), IFSB made advanced payments of costs and expenses incurred in this case to the individual defendants which included the Cross-Defendants.

The decision to advance payments to the Cross Defendants pursuant to § 545.121(e) was made by the Board of Directors at the early stages of this litigation when the Individual Defendants, including those who have since been dismissed from this case, comprised a majority of the Board and voted in favor of the advancement of said expenses.[1] At that time, there had been no evidence entered into the record of this case and no decision by this Court on Plaintiffs' request for a Preliminary Injunction.

On July 21, 2006, this Court entered a Memorandum Opinion [Dkt.#50] and Order [Dkt.#51]. In its Memorandum Opinion, the Court concluded, <u>inter alia</u>, that the Plaintiffs were likely to succeed on the merits of certain claims in that: 1) the Director Defendants, through their chairman and vice chairman, acted as a group to acquire certain shares and voting power to solidify their control of the IFSB Board; acquired a beneficial ownership of said shares and

---

[1] At that time, because the majority of the Board of Directors was comprised of Defendants in this litigation, the Bank joined with the Individual Defendants to argue in favor of the dismissal of the Plaintiffs' Count VI on the basis that it was not ripe under the Regulation. Since that time, all of the Defendant Directors have resigned from their positions on the Board; the Bank has hired new counsel and is no longer affiliated in any way with the Individual Defendants or any arguments advanced by said Individual Defendants.

voting power, which constituted nearly 10% of the Bank's outstanding shares, and; violated § 13(d) of the Exchange Act by failing to file the required Schedule 13D (see Memorandum Opinion at 28-31 [Dkt.#50]); 2) sent proxy solicitations containing multiple false and misleading material statements which led to election of the Management Nominees in violation of § 14(a) of the Exchange Act (see Memorandum Opinion at 34-44 [Dkt.#50]); and 3) violated § 45 of Robert's Rules by unilaterally allocating proxies after the polls closed (see Memorandum Opinion at 48-52 [Dkt.#50]).

On August 4, 2006, John E. Ryan, Regional Director of the Office of Thrift Supervision ("OTS"), sent a letter to the "Board of Directors c/o Acting CEO E. Leroy Morris" of IFSB in which Mr. Ryan stated: "taking into consideration the weight of the findings in the Order against the Director Defendants, I have determined that it would be unsafe and unsound to permit Independence to continue to advance unsecured legal and related expenses on behalf of the Director Defendants in connection with this litigation." A true and correct copy of the August 4, 2006, OTS Letter is attached hereto as **Exhibit 2**. Mr. Ryan further required the Bank to "obtain collateral from each of the Director Defendants sufficient to ensure the reimbursement of the Bank for all legal and related expenses incurred to date, as well as sufficient to support any additional advances to cover any expenses in the future . . . ." Id. He further stated that "[u]ntil such time as sufficient collateral to cover already incurred expenses has been received and approved by OTS and the Board, no additional advancement of legal expenses should be permitted." Id.

IFSB subsequently demanded that Cross-Defendants repay the monies advanced pursuant to 12 C.F.R. § 545.121(e); however, Cross-Defendants failed to do so. Consequently, IFSB filed a Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time [Dkt.#78], which was

granted by this Court on May 30, 2007, notwithstanding Cross-Defendants' opposition to the Motion [Dkt.#83]. In its Cross-Claim, IFSB has alleged claims for breach of contract and unjust enrichment, on the basis that the Cross-Defendants are not entitled to indemnification under 12 C.F.R. § 545.121 and should be required to repay any and all amounts previously advanced pursuant to 12 C.F.R. § 545.121(e).

## II. ARGUMENT

### A. This Court Has Subject Matter Jurisdiction Over the Claims Asserted in the Cross-Claim Which Involve Legal and Contractual Duties Expressly Mandated by Federal Regulation.

The Supreme Court has acknowledged that "suits to enforce contracts contemplated by federal statutes may set forth federal claims and that private parties in appropriate cases may sue in federal court to enforce contractual rights created by federal statute." Jackson Transit Authority v. Transit Union, 457 U.S. 15, 22, 102 S.Ct. 2202, 2207, 72 L. Ed. 2d 639 (1982) (emphasis supplied). Furthermore, the United States Court of Appeals for the District of Columbia Circuit has recognized the well-settled principle that a federal court may have jurisdiction over state-law based claims where federal law constitutes an essential component of such claims. Board of Trustees of Hotel and Restaurant Employees Local 25 v. Madison Hotel, Inc., 97 F.3d 1479, 1486 (D.C. Cir. 1996).

A plaintiff suing to vindicate contractual rights set forth by federal statutes can state a federal claim even if the relevant statute lacks express provisions creating federal causes of action. Empire Health Choice Assurance, Inc. v. McVeigh, 126 S.Ct. 2121, 2133 (2006)(citing Jackson Transit, 457 U.S. at 22, 102 S. Ct. at 2207). In any case, the critical factor in determining the scope of rights and remedies under a federal statute is the congressional intent behind that particular provision at issue. Id., 126 S. Ct. at 2134 (citing Jackson Transit, 457 U.S.

at 22, 102 S. Ct. at 2207). Thus, the absence of a federal private right of action is "not dispositive of the `sensitive judgments about congressional intent' that § 1331 requires." Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005) (interpreting Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986)).

