**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MORTON A. BENDER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **C.A. No. 1:06cv00092** |
| **CAROLYN D. JORDAN, et al.,** | ) | **Honorable Rosemary M. Collyer** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MORTON AND GRACE BENDERS' MOTION**
**FOR STATUTORY ATTORNEYS FEES AND COSTS**
**AGAINST DEFENDANTS JORDAN, WILMOT AND BATTIES**

Plaintiffs, Morton and Grace Bender, by and through their undersigned counsel, hereby move

for an award of attorneys fees and costs against the individual Defendants Carolyn Jordan, David

Wilmot and Thomas Batties pursuant to the Private Securities Litigation Reform Act (15 U.S.C. §78u-

4(c)). In support hereof, the Plaintiffs submit the accompanying Memorandum of Points and

Authorities.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.

_____/s/_____

Dale A. Cooter, Bar #277454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C.  20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Plaintiffs*
*Morton A. Bender and Grace M. Bender*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing PLAINTIFFS' MOTION FOR

STATUTORY ATTORNEYS FEES AND COSTS AGAINST DEFENDANTS JORDAN,

WILMOT AND BATTIES, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

THEREOF, and PROPOSED ORDER was sent electronically via the Court's ECF system on the 10th

day of July 2007, to:


Peter Strand
Shook, Hardy & Bacon, L.L.P.
Hamilton Square
600 14th Street, N.W.
Suite 800
Washington, D.C. 20005-2004
pstrand@shb.com


Vann Canada
James Andrew Sullivan ,Jr.
Miles & Stockbridge
11 North Washington Street
Suite 700
Rockville MD 20850
vcanada@milesstockbddge.com
jsullivan@milesstockbridge.com


Haig V. Kalbian
Brawner Building
888 17th Street NW
Suite 1000
Washington DC 20006
hkalbian@kalbianhagerty.com


                    /s/
            _____
              Dale A. Cooter

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MORTON A. BENDER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **C.A. No. 1:06cv00092** |
| **CAROLYN D. JORDAN, et al.,** | ) | **Honorable Rosemary M. Collyer** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MORTON AND GRACE BENDERS'**
**MOTION FOR STATUTORY ATTORNEYS FEES AND COSTS**
<u>**AGAINST DEFENDANTS JORDAN, WILMOT, AND BATTIES**</u>

Plaintiffs, Morton Bender and Grace Bender, by and through their undersigned counsel, submit this Memorandum of Points and Authorities in Support of their Motion for Statutory Attorneys Fees and Costs Against Defendants Jordan, Wilmot, and Batties and state as follows:

Upon a final adjudication of private securities litigation, the Court has a mandatory obligation pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. Section 78u-4(c) to assess compliance by the parties and their counsel with Rule 11 in this litigation.[1]  *Gorman v. Coogan*, 2004 WL 2713095 (D. Maine 2004).  The mandatory sanctions provision in the PSLRA applies to both class actions and individual actions, and applies to actions seeking damages as well as to actions seeking injunctive relief. *Simon DeBartolo Group v. Richard E. Jacobs Group*, 985 F. Supp. 427,

---

[1] Because a court's review under the PSLRA is mandatory, it is not clear that a motion for fees is even necessary. <u>See</u> <u>Hilkene v. WD-40 Company</u>, 2007 WL 470830, *1 (D. Kan. 2007) (Slip copy) ("no motion [for sanctions] is necessary under the PSLRA") .  However, out an abundance of caution, the Plaintiffs are moving for an award of sanctions.

430-31 (S.D.N.Y. 1997), *affirmed in part, rev'd in part on other grounds,* 186 F.3d 157 (2d Cir. 1999). The mandatory sanction provisions also apply to 13d litigation. *Gorman v. Coogan*, 2004 WL 2713095 (D. Maine 2004). Once a Court finds a violation of Rule 11, the Court has a mandatory obligation to impose sanctions. *De La Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp.2d 250, 256 (S.D.N.Y. 2003).

