# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MORTON A. BENDER, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Action No. 06-92 (RMC)** |
| ) | |
| **CAROLYN D. JORDAN, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **INDEPENDENCE FEDERAL SAVINGS** ) | |
| **BANK** ) | |
| ) | |
| **Cross-Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **CAROLYN D. JORDAN, *et al.*,** ) | |
| ) | |
| **Cross-Defendants.** ) | |

## MEMORANDUM OPINION

Defendants Carolyn D. Jordan, David Wilmot and Thomas L. Batties ("Defendants")

obtained an advancement of legal fees from Independence Federal Savings Bank ("IFSB" or

"Bank"), for which they were either Directors or Acting President when Morton A. Bender sued the

Bank, some of its Directors, and Mr. Batties.  Pursuant to regulations issued by the Office of Thrift

Supervision ("OTS"), each Defendant agreed to repay the advances if it were later determined that

they were not entitled to indemnification.  After this Court entered a preliminary injunction in Mr.

Bender's favor, OTS directed the Bank to obtain collateral from each of the Defendants to ensure

reimbursement and to cease advancing legal expenses until OTS approved the collateral. *See* Cross-

Pl.'s Mem. of P. & A. in Opp. to Cross-Def.'s Mot. to Dismiss ("Pl.'s Mem."), Ex. 2 [Dkt. #95].

The Bank demanded a return of the advancements but the Defendants have not made any repayment.

This claim followed.

Defendants argue that this Court is without jurisdiction to rule in this matter because it does not arise under federal law and it is premature. After careful consideration, the Court finds otherwise for the reasons stated below. The Defendants' motion to dismiss the cross claim against them will be denied.

## I. BACKGROUND FACTS

The instant matter is a small part of a multi-year struggle for control of the Bank between Morton A. Bender, a dissident shareholder, and the Bank's former Board of Directors, of which Ms. Jordan was Chair and Mr. Wilmot was Vice-Chair at the relevant time periods. Defendant Batties was the Bank's Acting President and Chief Executive Officer. When Mr. Bender sued, challenging the Defendants' conduct of the 2005 Shareholders' Meeting and pre-meeting proxy statements to shareholders, the Bank conferred with OTS about indemnifying the Defendants. Mr. Bender filed his suit on January 18, 2006. The Office of Thrift Supervision issued a letter regarding the pending litigation and the circumstances surrounding the indemnification of the Directors:

> [O]n January 24, 2006, the Bank's counsel, John R. Hall of Muldoon Murphy and Aguggia, LLP, discussed at length the implication of the litigation pursuant to 12 C.F.R. § 545.121(e) (the Regulation) with Regional Counsel Karen K. Bruton. Specifically, they discussed advancement of legal expenses by Independence for the Director Defendants [and Mr. Batties]. On January 30, 2006, Regional Counsel Bruton provided Mr. Hall a copy of the December 2, 1992 legal opinion by then Office of Thrift Supervision (OTS) Chief Counsel Harris Weinstein (1992 Opinion) interpreting the Regulation. Their discussion of the 1992 Opinion

specifically focused on the language indicating that "[i]t would be an abuse of discretion for directors to provide an advance for expenses unless they first concluded on the basis of full disclosure of all facts by the prospective indemnitee that the prospective indemnitee is clearly more likely than not to succeed in the underlying matter and ample security exists to assure repayment in the absence of ultimate success in the underlying matter."

On February 15, 2006, the Board of Directors (Board), by a vote of five to four, adopted a Resolution authorizing advancement of legal expenses on behalf of the Director Defendants [and Mr. Batties], in accordance with the requirements of the Regulation. Under cover letter dated March 17, 2006, then Vice President, Counsel and Corporate Secretary Sheila R. Finlayson provided this Office copies of the Request for Advancement of Expenses for Claims Against an Officer or Director executed by each of the Director Defendants [and Mr. Batties] (Advancement Requests). Each of the Advancement Requests contain[s] identical two sentence declarations in which the individual requests advancement of reasonable expenses and costs for their defense in this case and each agrees that he/she "will repay the Bank any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation under 12 C.F.R. § 545.121, and I represent that I have sufficient assets to repay my fair share of such amounts."

