## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MORTON A. BENDER, <u>et</u> <u>al</u>.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 1:06cv00092** |
| | ) | **Honorable Rosemary M. Collyer** |
| **CAROLYN D. JORDON, <u>et</u> <u>al</u>.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————— | ) | |
| | ) | |
| **INDEPENDENCE FEDERAL SAVINGS** | ) | |
| **BANK,** | ) | |
| | ) | |
| **Cross-Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CAROLYN D. JORDAN, <u>et</u> <u>al</u>.** | ) | |
| | ) | |
| **Cross-Defendants.** | ) | |
| ——————————————— | ) | |

## MOTION FOR SUMMARY JUDGMENT BY
## <u>CROSS-PLAINTIFF, INDEPENDENCE FEDERAL SAVINGS BANK</u>

**COMES NOW** the Cross-Plaintiff, Independence Federal Savings Bank ("IFSB" or the "Bank"), by and through its undersigned counsel pursuant to Fed. R. Civ. P. Rule 56 and LCvR 7(h), files this Motion for Summary Judgment and for grounds in support thereof state that there are no genuine issues of material fact and it is entitled to judgment as a matter of law.  IFSB adopts and incorporates herein the attached Statement of Points and Authorities, Statement of Undisputed Material Facts, Affidavit, Exhibits and Proposed Order in support of this Motion for Summary Judgment.

WHEREFORE, IFSB respectfully requests that this Court enter an Order granting this Motion for Summary Judgment and entering judgment in favor as to its Cross-claim in the amount of $649,614.39 jointly and severally as to all Cross-Defendants and any further relief which this Court deems appropriate.

Respectfully Submitted,

MILES & STOCKBRIDGE P.C.


/s/ G. Vann Canada, Jr.
/s/ James A. Sullivan, Jr.
_____
G. VANN CANADA, JR. (D.C. Bar #366414)
JAMES A. SULLIVAN, JR. (D.C. Bar #475145)
11 North Washington Street
Suite 700
Rockville, Maryland 20850
Telephone: (301) 762-1600
Fax:  (301) 762-0363
Attorneys for Cross-Plaintiff,
Independence Federal Savings Bank

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MORTON A. BENDER, <u>et</u> <u>al</u>.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **C. A. No. 1:06cv00092** |
| ) | **Honorable Rosemary M. Collyer** |
| **CAROLYN D. JORDON, <u>et</u> <u>al</u>.,** ) | |
| ) | |
| **Defendants.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |
| ) | |
| **INDEPENDENCE FEDERAL SAVINGS** ) | |
| **BANK,** ) | |
| ) | |
| **Cross-Plaintiff** ) | |
| ) | |
| **vi.** ) | |
| ) | |
| **CAROLYN D. JORDAN, <u>et</u> <u>al</u>.** ) | |
| ) | |
| **Cross-Defendants.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |

**STATEMENT OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY**
<u>**CROSS-PLAINTIFF, INDEPENDENCE FEDERAL SAVINGS BANK**</u>

**COMES NOW** the Cross-Plaintiff, Independence Federal Savings Bank ("IFSB" or the "Bank"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. Rule 56 and LCvR 7(h), and files this Statement of Points and Authorities in Support of its Motion for Summary Judgment and for grounds in support thereof state as follows:

## I.    **INTRODUCTION**

IFSB has filed a Cross-claim[1] against Carolyn D. Jordan, David Wilmot, and Thomas L. Batties (the "Cross-Defendants") for breach of contract and unjust enrichment based upon the Cross-Defendants' failure to repay legal fees advanced by IFSB in their defense of the original suit brought by Plaintiff, Morton A. Bender, which they agreed to repay if they were not entitled to indemnification under Office of Thrift Supervision ("OTS") Regulation 12 C.F.R. § 545.121 (the "Regulation").

Cross-Defendants, Carolyn D. Jordan, David Wilmot, and Thomas L. Batties (the "Cross-Defendants") subsequently filed a Motion to Dismiss IFSB's Cross-Claim on the basis that: (1) this Court lacked federal subject matter jurisdiction; (2) this Court lacked supplemental jurisdiction over common law claims; and (3) the Cross-claim was prematurely filed as it was not ripe for determination.    In a Memorandum Opinion [Dkt.#102] and Order [Dkt.#103], entered on December 6, 2007, this Court denied the Cross-Defendants' Motion to Dismiss.

For the reasons set forth below, IFSB should be entitled to summary judgment in its favor because there is no dispute that:  (1) IFSB advanced legal fees to the Cross-Defendants pursuant to the "Regulation"; (2) each of the Cross-Defendants executed an Agreement to repay the Bank "any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation" under the Regulation; (3) it has been determined that each of the Cross-Defendants is not entitled to indemnification with respect to the litigation;

---

[1] By Minute Order dated May 30, 2007, this Court granted IFSB's Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time [Dkt.#78].  In a Memorandum Opinion [Dkt.#90] and Order [Dkt.#91] dated May 31, 2007, this Court granted the Cross-Defendants' Motion to Dismiss the First Amended Complaint filed by Plaintiffs, Morton A. Bender and Grace Bender, as Moot.  In its Memorandum Opinion, this Court noted that "the Bank has filed a cross-claim against Defendants and is the correct party to pursue this claim to its conclusion."  See Memorandum Opinion [Dkt.#90] at 11.

