UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORTON A. BENDER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-92 (RMC) |
| ) | |
| CAROLYN D. JORDAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| INDEPENDENCE FEDERAL SAVINGS ) | |
| BANK, ) | |
| ) | |
| Cross-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CAROLYN D. JORDAN, *et al.*, ) | |
| ) | |
| Cross-Defendants. ) | |

**MEMORANDUM OPINION**

Morton and Grace Bender, dissident shareholders, sued five of the directors and the President/CEO of Independence Federal Savings Bank ("IFSB" or the "Bank") over their handling of a contested election for seats on the Board of Directors of IFSB (the "Board") and the related shareholders' meeting. Pursuant to regulations issued by the Office of Thrift Supervision ("OTS"), the Bank agreed to pay all legal fees incurred by the five director defendants and the President/CEO. The five director defendants as well as the President/CEO agreed to repay the Bank if it were later determined that they were not entitled to indemnification. In July 2006, this Court entered a preliminary injunction in favor of Plaintiffs; over the next few months, each of the director

defendants left the Board, and the President/CEO left his position.  A notice of appeal was filed but was withdrawn before briefs were filed, as the original majority lost control of the Board.  A few months after the Court issued its preliminary injunction, the Benders voluntarily dismissed three of the former directors from the case.  By means of a cross-claim, the Bank, as cross-plaintiff, now demands repayment of all legal fees from the two former directors who were not dismissed and from the former President/CEO.  The cross-defendants resist.

Each of the five director defendants and the then-acting President/CEO promised to repay the Bank "any amounts so paid on my behalf if it is later determined that I am not entitled to indemnification with respect to the litigation" under OTS regulations.  *See* IFSB Statement of Undisputed Material Facts (filed with Cross-Pl.'s Mot. for Summ. J. ("Pl.'s Mem.")) ("IFSB Facts") ¶ 7-9 (citing Affidavit of Robert B. Isard ("Isard Aff.") ¶ 8, Ex. 1; *id.* ¶ 9, Ex. 2; *id.* ¶ 10, Ex. 3) [Dkt. # 104].  Because the six original defendants did not receive a final judgment on the merits in their favor, indemnification was not mandatory, and because the Board determined that the three cross-defendants were not entitled to indemnification, they must repay the Bank.  However, each of the six original defendants agreed to pay his "fair share" of amounts paid on his behalf.  *See id.* ¶ 7-9 (citing Isard Aff. ¶ 8, Ex. 1; *id.* ¶ 9, Ex. 2; *id.* ¶ 10, Ex. 3).  This language can only mean that the three cross-defendants are required to repay their pro-rata share of the total amount advanced.  Because the Board determined only that the three cross-defendants were not entitled to indemnification, and because all six original defendants were represented by the same law firm and asserted the same defenses, each cross-defendant is severally liable for one-third of the total amount of the monies advanced by the Bank.

## I. BACKGROUND

IFSB is a federal stock savings association subject to regulation by the OTS. *See id.* ¶ 1. Cross-Defendants are Carolyn D. Jordan, former Chair of the IFSB Board; David Wilmot, former Vice-Chair of the Board; and Thomas L. Batties, former acting President and Chief Executive Officer of IFSB (collectively, the "Cross-Defendants"). *Id.* ¶¶ 2-4. Plaintiffs Morton and Grace Bender[1] are now the largest shareholders of the Bank. As Mr. Bender increased his holdings in the Bank, and his criticisms of the Board, an epic struggle for control ensued.[2] Its most recent iteration

---

[1] Mr. Bender is the active participant in this matter although the shares are jointly held with Mrs. Bender. *See* Pls.' First Am. Compl. ¶ 3. He will be referred to in the singular hereafter.