Cross-Defendants have not cited, nor has IFSB found, a case directly on point and decided under the federal regulation at issue in this case. Nonetheless, Cross-Defendants rely upon, Grable in which the Supreme Court recognized that there was no "`single, precise, all embracing' test for jurisdiction over federal issues embedded in state-law claims between non-diverse parties." Id., 545 U.S. at 314, 125 S. Ct. at 2368. Furthermore, the Grable Court held that its prior decision in Merrell Dow, supra, also cited by Cross-Defendants, disclaimed the adoption of any bright-line rule in determinations about federal jurisdiction. Id., 545 U.S. at 317, 125 S. Ct. at 2370.

The Cross-Defendants maintain that Empire Health Choice Assurance, Inc. v. McVeigh, 126 S.Ct. 2121 (2006), presents a case with facts similar to those in the present case supporting the argument that this Court does not have subject matter jurisdiction over the claims asserted in IFSB's Cross-Claim. In Empire, the Supreme Court held that federal court does not have subject matter jurisdiction over subrogation or reimbursement claims filed by health insurance carriers, providing health insurance to federal employees pursuant to the Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U.S.C. § 8901, et seq., in cases where plan beneficiaries obtain personal injury recoveries in state-court tort actions against third-party tortfeasors.

Empire is easily distinguishable from the present case. Although the master contract between the Office of Personnel Management and the health insurance carrier provided for

reimbursement of benefits paid, FEHBA <u>contained no provisions addressing the reimbursement or subrogation rights of carriers</u>.  Furthermore, while FEHBA's preemption provision rendered contract terms in health insurance plans preemptive, it did not render the statutory provisions enacted by Congress preemptive.  The Court found that the applicable preemption provision was open to more than one construction in that it either did not cover contract-based reimbursement claims or it was not sufficiently broad to confer federal jurisdiction.  The Court highlighted the fact that the statement of benefits provided by the health plan at issue linked together the carrier's right to reimbursement with its right to subrogation against a third-party tortfeasor whose liability to the insured or insurer was not governed by a federal contact, but by state law.

Unlike <u>Empire</u>, the intent of the federal law at issue in this case is clear.  The Home Owners Loan Act (HOLA) directs the Office of Thrift Supervision ("OTS") to "provide for the organization, incorporation, examination, operation, and regulation of . . . Federal savings associations."  <u>See</u> 12 U.S.C. § 1464(a).  The United States Supreme Court has recognized that "'[i]t would have been difficult for Congress to give the [OTS] a broader mandate.'"  <u>Fidelity Federal Savings and Loan Association v. De La Cuesta</u>, 458 U.S. 141, 161, 102 S. Ct. 3014, 3025, 73 L. Ed.2d 664 (1982) (quoting <u>Glendale Federal Sav. & Loan Assn. v. Fox</u>, 459 F. Supp. 903, 910 (C.D. Cal. 1978); SPGGC, LLC v. Ayotte, ____ F.3d ____, 2007 WL 1545840 at *8 (1st Cir. 2007).

The OTS regulations governing Federal savings associations explicitly state that they were "promulgated pursuant to the plenary and exclusive authority of the Office [of Thrift Supervision] to regulate all aspects of the operations of Federal savings associations, as set forth in section 5(a) of the Act.  The exercise of the Office's authority is preemptive of any state law purporting to address the subject of the operations of a Federal savings association."  <u>See</u> 12

9

C.F.R. § 545.2. It has been stated that the regulation of federal savings associations by the OTS is so pervasive as to leave no room for state regulatory control. <u>Bank of America v. City and County of San Francisco</u>, 309 F.3d 551, 560 (9th Cir. 2002).

Pursuant to its broad authority, the OTS promulgated "exclusive" provisions regulating a Federal savings bank's ability to indemnify its officers and directors, which are contained in 12 C.F.R. § 545.121. Thus, unless a federal savings bank has a bylaw in effect relating to indemnification of its personnel, "<u>no savings bank shall indemnify any person referred to in paragraph (b) . . . other than in accordance with this provision</u>." See 12 C.F.R. § 545.121(f) (emphasis supplied).