The PSLRA expressly provides the review by the Court shall be "upon final adjucation." By its May 31, 2007 Order, the Court entered a final appealable order dismissing as moot the remaining claims of Plaintiffs Complaint. Thus, this case has now been "finally adjudicated" and it is appropriate that the Court now conduct its mandatory PSLRA review. The Plaintiffs respectfully submit that such a review will lead to but one conclusion - that three of the individual Defendants Carolyn Jordan ("Jordan"), David Wilmot ("Wilmot") and Thomas Batties ("Batties") (together, the "Main Individual Defendants")[2] failed to comply with their Rule 11 obligations. As noted by the *Gorman* Court, the commentary to Rule 11 states that litigants are subject to Rule 11 sanctions "'for insisting upon a position after it is no longer tenable'" and their Rule 11 compliance continues to be measured throughout the litigation, and includes "'reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.'" *Gorman*, 2004 WL 2713095, *20 (quoting Advisory Committee notes to 1993 amendment to Rule 11). Here, the story told by the Defendants, both on paper and in testimony during the preliminary injunction hearing, was

---

[2] The Plaintiffs do not seek sanctions against the other individual Defendants: Michael J. Cobb ("Cobb"), William B. Fitzgerald, IV ("Fitzgerald") or Eugene K. Youngentob ("Youngentob"). The Plaintiffs also do not seek sanctions against opposing counsel.

largely fiction.

## I.  **DEFENDANTS FAILED TO COMPLY WITH RULE 11**

The PSLRA imposes on the Court the obligation to review and make specific findings

regarding the compliance by the Main Individual Defendants with "each requirement of Rule 11(b) of

the Federal Rules of Civil Procedure as to any . . . responsive pleading, or dispositive motion."  The

Main Individual Defendants failed to comply with Rule 11 in their Answer.  The gravity of the Main

Individual Defendants' non-compliance is aggravated by the fact that each is a licensed attorney and

member of the bar of the District of Columbia.  Subsections (3) and (4) of Rule 11(b) are the two

subsections that were most flagrantly violated.  Subsection (3) is violated where a defense or other

factual contention does not have evidentiary support; subsection (4) is violated where a denial of a

factual contention is not warranted on the evidence.

In their Answers to the Plaintiffs' Complaint, each of the Individual Defendants denied in

substantial part most of the Plaintiffs' allegations.  The denials were so pervasive that the Main

Individual Defendants even denied Plaintiffs' neutral descriptions of the contents of documents.  For

example, in paragraph 19 of their respective Answers, each of the Main Individual Defendants denied

the Plaintiffs' description of the contents of Bender's October 3, 2005 letter.  The description was

strictly factual and there was no evidence to support the Main Individual Defendants' denial.  This

Court's factual finding regarding the October 3, 2005 letter is consistent with the Plaintiffs' allegations.

Bender v. Jordan, 439 F.Supp.2d 139, 151 (at Findings of Fact ¶15) (D.D.C. 2006). More

significantly, the Main Individual Defendants denied the allegations going to the heart of the Plaintiffs

Complaint - allegations concerning their involvement with the Save the Committee Letter, the

3

McPhail/Douglas letter, and the Doley/Thompson shares and allegations regarding the misleading nature and outright untruths in the proxy statement. Once the Main Individual Defendants denied the allegations, those denials were not easily disproven because the evidence establishing their invalidity was held by the Defendants themselves. Only after significant expense were the Plaintiffs able to prove that those denials were unwarranted and without any evidentiary support.