*See* Pl.'s Mem., Ex. 2 at 1-2 (Letter from John E. Ryan, OTS Regional Director, to Board of Directors). The Advancement Requests were submitted specifically "[p]ursuant to Regulations of [OTS] governing advancement of expenses to directors and officers of a federal savings association, 12 C.F.R. § 545.121.(3)." *See* Pl.'s Cross-Claim, Exs. 1-3 [Dkt. #89]. It was "[u]nder the Regulation," that each Defendant agreed to repay the advancements if not entitled to them. *Id.*

At that time, a majority of the Board of Directors of the Bank opposed Mr. Bender's efforts to change the direction of the Bank. They vigorously defended against his lawsuit. The Bank

advanced $649,614.00 in attorneys' fees and other related litigation expenses and costs. *Id.* ¶ 12. After this Court's July 2006 opinion granted a preliminary injunction in Mr. Bender's favor, the previous majority members resigned their positions from the Board, leaving only Ms. Jordan and Mr. Wilmot. The new majority of the Board favored Mr. Bender; this majority replaced Ms. Jordan as Chair and Mr. Wilmot as Vice-Chair and selected a new President for the Bank. Ms. Jordan and Mr. Wilmot resigned their positions from the Board at the end of the year; all Defendants sold the Bank stock they owned. *See* May 31, 2007 Mem. Op. at 2, 8 [Dkt. #90].

On January 12, 2007, the Bank, through counsel, sent letters to each of the Defendants demanding reimbursement of the sums advanced by the Bank. *See* Pl.'s Cross-Claim ¶ 15. The Defendants have failed to reimburse the Bank any sums. The Bank filed its cross-claim against the Defendants on February 15, 2007.[1] The Bank has alleged claims for breach of contract and unjust enrichment, on the basis that the Defendants are not entitled to indemnification under 12 C.F.R. § 545.121 and should be required to repay any and all amounts previously advanced pursuant to 12 C.F.R. § 545.121(e).

## II. STATUTORY BACKGROUND

Pursuant to 12 C.F.R. § 545.121, a "Federal savings association shall indemnify its directors, officers, and employees" in accordance with the express requirements set forth in the Regulation. Specifically, the Regulation provides, *inter alia*, that:

> (b) General. Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an action is brought or threatened because that person is or was a director, officer, or employee of the association, for:

---

[1] The Cross-Claim was accepted for filing May 30, 2007. See May 30, 2007 Minute Entry Order.

(1) Any amount for which that person becomes liable under a judgment if [sic] such action; and

(2) Reasonable costs and expenses, including reasonable attorney's fees, actually paid or incurred by that person in defending or settling such action, or in enforcing his or her rights under this section if he or she attains a favorable judgment in such enforcement action.

(c) Requirements.  Indemnification shall be made to such [person] under paragraph (b) of this section only if:

(1) Final judgment on the merits in his or her favor; or

(2) In case of:

(I) Settlement;

(ii) Final judgment against him or her, or

(iii) Final Judgement in his or her favor, other than on than on the merits, if a majority of the disinterested directors of the savings association determine that he or she was acting in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or its members.

However, no indemnification shall be made unless the association gives the Office at least 60 days' notice of its intention to make such indemnification. Such notice shall state the facts on which the action arose, the terms of any settlement, and any disposition of the action by a court.  Such notice, a copy thereof, and a certified copy of the resolution containing the required determination by the board of directors shall be sent to the Regional Director, who shall promptly acknowledge receipt thereof.  The notice period shall run from the date of such receipt.  No such indemnification shall be made if the OTS advises the association in writing, within such notice period, of his or her objection thereto.

.

Section 545.121(c)(1) "provides for mandatory indemnification if there is a 'final

judgment on the merits' in the director's favor.  Section 545.121(c)(2) provides for permissive

indemnification when the result is less favorable, and upon the approval of a majority of the disinterested directors." *Harris v. Resolution Trust Corp.* 939 F.2d 926, 928 (11th Cir. 1991). Thus, indemnification is only *required* under 12 C.F.R. § 545.121 when there has been a final judgment on the merits in the officer or director's favor. *See Waldboro Bank, F.S.B. v. Am. Casualty Comp. of Reading, Pennsylvania*, 775 F. Supp. 432, 433-34 (D. Me. 1991). Pursuant to 12 C.F.R. 545.121(e):