(4) IFSB has demanded repayment of the amounts advanced by IFSB from the Cross-Defendants, and; (5) the Cross-Defendants have failed to repay the amounts advanced.

## II.    SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "summary judgment is appropriate `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Fed. R. Civ. P. 56(c). Material facts are those that affect the outcome of a case.  Johnson v. Washington Metropolitan Transit Authority, 355 F. Supp.2d 304, 304 (D.D.C. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  The burden of establishing that there is no genuine issue of material fact lies with the moving party. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but must set forth specific facts showing that there is no genuine issue for trial.  Id.  As set forth below, IFSB has met its burden of establishing that there are no disputes of material fact and that it is entitled to summary judgment as a matter of law.

## III.    STATEMENT OF FACTS

IFSB is a federal stock savings association subject to the regulations of the Office of Thrift Supervision ("OTS").  (See Statement of Undisputed Material Facts at ¶1).  Cross-Defendant, Carolyn D. Jordan ("Ms. Jordan") is the former Chairman of the Board of Directors of IFSB, who was removed as Chairman of the Board on August 16, 2006 and subsequently resigned from the Board of Directors on or about January 4, 2007.  (See Statement of Undisputed Material Facts at ¶2).  Cross-Defendant, David Wilmot ("Mr. Wilmot") is the former Vice-

Chairman of the Board of Directors of IFSB, who was removed as Vice-Chairman of the Board on August 16, 2006 and subsequently resigned from the Board of Directors on or about January 4, 2007.  (See Statement of Undisputed Material Facts at ¶3).  Cross-Defendant, Thomas L. Batties ("Mr. Batties") is the former acting President and CEO of IFSB, who resigned from his positions as acting President and CEO on or about June 30, 2006.  (See Statement of Undisputed Material Facts at ¶4).  Batties subsequently entered into a contract with IFSB to serve in an advisory role which expired on or about December 30, 2006.  Id.

On or about January 18, 2006, Plaintiffs, Morton A. Bender and Grace Bender instituted the present action against IFSB and five of its Directors, as well as its then Acting President and Chief Executive Officer (the "Director Defendants"), including the Cross-Defendants herein,[2] alleging violations of numerous securities laws and IFSB's bylaws by their actions leading up to, and in conducting, a shareholders' meeting in October of 2005.  (See Statement of Undisputed Material Facts at ¶5).  On February 15, 2006, the Board of Directors of IFSB, by a vote of five to four adopted a Resolution authorizing the advancement of legal expenses incurred by the Director Defendants in this litigation in accordance with the requirements of the Regulation.[3] (See Statement of Undisputed Material Facts at ¶6).

On or about February 20, 2006, Ms. Jordan entered into an agreement with IFSB titled "Request for Advancement of Expenses for Claims Against an Officer or Director" (the "Jordan Request"), which stated the following:

> Pursuant to the Regulations of the Office of Thrift Supervision (the "OTS") governing advancement of expenses to directors and officers of a federal savings association, 12 C.F.R. § 545.121.(3),

---

[2] On October 2, 2006, this Court by Minute Order approved the Stipulation of Dismissal without prejudice as to Defendants, Cobb, Fitzgerald and Youngentob.

[3] The decision to advance payments to the Cross Defendants pursuant to § 545.121(e) was made by the Board of Directors at the early stages of this litigation when the Individual Defendants, including those who have since been dismissed from this case, comprised a majority of the Board and voted in favor of the advancement of said expenses.

> the "Regulation"), with respect to claims brought against a director
> or officer arising from service as a director or officer of a federal
> savings association, I hereby request that Independence Federal
> Savings Bank (the "Bank") pay reasonable expenses and costs that
> have been or will be incurred in the defense or settlement of the
> litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan,
> et al.  <u>Under the Regulation, I hereby agree that I will repay the
> Bank any amounts so paid on my behalf by the Bank if it is later
> determined that I am not entitled to indemnification with respect to
> the litigation under 12 C.F.R. § 121 [sic], and I represent that I
> have sufficient assets to repay my fair share of such amounts.</u>

(<u>See</u> Statement of Undisputed Material Facts at ¶7).  (Emphasis supplied).