[2] *See Bender v. Jordan*, 525 F. Supp. 2d 198 (D.D.C. 2007) (denying Bank's former directors' and former President and CEO's motion to dismiss the Bank's cross-claim for repayment of attorneys' fees advanced on their behalf in the suit brought against them by Mr. Bender); *Bender v. Jordan*, 515 F. Supp. 2d 10 (D.D.C. 2007) (dismissing as moot Mr. Bender's challenge to an October 2005 shareholder vote for members of the Board because all five of the directors who Mr. Bender sought to oust had already resigned from Board); *Bender v. Jordan*, 439 F. Supp. 2d 139 (D.D.C. 2006) (granting Mr. Bender's application for a preliminary injunction enjoining the Bank and its Board from disseminating proxy materials to shareholders and holding shareholders' meetings until further order of the Court); *Bender v. Indep. Fed. Sav. Bank*, No. 05-1787 (D.D.C. filed September 9, 2005) (case voluntarily dismissed without prejudice on December 15, 2005); *Indep. Fed. Sav. Bank v. Bender*, No. 04-736 (denying the Bank's motion for voluntary dismissal without prejudice of its suit against Mr. Bender, as a minority shareholder, for securities violations and tortious interference with contract relating to a collapsed plan of merger between the Bank and another institution) (case voluntarily dismissed with prejudice on August 15, 2005); *Indep. Fed. Sav. Bank v. Bender*, 332 F. Supp. 2d 203 (D.D.C. 2004) (denying the Bank's motion for a preliminary injunction "neutralizing" the shares that Mr. Bender acquired after March 15, 2004 for purposes of the pending shareholder vote regarding a possible merger between the Bank and another institution because Mr. Bender had allegedly made inaccurate Schedule 13D filings with the Securities and Exchange Commission); *Indep. Fed. Sav. Bank v. Bender*, 326 F. Supp. 2d 36 (D.D.C. 2004) (denying shareholders' application for a preliminary injunction to require the Bank to rescind a rights plan, commonly known as a "poison pill"); *Bender v. Parks*, No. 03-2485, 2004 U.S. Dist. LEXIS 17090 (D.D.C. Jan. 15, 2004) (denying Mr. Bender's motion for a preliminary injunction ordering certain members of the Board to call a special meeting of the shareholders for the purpose of voting to remove certain directors from the Board) (case voluntarily dismissed without prejudice on

in court was this suit, filed in January 2006, in which Mr. Bender alleged violations of numerous securities laws and IFSB's bylaws by the actions of five former directors of the Bank (the "Director Defendants")[3], including Ms. Jordan and Mr. Wilmot, and the former acting President and CEO, Mr. Batties, leading up to, and in conducting, a shareholders' meeting of October 2005.  *See* Compl. [Dkt. # 1].  On February 15, 2006, the Board of Directors of IFSB, by a vote of five to four, adopted a Resolution authorizing the advancement of legal expenses incurred by the Director Defendants and Mr. Batties.  IFSB Facts ¶ 6.

Ms. Jordan executed a Request for Advancement of Expenses for Claims Against an Officer or Director on February 20, 2006; Messrs. Wilmot and Batties signed similar agreements on February 28, 2006.  Each of these agreements provided:

> Pursuant to the Regulations of the Office of Thrift Supervision ("OTS") governing advancement of expenses to directors and officers of a federal savings association, 12 C.F.R. § 545.121(3) (the "Regulation"), with respect to claims brought against a director or officer arising from service as a director or officer of a federal savings association, I hereby request that Independence Federal Savings Bank (the "Bank") pay reasonable expenses and costs that have been or will be incurred in the defense or settlement of the litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan, et al. Under the Regulation, I hereby agree that I will repay the Bank any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation under 12 C.F.R. § 121 [sic], and I represent that I have sufficient assets to repay my fair share of such amounts.

*Id.* ¶¶ 7-9 (citing Isard Aff. ¶ 8, Ex. 1; *id.* ¶ 9, Ex. 2; *id.* ¶ 10, Ex. 3).

On July 21, 2006, the Court entered its Opinion [Dkt. # 50] and Order [Dkt. # 51],

---

February 12, 2004); *Bender v. Indep. Fed. Sav. Bank*, No. 03-865 (D.D.C. filed April 11, 2003) (case voluntarily dismissed without prejudice on May 16, 2003).

[3] The Director Defendants include Carolyn D. Jordan, David Wilmot, Michael J. Cobb, William B. Fitzgerald, IV, and Eugene K. Youngentob.

granting a preliminary injunction as sought by Mr. Bender. In its Opinion, the Court found that the Plaintiffs were likely to succeed on the merits of certain claims that: 1) the Director Defendants, through their chairman, Ms. Jordan, and vice chairman, Mr. Wilmot, acted to acquire certain shares and voting power to solidify their control of the IFSB Board; acquired a beneficial ownership of said shares and voting power, which constituted nearly 10% of the Bank's outstanding shares, and violated § 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (the "Exchange Act"), by failing to file the required Schedule 13D; 2) the Director Defendants and Mr. Batties sent proxy solicitations containing multiple false and misleading material statements which led to election of the Management Nominees in violation of § 14(a) of the Exchange Act; and 3) the Director Defendants and Mr. Batties violated § 45 of Robert's Rules by unilaterally allocating proxies after the polls closed. *See* Mem. Op. on Mot. for Prelim. Inj.[4] The Court made no findings that Defendant Director Michael J. Cobb, William B. Fitzgerald, IV, or Eugene K. Youngentob was an active transgressor of the securities laws or bylaws. *See id.*