Unlike <u>Empire</u>, which involved claims for reimbursement not expressly provided by statute, the contracts at issue in the present case, which IFSB alleges gives rise to Cross-Defendants' duty to repay amounts advanced under 12 C.F.R. § 545.121(e), were expressly <u>required</u> by federal law as a condition to the advancement of such fees and expenses. The specific language of 12 C.F.R. § 545.121(e) states that: "[b]efore making advance payment of expenses under this paragraph (e), the savings association <u>shall obtain an agreement that the savings association will be repaid if the person on whose behalf payment is made is later determined not to be entitled to such indemnification</u>." (Emphasis supplied). Consequently, both the advancement of expenses under 12 C.F.R. § 545.121(e), and a federal savings bank's contractual rights to be repaid such expenses are established by the "exclusive" regulations promulgated by the OTS. Furthermore, the claims asserted by IFSB necessarily involve questions as to the application and interpretation of 12 C.F.R. § 545.121 in that this Court must decide, in the first instance, whether the Cross-Defendants are entitled to indemnification under

12 C.F.R. § 545.121, before it can reach a decision as to whether or not Cross-Defendants have breached their federally created contract obligations to repay the amounts advanced.[2]

The recent case of AT&T Communications of the Mountain States, Inc. v. Qwest Corporation, 2007 WL 518537 (D. Utah 2007), is instructive. In Qwest Corporation, the United States District Court for the District of Utah, considered arguments similar to those advanced by Cross-Defendants. AT&T filed a complaint in State Court against Qwest Corporation for breach of contract and breach of implied covenant of good faith and fair dealing relating to the parties' interconnection agreements, which Qwest removed to federal court. In attempting to have the case remanded, AT&T claimed that no federal claim was stated on the face of its Complaint because both of its claims sought to enforce the terms of its contracts with Qwest Corporation which were only state law claims. The Court disagreed.

The Court held that a fair reading of the Complaint alleged rights and duties imposed by the Federal Telecommunications Act of 1966, and the violation of those duties by Qwest when it allegedly breached the parties' interconnection agreements. The court relied upon Verizon Maryland, Inc. v. Global Naps, Inc., 377 F.3d 355 (4th Cir. 2004), which found that federal question jurisdiction existed, in part, because the complaint called for an interpretation of a federally mandated agreement which incorporated federal law, and because the contract at issue involved duties that were creations of federal law. The Verizon Court had further looked to the purpose of the 1996 Act which took the regulation of the local telephone service away from the States and established a new federal regime designed to promote competition. The Court recognized that "`[t]he jurisdictional analysis must take into account the broader federal interest; it must recognize that the interconnection agreement and the duties specified therein . . . have the

---

[2] IFSB intends to file a Motion for Summary Judgment on this issue.

imprimatur of federal law.'" Qwest Corporation, 2007 WL 518537 at *4 (quoting Verizon Maryland, Inc., 377 F.3d at 365 n.1).

Thus, the AT&T Court found the analysis of the Verizon Court persuasive in that the legal and contractual duties alleged to have been breached were imposed by the 1996 Act, were at the heart of AT&T's Complaint, and their resolution depended upon the application and interpretation of federal law. The Court expressly rejected AT&T's reliance upon Empire, supra, noting that the relevant jurisdictional statute in that case did not encompass contract based reimbursement claims and the suit did not involve issues of law that belonged in federal court.

As in Qwest Corporation, IFSB asserts that the legal and contractual duties alleged to have been breached in IFSB's Cross-Claim were expressly imposed by 12 C.F.R. § 545.121(e) and are at the heart of the claims alleged in the Cross-Claim. Furthermore the resolution of the claims asserted in the Cross-Claim will depend upon the application and interpretation of federal law, which is the exclusive law applicable to a Federal savings association's ability to indemnify its officers and directors. Consequently, IFSB's Cross-Claim belongs in federal court, and this Court has subject matter jurisdiction.[3]

### B. **IFSB's Cross-Claim is Ripe.**

The issue of the ripeness of IFSB's Cross-Claim was briefed in the context of IFSB's Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time [Dkt.#78]. In that regard, IFSB adopts and incorporates its arguments raised in its Motion and Reply Memorandum [Dkt.#84]. Furthermore, this Court has rendered a final decision on the underlying claim pursuant to its Memorandum Opinion [Dkt.#90] and Order [Dkt.#91] dated May 31, 2007, therefore, there is no question that IFSB's claims are ripe.

---

[3] In as much as this Court has original federal question jurisdiction, it need not reach the issue raised by Cross-Defendants that the case must be dismissed on grounds that it does not have discretion to retain supplemental jurisdiction.

**III.    CONCLUSION**

For the reasons set forth above, Independence Federal Savings Bank, respectfully requests an Order from this Court denying Cross-Defendants' Motion to Dismiss Cross-Plaintiff's Cross-Claim pursuant to Fed. R. Civ. P. 12(b)(1).

Respectfully Submitted,

MILES & STOCKBRIDGE P.C.

/s/ James A. Sullivan, Jr.
_____
G. VANN CANADA, JR. (D.C. Bar #366414)
JAMES A. SULLIVAN, JR. (D.C. Bar #475145)
11 North Washington Street
Suite 700
Rockville, Maryland 20850
Telephone: (301) 762-1600
Fax:  (301) 762-0363
Attorneys for Cross-Plaintiff,
Independence Federal Savings Bank