**A.      Defendants' Denials of Plaintiffs' Allegations Regarding the Proxy Communications Were Not Warranted.**

As found by the Court, Plaintiffs' claims regarding the false and misleading proxy materials arose from three communications: (1) the May 4, 2005 Committee Letter; (2) the Update letter and October 4, 2005 proxy materials; and (3) the October 21, 2005 letter to shareholders, purportedly sent by shareholders Catherine McPhail and A. Gilbert Douglas (the "McPhail/Douglas Letter"). 439 F. Supp.2d at 165-66. Plaintiffs' allegations regarding these communications were contained primarily in Paragraphs 14, 20 - 23 and 51-65 of the Complaint. With limited exception, the Main Individual Defendants denied each of these allegations. For example, the Main Individual Defendants denied that the Update and the proxy materials contained inaccurate and misleading information regarding Bender, his nominees, his regulatory filings and his intentions to obtain majority ownership and control of the bank (Compl. and Answer at ¶20); they denied that the McPhail/Douglas letter contained inaccurate information about Bender and his intentions (Compl. and Answer at ¶23); and they denied that the McPhail/Douglas letter was based on information provided by Batties (Compl. and Answer at ¶23). The Main Individual Defendants also denied that the Plaintiffs' allegation that the Committee letter was drafted by or with the assistance of Batties. Compl. and Answer at ¶14. The denials regarding the

4

Main Individual Defendants' knowledge and intent with regard to, and the contents of, the Committee

Letter began with the denials in the Answers but continued through discovery and trial, with Batties in

particular denying any involvement with the letter.  As the Court has found, however, the denials were

not supported by the evidence.  See e.g., 439 F. Supp.2d at 148-51 (at Findings of Fact ¶¶8-10).  As

a direct result of the denials by the Main Individual Defendants, Bender incurred substantial legal fees

and associated  expenses to prove them wrong.[3]

As this Court noted in its July 2006 opinion:

> The three protested communications contained multiple false and misleading statements.
> In the interests of speed, if not comprehensiveness, the court will not here catalog the
> entirety of the false information and misinformation promulgated by the Defendant
> Directors and Mr. Batties . . .  Though much more ink could be spilled on this topic.

439 F.Supp.2d at 166.  The denials by Batties, Jordan and Wilmot regarding the three communications

are not supported by the evidence and constitute a flagrant violation of Rule

11(b).

**B.    Defendants' Denials of Plaintiffs' Allegations Regarding the
        Thompson Shares Were Not Warranted**

In their Complaint, the Plaintiffs alleged that the Main Individual Defendants, in an effort to

ensure the election of the management nominees to the Board, arranged for the sale of IFSB stock to

Jeffrey Thomspon, the then chairman and chief executive of an accounting firm in which Defendant

Cobb was also a shareholder.  Compl. at ¶24.   Mr. Thompson was a friend and client of Defendant

---

[3]    In the face of Defendants' repeated denials, Bender went so far as to hire a linguistics
expert, Marilyn A. Lashner, Ph.D., to analyze the content of the written communications in an attempt
to determine who was behind the communications.

Wilmot's. 439 F. Supp.2d at 148-51 (at Findings of Fact ¶20). The Main Individual Defendants

denied that they had acted with Mr. Thompson to further their agenda, including the election of the

Management Nominees and to defeat the Bender Nominees. Compl. and Answer at ¶¶26, 27. They

also denied that they had contacted Mr. Doley for the purpose of purchasing his shares. Compl. and

Answer at ¶30. None of the denials were supported by the evidence. The Court found that

Defendants Wilmot and Jordan telephoned Mr. Doley on October 25, 2005 regarding a possible sale

of his shares to Mr. Thompson. 439 F. Supp.2d at 148-51 (at Findings of Fact ¶21). Mr. Thompson

was willing to purchase the Doley shares at an above market price if Doley agreed to cast his shares

for the management nominees. 439 F. Supp.2d at 148-51 (at Findings of Fact ¶22). If Thompson

purchased the shares, however, it would have required OTS approval. 439 F. Supp.2d at 148-51 (at

Findings of Fact ¶22). Thompsen directed his counsel to prepare a purchase agreement whereby

Wilmot would be identified as the purchaser. 439 F. Supp.2d at 148-51 (at Findings of Fact ¶22).