> [i]f a majority of the directors of a savings association concludes that, in connection with an action, any person ultimately may become entitled to indemnification under this section, the directors may authorize payment of reasonable costs and expenses, including reasonable attorneys' fees, arising from the defense or settlement of such action. Nothing in this paragraph (e) shall prevent the directors of a savings association from imposing such conditions on a payment of expenses as they deem warranted and in the interests of the savings association. Before making advance payment of expenses under this paragraph (e), the savings association shall obtain an agreement that the savings association will be repaid if the person on whose behalf payment is made is later determined not to be entitled to such indemnification.

This section "permits the board of directors to prepay the director's expenses if the board concludes that the director may ultimately be entitled to indemnification." OTS Opinion Letter, 1989 WL 1114183 (October 6, 1989).

## III.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339

F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## IV.  ANALYSIS

Defendants advance three arguments in support of their motion to dismiss: (1) the claims asserted by the Bank do not allege or raise any Federal question or arise under any Federal statute or regulation; (2) the Court never acquired supplemental jurisdiction over the Cross-Claim; and (3) the claims are not ripe. *See* Cross-Defs.' Mot. to Dismiss ("Defs.' Mem.") [Dkt. #92]. For these reasons, they assert that the Court is without jurisdiction and should dismiss the cross-claim pursuant to Federal Rule of Civil Procedure 12(b)(1).

### A.  Federal Subject Matter Jurisdiction

The district courts of the United Stats are "courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  A case arises under federal law if "a well-pleaded complaint establish[es] either that federal law creates the cause of action or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-28 (1983).  "Jurisdiction may not be sustained on a theory the plaintiff has not advanced." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 810 n.4 (1986).

Defendants argue that the cross claim only asserts common law claims of breach of contract and unjust enrichment as its causes of action, which are not found in federal law, with only a passing reference to the federal Regulation.  Therefore, they contend, "the Bank's reimbursement claims, as pled, do not necessarily depend on resolution of a substantial question under the Regulation as required to establish subject matter jurisdiction."  Defs.' Mem. at 6-7 (internal quotation marks omitted).  They add that "[t]he Bank is not suing to enforce the Regulation, rather, it has brought suit for reimbursement based on written agreements with the Defendants."  Cross-Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply") at 4.  Defendants cite *Empire Healthcare Assurance, Inc. v. McVeigh*, 126 S. Ct. 2121 (2006), and *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), to support their argument.  In *Empire*, the question was whether an insurer could sue a federal employee in federal court for reimbursement of benefits paid after the

employee successfully obtained a damages remedy against a tortfeasor in state court. The Supreme Court held that federal law was not a necessary element of the claim for relief and that the case was properly dismissed. *Empire*, 126 S. Ct. at 2132-2136. In *Merrell Dow*, the defending drug manufacturer sought to remove the case to federal court, arguing that the plaintiff's allegations that it had violated the Federal Food, Drug and Cosmetics Act[2] – and thus committed a tort under state law – raised a federal question. The Supreme Court agreed with the lower court that removal was improper, relying on the "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813.

This argument mis-perceives the central role of the OTS Regulation to this scheme, both at the lending end and the collection end. Without a bylaw that covers the situation, the Bank could *only* advance fees and costs to its officers and directors pursuant to the Regulation and its particular procedures. The Defendants are entitled to retain the monies advanced only if they meet the criteria of the Regulation. Similarly, the documents which represent the Bank's promise to advance monies and the Defendants' promises in return to repay those monies under certain conditions are required by federal law. *See* 12 C.F.R. § 545.121(e) ("Before making advance payment of expenses under this paragraph (e), the savings association shall obtain an agreement that the savings association will be repaid if the person on whose behalf payment is made is later determined not to be entitled to such indemnification."). The Request for Advancement of Expenses for Claims Against an Officer or Director, which each Defendant signed, recognizes this very fact:

Pursuant to Regulations of the Office of Thrift Supervision

---

[2]  52 Stat. 1040, as amended, 21 U.S.C. § 301 *et seq*.