On or about February 28, 2006, Mr. Wilmot entered into an agreement with IFSB titled

"Request for Advancement of Expenses for Claims Against an Officer or Director" (the "Wilmot

Request"), which stated the following:

> Pursuant to the Regulations of the Office of Thrift Supervision (the
> "OTS") governing advancement of expenses to directors and
> officers of a federal savings association, 12 C.F.R. § 545.121.(3),
> the "Regulation"), with respect to claims brought against a director
> or officer arising from service as a director or officer of a federal
> savings association, I hereby request that Independence Federal
> Savings Bank (the "Bank") pay reasonable expenses and costs that
> have been or will be incurred in the defense or settlement of the
> litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan,
> et al.  <u>Under the Regulation, I hereby agree that I will repay the
> Bank any amounts so paid on my behalf by the Bank if it is later
> determined that I am not entitled to indemnification with respect to
> the litigation under 12 C.F.R. § 121 [sic], and I represent that I
> have sufficient assets to repay my fair share of such amounts.</u>

(<u>See</u> Statement of Undisputed Material Facts at ¶8).  (Emphasis supplied).

On or about February 28, 2006, Mr. Batties entered into an agreement with IFSB titled

"Request for Advancement of Expenses for Claims Against an Officer or Director" (the "Batties

Request"), which stated the following:

> Pursuant to the Regulations of the Office of Thrift Supervision (the
> "OTS") governing advancement of expenses to directors and
> officers of a federal savings association, 12 C.F.R. § 545.121.(3),

> the "Regulation"), with respect to claims brought against a director
> or officer arising from service as a director or officer of a federal
> savings association, I hereby request that Independence Federal
> Savings Bank (the "Bank") pay reasonable expenses and costs that
> have been or will be incurred in the defense or settlement of the
> litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan,
> et al.  <u>Under the Regulation, I hereby agree that I will repay the
> Bank any amounts so paid on my behalf by the Bank if it is later
> determined that I am not entitled to indemnification with respect to
> the litigation under 12 C.F.R. § 121 [sic], and I represent that I
> have sufficient assets to repay my fair share of such amounts</u>.

(<u>See</u> Statement of Undisputed Material Facts at ¶9).  (Emphasis supplied).

On July 21, 2006, this Court entered a Memorandum Opinion [Dkt.#50] and Order [Dkt.#51].  (<u>See</u> Statement of Undisputed Material Facts at ¶10).  In its Memorandum Opinion, the Court concluded, <u>inter</u> <u>alia</u>, that the Plaintiffs were likely to succeed on the merits of certain claims in that: 1) the Director Defendants, through their chairman and vice chairman, acted as a group to acquire certain shares and voting power to solidify their control of the IFSB Board; acquired a beneficial ownership of said shares and voting power, which constituted nearly 10% of the Bank's outstanding shares, and; violated § 13(d) of the Exchange Act by failing to file the required Schedule 13D; 2) sent proxy solicitations containing multiple false and misleading material statements which led to election of the Management Nominees in violation of § 14(a) of the Exchange Act; and 3) violated § 45 of Robert's Rules by unilaterally allocating proxies after the polls closed.  <u>Id</u>.

On August 4, 2006, John E. Ryan, Regional Director of the Office of Thrift Supervision ("OTS"), sent a letter to the "Board of Directors c/o Acting CEO E. Leroy Morris" of IFSB in which Mr. Ryan stated:  "taking into consideration the weight of the findings in the Order against the Director Defendants, I have determined that it would be unsafe and unsound to permit Independence to continue to advance unsecured legal and related expenses on behalf of the

Director Defendants in connection with this litigation." (See Statement of Undisputed Material Facts at ¶11).

Mr. Ryan further required the Bank to "obtain collateral from each of the Director Defendants sufficient to ensure the reimbursement of the Bank for all legal and related expenses incurred to date, as well as sufficient to support any additional advances to cover any expenses in the future . . . ." (See Statement of Undisputed Material Facts at ¶12). He further stated that "[u]ntil such time as sufficient collateral to cover already incurred expenses has been received and approved by OTS and the Board, no additional advancement of legal expenses should be permitted." Id.

On August 18, 2006, the Director Defendants filed a Notice of Interlocutory Appeal to the United States Court of Appeals for the District of Columbia Circuit [Dkt.#56]. (See Statement of Undisputed Material Facts at ¶13). On the same date, E. Leroy Morris, the Interim President and CEO of the Bank sent a letter to the Director Defendants advising them that:

> Pursuant to the letter received from John Ryan, Regional Director, Office of Thrift Supervision ("OTS") dated August 4, 2006, which you have already been apprised, the Board of Directors, in order to comply with this letter, adopted a resolution on August 16, 2006, which, in part, directed me to take immediate steps to obtain collateral sufficient to ensure reimbursement to the Bank for advanced legal fees and expenses incurred by the firm of Shook Hardy and Bacon
>
> The amount to be collateralized per "Director Defendant" and Mr. Batties, as of 6/30/06, is **One Hundred Eight Thousand, Two Hundred Sixty-Nine Dollars and no cents ($108,269.00)**
>
> The Bank expects tender immediately. Should you have any questions about tender, the method of collateralization, instruments to be executed or this letter generally, please contact me as soon as possible[.]

(See Statement of Undisputed Material Facts at ¶13).

On October 13, 2006, Mr. Morris sent a letter to Mr. Ryan of the OTS advising Mr. Ryan that IFSB had "not received any form of collateralization in hand as of the above date. (See Statement of Undisputed Material Facts at ¶14).