On August 4, 2006, John E. Ryan, OTS Regional Director, sent a letter to the IFSB Board, notifying them that, "taking into consideration the weight of the findings in the Order," he had "determined that it would be unsafe and unsound to permit Independence to continue to advance unsecured legal and related expenses" on behalf of the Director Defendants and Mr. Batties. IFSB Facts ¶ 11. Mr. Ryan further advised that no further advancement of legal expenses should be permitted until the Director Defendants and Mr. Batties presented sufficient collateral to cover already-incurred expenses. *Id.*

---

[4] The Court's Memorandum Opinion is also available at *Bender v. Jordan*, 439 F. Supp. 2d 139 (2006).

The Director Defendants and Mr. Batties filed a Notice of Interlocutory Appeal on August 18, 2006. *Id.* ¶ 13. On that same date, E. Leroy Morris, the Interim President and CEO of the Bank[5], sent a letter to the Director Defendants and Mr. Batties advising them that:

> Pursuant to the letter received from John Ryan, Regional Director, Office of Thrift Supervision ("OTS") dated August 4, 2006, [of] which you have already been apprised, the Board of Directors, in order to comply with this letter, adopted a resolution on August 16, 2006, which, in part, directed me to take immediate steps to obtain collateral sufficient to ensure reimbursement to the Bank for advanced legal fees and expenses incurred by the firm of Shook Hardy and Bacon.
>
> The amount to be collateralized per "Director Defendant" and Mr. Batties, as of 6/30/06, is One Hundred Eight Thousand, Two Hundred Sixty-Nine Dollars and no cents ($108,269.00).
>
> The Bank expects tender immediately. Should you have any questions about tender, the method of collateralization, instruments to be executed or this letter generally, please contact me as soon as possible.

*Id.* (citing Isard Aff. ¶ 12, Ex. 5). Despite this letter, and a further letter to the same effect from Bank counsel on November 16, 2006, no collateral was offered by the Director Defendants or Mr. Batties.

On September 26, 2006, after the Court issued its Opinion granting the motion for preliminary injunction in which it made no findings that Mr. Cobb, Mr. Fitzgerald, or Mr. Youngentob was an active transgressor of the securities laws or bylaws, Mr. Bender entered into a Stipulation of Dismissal from the suit with each of them, *see* Dkt. # 70, which was approved by the Court on October 2, 2006. On January 11, 2007, the United States Court of Appeals for the D.C. Circuit entered an Order granting the voluntary dismissal of the interlocutory appeal. *Id.* ¶ 16. On January 12, 2007, counsel for IFSB sent letters to each of the Director Defendants and Mr. Batties

---

[5] Mr. Batties had resigned his official position as acting President and CEO, and become a consultant to the Bank, which role he held until December 2006. *See* IFSB Facts ¶ 4.

advising them that:

> With the appeal no longer pending, the matter will be remanded to the District Court for final disposition of the claims asserted by the Benders. With the dismissal of the appeal, there is no longer any possibility that the findings of fact and conclusions of law made by the District Court in its Memorandum Opinion of July 21, 2006 will be disturbed. Further, the terms and provisions of the Request for Advancement of Expenses for Claims Against an Officer or Director, which you signed for the benefit of the Bank, become operative. Simply stated, it is now appropriate for you to repay $108,269.00 to the Bank for sums advanced by the Bank on your behalf in the litigation referenced above. To that end, we respectfully request that you or your counsel contact the undersigned at your first convenient opportunity so that we might make arrangements for you to make such repayment.

*Id.* ¶ 17 (citing Isard Aff. ¶ 15, Ex. 8). None of the Director Defendants or Mr. Batties repaid, or offered to repay, any of the monies advanced by the Bank for their legal fees. *Id.* ¶ 22.