C.    **Defendants' Denials of Plaintiffs' Allegations Regarding the
Doley Shares Were Not Warranted**

The next category of allegations which formed the basis for Plaintiffs' claims are the allegations

regarding the Doley shares. These allegations are primarily in Paragraphs 28-33, 39, 46-47, and 73-

75 of Plaintiffs' Complaint. As with the proxy materials allegations, the Main Individual Defendants

denied most of the allegations regarding the Doley shares. For example, the Defendants denied that on

October 25, 20005 Doley was contacted by one or more of the Individual Defendants (or one of the

other Defendant directors) for the purpose of purchasing the Doley shares. Compl. and Answer at

¶30. The Defendants denied that during the four hour delay of the shareholders meeting on October

26, 2005 Jordan and Wilmot took Doley to lunch at the Prime Rib Restaurant to persuade Doley to

assign his proxies or sell his shares. Compl. and Answer at ¶32. The Defendants denied that Doley

was promised a down payment in exchange for control over his shares. Compl. and Answer at ¶33.

The Court found that the testimony of Jordan and Wilmot denying the allegations could not be credited,

especially in light of the paper trail of draft purchase agreements with Wilmot's name (439 F. Supp. 2d

at 154 n.3 (Findings of Fact at ¶24)(citing Trial Exhibits 72, 73); Wilmot's acknowledged "middle of

the night" discussion with Jeffrey Thompson (Id., citing 4/21/06 Hearing Transcript at 74); Mr.

Thompson's having arranged for the issuance of a $165,000 check to Wilmot (Id. citing Trial Exhibit

78); Doley's deposition testimony that he spoke with Jordan and Wilmot about the possibility of a sale

at $18.00 per share (Id. citing Doley Deposition Transcript at 185). The Main Individual Defendants

also deneid that there was any agreement to sell the Doley shares, yet the Court specifically found that

there was "clear and tangible" evidence "that there was an agreement to sell the Doley Participants'

shares on October 25, 2005."  (439 F. Supp. 2d at 154-55 (Findings of Fact at ¶27)(citing Trial

Exhibits 78, 115). Thus, the denials in the Answer were not warranted by the evidence. As with the

proxy communications, the Plaintiffs incurred substantial expense in proving their allegations in the face

of the Defendants unwarranted denials.[4]

---

[4] In addition to attorneys fees and standard expenses, Bender incurred additional legal fees and expenses in having to bring a miscellaneous case in New York to have a subpoena issued for Mr. Doley; had to hire a private investigator in New York to track Mr. Doley's travels; had to hire local counsel in New York regarding service issues. Mr. Doley's testimony was needed because the Defendants denied the allegations regarding their involvement with Doley.

## II.    THE IMPOSITION OF SANCTIONS IS MANDATORY

15 U.S.C. Section 78u-4(c)(2) requires that sanctions be imposed if the mandatory review

undertaken by the court concludes that Rule 11(b) has been violated and presumes that the appropriate

sanction is an award of attorneys fees and costs:

> **(2) Mandatory Sanctions.**
>
> If the court makes a finding under paragraph (1) that a party . . .
> violated any requirement of Rule 11(b) of the Federal Rules of Civil
> Procedure aas to any complaint, responsive pleading, or dispositive
> motion, the court *shall impose* sanctions on such party . . . in
> accordance with Rule 11 of the Federal Rules of Civil Procedure.
> Prior to making a finding that any party . . . has violated Rule 11 of the
> Federal Rules of Civil Procedure, the court shall give such party or
> attorney notice and an opportunity to respond.
>
> **(3) Presumption in favor of attorneys' fees and costs.**
>
>> **(A) In general**
>>
>> Subject to subparagraphs (b) and (C), for purposes of
>> paragraph (2), the court shall adopt a presumption that
>> the appropriate sanction –
>>
>> **(i)** for failure of any responsive pleading or dispositive
>> motion to comply with any requirement of Rule 11(b)
>> of the Federal Rules of Civil Procedure is an award to
>> the opposing party of the reasonable attorneys' fees
>> and other expenses incurred as a direct result of the
>> violation.