(the "OTS") governing advancement of expenses to directors and officers of a federal savings association, 12 C.F.R. § 545.121(e) (the "Regulation"), with respect to claims brought against a director or officer arising from service as a director or officer of a federal savings association, I hereby request that Independence Federal Savings Bank (the "Bank") pay reasonable expenses and costs that have been or will be incurred in the defense or settlement of the litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan, et al. Under the Regulation, I hereby agree that I will repay the Bank any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation under 12 C.F.R. § 121, and I represent that I have sufficient assets to repay my fair share of such amounts.

Pl.'s Mem., Ex. 1.

This case is much closer to those discussed in *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, AFL-CIO-CLC*, 457 U.S. 15 (1982), than it is to *Empire*. In *Jackson Transit*, the Court noted:

> [O]n several occasions the Court has determined that a plaintiff stated a federal claim when he sued to vindicate contractual rights set forth by federal statutes, despite the fact that the relevant statutes lacked express provisions creating federal causes of action. . . .These decisions demonstrate that suits to enforce contracts contemplated by federal statutes may set forth federal claims and that private parties in appropriate cases may sue in federal court to enforce contractual rights created by federal statutes.

*Id.* at 23-24. The terms under which the Bank advanced fees and expenses to the Defendants were set by the Regulation and the terms under which the Defendants may be required to repay the Bank are set by the Regulation. There is no way to resolve whether the Defendants must repay the Bank without reference to the Regulation. Thus, the claims of the Bank – no matter how styled in the cross claim – must be determined by reference to federal law. The Court clearly has jurisdiction over

-10-

them.

### B.  Supplemental Jurisdiction

Viewing the allegations in the cross complaint as arising solely under common law, Defendants argue that this Court never acquired supplemental jurisdiction over them because it dismissed the original suit between Mr. Bender and the Defendants as moot on the day after it granted the Bank's motion to late file the cross claim.  *See* Defs.' Mem. at 11.  Defendants cite cases for the proposition that, "[i]f [the district court] dismissed the underlying claim on jurisdictional grounds, then it could not exercise supplemental jurisdiction."  *See Saksenasingh v. Secretary of Education*, 126 F.3d 347, 351 (D.C. Cir. 1997); *see also Adelman v. UAL, Inc.*, 932 F. Supp. 331, 332 (D.D.C. 1996) (district court dismissed plaintiff's state law claims upon dismissal of alleged federal claims for lack of subject matter jurisdiction).  Certainly where there is no underlying original federal subject matter jurisdiction, a federal court has no authority to adjudicate supplemental claims. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001).

This argument is wrong for at least two reasons: first, as the Court found earlier, the cross-claims arise under federal law and are properly brought in federal court; second, the underlying case is not moot in all respects as the Court has a statutory duty to consider Rule 11 sanctions under the Private Securities Litigation Reform Act (PSLRA"), 15 U.S.C. § 78u-4(c). *See* Dkt. #96.

### C.  Prematurity

Finally, the Defendants argue that the Bank's claims are not ripe because a majority of the disinterested directors of the Bank have not voted to determine whether the Defendants were acting in good faith and in what they thought were the best interests of the Bank.  They cite 12 C.F.R. § 545.121(c).  That part of the Regulation is recited above, but for ease of reference it provides:

> (c) Requirements.  Indemnification shall be made to such period under paragraph (b) of this section only if: (1) Final judgment on the merits is in his or her favor; or (2) in the case of: (I) Settlement, (ii) Final judgment against him or her or, (iii) Final judgment in his or her favor, other than on the merits, if a majority of the disinterested directors of the savings association determine that he or she was acting in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or its members.

12 C.F.R. § 545.121(c).  Defendants mis-read the Regulation.  The language on which they rely allows a savings association to forego demanding repayment from a director to whom advances for litigation expenses were made if there is final judgment in her favor other than on the merits *and* a majority of the disinterested directors make the requisite findings.  A person is entitled to indemnification only if she has received a final judgment on the merits in her favor under (c)(1).  However, a person who is not entitled to indemnification may be granted *permissive* indemnification under the circumstances of (c)(2).  This latter provision has nothing to do with, and does not limit, the Bank's right to demand that Defendants repay the monies advanced on their behalf.

### V.  CONCLUSION

The Cross-Defendants' Motion to Dismiss [Dkt. #92] will be denied.  A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: December 6, 2007

-12-