On November 16, 2006, IFSB through counsel sent letters to each of the Cross-Defendants advising them that:

> [a]s of August 18, 2006, the amount advanced by the Bank on behalf of each director Defendant was $108,269.00 as indicated by a letter to the Director Defendants dated August 18, 2006. It is now imperative that immediate steps be taken by each Director Defendant to comply with the mandate contained in the letter from Mr. Ryan. To that end, please contact the undersigned upon receipt of this letter to discuss the amount and form of collateral that you intend to furnish so that the tasks contemplated by Mr. Ryan might be accomplished in an orderly and efficient manner.

(See Statement of Undisputed Material Facts at ¶15).

On or about January 11, 2007, the Court of Appeals entered an Order granting the voluntary dismissal of the interlocutory appeal. (See Statement of Undisputed Material Facts at ¶16). On January 12, 2007, IFSB through counsel sent letters to each of the Cross-Defendants advising them that:

> With the appeal no longer pending, the matter will be remanded to the District Court for final disposition of the claims asserted by the Benders. With the dismissal of the appeal, there is no longer any possibility that the findings of fact and conclusions of law made by the District Court in its Memorandum Opinion of July 21, 2006 will be disturbed. Further, the terms and provisions of the Request for Advancement of Expenses for Claims Against an Officer or Director, which you signed for the benefit of the Bank, become operative. Simply stated, it is now appropriate for you to repay $108,269.00 to the Bank for sums advanced by the Bank on your behalf in the litigation referenced above. To that end, we respectfully request that you or your counsel contact the undersigned at your first convenient opportunity so that we might make arrangements for you to make such repayment.

(See Statement of Undisputed Material Facts at ¶17).

The Cross-Defendants subsequently failed to repay any of the sums advanced as demanded by IFSB. (See Statement of Undisputed Material Facts at ¶18).

By Minute Order dated May 30, 2007, this Court granted IFSB's Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time [Dkt.#78]. (See Statement of Undisputed Material Facts at ¶19). In a Memorandum Opinion [Dkt.#90] and Order [Dkt.#91] dated May 31, 2007, this Court granted the Cross-Defendants' Motion to Dismiss the First Amended Complaint filed by Plaintiffs, Morton A. Bender and Grace Bender, as Moot. (See Statement of Undisputed Material Facts at ¶20).

On June 20, 2007, the Board of Directors of IFSB issued a Resolution which stated as follows:

> RESOLVED, that based upon the findings of the Court [in] the Memorandum Opinion dated July 21, 2006 in the case styled Morton A. Bender, et al. v. Carolyn D. Jordan, et al., identified as Civil Action No. 1:06-cv-00092-RMC, United States District Court for the District of Columbia, that Carolyn D. Jordan, David Wilmot and Thomas L Batties were not entitled to indemnity from the Bank for expenses incurred and should be required to immediately repay such advanced moneys; and be it further
>
> RESOLVED, that the Bank shall take all reasonable and necessary actions to obtain judgments against, and collect such advanced moneys from, Carolyn D. Jordan, David Wilmot and Thomas L. Batties.

(See Statement of Undisputed Material Facts at ¶21).

IFSB has advanced the total sum of $649,614.39 for legal fees and related costs through August 18, 2006, to the Director Defendants in the present litigation which has not been repaid by any of the Director Defendants, including the Cross-Defendants herein. (See Statement of Undisputed Material Facts at ¶22).

IV.    **ARGUMENT**

A.    The Regulation

Pursuant to 12 C.F.R. § 545.121 (the "Regulation"), a Federal savings association "shall indemnify its directors, officers, and employees" in accordance with the express requirements set forth in the Regulation.  The Regulation provides, inter alia, that:

(b) General.    Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an action is brought or threatened because that person is or was a director, officer, or employee of the association, for:

(1) Any amount for which that person becomes liable under a judgment if [sic] such action;  and

(2) Reasonable costs and expenses, including reasonable attorney's fees, actually paid or incurred by that person in defending or settling such action, or in enforcing his or her rights under this section if he or she attains a favorable judgment in such enforcement action.

(c) Requirements.    Indemnification shall be made to such [person] under paragraph (b) of this section only if:

(1) Final judgment on the merits is in his or her favor;  or

(2) In case of:

(i) Settlement,

(ii) Final judgment against him or her, or

(iii) Final judgment in his or her favor, other than on the merits, if a majority of the disinterested directors of the savings association determine that he or she was acting in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or its members.

However, no indemnification shall be made unless the association gives the Office at least 60 days' notice of its intention to make such indemnification. Such notice shall state the facts on which the action arose, the terms of any settlement, and any disposition of the action by a court. Such notice, a copy thereof, and a certified copy of the resolution containing the required determination by the board of directors shall be sent to the Regional Director, who shall promptly acknowledge receipt thereof. The notice period shall run from the date of such receipt. No such indemnification shall be made if the OTS advises the association in writing, within such notice period, of his or her objection thereto.