On February 15, 2007, IFSB filed a Motion for Leave to Amend Pleadings to State Cross-Claim Out-Of-Time [Dkt. # 78], which the Court granted on May 30, 2007. In an Opinion [Dkt # 90] and Order [Dkt # 91], dated May 31, 2007, the Court dismissed the First Amended Complaint filed by Mr. Bender as moot, with the exception of his claim for attorney fees pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(c). On June 20, 2007, by formal resolution and "based upon the findings of the Court," the IFSB Board determined that Ms. Jordan and Messrs. Wilmot and Batties "were not entitled to indemnity from the Bank for expenses incurred and should be required to immediately repay such advanced moneys." IFSB Facts ¶ 21 (citing Isard Aff. ¶ 17, Ex. 9). IFSB reports that it has advanced the total sum of $649,614.39 for legal fees and related costs through August 18, 2006, in defense of this action against its directors. *Id.* ¶ 22.[6]

---

[6] The parties agree that the Bank advanced a total of $649,614.39 in defense of the six original defendants to this suit through August 18, 2006. *See* Defs.' Opp'n at 7; IFSB Facts ¶ 22 (citing Isard Aff. ¶ 18, Ex. 10).

## II.  LEGAL STANDARDS

IFSB moves for summary judgment on the grounds that the Cross-Defendants are jointly and severally liable to IFSB for its advancement of legal expenses for their defense.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. ANALYSIS

The Cross-Defendants argue that IFSB's motion for summary judgment fails because (1) there are material facts in dispute that preclude summary adjudication and (2) the law does not support IFSB's contention that it is entitled to reimbursement from the Cross-Defendants. The Court disagrees, and holds that the Cross-Defendants must repay their "fair share" of the expenses incurred by IFSB in defending the suit, which is equal to one-third each of the total amount that the Bank expended on the defense of their actions.

### A. No Material Facts in Dispute

The Cross-Defendants contend that there are material facts in dispute which preclude resolution of Plaintiff's claim through summary adjudication. *See* Cross-Defs.' Opp'n to Cross-claim Pl.'s Mot. for Summ. J. ("Defs.' Opp'n") at 4, 6-7 (arguing, *inter alia*, that "the bona fides of any decision by a majority of the disinterested directors of the IFSB Board must be tested by this Court through a factual inquiry that will involve [] weighing the testimony and not through summary disposition"). Specifically, Cross-Defendants assert that there are seven material facts in dispute. *See* Cross-Defs.' Statement of Disputed Facts in Opp'n to Cross-Pl.'s Mot. for Summ. J. (filed with Defs.' Opp'n) ("Defs.' Facts") ¶¶ 1-7. Each of the alleged disputed facts, however, raises only questions of law which are undoubtedly appropriate for summary disposition.[7] *See Anderson*, 477

---

[7] Cross-Defendants' first statement of disputed facts asserts that the "Court's Order of July 21, 2006 is not a final judgment on the merits," Defs.' Facts ¶ 1; this assertion, however, is a legal conclusion which raises a pure question of law, *i.e.*, whether a preliminary injunction that is not appealable constitutes a final judgment on the merits. Second, Cross-Defendants assert that 12 C.F.R. § 545.121 permits reimbursement by IFSB of legal fees and expenses advanced on behalf of the Director Defendants, *id.* ¶ 2; this is also a legal conclusion that likewise raises a pure question of law, *i.e.*, whether reimbursement or indemnification is permitted under the applicable regulation. Third, the Cross-Defendants argue that it is disputed whether "[a] majority of disinterested members of the Board of IFSB failed to make a determination that Cross-

U.S. at 247-48; *see also Swanks v. Wash. Metro. Area Transit Auth.*, 179 F.3d 929, 934 (D.C. Cir. 1999) (noting the difference between "a pure question of law to be resolved by the court" and "a question of fact that must be resolved by a fact-finder at trial"); *accord Washburn v. LaVoie*, 437 F.3d 84, 90 (D.C. Cir. 2006); *Lyon v. Carey*, 533 F.2d 649, 655 (D.C. Cir. 1976).

### B. Judgment as a Matter of Law

Because there are no material facts in dispute, the Court will consider the Cross-Defendants' legal challenges to IFSB's motion for summary judgment. Their arguments present the following issues: (1) whether, under 12 C.F.R. § 545.121, IFSB can require the Cross-Defendants to reimburse it for expenses advanced for legal fees and expenses where a final judgment on the merits was not entered against them and where a majority of the disinterested directors of the IFSB Board have not explicitly determined that the Cross-Defendants were not acting in good faith, within