The Plaintiffs submit that, as discussed in Section I, the Court will find that the Main Individual

Defendants committed repeated violations of Rule 11(b)(3) and (4) in denying most of the allegations in

Plaintiff's Complaint. The Main Individual Defendants persisted in those denials right through trial. The

denials were so outrageous, in the face of the documentary evidence and witness testimony, that the

Court concluded that the Main Individual Defendants were not even credible witnesses: "Ms. Jordan

was a singularly incredible witness . . . and her denials were absolute" (439 F. Supp. 2d at 153

(Findings of Fact at ¶23)); "In one of her more incredible statements, Ms. Jordan insists that she has no

recollection of th[e] call [to Mr. Doley on October 25, 2005] (439 F. Supp. 2d at 152 n.10 (Findings

of Fact at ¶21); "Given the importance of the efforts against Mr. Bender, Mr. Batties' direct instructions

to Mr. Chambers, and the involvement of Ms. Jordan, chairman of the Board, and other Board

members, the Court does not credit Mr. Batties' denials" (439 F. Supp. 2d at 149 (Findings of Fact at

¶10); "Mr. Batties' professed inattention and ignorance of the Committee and the Committee Letter

rings hollow" (439 F. Supp. 2d at 149 (Findings of Fact at ¶10); "Mr. Batties and all Director

Defendants have consistently denied any individual or Bank involvement with the preparation or mailing

of the Committee Letter . . . . Those denials were obviously untrue" (439 F. Supp. 2d at 151 (Findings

of Fact at ¶13) ; "Ms. Jordan and Mr. Wilmot insist that the [shareholders'] meeting was postponed . .

. so that the Bank's attorney, Mr. Royer, could contact OTS and get advice on [handling] Mr.

Bender's voting challenges. . . . Mr. Royer told a different story . . . . The Court credits Mr. Royer"

(439 F. Supp. 2d at 153 n.12 (Findings of Fact at ¶26); "Ms. Jordan and Mr. Wilmot denied any

involvement in the purchase of the Doley Participant shares. . . . [T]he testimony of Ms. Jordan and Mr.

Wilmot is not to be credited" (439 F. Supp. 2d at 154 (Findings of Fact at ¶24).

Consistent with the mandates of Section 15 U.S.C. Section 78u-4(c)(2) and (c)(3), the

Plaintiffs respectfully request the Court to make a finding that the Main Individual Defendants violated

their Rule 11(b) obligations and that they should be ordered to pay the Plaintiffs' attorneys fees and

expenses incurred as a direct result of the violations. Beginning after February 15, 2006, the day the

Main Individual Defendants filed their Answers, the Plaintiffs incurred a total of $1,211,579.38 in legal fees and in expenses.  See Declaration of Dale A. Cooter ("Cooter Decl.") ( Exhibit A to the Motion); billing statements of Cooter, Mangold, Tompert & Karas LLP (Exhibit B to the Motion); billing statement of McLaughlin & Stern, LLP (Exhibit C to the Motion); and billing statement of Marilyn A. Lashner, Ph.d. (Exhibit D to the Motion).  The fees and expenses incurred by the Plaintiffs in responding to the denials of the Main Individual Defendants were reasonable and necessary.  See Cooter Decl. at ¶¶16, 18-22, 25.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request the Court to undertake at this time its mandatory review pursuant to 15 U.S.C. Section 78u-4(c)(1); to find that Defendants Carolyn Jordan, David Wilmot and Thomas Batties violated Rule 11(b); and to award the Plaintiffs their reasonable attorneys fees and costs in the total amount of $1,211,579.38 incurred as a direct result of that violation.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.

_____/s/_____

Dale A. Cooter, Bar #277454
Donna S. Mangold, Bar #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C.  20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Defendants*
*Morton A. Bender and Grace M. Bender*

10