Section 545.121(c)(1) "provides for mandatory indemnification if there is a `final judgment on the merits' in the director's favor. Section 545.121(c)(2) provides for permissive indemnification when the result is less favorable, and upon the approval of a majority of the disinterested directors." Harris v. Resolution Trust Corporation, 939 F.2d 926, 928 (11th Cir. 1991). Thus, indemnification is only required under 12 C.F.R. § 545.121 when there has been a final judgment on the merits in the officer or director's favor. Waldboro Bank, F.S.B. v. American Casualty Company of Reading, Pennsylvania, 775 F. Supp. 432, 433-34 (D. Me. 1991).

Pursuant to 12 C.F.R. § 545.121(e):

> [i]f a majority of the directors of a savings association concludes that, in connection with an action, any person ultimately may become entitled to indemnification under this section, the directors may authorize payment of reasonable costs and expenses, including reasonable attorneys' fees, arising form the defense or settlement of such action. Nothing in this paragraph (e) shall prevent the directors of a savings association from imposing such conditions on a payment of expenses as they deem warranted and in the interests of the savings association. Before making advance payment of expenses under this paragraph (e), the savings association shall obtain an agreement that the savings association will be repaid if the person on whose behalf payment is made is later determined not to be entitled to such indemnification.

(Emphasis supplied).  This section "permits the board of directors to prepay the director's expenses if the board concludes that the director may ultimately be entitled to indemnification." See OTS opinion Letter, 1989 WL 1114183 (October 6, 1989) attached hereto as **Exhibit 11**.

As this Court recently stated in its Memorandum Opinion dated December 6, 2007, "[w]ithout a bylaw that covers this situation, the Bank could only advance fees and costs to its officers and directors pursuant to the Regulation and its particular procedures.  **The Defendants are _entitled_ to retain the monies advanced only if they meet the criteria of the Regulation**. Similarly, the documents which represent the Bank's promise to advance monies and the Defendants' promises in return to repay those monies under certain conditions are required by federal law." Id. at 9 (citation omitted) (emphasis supplied).

As this Court further stated: "Section (c)(2) allows a savings association to forego demanding repayment from a director to whom advances for litigation expenses were made if there is a final judgment in her favor other than on the merits and a majority of the disinterested directors make the requisite findings.  **A person is _entitled to indemnification_ only if she has received a final judgment on the merits in her favor under (c)(1).  However, a person who is not entitled to indemnification may be granted permissive indemnification under the circumstances of (c)(2).  This latter provision has nothing to do with, and does not limit, the Bank's right to demand that Defendants repay the monies advanced on their behalf.**" Id. at 12 (emphasis supplied).

B.    The Cross-Defendants have breached their respective Agreements to repay IFSB the advanced payment of legal expenses as a matter of law.

There is no dispute that IFSB advanced the total sum of $649,614.39 for legal fees and related costs through August 18, 2006 to the Director Defendants, including the Cross-Defendants herein pursuant to the Regulation.  (See Statement of Undisputed Material Facts at

¶21). There is further no dispute that the Cross-Defendants entered into an Agreement with IFSB as required by 12 C.F.R. § 545.121(e) in which they each agreed "that I will repay the Bank any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation under 12 C.F.R. § 121 [sic], and I represent that I have sufficient assets to repay my fair share of such amounts." (See Statement of Undisputed Material Facts at ¶¶7-9) (emphasis supplied).

As this Court recently stated in its Memorandum Opinion dated December 6, 2007, "a person is entitled to indemnification only if she has received a final judgment on the merits in her favor under [12 C.F.R. § 545.121](c)(1)." (Emphasis supplied). In the present case, there is no question that the Cross-Defendants did not receive a final judgment on the merits in their favor. In fact, in a Memorandum Opinion [Dkt.#90] and Order [Dkt.#91] dated May 31, 2007, this Court granted the Cross-Defendants' Motion to Dismiss the First Amended Complaint filed by Plaintiffs, Morton A. Bender and Grace Bender for lack of subject matter jurisdiction on the basis of mootness. Involuntary dismissals for lack of subject matter jurisdiction do not operate as an adjudication of the merits under the Federal Rules. See Fed. R. Civ. P. Rules 12(b)(1) and 41(b); see also, Roberts v. Salerian, 320 F. Supp.2d 24, 25 n.1 (D.D.C. 2004) and Tozzi v. EPA, 148 F. Supp.2d 35, 41 (D.D.C.2001) (citing Leaf v. Sup. Ct. of Wisc., 979 F.2d 589, 595 (7th Cir. 1992) ("dismissal for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 41(b) is not a decision on the merits[.]").

Because it is undisputed that Cross-Defendants did not receive a final judgment on the merits in their favor, clearly it has been determined that that they are not entitled to indemnification as a matter of law. Because the they are not entitled to indemnification as a matter of law, the Cross-Defendants are obligated to repay IFSB pursuant to the express

language of their Agreements which they executed in favor of IFSB as required by 12 C.F.R. § 545.121(e).    Cross-Defendants have not made any repayments to IFSB as they promised; consequently, there can be no question that the Cross-Defendants are in breach of contract.