---

Defendants were not acting in good faith . . . ," *id.* ¶ 3; this fact is not directly disputed by Plaintiffs, but what is disputed is whether a finding of lack of good faith is required to entitle IFSB to reimbursement; again, this dispute raises a question of law, not of fact. The fourth fact allegedly in dispute is whether "[a] majority of the disinterested members of the Board of IFSB acted in good faith in demanding reimbursement from Cross-Defendants and not [the rest of the Director Defendants who were initially sued]," *id.* ¶ 4; the parties may dispute this fact, but the dispute is irrelevant to the initial legal question of whether a finding that the Board of IFSB acted in good faith is required before the Bank is entitled to repayment. Fifth, Cross-Defendants assert that IFSB disputes the fact that "the alleged individual contractual obligation of each Cross-Defendant does not constitute a joint undertaking or a joint obligation of Cross-Defendants," *id.* ¶ 5; this is a question of state contract law, not of fact. Sixth, Cross-Defendants argue that IFSB disputes whether Mr. Bender prevailed on only 18 of the 49 claims of his lawsuit, *id.* ¶ 6; IFSB does not dispute this fact, but it does dispute Cross-Defendants' conclusion that IFSB is therefore not entitled to recover 100% of the legal fees associated with the defense of Cross-Defendants, *see* Cross-Pls.' Reply in Support of Mot. for Summ. J. ("Pls.' Reply"), which raises a pure question of law. And the seventh alleged fact in dispute is that neither this Court nor OTS made any findings that Cross-Defendants are not entitled to reimbursement as a matter of law, Defs.' Facts ¶ 7; this fact is not directly disputed by the Bank, but again, what is disputed is whether the Court or OTS is required under 12 C.F.R. § 545.121 to make such findings prior to the Bank demanding reimbursement.

the scope of their employment authority, or for a purpose that they could reasonably have believed was in the best interests of IFSB or its members; and (2) whether, under D.C. law, the Cross-Defendants are jointly and severally liable for the sums advanced by IFSB for attorneys' fees to defend against the shareholder derivative lawsuit.

1. *Reimbursement under 12 C.F.R. § 545.121*

Pursuant to 12 C.F.R. § 545.121, a "Federal savings association shall indemnify its directors, officers, and employees" in accordance with the express requirements set forth in the Regulation. Specifically, the Regulation provides, *inter alia*, that:

> (b) General.  Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an action is brought or threatened because that person is or was a director, officer, or employee of the association, for:
>
> (1) Any amount for which that person becomes liable under a judgment if [sic] such action; and
>
> (2) Reasonable costs and expenses, including reasonable attorney's fees, actually paid or incurred by that person in defending or settling such action, or in enforcing his or her rights under this section if he or she attains a favorable judgment in such enforcement action.
>
> (c) Requirements.  Indemnification shall be made to such [person] under paragraph (b) of this section only if:
>
> (1) Final judgment on the merits in his or her favor; or
>
> (2) In case of:
>
> (i) Settlement;
>
> (ii) Final judgment against him or her, or
>
> (iii) Final Judgement in his or her favor, other than on the merits, if a majority of the disinterested directors of the savings association determine that he or she was acting in good faith within the scope of

> his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or its members.
>
> However, no indemnification shall be made unless the association gives the Office at least 60 days' notice of its intention to make such indemnification. Such notice shall state the facts on which the action arose, the terms of any settlement, and any disposition of the action by a court. Such notice, a copy thereof, and a certified copy of the resolution containing the required determination by the board of directors shall be sent to the Regional Director, who shall promptly acknowledge receipt thereof. The notice period shall run from the date of such receipt. No such indemnification shall be made if the OTS advises the association in writing, within such notice period, of his or her objection thereto.

Section 545.121(c)(1) "provides for mandatory indemnification if there is a 'final judgment on the merits' in the director's favor. Section 545.121(c)(2) provides for permissive indemnification when the result is less favorable, and upon the approval of a majority of the disinterested directors." *Harris v. Resolution Trust Corp.* 939 F.2d 926, 928 (11th Cir. 1991). Thus, indemnification is only *required* under 12 C.F.R. § 545.121 when there has been a final judgment on the merits in the officer's or director's favor. *See Waldboro Bank, F.S.B. v. Am. Cas. Co. of Reading, Pa.*, 775 F. Supp. 432, 433-34 (D. Me. 1991) ("Indemnification is required under §545.121 only where there is a 'final judgment on the merits' in the officer's or director's favor.") (citing 12 C.F.R. § 545.121(c)(1)).

Pursuant to 12 C.F.R. 545.121(e):

> [i]f a majority of the directors of a savings association concludes that, in connection with an action, any person ultimately may become entitled to indemnification under this section, the directors may authorize payment of reasonable costs and expenses, including reasonable attorneys' fees, arising from the defense or settlement of such action. Nothing in this paragraph (e) shall prevent the directors of a savings association from imposing such conditions on a payment of expenses as they deem warranted and in the

> interests of the savings association. Before making advance payment of expenses under this paragraph (e), the savings association shall obtain an agreement that the savings association will be repaid if the person on whose behalf payment is made is later determined not to be entitled to such indemnification.