## V.    **CONCLUSION**

For the reasons set forth above, Independence Federal Savings Bank, respectfully requests an Order from this Court granting this Motion for Summary Judgment and entering judgment in its favor on its Cross-claim in the amount of $649,614.39 jointly and severally as to all Cross-Defendants and any further relief which this Court deems appropriate.

Respectfully Submitted,

MILES & STOCKBRIDGE P.C.


/s/ G. Vann Canada, Jr.
/s/ James A. Sullivan, Jr.
_____
G. VANN CANADA, JR. (D.C. Bar #366414)
JAMES A. SULLIVAN, JR. (D.C. Bar #475145)
11 North Washington Street
Suite 700
Rockville, Maryland 20850
Telephone: (301) 762-1600
Fax:  (301) 762-0363
Attorneys for Cross-Plaintiff,
Independence Federal Savings Bank

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MORTON A. BENDER, <u>et al</u>.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **C. A. No. 1:06cv00092** |
| ) | **Honorable Rosemary M. Collyer** |
| **CAROLYN D. JORDON, <u>et al</u>.,** ) | |
| ) | |
| **Defendants.** ) | |
| ——————————————) | |
| ) | |
| **INDEPENDENCE FEDERAL SAVINGS** ) | |
| **BANK,** ) | |
| ) | |
| **Cross-Plaintiff** ) | |
| ) | |
| **vii.** ) | |
| ) | |
| **CAROLYN D. JORDON, <u>et al</u>.** ) | |
| ) | |
| **Cross-Defendants.** ) | |
| ——————————————) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF CROSS-PLAINTIFF, INDEPENDENCE
## <u>FEDERAL SAVINGS BANK'S MOTION FOR SUMMARY JUDGMENT</u>

**COMES NOW** the Cross-Plaintiff, Independence Federal Savings Bank ("IFSB" or the "Bank"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. Rule 56 and LCvR 7(h) and files this Statement of Undisputed Facts in Support of its Motion for Summary Judgment and for grounds in support thereof states as follows:

1.       IFSB is a federal stock savings association subject to the regulations of the Office of Thrift Supervision ("OTS").  (<u>See</u> Affidavit of Robert B. Isard at ¶3).

2.     Cross-Defendant, Carolyn D. Jordan ("Ms. Jordan") is the former Chairman of the Board of Directors of IFSB, who was removed as Chairman of the Board on August 16, 2006 and subsequently resigned from the Board of Directors on or about January 4, 2007. (See Affidavit of Robert B. Isard at ¶4).

3.     Cross-Defendant, David Wilmot ("Mr. Wilmot") is the former Vice-Chairman of the Board of Directors of IFSB, who was removed as Vice-Chairman of the Board on August 16, 2006 and subsequently resigned from the Board of Directors on or about January 4, 2007. (See Affidavit of Robert B. Isard at ¶5).

4.     Cross-Defendant, Thomas L. Batties ("Mr. Batties") is the former acting President and CEO of IFSB, who resigned from his positions as acting President and CEO on or about June 30, 2006. Batties subsequently entered into a contract with IFSB to serve in an advisory role which expired on or about December 30, 2006. (See Affidavit of Robert B. Isard at ¶6).

5.     On or about January 18, 2006, Plaintiffs, Morton A. Bender and Grace Bender instituted the present action against IFSB and five of its Directors, as well as its then Acting President and Chief Executive Officer (the "Director Defendants"), including the Cross-Defendants herein,[4] alleging violations of numerous securities laws and IFSB's bylaws by their actions leading up to, and in conducting, a shareholders' meeting in October of 2005. (See Verified Complaint at Dkt.#1).

6.     On February 15, 2006, the Board of Directors of IFSB, by a vote of five to four adopted a Resolution authorizing the advancement of legal expenses incurred by the Director

---

[4] On October 2, 2006, this Court by Minute Order approved the Stipulation of Dismissal without prejudice as to Defendants, Cobb, Fitzgerald and Youngentob.

Defendants in this litigation in accordance with the requirements of the Office of Thrift

Supervision ("OTS") Regulation 12 C.F.R. § 545.121.[5]  (See Affidavit of Robert B. Isard at ¶7).

7.    On or about February 20, 2006, Ms. Jordan entered into an agreement with IFSB

titled "Request for Advancement of Expenses for Claims Against an Officer or Director" (the

"Jordan Request"), which stated the following:

> Pursuant to the Regulations of the Office of Thrift Supervision (the
> "OTS") governing advancement of expenses to directors and
> officers of a federal savings association, 12 C.F.R. § 545.121.(3),
> the "Regulation"), with respect to claims brought against a director
> or officer arising from service as a director or officer of a federal
> savings association, I hereby request that Independence Federal
> Savings Bank (the "Bank") pay reasonable expenses and costs that
> have been or will be incurred in the defense or settlement of the
> litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan,
> et al.  Under the Regulation, I hereby agree that I will repay the
> Bank any amounts so paid on my behalf by the Bank if it is later
> determined that I am not entitled to indemnification with respect to
> the litigation under 12 C.F.R. § 121 [sic], and I represent that I
> have sufficient assets to repay my fair share of such amounts.