This section "permits the board of directors to prepay the director's expenses if the board concludes that the director may ultimately be entitled to indemnification." OTS Opinion Letter, 1989 WL 1114183 (October 6, 1989).

The Cross-Defendants argue that 12 C.F.R. § 545.121 does not require reimbursement from them because the preliminary injunction was not a final judgment and there has been no finding that the Director Defendants and Mr. Batties are not entitled to reimbursement. They contend:

> [IFSB] can only demand reimbursement from [the] Cross-Defendants where [IFSB] has met the requirements of 12 C.F.R. section 545.121, i.e. where there is a final judgment against [the] Cross-Defendants *and* where a majority of the disinterested directors of IFSB have [sic] determined that [the] Cross-Defendants were not acting in good faith, within the scope of their employment or authority as they reasonably perceived it, or for a purpose that they could reasonably have believed under the circumstances was in the best interests of IFSB or its members.

Defs.' Opp'n at 5-6. The Cross-Defendants present an analysis that IFSB could adopt, if its current Board wanted to consider further whether, as a matter of its prudent discretion, the Board were willing to forgive the advances. But nothing in the OTS regulation requires the Board to do this.

The Court has already decided that the Cross-Defendants mis-read the regulation, when it denied their motion to dismiss. *See* December 6, 2007 Memo. Op. [Dkt # 102]. As the Court has previously decided:

> [T]he [Cross-]Defendants argue that the Bank's claims are not ripe because a majority of the disinterested directors of the Bank have not voted to determine whether the [Cross-]Defendants were acting in good faith and in what they thought were the best interests of the Bank. They cite 12 C.F.R.

> § 545.121(c). . . . [Cross-]Defendants mis-read the Regulation. The language on which they rely allows a savings association to forego demanding repayment from a director to whom advances for litigation expenses were made if there is final judgment in her favor other than on the merits *and* a majority of the disinterested directors make the requisite findings. A person is entitled to indemnification only if she has received a final judgment on the merits in her favor under (c)(1). However, a person who is not entitled to indemnification may be granted *permissive* indemnification under the circumstances of (c)(2). This latter provision has nothing to do with, and does not limit, the Bank's right to demand that [Cross-]Defendants repay the monies advanced on their behalf.

December 6, 2007 Memo. Op. at 11-12. *See also Harris*, 939 F.2d at 928; *Waldboro Bank*, 775 F. Supp. at 433-34. In other words, the IFSB Board of Directors *could* agree to indemnify Ms. Jordan and Messrs. Wilmot and Batties, despite the lack of a final judgment in their favor,[8] if a majority of the disinterested directors made the necessary findings and voted to do so. However, on June 20, 2007, the IFSB Board of Directors did the opposite; it "RESOLVED . . . that Carolyn D. Jordan, David Wilmot and Thomas L. Batties were not entitled to indemnity from the Bank for expenses incurred and should be required to immediately repay such advanced moneys." IFSB Facts ¶ 21 (citing Isard Aff. ¶ 17, Ex. 9). The Board's decision in this regard was left to its normal exercise of authority. In exercising its normal authority, the Board was under no duty to find that the Cross-Defendants (a) were *not* acting in good faith, or (b) were *not* acting within the scope of their

---

[8] Cross-Defendants argue that the premise that the Court's Order of July 21, 2006 is not a final judgment on the merits presents a disputed fact. Defs.' Facts ¶ 1. As a matter of law, a preliminary injunction does not constitute a final judgment on the merits. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted); *Nat'l Org. for Women, Wash. D.C. Chapter v. Social Sec. Admin. of the Dep't of Health & Human Servs.*, 736 F.2d 727, 733 (D.C. Cir. 1984) (noting that "the appeals before us emanate, not from a final disposition of the controversy by the District Court, but from a preliminary injunction designed to preserve the status quo pending that court's decision on the merits"); *Zuber v. Allen*, 402 F.2d 660, 676 (D.C. Cir. 1968) ("a preliminary injunction does not constitute a final judgment on the merits"). Under 12 C.F.R. § 545.121(c)(1), indemnification is mandatory only if Cross-Defendants received a final judgment on the merits, which they did not.

employment or authority, or (c) did *not* reasonably perceive it as within their authority, or (d) did *not* reasonably believe that their actions were in the best interests of the Bank, prior to demanding repayment. Likewise, neither the Court nor OTS was required under 12 C.F.R. § 545.121 to make a specific finding that Cross-Defendants were not entitled to reimbursement as a matter of law; all that was required for repayment to be compelled was that the Board determine, in its normal exercise of authority, that the Cross-Defendants were not entitled to indemnification. *See* 12 C.F.R. 545.121(e); *see also* IFSB Facts ¶¶ 7-9. Furthermore, the OTS regulations imposed upon the disinterested directors no duty to act in good faith, or to establish that they acted in good faith, in demanding reimbursement only from the Cross-Defendants and not from the three Director Defendants who were voluntarily dismissed from the case. The Cross-Defendants, therefore, are required to repay the Bank.