(See Affidavit of Robert B. Isard at ¶8, **Exhibit 1**).  (Emphasis supplied).

8.    On or about February 28, 2006, Mr. Wilmot entered into an agreement with IFSB

titled "Request for Advancement of Expenses for Claims Against an Officer or Director" (the

"Wilmot Request"), which stated the following:

> Pursuant to the Regulations of the Office of Thrift Supervision (the
> "OTS") governing advancement of expenses to directors and
> officers of a federal savings association, 12 C.F.R. § 545.121.(3),
> the "Regulation"), with respect to claims brought against a director
> or officer arising from service as a director or officer of a federal
> savings association, I hereby request that Independence Federal
> Savings Bank (the "Bank") pay reasonable expenses and costs that
> have been or will be incurred in the defense or settlement of the
> litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan,
> et al.  Under the Regulation, I hereby agree that I will repay the

---

[5] The decision to advance payments to the Cross Defendants pursuant to § 545.121(e) was made by the Board of Directors at the early stages of this litigation when the Individual Defendants, including those who have since been dismissed from this case, comprised a majority of the Board and voted in favor of the advancement of said expenses.

> Bank any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation under 12 C.F.R. § 121 [sic], and I represent that I have sufficient assets to repay my fair share of such amounts.

(See Affidavit of Robert B. Isard at ¶9, **Exhibit 2)**. (Emphasis supplied).

9.    On or about February 28, 2006, Mr. Batties entered into an agreement with IFSB titled "Request for Advancement of Expenses for Claims Against an Officer or Director" (the "Batties Request"), which stated the following:

> Pursuant to the Regulations of the Office of Thrift Supervision (the "OTS") governing advancement of expenses to directors and officers of a federal savings association, 12 C.F.R. § 545.121.(3), the "Regulation"), with respect to claims brought against a director or officer arising from service as a director or officer of a federal savings association, I hereby request that Independence Federal Savings Bank (the "Bank") pay reasonable expenses and costs that have been or will be incurred in the defense or settlement of the litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan, et al. Under the Regulation, I hereby agree that I will repay the Bank any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation under 12 C.F.R. § 121 [sic], and I represent that I have sufficient assets to repay my fair share of such amounts.

(See Affidavit of Robert B. Isard at ¶10, **Exhibit 3)**. (Emphasis supplied).

10.    On July 21, 2006, this Court entered a Memorandum Opinion [Dkt.#50] and Order [Dkt.#51]. In its Memorandum Opinion, the Court concluded, inter alia, that the Plaintiffs were likely to succeed on the merits of certain claims in that: 1) the Director Defendants, through their chairman and vice chairman, acted as a group to acquire certain shares and voting power to solidify their control of the IFSB Board; acquired a beneficial ownership of said shares and voting power, which constituted nearly 10% of the Bank's outstanding shares, and; violated § 13(d) of the Exchange Act by failing to file the required Schedule 13D (see Memorandum Opinion at 28-31 [Dkt.#50]); 2) sent proxy solicitations containing multiple false and misleading

material statements which led to election of the Management Nominees in violation of § 14(a) of the Exchange Act (see Memorandum Opinion at 34-44 [Dkt.#50]); and 3) violated § 45 of Robert's Rules by unilaterally allocating proxies after the polls closed (see Memorandum Opinion at 48-52 [Dkt.#50]).

11.    On August 4, 2006, John E. Ryan, Regional Director of the Office of Thrift Supervision ("OTS"), sent a letter to the "Board of Directors c/o Acting CEO E. Leroy Morris" of IFSB in which Mr. Ryan stated: "taking into consideration the weight of the findings in the Order against the Director Defendants, I have determined that it would be unsafe and unsound to permit Independence to continue to advance unsecured legal and related expenses on behalf of the Director Defendants in connection with this litigation." (See Affidavit of Robert B. Isard at ¶11, **Exhibit 4)**.

12.    Mr. Ryan further required the Bank to "obtain collateral from each of the Director Defendants sufficient to ensure the reimbursement of the Bank for all legal and related expenses incurred to date, as well as sufficient to support any additional advances to cover any expenses in the future . . . ." Id.  He further stated that "[u]ntil such time as sufficient collateral to cover already incurred expenses has been received and approved by OTS and the Board, no additional advancement of legal expenses should be permitted." Id.