2. *Joint and Several Liability*

The Cross-Defendants protest that even if they are required to reimburse IFSB, they do not have joint and several liability for the entirety of the $649,614.39 advanced by the Bank to the Director Defendants and Mr. Batties through August 18, 2006. They note that the separate agreements which each signed promised only to "repay the Bank any amounts paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification. . . ." *Id.* ¶¶ 7-9 (citing Isard Aff. ¶ 8, Ex. 1; *id.* ¶ 9, Ex. 2; *id.* ¶ 10, Ex. 3). They also rely on the August 18, 2006 letter from Mr. Morris, the Interim President and CEO of the Bank, to the Cross-Defendants and to Messrs. Cobb, Fitzgerald, and Youngentob, which identified "[t]he amount to be collateralized per 'Director Defendant' and Mr. Batties, as of 6/30/06" to be $108,269.00. *Id.* ¶ 13 (citing Isard Aff. ¶ 12, Ex. 5). The Cross-Defendants contend that there were initially six defendants in this suit when brought

by Mr. Bender and that the Bank has not explained why it believes that the three Cross-Defendants should be liable for the entire amount of advanced fees.

Neither party cites any law to guide the Court's analysis. The D.C. Code provides:

[A] contract or obligation entered into by two or more persons, whether:

    (1) the persons are partners or joint contractors;
    (2) the contract is under seal or not;
    (3) it is written or verbal; or
    (4) it is expressed to be joint and several or not --

is deemed to be joint and several.

D.C. Code § 16-2101 (2008). Thus, under D.C. law, multiple obligation or liability under a contract is presumed to be joint and several. Stated differently, "[t]he general rule is 'that the obligation created by the promise of several persons is joint unless the contrary is made evident.'" *Welch v. Sherwin*, 300 F.2d 716, 718 (D.C. Cir. 1962) (citing 2 Williston, Contracts § 323 (1936)).[9] The

---

[9] As the court in *Welch* explained:

    The terms joint, several, and joint and several have occasionally been confused. Co-promisors are liable (1) jointly if all of them have promised the entire performance; or (2) severally if they have promised separate performances. At common law joint promisors had to be joined in a single suit, but any one of them could be compelled to satisfy the entire judgment. 4 [Arthur L.] Corbin, Contracts §§ 920, 929 (1951). To obviate the necessity for joining all the promisors, and to avoid problems of survivorship, release of co-obligors, and the like, the promisee obtained the promisors' agreement to be liable jointly and severally; *i.e.*, collectively and individually liable for the whole performance.

    In this jurisdiction, statutes authorize separate suits against joint promisors even if they have not agreed to be liable jointly and severally. D.C. Code §§ 13-401, 16-901 (1961). Those statutes do not determine of course, whether each co-promisor has agreed to be liable for the entire performance or only for a part thereof. That determination is governed by the terms of the contract.

question therefore becomes one of contract interpretation rather than statutory or case law interpretation,[10] *i.e.*, do the plain words of the contract manifest an intent of each Director Defendant and Mr. Batties to be severally liable, rather than jointly and severally liable, for the moneys advanced by the Bank for their collective defense?

> Each Director Defendant and Mr. Batties declared in his or her promise to IFSB that:
>
> I hereby agree that I will repay the Bank any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation under 12 C.F.R. § 121 [sic], and I represent that I have sufficient assets to repay *my fair share of such amounts*.