13.    On August 18, 2006, the Director Defendants filed a Notice of Interlocutory Appeal to the United States Court of Appeals for the District of Columbia Circuit [Dkt.#56].  On the same date, E. Leroy Morris, the Interim President and CEO of the Bank sent a letter to the Director Defendants advising them that:

> Pursuant to the letter received from John Ryan, Regional Director, Office of Thrift Supervision ("OTS") dated August 4, 2006, which you have already been apprised, the Board of Directors, in order to comply with this letter, adopted a resolution on August 16, 2006,

which, in part, directed me to take immediate steps to obtain collateral sufficient to ensure reimbursement to the Bank for advanced legal fees and expenses incurred by the firm of Shook Hardy and Bacon

The amount to be collateralized per "Director Defendant" and Mr. Batties, as of 6/30/06, is **One Hundred Eight Thousand, Two Hundred Sixty-Nine Dollars and no cents ($108,269.00)**

The Bank expects tender immediately.  Should you have any questions about tender, the method of collateralization, instruments to be executed or this letter generally, please contact me as soon as possible[.]

(<u>See</u> Affidavit of Robert B. Isard at ¶12, **Exhibit 5**).

14.     On October 13, 2006, Mr. Morris sent a letter to Mr. Ryan of the OTS advising Mr. Ryan that IFSB had "not received any form of collateralization in hand as of the above date.

(<u>See</u> Affidavit of Robert B. Isard at ¶13, **Exhibit 6**).

15.     On November 16, 2006, IFSB through counsel sent letters to each of the Cross-Defendants advising them that:

[a]s of August 18, 2006, the amount advanced by the Bank on behalf of each director Defendant was $108,269.00 as indicated by a letter to the Director Defendants dated August 18, 2006.  It is now imperative that immediate steps be taken by each Director Defendant to comply with the mandate contained in the letter from Mr. Ryan.  To that end, please contact the undersigned upon receipt of this letter to discuss the amount and form of collateral that you intend to furnish so that the tasks contemplated by Mr. Ryan might be accomplished in an orderly and efficient manner.

(<u>See</u> Affidavit of Robert B. Isard at ¶14, **Exhibit 7**).

16.     On or about January 11, 2007, the Court of Appeals entered an Order granting the voluntary dismissal of the interlocutory appeal.

17.     On January 12, 2007, IFSB through counsel sent letters to each of the Cross-Defendants advising them that:

With the appeal no longer pending, the matter will be remanded to the District Court for final disposition of the claims asserted by the Benders. With the dismissal of the appeal, there is no longer any possibility that the findings of fact and conclusions of law made by the District Court in its Memorandum Opinion of July 21, 2006 will be disturbed. Further, the terms and provisions of the Request for Advancement of Expenses for Claims Against an Officer or Director, which you signed for the benefit of the Bank, become operative. Simply stated, it is now appropriate for you to repay $108,269.00 to the Bank for sums advanced by the Bank on your behalf in the litigation referenced above. To that end, we respectfully request that you or your counsel contact the undersigned at your first convenient opportunity so that we might make arrangements for you to make such repayment.

(See Affidavit of Robert B. Isard at ¶15, **Exhibit 8)**.

18.    The Cross-Defendants subsequently failed to repay any of the sums advanced as demanded by IFSB.   (See Affidavit of Robert B. Isard at ¶16).

19.    By Minute Order dated May 30, 2007, this Court granted IFSB's Motion for Leave to Amend Pleadings to State Cross-Claim Out-of-Time [Dkt.#78].

20.    In a Memorandum Opinion [Dkt.#90] and Order [Dkt.#91] dated May 31, 2007, this Court granted the Cross-Defendants' Motion to Dismiss the First Amended Complaint filed by Plaintiffs, Morton A. Bender and Grace Bender, as Moot.

21.    On June 20, 2007, the Board of Directors issued a Resolution which stated as follows:

> RESOLVED, that based upon the findings of the Court [in] the Memorandum Opinion dated July 21, 2006 in the case styled Morton A. Bender, et al. v. Carolyn D. Jordan, et al., identified as Civil Action No. 1:06-cv-00092-RMC, United States District Court for the District of Columbia, that Carolyn D. Jordan, David Wilmot and Thomas L Batties were not entitled to indemnity from the Bank for expenses incurred and should be required to immediately repay such advanced moneys; and be it further

> RESOLVED, that the Bank shall take all reasonable and necessary actions to obtain judgments against, and collect such advanced moneys from, Carolyn D. Jordan, David Wilmot and Thomas L. Batties.

(See Affidavit of Robert B. Isard at ¶17, **Exhibit 9)**.

  22. IFSB has advanced the total sum of $649,614.39 for legal fees and related costs to the Director Defendants in the present litigation which, to date, has not been repaid to Independence Federal Savings Bank.  (See Affidavit of Robert B. Isard at ¶18, **Exhibit 10)**.

       Respectfully Submitted,

       MILES & STOCKBRIDGE P.C.


       /s/ G. Vann Canada, Jr.
       /s/ James A. Sullivan, Jr.
       _____
       G. VANN CANADA, JR. (D.C. Bar #366414)
       JAMES A. SULLIVAN, JR. (D.C. Bar #475145)
       11 North Washington Street
       Suite 700
       Rockville, Maryland 20850
       Telephone: (301) 762-1600
       Fax:  (301) 762-0363
       Attorneys for Cross-Plaintiff,
       Independence Federal Savings Bank