IFSB Facts ¶¶ 7-9 (citing Isard Aff. ¶ 8, Ex. 1; *id.* ¶ 9, Ex. 2; *id.* ¶ 10, Ex. 3 (emphasis added)); *see also* Defs.' Opp'n at 2. The plain words of the agreement are susceptible to no other interpretation than that the parties intended that each of the Director Defendants and Mr. Batties be obligated to repay *only* his or her "fair share" of the attorneys' fees advanced by the Bank "if it is later determined that [he or she] is not entitled to indemnification." *See* IFSB Facts ¶¶ 7-9 (citing Isard Aff. ¶ 8, Ex. 1; *id.* ¶ 9, Ex. 2; *id.* ¶ 10, Ex. 3). The clear language of the contract therefore belies the Bank's argument that the Cross-Defendants should be held jointly and severally liable; rather, Cross-Defendants are severally liable for their "fair share" of the $649,614.39 that IFSB advanced through August 18, 2006, for their joint defense "of the litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan, et al." *See id.*

---

300 F.2d at 718 n.3.

[10] That the Cross-Defendants did not execute one and the same contract, but rather signed separate contracts, as did the other three Director Defendants from whom repayment is not demanded, Defs.' Opp'n at 2, does not alter the Court's analysis. Each person sued by Mr. Bender was represented by the same attorneys, mounted identical defenses, and signed identical promises to repay the Bank.

The Cross-Defendants argue that "there should be some allocation of the legal fees and expenses . . . among the six persons for whom the amounts were actually expended."[11] Defs.' Opp'n at 9. They contend that each Cross-Defendant might be required to repay the Bank, at most, only $108,269. The express language of their contracts, however, dictates otherwise. Each of the five Director Defendants and Mr. Batties executed an agreement wherein each agreed to pay his or her "fair share" of funds advanced for their mutual defense, if they were not entitled to it. IFSB Facts ¶¶ 7-9; Defs.' Opp'n at 2. All six original defendants were jointly represented by one firm which mounted the same defense on behalf of each of them. The Court's findings after the preliminary injunction hearing, however, did not include Messrs. Cobb, Fitzgerald or Youngentob as active transgressors of the securities laws or bylaws. *See* Mem. Op. on Mot. for Prelim. Inj. They were subsequently dismissed from the suit. *See* Stipulation of Voluntary Dismissal [Dkt. # 70]. Thus, but for the actions of Ms. Jordan, and Messrs. Wilmot and Batties, IFSB would not have violated the securities laws, Mr. Bender would not have filed a successful shareholder derivative action against IFSB, and IFSB therefore would not have advanced funds for legal expenses to any of the Director Defendants or Mr. Batties. Because Messrs. Cobb, Fitzgerald and Youngentob were not found to be actively involved by the Court, it was not unreasonable for the current Board to decide that their "fair share" of the legal fees and expenses was $0.00. And because all six original

---

[11] The Cross-Defendants advance the additional argument that they should not have to pay legal fees in the amounts paid by IFSB because Mr. Bender did not prevail on all of his claims when the Court entered its preliminary injunction. Defs.' Opp'n at 9. Mr. Bender's success or lack thereof is irrelevant. What matters here is that the Cross-Defendants were sued, promised the Bank to repay advanced attorneys' fees if it were determined that they were not "entitled" to such advances, never received a final judgment in their favor, received a letter notifying them that the Board resolved that they were not "entitled" to indemnification, and so are not "entitled" to the advances, and now refuse to repay.

defendants were represented jointly by one law firm and because that firm mounted the same defense for all of them, the entire amount of the legal fees that the firm accrued is properly attributable to those who were "fair[ly]" responsible for the expenses – the three Cross-Defendants.

The "fair share" of the legal fees for which each of the three Cross-Defendants is severally liable is equal to one-third of $649,614.39 – the total sum of the attorneys's fees and expenses accumulated in defense of Mr. Bender's lawsuit. Consequently, each Cross-Defendant is liable severally, not jointly, for $216,538.13 plus interest thereon from June 20, 2007 through the date of payment in full by such Cross-Defendant.[12]

### IV.  CONCLUSION

For the reasons set forth above, the Court concludes that the Cross-Defendants are not entitled to indemnification and each Cross-Defendant must repay the Bank a fair share of the amount advanced by the Bank to or on their behalf to fund their joint defense. Their failure to repay constitutes a breach of contract. The Court further concludes that because each Cross-Defendant agreed to repay his "fair share" of the funds advanced to pay attorneys' fees, each Cross-Defendant is severally liable for his "fair share" of the total amount of the attorneys' fees and expenses, but not jointly liable for the whole. Each Cross-Defendant is therefore liable to the Bank for $216,538.13 plus interest thereon from June 20, 2007 through the date that payment is completed. A memorializing order accompanies this Memorandum Opinion.

Date: August 11, 2008                                         /s/
                                                                            ROSEMARY M. COLLYER
                                                                            United States District Judge

---

[12] June 20, 2007 is the date that the Board issued its Resolution determining that Ms. Jordan, Mr. Wilmot and Mr. Batties were not entitled to indemnification. See IFSB Facts ¶ 21.